IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
Western Division

TAMARA GREEN                        :
                                    :
          Plaintiff,                :
                                    :
     v.                             : Case No.
                                    :
WILLIAM H. COSBY, JR.               :
                                    :
          Defendant.                :

## COMPLAINT

COMES NOW the Plaintiff, Tamara Green, by and through her counsel, Joseph Cammarata, Esq., Matthew W. Tievsky, Esq., Andrew Abraham, Esq., and hereby represents as follows:

## JURISDICTION AND PARTIES

1.   This Court has jurisdiction of the within cause of action pursuant to diversity of citizenship and the amount in controversy, 28 U.S.C. § 1332.

2.   Venue lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391 in that Defendant William H. Cosby, Jr. resides in this District.

3.   Defendant Cosby is an internationally known actor and comedian.

4.   Plaintiff Tamara Green is an adult individual residing at a confidential address in California.

## FACTUAL BACKGROUND

Plaintiff repleads and incorporates by reference herein each and every allegation set forth above and further states as follows:

5.   Plaintiff Green met Defendant Cosby in or about 1969

or 1970, through an introduction from a mutual friend.

6.   During that time, Plaintiff Green was a young and aspiring model and singer.

7.   Defendant Cosby solicited Plaintiff Green's assistance to raise money for Defendant Cosby from investors to establish a new club that Defendant Cosby intended to open.

8.   On a certain date in the early 1970s, Plaintiff Green telephoned Defendant Cosby to advise him that she was not feeling well and was unable to continue to assist him as described in paragraph 7 above.

9.   Defendant Cosby invited Plaintiff Green to meet him for lunch at Café Figaro in Los Angeles, California, telling her that she would feel better if she had something to eat.

10.  While at lunch together, Defendant Cosby offered Plaintiff Green some red and grey pills telling Plaintiff Green that they were over-the-counter cold medicine.

11.  Plaintiff Green ingested the pills believing them to be what Defendant Cosby represented them to be.

12.  To Plaintiff Green's surprise, within a short period of time, the pills caused Plaintiff Green to feel weak, dizzy and woozy.

13.  Upon information and belief, Defendant Cosby deceived Plaintiff Green into ingesting narcotic or other type of drugs and not cold medicine.

14.  Defendant Cosby intentionally drugged Plaintiff Green

into this altered state, in order to facilitate his later sexual assault.

15.  After feeling the effects of the drugs, lunch was ended prematurely and Defendant Cosby drove Plaintiff Green to her apartment.

16.  Once there, without Plaintiff Green's consent, Defendant Cosby undressed himself and Plaintiff Green. Defendant Cosby then began to take advantage of Plaintiff Green by running his hands all over her body, touching her breasts and vaginal area, and he digitally penetrated her, while masturbating himself.

17.  Despite repeated demands to stop, Defendant Cosby continued his assault of Plaintiff Green.

18.  Plaintiff Green repeatedly told Defendant Cosby, "You're going to have to kill me" in an effort to stop the assault.

19.  It was not until Plaintiff Green was able to upend a table lamp that Defendant Cosby stopped.

20.  During the entirety of the sexual assault, Plaintiff Green remained weak, vulnerable and unable to fully defend her herself.

21.  Defendant Cosby eventually left Plaintiff Green's apartment, leaving two $100 bills on a coffee table.

22.  Plaintiff Green first widely publicly disclosed Defendant Cosby's sexual assault in February of 2005, by an appearance on the Today Show and an interview with the

3

Philadelphia Inquirer.

23. Defendant Cosby, by and through his agent, authorized representative, and lawyer, Walter M. Phillips, Jr., responded that Defendant Cosby did not know Plaintiff Green, and that Plaintiff Green's allegations were "absolutely false" and that the incident "did not happen in any way, shape, or form." Thus by innuendo and effect, Defendant Cosby publically branded Plaintiff Green a liar.

24. At all relevant times, Phillips acted as an agent, authorized representative, lawyer, servant, and/or employee of Defendant Cosby, acting within the course and scope of his employment.

25. On or about February 7, 2014, Newsweek published an interview of Plaintiff Green. In the interview, Plaintiff Green again detailed Defendant Cosby's sexual assault.

26. Along with that interview, Newsweek published a response attributed to "[Defendant] Cosby's publicist." Upon information and belief, the publicist was David Brokaw.

27. At all relevant times, David Brokaw acted as an agent, authorized representative, servant, and/or employee of Defendant Cosby, within the course and scope of his employment.

28. In his response to Newsweek, in an effort to continue the public branding of Plaintiff as a liar, Defendant Cosby through Brokaw stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's drugging and sexual assault against Plaintiff Green never

occurred, and therefore that Plaintiff Green lied and was a liar. Defendant Cosby thereby continued his pattern of branding Plaintiff Green as a liar that he began in 2005.

29. In or about November of 2014, Plaintiff Green repeated the substance of her allegations in an interview she gave to The Washington Post. The interview was published on or about November 22, 2014.

30. Along with that interview, The Washington Post published a response attributed to Phillips.

31. In his response to The Washington Post, in an effort to continue the public branding of Plaintiff as a liar, Defendant Cosby, through Phillips, again stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby did not know Plaintiff Green and that Defendant Cosby's drugging and sexual assault against Plaintiff never occurred, and therefore that Plaintiff lied and was a liar. Defendant Cosby thereby continued his pattern of branding Plaintiff as a liar that he began in 2005.

32. Defendant Cosby has known that Plaintiff Green's allegations are true and that his attorneys', spokesperson's, and/or agents' denials are false.

33. Brokaw and Phillips each made their denial at the direction of Defendant Cosby, and/or within the course and scope of their employment with Defendant Cosby.

34. Defendant Cosby's responses through Brokaw and

Philips were publicized nationwide, not just through Newsweek and The Washington Post respectively, but through other publications that repeated their responses.

## COUNT I
### (Defamation)

Plaintiff repleads and incorporates by reference herein each and every allegation set forth above and further states as follows:

35. At all relevant times, Plaintiff Green enjoyed the respect, confidence and esteem of her neighbors, as well as others in the community.

36. Defendant Cosby's responses, through Brokaw, given to Newsweek on or about February 7, 2014, and through Phillips given to The Washington Post on or about November 22, 2014, were each defamatory.

37. Each response was false when made, in that Plaintiff Green's accusation against Defendant Cosby was true, and there was no basis to publicly claim that Plaintiff Green was lying or a liar.

38. Each response was not privileged.

39. Brokaw and Phillips, at Defendant Cosby's direction, each gave their respective false response intentionally, notwithstanding their respective and/or Defendant Cosby's knowledge of its falsity; in reckless disregard of the truth; and/or in negligent disregard of the truth, intending to injure Plaintiff Green and to deprive her of her good name and

reputation.

40.   Brokaw and Phillips each knew or should have known that their respective responses were false at the time of the publications.

41.   Defendant Cosby knew the responses were false at the time of the publications.

42.   The responses of Defendant Cosby, through Brokaw and Phillips, were printed, published, circulated and distributed by the news outlets to which they were made, and were widely read by Plaintiff Green's family, neighbors, friends, and diverse other persons.

43.   Defendant Cosby's responses, through Brokaw and Phillips, each on their face impugned Plaintiff Green's reputation, and tended to expose Plaintiff Green to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation.

44.   Defendant Cosby's responses, through Brokaw and Phillips, each has directly and proximately caused Plaintiff Green damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

45.   Defendant Cosby is liable for the conduct of Brokaw and Phillips, each by virtue of *respondeat superior*.

WHEREFORE, Plaintiff Tamara Green, demands judgment of and

against Defendant William Henry Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorney's fees, and costs.

Respectfully submitted,


/s/ Joseph Cammarata
Joseph Cammarata, Esquire
CHAIKIN, SHERMAN,
    CAMMARATA & SIEGEL, P.C.


/s/ Matthew W. Tievsky
Matthew W. Tievsky, Esquire
CHAIKIN, SHERMAN,
    CAMMARATA & SIEGEL, P.C.
The Law Building
1232 Seventeenth Street, N.W.
Washington, D.C. 20036
Ofc: (202) 659-8600
Fax: (202) 659-8680
E-mail: Joe@dc-law.net
Attorneys for Plaintiffs


/s/ Andrew Abraham
Andrew Abraham, Esquire
BBO No. 631167
Abraham & Associates, P.C.
2 Center Plaza, Suite 620
Boston, MA 02108
(617) 648-4499 (phone)
(617) 648-4493 (fax)

## JURY DEMAND

Plaintiff hereby requests a trial by jury as to all issues triable herein.

/s/ Andrew Abraham
Andrew Abraham, Esquire