IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
Western Division

| | | |
|---|---|---|
| **TAMARA GREEN** | : | |
| | : | |
| and | : | |
| | : | |
| **THERESE SERIGNESE** | : | |
| | : | |
| and | : | Case No. 3:14-cv-30211-MGM |
| | : | |
| **LINDA TRAITZ** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **WILLIAM H. COSBY, JR.** | : | |
| | : | |
| Defendant. | : | |

<u>**AMENDED COMPLAINT**</u>

COME NOW the Plaintiffs, by and through their counsel, Joseph Cammarata, Esq., Matthew W. Tievsky, Esq., and Andrew Abraham, Esq., and hereby represent as follows:

<u>**JURISDICTION AND PARTIES**</u>

1.    This Court has jurisdiction of the within cause of action pursuant to diversity of citizenship and the amount in controversy, 28 U.S.C. § 1332.

2.    Venue lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391 in that Defendant William H. Cosby, Jr. resides in this District.

3.    Defendant Cosby is an internationally known actor and comedian.

4.   Plaintiff Tamara Green is an adult individual residing at a confidential address in California.

5.   Plaintiff Therese Serignese is an adult individual residing at a confidential address in Florida.

6.   Plaintiff Linda Traitz is an adult individual residing at a confidential address in Florida.

## FACTUAL BACKGROUND

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

### A.   Plaintiff Tamara Green

7.   Plaintiff Green met Defendant Cosby in or about 1969 or 1970, through an introduction from a mutual friend.

8.   During that time, Plaintiff Green was a young and aspiring model and singer.

9.   Defendant Cosby solicited Plaintiff Green's assistance to raise money for Defendant Cosby from investors to establish a new club that Defendant Cosby intended to open.

10.  On a certain date in the early 1970s, Plaintiff Green telephoned Defendant Cosby to advise him that she was not feeling well and was unable to continue to assist him as

described in paragraph 9 above.

11.   Defendant Cosby invited Plaintiff Green to meet him for lunch at Café Figaro in Los Angeles, California, telling her that she would feel better if she had something to eat.

12.   While at lunch together, Defendant Cosby offered Plaintiff Green some red and grey pills, telling Plaintiff Green that they were over-the-counter cold medicine.

13.   Plaintiff Green ingested the pills believing them to be what Defendant Cosby represented them to be.

14.   To Plaintiff Green's surprise, within a short period of time, the pills caused Plaintiff Green to feel weak, dizzy and woozy.

15.   Upon information and belief, Defendant Cosby deceived Plaintiff Green into ingesting narcotic or other type of drugs and not cold medicine.

16.   Defendant Cosby intentionally drugged Plaintiff Green into this altered state, in order to facilitate his later sexual assault.

17.   After feeling the effects of the drugs, lunch was ended prematurely and Defendant Cosby drove Plaintiff Green to her apartment.

18.   Once   there,   without   Plaintiff   Green's   consent, Defendant Cosby undressed himself and Plaintiff Green. Defendant Cosby then began to take advantage of Plaintiff Green by running his hands all over her body, touching her breasts and vaginal area, and he digitally penetrated her, while masturbating himself.

19.   Despite   repeated   demands   to   stop,   Defendant   Cosby continued his assault of Plaintiff Green.

20.   Plaintiff   Green   repeatedly   told   Defendant   Cosby, "You're going to have to kill me" in an effort to stop the assault.

21.   It was not until Plaintiff Green was able to upend a table lamp that Defendant Cosby stopped.

22.   During the entirety of the sexual assault, Plaintiff Green remained weak, vulnerable and unable to fully defend her herself.

23.   Defendant   Cosby   eventually   left   Plaintiff   Green's apartment, leaving two $100 bills on a coffee table.

24.   Plaintiff   Green   first   widely   publicly   disclosed Defendant Cosby's sexual assault in February of 2005, by an interview   with   the   Philadelphia   Daily   News,   and   then   by

appearances on television shows.

25. Defendant Cosby, by and through his agent, authorized representative, lawyer, servant, and/or employee Walter M. Phillips, Jr., responded that Defendant Cosby did not know Plaintiff Green, and that Plaintiff Green's allegations were "absolutely false" and that the incident "did not happen in any way, shape, or form." Thus by innuendo and effect, Defendant Cosby publically branded Plaintiff Green a liar.

26. At all relevant times, Phillips acted as an agent, authorized representative, lawyer, servant, and/or employee of Defendant Cosby, acting within the course and scope of his employment and/or agency.

27. On or about February 7, 2014, Newsweek published an interview of Plaintiff Green. In the interview, Plaintiff Green again detailed Defendant Cosby's sexual assault.

28. Along with that interview, Newsweek published a response attributed to "[Defendant] Cosby's publicist." Upon information and belief, the publicist was David Brokaw.

29. At all relevant times, David Brokaw acted as an agent, authorized representative, servant, and/or employee of Defendant Cosby, acting within the course and scope of his employment

and/or agency.

30.   In his response to Newsweek, in an effort to continue the public branding of Plaintiff Green as a liar, Defendant Cosby, by and through Brokaw, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's drugging and sexual assault against Plaintiff Green never occurred, and therefore that Plaintiff Green lied and was a liar. Defendant Cosby thereby continued his pattern of branding Plaintiff Green as a liar that he began in 2005.

31.   In or about November of 2014, Plaintiff Green repeated the substance of her allegations in an interview she gave to The Washington Post.  The interview was published on or about November 22, 2014.

32.   Along with that interview, The Washington Post published a response attributed to Phillips.

33.   In his response to The Washington Post, in an effort to continue the public branding of Plaintiff Green as a liar, Defendant Cosby, by and through Phillips, again stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby did not know Plaintiff

Green and that Defendant Cosby's drugging and sexual assault against Plaintiff never occurred, and therefore that Plaintiff lied and was a liar. Defendant Cosby thereby continued his pattern of branding Plaintiff Green as a liar that he began in 2005.

34. Defendant Cosby has known that Plaintiff Green's allegations are true and that his attorneys', spokesperson's, and/or agents' denials are false.

35. Brokaw and Phillips each made their denial at the direction of Defendant Cosby, and/or within the course and scope of their employment and/or agency with Defendant Cosby.

36. Defendant Cosby's responses, by and through Brokaw and Philips, were publicized nationwide, not just through Newsweek and The Washington Post respectively, but through other publications that repeated their responses.

**B.    Plaintiff Therese Serignese**

37. On a certain date in or about 1976, Plaintiff Serignese met Defendant Cosby in or near a gift shop at the Las Vegas Hilton.

38. During this time, Plaintiff Serignese was an aspiring young model, who was in Las Vegas to visit her mother.

39. At that time and place, Defendant Cosby approached Plaintiff Serignese from behind, put his arm around her, and asked, "Will you marry me?"

40. Defendant Cosby thereafter invited Plaintiff Serignese to see his show at the Las Vegas Hilton.

41. Plaintiff Serignese later attended the show, and at its conclusion was invited to a room backstage by Defendant Cosby.

42. Once Defendant Cosby and Plaintiff Serignese were alone together in a room backstage, Defendant Cosby gave Plaintiff Serignese two pills, and instructed Plaintiff Serignese to ingest the pills. Plaintiff Serignese complied.

43. The pills put Plaintiff Serignese into an altered state of consciousness.

44. Defendant Cosby intentionally drugged Plaintiff Serignese into this altered state, in order to facilitate his later sexual assault.

45. Once the pills put Plaintiff Serignese into an altered state, without Plaintiff Serignese's consent, Defendant Cosby undressed himself and Plaintiff Serignese. Defendant Cosby then began to take advantage of Plaintiff Serignese sexually.

46.   Defendant Cosby stood behind Plaintiff Serignese, bent her over, sexually penetrated her, and raped her.

47.   During the entirety of the sexual assault, Defendant Cosby acted without Plaintiff Serignese's consent, and Plaintiff Serignese remained weak, vulnerable, and unable to fully defend herself.

48.   On or about November 19, 2014, Plaintiff Serignese publicly disclosed Defendant Cosby's sexual assault.

49.   On or about November 21, 2014, Defendant Cosby, by and through his agent, authorized representative, lawyer, servant, and/or employee Martin D. Singer, responded to Plaintiff Serignese's disclosure, as well as to similar accusations by multiple other women made publicly in the preceding weeks, by issuing a written defamatory response to numerous media outlets.   (This defamatory statement is referred to herein as "the November 21 defamatory statement.")

50.  In the November 21 defamatory statement, Defendant Cosby, by and through Singer, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault against Plaintiff Serignese (among other women) never occurred, and therefore that

Plaintiff Serignese (among other women) lied and was a liar.

51. At all relevant times, Singer acted as an agent, authorized representative, lawyer, servant, and/or employee of Defendant Cosby, acting within the course and scope of his employment and/or agency.

52. Defendant Cosby has known that Plaintiff Serignese's allegations are true and that his attorneys', spokesperson's, and/or agents' denials are false.

53. Singer made his denial at the direction of Defendant Cosby, and/or within the course and scope of his employment and/or agency with Defendant Cosby.

54. Defendant Cosby's response, by and through Singer, was publicized nationwide.

### C.   Plaintiff Linda Traitz

55. In or about 1970, Plaintiff Linda Traitz was approximately 18 years old, and a waitress at Café Figaro. Through her work at the restaurant, Plaintiff Traitz became acquainted with Defendant Cosby.

56. One day that year, while Defendant Cosby was at the restaurant, he offered a ride home to Plaintiff Traitz, which she accepted.

57.  Instead of driving Plaintiff Traitz home, Defendant Cosby drove with Plaintiff Traitz to a beach, where Defendant Cosby parked his car.

58.  Defendant Cosby then opened a briefcase and presented Plaintiff Traitz with an assortment of pills.  Defendant Cosby pressured Plaintiff Traitz to ingest some of the pills, "to relax," as he said.

59.  As evidenced by his previous use of pills with Plaintiff Green and Plaintiff Serignese, Defendant Cosby's offer of pills to Plaintiff Traitz was an attempt to intentionally drug Plaintiff Traitz into an altered state of consciousness, to facilitate Defendant Cosby's planned sexual assault against Plaintiff Traitz.

60.  Plaintiff Traitz declined the pills.

61.  In response, Defendant Cosby became sexually aggressive with Plaintiff Traitz, groping Plaintiff Traitz's breasts and vaginal area. Defendant Cosby pushed Plaintiff Traitz down on the car seat, and attempted to lie on top of her. Plaintiff Traitz resisted Defendant Cosby's assault.

62.  On or about November 18, 2014, Plaintiff Traitz publicly disclosed this incident through a post she made on her

11

personal Facebook page.

63.   On or about November 20, 2014, Defendant Cosby, by and through Singer, responded to Plaintiff Traitz's disclosure by a statement given to numerous media outlets, that Plaintiff Traitz was "the latest example of people coming out of the woodwork with unsubstantiated or fabricated stories about my client [Defendant Cosby]." Plaintiff Cosby, by and through Singer, further stated that "there was no briefcase of drugs."

64.   Thus Defendant Cosby, by and through Singer, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault against Plaintiff Traitz never occurred, and therefore that Plaintiff Traitz lied and was a liar.

65.   Thereafter, Defendant Cosby, by and through Singer, issued the November 21 defamatory statement, which referred to, among others, Plaintiff Traitz.

66.   In the November 21 defamatory statement, Defendant Cosby, by and through Singer, again stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault against Plaintiff Traitz (among other women) never occurred, and therefore that

Plaintiff Traitz (among other women) lied and was a liar. Defendant Cosby thereby continued his pattern of branding Plaintiff Traitz as a liar.

67. Defendant Cosby has known that Plaintiff Traitz's allegations are true and that his attorneys', spokesperson's, and/or agents' denials are false.

68. Singer made his denials at the direction of Defendant Cosby, and/or within the course and scope of his employment and/or agency with Defendant Cosby.

69. Defendant Cosby's responses, by and through Singer, were publicized nationwide.

<u>**COUNT I**</u>
(Defamation – Plaintiff Green)

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

70. At all relevant times, Plaintiff Green enjoyed the respect, confidence and esteem of her neighbors, as well as others in the community.

71. Defendant Cosby's responses, by and through Brokaw, given to Newsweek on or about February 7, 2014, and by and through Phillips, given to The Washington Post on or about

November 22, 2014, were each defamatory.

72.  Each response was false when made, in that Plaintiff Green's accusation against Defendant Cosby was true, and there was no basis to publicly claim that Plaintiff Green was lying or a liar.

73.  Each response was not privileged.

74.  Brokaw and Phillips, within the course and scope of their employment and/or agency with Defendant Cosby, and Defendant Cosby, by and through Brokaw and Phillips, gave each false response intentionally, with knowledge of its falsity; with reckless disregard of the truth; with negligent disregard of the truth; and/or with actual malice toward Plaintiff Green, intending to injure Plaintiff Green and to deprive her of her good name and reputation.

75.  Brokaw and Phillips each knew or should have known that his respective response was false at the time of the publication.

76.  Defendant Cosby knew each of the responses was false at the time of the publication.

77.  Each of the responses of Defendant Cosby, by and through Brokaw and Phillips, was printed, published, circulated

and distributed by the news outlets to which they were made, and was widely read by Plaintiff Green's family, neighbors, friends, and diverse other persons.

78.  Defendant Cosby's responses, by and through Brokaw and Phillips, each on its face impugned Plaintiff Green's reputation, and tended to expose Plaintiff Green to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation.

79.  Defendant Cosby's responses, by and through Brokaw and Phillips, each has directly and proximately caused Plaintiff Green damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

80.  Defendant Cosby is liable for the conduct of Brokaw and Phillips each, by virtue of *respondeat superior*.

WHEREFORE, Plaintiff Tamara Green, demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-

judgment interest, attorneys' fees, and costs.

## COUNT II

(Defamation – Plaintiff Serignese)

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

81.  At all relevant times, Plaintiff Serignese enjoyed the respect, confidence and esteem of her neighbors, as well as others in the community.

82.  Defendant Cosby's response, by and through Singer, given on or about November 21, 2014, was defamatory.

83.  The response was false when made, in that Plaintiff Serignese's accusation against Defendant Cosby was true, and there was no basis to publicly claim that Plaintiff Serignese was lying or a liar.

84.  The response was not privileged.

85.  Singer, within the course and scope of his employment and/or agency with Defendant Cosby, and Defendant Cosby, by and through Singer, gave the false response intentionally, with knowledge of its falsity; with reckless disregard of the truth; with negligent disregard of the truth; and/or with actual malice

16

toward Plaintiff Serignese, intending to injure Plaintiff Serignese and to deprive her of her good name and reputation.

86. Singer knew or should have known that his response was false at the time of the publication.

87. Defendant Cosby knew the response was false at the time of the publication.

88. The response of Defendant Cosby, by and through Singer, was printed, published, circulated and distributed by the news outlets to which it was made, and was widely read by Plaintiff Serignese's family, neighbors, friends, and diverse other persons.

89. Defendant Cosby's response, by and through Singer, on its face impugned Plaintiff Serignese's reputation, and tended to expose Plaintiff Serignese to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation.

90. Defendant Cosby's response, by and through Singer, has directly and proximately caused Plaintiff Serignese damages by virtue of her loss of reputation, shame, mortification, hurt

feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

91. Defendant Cosby is liable for the conduct of Singer, by virtue of *respondeat superior*.

WHEREFORE, Plaintiff Therese Serignese, demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

## COUNT III
### (Defamation – Plaintiff Traitz)

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

92. At all relevant times, Plaintiff Traitz enjoyed the respect, confidence and esteem of her neighbors, as well as others in the community.

93. Defendant Cosby's responses, by and through Singer, given on or about November 20, 2014, and on or about November 21, 2014, respectively, were each defamatory.

94. Each response was false when made, in that Plaintiff Traitz's accusation against Defendant Cosby was true, and there

18

was no basis to publicly claim that Plaintiff Traitz was lying or a liar.

95.   Each response was not privileged.

96.   Singer, within the course and scope of his employment and/or agency with Defendant Cosby, and Defendant Cosby, by and through Singer, gave each false response intentionally, with knowledge of its falsity; with reckless disregard of the truth; with negligent disregard of the truth; and/or with actual malice toward Plaintiff Traitz, intending to injure Plaintiff Traitz and to deprive her of her good name and reputation.

97.   Singer knew or should have known that each of his responses was false at the time of the publication.

98.   Defendant Cosby knew each of the responses was false at the time of the publication.

99.   Each of the responses of Defendant Cosby, by and through Singer, was printed, published, circulated and distributed by the news outlets to which they were made, and was widely read by Plaintiff Traitz's family, neighbors, friends, and diverse other persons.

100. Defendant Cosby's responses, by and through Singer, each on its face impugned Plaintiff Traitz's reputation, and

tended to expose Plaintiff Traitz to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation.

101. Defendant Cosby's responses, by and through Singer, each has directly and proximately caused Plaintiff Traitz damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

102. Defendant Cosby is liable for the conduct of Singer, by virtue of *respondeat superior*.

WHEREFORE, Plaintiff Linda Traitz, demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

Respectfully submitted,


*/s/ Joseph Cammarata*
Joseph Cammarata, Esquire
**CHAIKIN, SHERMAN, CAMMARATA &
  SIEGEL, P.C.**



*/s/ Matthew W. Tievsky*
Matthew W. Tievsky, Esquire
**CHAIKIN, SHERMAN, CAMMARATA &
  SIEGEL, P.C.**
The Law Building
1232 Seventeenth Street, N.W.
Washington, D.C. 20036
Ofc: (202) 659-8600
Fax: (202) 659-8680
E-mail: Joe@dc-law.net
Attorneys for Plaintiffs



*/s/ Andrew Abraham*
Andrew Abraham, Esquire
BBO No. 631167
**ABRAHAM & ASSOCIATES, P.C.**
2 Center  Plaza, Suite 620
Boston, MA 02108
(617) 648-4499 (phone)
(617) 648-4493 (fax)

## JURY DEMAND

Plaintiffs hereby request a trial by jury as to all issues triable herein.

/s/ Joseph Cammarata
Joseph Cammarata, Esquire

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of January, 2015, a copy of the foregoing Amended Complaint was served through the Case Management/Electronic Case Files system upon:

Francis D. Dibble, Jr.
Jeffrey E. Poindexter
Bulkley Richardson & Gelinas
1500 Main Street
Suite 2700
P.O. Box 15507
Springfield, MA 01115

Robert P. LoBue
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036

/s/ Joseph Cammarata
Joseph Cammarata, Esquire

22