UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

TAMARA GREEN;
THERESE SERIGNESE; and
LINDA TRAITZ

                              Plaintiffs,                    Civil Action No.:
        -against-                                            14-cv-30211 (MGM)

WILLIAM H. COSBY, JR.,

                              Defendant.

**WILLIAM H. COSBY JR.'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTIONS TO DISMISS**

Robert P. LoBue
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2000
Fax:  (212) 336-2222

Francis D. Dibble, Jr.
Jeffrey E. Poindexter
BULKLEY, RICHARDSON AND GELINAS, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115
Telephone: (413) 781-2820
Fax: (413) 272-6806

*Attorneys for William H. Cosby, Jr.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

PLAINTIFFS' FACTUAL ALLEGATIONS ....................................................................2

      A.  The Newsweek Statement................................................................................3

      B.  The Washington Post Statement .....................................................................3

      C.  The November 20 Statement ...........................................................................4

      D.  The November 21 Statement ...........................................................................5

ARGUMENT ...................................................................................................................6

I.     THIS CASE SHOULD BE RESOLVED BY THESE MOTIONS TO
      DISMISS.................................................................................................................6

II.    PLAINTIFF GREEN'S CLAIM BASED ON THE WASHINGTON
      POST STATEMENT IS BARRED BY THE STATUTE OF
      LIMITATIONS.......................................................................................................9

III.   THE RELEVANT STATEMENTS ARE EITHER
      CONSTITUTIONALLY PROTECTED OPINIONS, OR NON-
      DEFAMATORY STATEMENTS OF FACT .......................................................11

      A.  Expressions of Opinion Are Constitutionally Protected..................................12

      B.  Non-Defamatory Statements of Fact Are Not Actionable ...............................14

      C.  None of the Statements Is Actionable ..............................................................15

          1.  The Newsweek Statement.........................................................................16

          2.  The November 20 Statement ....................................................................19

          3.  The November 21 Statement ....................................................................21

IV.   THE STATEMENTS ARE PROTECTED BY THE SELF-DEFENSE
      PRIVILEGE..........................................................................................................22

V.    PLAINTIFF TRAITZ'S CLAIMS SHOULD BE DISMISSED BECAUSE
      THE NOVEMBER 20 STATEMENT IS SUBSTANTIALLY TRUE
      AND COULD NOT HAVE CAUSED INCREMENTAL HARM TO HER
      REPUTATION FOR TRUTHFULNESS ...........................................................25

      A.  The November 20 Statement Is Substantially True .........................................26

      B.  Plaintiff Traitz Suffered No Incremental Harm ...............................................27

VI.   THE NOVEMBER 21 STATEMENT IS NOT OF AND CONCERNING
      PLAINTIFFS TRAITZ AND SERIGNESE........................................................28

i

VII.    PLAINTIFFS HAVE FAILED TO PLAUSIBLY PLEAD
        CONSTITUTIONALLY REQUIRED FAULT ....................................................30

CONCLUSION..............................................................................................................33

7688352v.2

William H. Cosby, Jr. respectfully submits this memorandum of law in support of his motions to dismiss Counts I, II and III of the Amended Complaint (the "Complaint") asserted by Plaintiffs Tamara Green, Therese Serignese, and Linda Traitz, respectively.

## PRELIMINARY STATEMENT

Plaintiffs have separately accused Mr. Cosby, through the national media, of sexually assaulting them forty or more years ago. ***Mr. Cosby denies each and every one of the allegations of sexual misconduct levelled at him by Plaintiffs Green, Serignese and Traitz.*** But this is not an action for sexual assault. This lawsuit is, rather, a misuse of the law of defamation to attempt an end run around the relevant statutes of limitations for the alleged assaults. But Plaintiffs have no cause of action for defamation. The law does not require that one stand idly by while he is publicly attacked. Instead, the law entitles an individual who is accused of serious wrongdoing to rebut the allegations without facing defamation claims. Statements made in self-defense are privileged, and cannot form the basis of a defamation action. Any other rule would discourage full and open public discourse and would present those who are verbally attacked with a Hobson's Choice: either remain silent and allow accusations to stand unanswered, or publicly deny them and invite the expense, burdens and vexations of a defamation suit. Such a result would be especially inequitable when the Plaintiffs have waited decades to publicize their accusations, given the purpose of statutes of limitations to require that factual disputes be litigated before evidence and witnesses have disappeared and memory has faded.

Yet, although the law would have permitted it as a matter of privilege, Mr. Cosby's spokespersons did not state that Plaintiffs are unmitigated liars. While each Plaintiff claims she was "branded" a liar, not one was called a liar. Rather, in a series of statements made to media outlets, Mr. Cosby's spokespersons issued comments that responded to several of

1

Plaintiffs' attacks and explained the reasons why the public should question their claims as well as the media's rush to put those accusations into circulation.  These statements are, first and foremost, non-actionable expressions of opinion or (if deemed factual) non-defamatory as a matter of law.  For those reasons, the defamation claims may be dismissed without even reaching the privilege of self-defense.  Nevertheless, even if the Court determines that any of the statements is otherwise actionable, Plaintiffs' claims should be dismissed because they are suing on privileged utterances of self-defense.

Plaintiffs' claims fail for additional reasons.  One of the statements in suit, relating to Plaintiff Green, is ten years old and not actionable due to the statute of limitations.  Another is not "of and concerning" any of the named Plaintiffs.  This leaves Plaintiff Serignese with no statement by which she can claim to have been defamed.  And Plaintiff Traitz's claims fail because, even on a motion to dismiss, the Court may consider Ms. Traitz's extensive criminal record for fraudulent and other felonious acts, which was referenced in the statement from which her defamation claim arises, and conclude that any statements concerning Ms. Traitz were substantially true and could have caused no incremental harm to her reputation.  Finally, Plaintiffs have failed to plead adequately that the spokespersons who made the statements did so with the constitutionally required degree of fault.

For any of these independently sufficient reasons, the Amended Complaint should be dismissed for failure to state a claim.

## PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiffs Green, Serignese, and Traitz allege that Mr. Cosby assaulted them in separate incidents in the 1970s.  (Compl. ¶¶ 7, 37, 55.)  Plaintiffs claim that Mr. Cosby is

vicariously liable for defamation on a *respondeat superior* theory (Compl. ¶¶ 26, 29, 35, 51, 53, 68) because his representatives made statements (the "Statements") denying the accusations.[1]

### A.      The Newsweek Statement

On February 7, 2014, Newsweek published an interview with Ms. Green in which she detailed her accusations against Mr. Cosby.  (Compl. ¶ 27; *see also* Exh. A.)[2]  Of approximately 1400 words in that article, virtually all are dedicated to the interview of Ms. Green and her allegations.  Twenty words at the end of the article (the "Newsweek Statement") are attributed to Mr. Cosby's unnamed "publicist."  The publicist's statement reads, in full: "This is a 10-year-old, discredited accusation that proved to be nothing at the time, and is still nothing."

Ms. Green admits in her complaint that she first accused Mr. Cosby of sexual assault about 10 years ago, in February 2005, in an interview with the Philadelphia Daily News and in appearances on television shows.  (Compl. ¶ 24.)  The Complaint states that, at the time, Mr. Cosby's attorney issued a statement denying Ms. Green's allegations.  (*Id.* ¶ 25.)

### B.      The Washington Post Statement

On November 22, 2014, the Washington Post published an article that described Ms. Green's allegations against Mr. Cosby.  (Compl. ¶ 31; *see also* Exh. B.)  After describing Ms. Green's accusations, the Washington Post quoted a statement (the "Washington Post Statement") attributed to Walter M. Phillips Jr., an attorney who has represented Mr. Cosby, stating that Ms. Green's allegations are false and that "Mr. Cosby does not know the name

---

[1] This statement of facts is based on (1) the allegations set forth in the Complaint, (2) documents on which the Complaint relies, but which were not attached to the pleading, and (3) matters for which the Court may take judicial notice.  These sources are all cognizable on these motions to dismiss pursuant to Rule 12(b)(6).  *See* Point I, *infra*.

[2] All exhibits ("Exhs.") referred to in this memorandum are annexed to the Declaration of Martin D. Singer, Esq.

Tamara Green or Tamara Lucier [her maiden name] and the incident she describes did not

happen." (Exh. B.)  The Complaint alleges that Mr. Phillips provided this statement to the

Washington Post on or about November 22, 2014.  (Compl. ¶ 71.)  However, soon after the

article was published, the Washington Post issued a correction to its original article.  That

correction stated:  "This story originally said Cosby lawyer Walter M. Phillips Jr. had denied the

allegations of Tamara Green in a statement issued during the past week.  The statement was

made when Green's allegations first surfaced in 2005.  The story has been corrected." (Exh. B,

at p. 1.)

### C.   The November 20 Statement

Ms. Traitz first accused Mr. Cosby of sexual assault on November 18, 2014,

through a post on her personal Facebook page.  (Compl. ¶ 62; *see* Exh. E.)  Ms. Traitz contends

that the alleged sexual assault occurred in 1970.  (Compl. ¶ 55.)  The present complaint asserts

that Mr. Cosby's attorney, Martin Singer, issued a defamatory response on November 20, 2014,

in which on behalf of Mr. Cosby he supposedly called Ms. Traitz a liar.  (Compl. ¶ 64.)

The November 20, 2014 statement by Mr. Singer (the "November 20 Statement"),

which now forms one of two bases for Ms. Traitz's defamation claim, is submitted as Exhibit F.

It reads:

> Ms. Traitz is the latest example of people coming out of the
> woodwork with fabricated or unsubstantiated stories about my
> client.
>
> Linda Joy Traitz is making ridiculous claims and suddenly seems
> to have a lot to say about a fleeting incident she says happened
> with my client more than 40 years ago, but she hasn't mentioned
> either her 3½ year incarceration or her extensive criminal record
> with charges spanning from the 1980s through 2008.
>
> For the first time, she is claiming that in approximately 1970, my
> client supposedly drove her to the beach and had a briefcase filled
> with drugs and offered her pills to relax, which she says she turned

down and demanded to be taken home after Mr. Cosby came on to her.  There was no briefcase of drugs, and this is an absurd fabrication.

Ms. Traitz's long criminal record for numerous offenses including charges for criminal fraud, possession of Oxycodone, cocaine possession, marijuana possession, and possession of drug paraphernalia, speaks for itself.

As the old saying goes, "consider the source."

Attached to Mr. Singer's statement was a copy of Ms. Traitz's criminal record from the Florida Department of Law Enforcement and inmate information from the Florida Department of Corrections.  Ms. Traitz has multiple felony convictions and was sentenced to a prison term of five years.  (Exh. F.)[3]  Ms. Traitz has received multiple convictions for crimes involving dishonest acts or false statements, including:  a 2004 conviction for larceny; a 2004 conviction for fraudulently using (or possessing with intent to fraudulently use) the personal identification information of another; and a 2006 conviction for giving a false name to a law enforcement officer.  (Exh. F at 5, 6, 8.)

### D.    The November 21 Statement

Plaintiff Serignese now claims that Mr. Cosby raped her in a dressing room after a show in Las Vegas sometime in the 1970s.  (Compl. ¶¶ 37-46; *see* Exh. C.)  She publicized that accusation for the first time in an interview in the Huffington Post, an online news site, on or about November 19, 2014.  (Compl. ¶ 48.)

Both Plaintiffs Traitz and Serignese claim that Mr. Cosby's attorney, Mr. Singer, defamed them by calling them liars in a press release issued on November 21, 2014.  (*Id.* ¶¶ 33, 64.)  The November 21, 2014 release on which Ms. Serignese and Ms. Traitz rely (and on which

---

[3] The portions of Exhibit F identifying Ms. Traitz's date of birth have been redacted in accordance with Local Rule 5.3.

Ms. Serignese relies as the sole basis for her defamation claim) does not name Ms. Serignese,

Ms. Traitz, or any other accuser.  Instead, the November 21 release offers a general comment on

several accusations of alleged misconduct by Mr. Cosby reported in the press in November 2014

(the "November 21 Statement," submitted as Exh. D):

> The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.
>
> These brand new claims about alleged decades-old events are becoming increasingly ridiculous, and it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assaulted over a span of so many years.
>
> Lawsuits are filed against people in the public eye every day. There has never been a shortage of lawyers willing to represent people with claims against rich, powerful men, so it makes no sense that not one of these new women who just came forward for the first time now ever asserted a legal claim back at the time they allege they had been sexually assaulted.
>
> This situation is an unprecedented example of the media's breakneck rush to run stories without any corroboration or adherence to traditional journalistic standards. Over and over again, we have refuted these new unsubstantiated stories with documentary evidence, only to have a new uncorroborated story crop up out of the woodwork. When will it end?
>
> It is long past time for this media vilification of Mr. Cosby to stop.

## ARGUMENT

### I.      THIS CASE SHOULD BE RESOLVED BY THESE MOTIONS TO DISMISS

In a defamation action, the Court serves an important gatekeeping function

because "there is particular value in resolving defamation claims at the pleading stage, so as not

to protract litigation through discovery and trial and thereby chill the exercise of constitutionally

protected freedoms."  *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (quotation

marks omitted); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*

§ 1245 (2004) ("[T]he standard for successfully pleading defamation tends to be more stringent

than that applicable to most other substantive claims because of the historically unfavored nature

of this type of action, the First Amendment implications of many of these cases, and the desire to

discourage . . . vexatious litigation.").  To carry out the constitutionally significant role entrusted

to it, the Court should therefore carefully review the actual words of the alleged defamatory

statement to determine, as a matter of law, whether it is capable of bearing a defamatory meaning

and whether it is legally privileged.

      Plaintiffs here have not made that threshold task easy:  they have failed to include

the actual text of the Statements in the Complaint, and have therefore failed to adequately plead

defamation.  *See Dorn v. Astra USA*, 975 F. Supp. 388, 396 (D. Mass. 1997) (plaintiffs must

plead "the precise wording of at least one sentence of the alleged defamatory statement(s)").

Nonetheless, Defendant has identified the Statements alleged in the Complaint and has submitted

them as exhibits to this memorandum.  (*See* Exhs. A, B, D, F.)  As the First Circuit has

repeatedly instructed, documents on which the complaint relies for its core allegations may be

received and read by the district court in deciding a Rule 12(b)(6) motion.  *Fudge v. Penthouse

Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) ("[W]hen plaintiff fails to introduce a pertinent

document as part of his pleading, defendant may introduce the exhibit as part of his motion

attacking the pleading." (quotation marks omitted)); *see also Alt. Energy, Inc. v. St. Paul Fire &

Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001); *Beddall v. State St. Bank & Trust Co.*, 137

F.3d 12, 17 (1st Cir. 1998).  That rule has particular applicability where the claim is for

defamation, as in *Fudge* and this case, because the most fundamental element of the claim is the

words uttered by the defendant.  Moreover, where an allegation in the complaint is contradicted

by the text of the document on which it relies, it is the actual text that controls.  *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014).

      In addition to considering documents that are integral to or explicitly relied upon in a complaint, in deciding a Rule 12(b)(6) motion, the court may also take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2), (d); *see Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (courts may take judicial notice of public records when considering a motion to dismiss without converting the motion into one for summary judgment); *Kosilek v. Spencer*, 889 F. Supp. 2d 190, 215 n.6 (D. Mass. 2012) ("The court may take judicial notice of the existence and content of published articles, even if they are not in the record before it, particularly when, as here, they are not being considered for the truth of the matters reported."), *rev'd en banc on other grounds*, 774 F.3d 63 (1st Cir. 2014); *see also Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000) (taking judicial notice of a New York Times article that was not part of the record).  Defendant therefore has submitted as exhibits in support of these motions certain public records and news articles, specifically:

- The accusations about Mr. Cosby published by the Plaintiffs (Exhs. A, B, C, E);

- The allegedly defamatory statements by spokespersons of Mr. Cosby on which this case is premised (Exhs. A, B, D, F);

- Governmental records relating to Plaintiff Traitz (Exh. F).

## II.     PLAINTIFF GREEN'S CLAIM BASED ON THE WASHINGTON POST STATEMENT IS BARRED BY THE STATUTE OF LIMITATIONS

"Affirmative defenses, such as the statute of limitations, may be raised in a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts

establishing the defense are clear on the face of the plaintiff's pleadings." *Trans-Spec Truck

Serv. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (quotation marks and brackets

omitted).  A court therefore may look to documents referenced in the complaint and on which the

complaint relies for its cause of action to determine whether a claim is time-barred without

converting the motion to dismiss into one for summary judgment.  *See* Point I, *supra*.

In this case, Plaintiff Green's claim premised on the Washington Post Statement

(Compl. ¶¶ 32-33) is barred by the statute of limitations.[4]  Although the Washington Post

initially (and erroneously) published in its November 22, 2014 article that Mr. Phillips made that

statement in the "past week," the Washington Post issued a correction to its original article.  That

correction clarifies that "[t]he statement was made when Green's allegations first surfaced in

2005."  (Exh. B.)  In light of the corrected Washington Post article, the Complaint's continued

assertion that attorney Phillips gave his statement to the Washington Post "on or about

November 22, 2014" (Compl. ¶ 71) is contradicted by the very publication on which the

Complaint relies.  Where a conclusory allegation of a complaint is refuted by the document on

---

[4] Plaintiffs fail to allege under which state's law they make their claims.  Choice of law questions, however, should only be resolved where there is an actual conflict between the different potentially applicable legal approaches.  *Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am.*, 338 F.3d 42, 46-47 (1st Cir. 2003) ("It is a well-established -- and prudential -- principle that when the result in a case will not be affected by the choice of law, an inquiring court, in its discretion, may simply bypass the choice.").  Here, Mr. Cosby is a resident of Massachusetts, Ms. Green of California, and Ms. Traitz and Serignese of Florida.  (*See* Compl. ¶¶ 4-6.)  Regardless of whether the laws of Massachusetts, California, or Florida are applied, the outcome is the same:  Plaintiffs' claims fail and must be dismissed.  Because the results are the same regardless of which state's laws are applied, no formal choice of law analysis is necessary and this memorandum largely discusses the law of Massachusetts, California, and Florida interchangeably with respect to common law matters.

which the complaint necessarily relies, the court should disregard the pleading and credit the document.  *See Yacubian*, 750 F.3d at 108.

   Plaintiff Green's claim is therefore time-barred to the extent it arises from a statement that Mr. Phillips made almost ten years ago.  *See* Mass. Gen. Laws ch. 260, § 4 (three year statute of limitations for defamation actions).[5]  The fact that the Washington Post reported in 2014 that Mr. Phillips made the statement in 2005 is of no moment.  Courts have adopted a "'single publication rule,' pursuant to which the limitations period is measured as of the date upon which the work was first made widely available to the public."  *Abate v. Me. Antique Digest*, No. 03-3759, 2004 Mass. Super. LEXIS 31, at \*3 (Super. Ct. Jan. 26, 2004); *see also Decoulos v. Schroder*, No. 11-10972-DPW, 2013 U.S. Dist. LEXIS 42618, at \*2-3 (D. Mass. Mar. 26, 2013) ("The statute of limitations for defamation begins as of the date on which the publication was first made widely available to the public"); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166-67 (9th Cir. 2011) ("The single-publication rule limits tort claims premised on mass communications to a single cause of action that accrues" when the publication "is first made available to the public.").  Thus, for example, in *Hebrew Academy of San Francisco v. Goldman*, 42 Cal. 4th 883, 888-89 (Cal. 2007), defendant Goldman made allegedly defamatory statements in an interview that was transcribed with fewer than 10 copies eventually being published and stored in a library.  When a researcher found the transcript about 9 years later and reiterated them, the plaintiff sued for defamation.  The court held that the single publication rule applied and the statute of limitations began running when the interviews were originally published, even though they were only published in limited circulation.  *Id.* at 893, 895.

---

[5] Plaintiff Green alleges that she is a resident of California, and thus the only other potentially relevant statute of limitations is that of California, which is one year.  Cal. Civ. Proc. Code § 340(c).

The policy reasons underlying the single publication rule are apparent: otherwise, an individual could be subjected to indefinite liability and the statute of limitations would provide no repose at all. *See Roberts*, 660 F.3d at 1167 (explaining that the problem with a theory extending the statute of limitations "is that it undermines the single-publication rule" which is "designed to provide repose to defendants by precluding stale claims based on dated but still-lingering mass communications"); *see also Haberman v. Hustler Magazine, Inc.*, 626 F. Supp. 201, 216 (D. Mass. 1986). The Washington Post's reference to a statement that was made almost ten years earlier does not revive the statute of limitations.

Even if it were not barred by the statute of limitations, Plaintiff Green's claim for defamation based on the Washington Post Statement is barred for the reasons set forth in Points III, IV, and VII below, many of which also apply to the other statements in suit, to which we now turn.

## III.   THE RELEVANT STATEMENTS ARE EITHER CONSTITUTIONALLY PROTECTED OPINIONS, OR NON-DEFAMATORY STATEMENTS OF FACT

Both before and after the law of defamation was subjected to constitutional limitations in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its progeny, courts in all jurisdictions imposed restrictions on the nature and content of speech that could potentially give rise to liability. Two of the most basic limitations—the freedom to express opinions, and the limitation of the tort to factual utterances that are *defamatory—i.e.*, seriously injurious to reputation—are applicable in this litigation. After setting forth the law concerning both opinion and non-defamatory speech, we explain why these rules require dismissal of defamation claims based on the Statements at issue.

### A.      Expressions of Opinion Are Constitutionally Protected

"Defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff." *Yohe v. Nugent*, 321 F.3d 35, 39 (1st Cir. 2003).  Only statements of fact, however, are capable of being false. Statements of opinion—utterances that do not convey an assertion of fact—are constitutionally protected, and therefore are not actionable as defamation.  *Fudge*, 840 F.2d at 1016 ("If the challenged statement is one of opinion rather than fact, then under the First Amendment it generally cannot give rise to a defamation claim.").  "[O]nly statements that are 'provable as false' are actionable; hyperbole and expressions of opinion unprovable as false are constitutionally protected."  *Veilleux v. NBC*, 206 F.3d 92, 108 (1st Cir. 2000).  When a statement is "imprecise, inherently subjective, and not readily capable of being proven true or false," it is a statement of opinion that cannot form the basis of a defamation action.  *Cluff v. O'Halloran*, No. 99-0428A, 2000 Mass. Super. LEXIS 474, at *17-19 (Mass. Super. Ct. Dec. 22, 2000); *accord Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128, 130 (1st Cir. 1997) ("quintessentially subjective" language, such as "rhetorical hyperbole," "imaginative expression," and "loose, figurative" statements, cannot be the basis of a defamation claim); *see also Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002); *GetFugu, Inc. v. Patton Boggs LLP*, 162 Cal. Rptr. 3d 831, 842-43 (Ct. App. 2013); *Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 229 (Ct. App. 2008).

An expression of opinion based on a disclosed or explicitly assumed truthful statement of facts is not actionable, "no matter how unjustified and unreasonable the opinion may be or how derogatory it is." *Lyons v. Globe Newspaper Co.*, 612 N.E.2d 1158, 1161 (Mass. 1993) (citing Restatement (Second) of Torts § 566 cmt. c (1977)).  Thus, in *Lewis v. Time, Inc.*, 710 F.2d 549 (9th Cir. 1983), the court rejected a defamation claim by an attorney who was

labelled a "shady practitioner"—which the attorney argued was tantamount to calling him

dishonest.  The court said:

> TIME argues that the inference that Lewis was a dishonest "shady
> practitioner" falls within [Restatement] § 566 because it is based
> on stated nondefamatory facts: the judgments against Lewis for
> fraud and for malpractice.  We agree.
>
> . . . .
>
> [W]here a publication sets forth the facts underlying its statement
> of opinion that someone is dishonest, and those facts are true, the
> Constitution protects that opinion from liability for defamation.

*Id.* at 555-56.  This rule is now settled in both California, where Ms. Green resides, and Florida,

where the other Plaintiffs reside.  *See USA Techs., Inc. v. Doe 1*, 713 F. Supp. 2d 901, 908-09

(N.D. Cal. 2010) (statement that plaintiff's CEO was a "known liar" was not defamatory because

the speaker "did not opine that Jensen is a liar based on some other, undisclosed facts, but

instead explained the basis for his opinion"); *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp.

2d 1261, 1268 (C.D. Cal. 2001) (statement that plaintiff "was busted for misrepresentation and

overstatement of the facts" was protected opinion where defendant included link to Securities

and Exchange Commission document supporting his opinion); *Franklin v. Dynamic Details, Inc.*,

10 Cal. Rptr. 3d 429, 438 (Ct. App. 2004) ("A statement of opinion based on fully disclosed facts

can be punished only if the stated facts are themselves false and demeaning." (quotation marks

omitted)); *Stembridge v. Mintz*, 652 So. 2d 444, 446 n.5 (Fla. Dist. Ct. App. 1995) ("We follow

section 566 of the *Restatement* as a matter of state law.").  For example, if one writes, "without

more, that a person is an alcoholic," he may have "committed a libel prima facie," but if he

writes, "I saw the person take a martini at lunch and accordingly state[s] that he is an alcoholic,"

he has not.  *Lyons*, 612 N.E.2d at 1161.

13

The context in which a statement is made is also important in determining whether a statement is a protected opinion.  Here, where the Statements are responses to serious charges made in the press and were made by spokespersons for the person attacked, the relevant context further illustrates that the Statements are protected opinions.  Under the doctrine of "predictable opinion," the fact that such a partisan statement is made by an individual "from [his] own perspective to paint [himself] in a better light," is a strong contextual signal that the statement is non-actionable opinion.  *Dreamstone Entm't Ltd. v. Maysalward Inc.*, No. 2:14-cv-02063-CAS(SSx), 2014 U.S. Dist. LEXIS 116977, at *17-19 (C.D. Cal. Aug. 18, 2014) (statement not actionable where context "suggests that the average reader would expect the press release to relate a predictably one-sided account of the circumstances giving rise to [the] litigation" (quotation marks omitted)); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. CV 10-5696 CRB, 2013 U.S. Dist. LEXIS 95685, at *14 (N.D. Cal. July 9, 2013) (a statement written "from its own perspective to paint itself in a better light" is understood as a "predictable opinion," rather than a statement of fact).  "Where potentially defamatory statements are published in a setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion."  *Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 849-50 (Ct. App. 1999) (bracket, ellipsis, and internal quotation marks omitted); *accord Info Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 783 (9th Cir. 1980).

### B.     Non-Defamatory Statements of Fact Are Not Actionable

Not every pejorative utterance, even if a provable statement of fact, rises to the level of defamation.  False statements are only defamatory when they "hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community, at least to

14

his discredit in the minds of a considerable and respectable class in the community." *Yohe*, 321 F.3d at 40 (quotation marks omitted); *see also Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008) (to be defamatory, a statement must "tend[] to injure the plaintiff's business or reputation, or occupation" (quotation marks omitted)).

A statement calling a person's accusations baseless does not impair that person's standing in the community. For example, in *Gibney v. Fitzgibbon*, 547 F. App'x 111 (3d Cir. 2013), the plaintiff contacted a company with allegations that his employer was improperly billing the company. In response, the company replied: "While I note your 'request' for an audit, we see no need for any such audit. As far as Merck is concerned, the alleged overbilling has been investigated, the allegations have been determined to be unfounded and the matter is now closed and warrants no further action by Merck." *Id.* at 112. The Third Circuit held: "While [Plaintiff] was dissatisfied with [the company's] statement that his allegations were unfounded, even if that statement were untrue, it would not 'lower him in the estimation of the community or . . . deter third parties from associating or dealing with him.' We therefore agree with the District Court that [the Company's] statement was not capable of a defamatory meaning as a matter of law." *Id.* at 114 (citation omitted).

## C.   None of the Statements Is Actionable

The determination whether a written statement is protected opinion is a matter of law for the court. *Fudge*, 840 F.2d at 1016; *Langadinos v. Bd. of Trs. of the Univ. of Mass.*, No. 12-11159-GAO, 2013 U.S. Dist. LEXIS 140767, at *36 (D. Mass. Aug. 29, 2013) ("Whether a statement constitutes fact or opinion is a question of law for the Court."). Courts generally engage in a multi-step process to determine whether a statement is a constitutionally protected opinion:

> [F]irst . . . analyze the common usage or meaning of the allegedly
> defamatory words themselves . . . . Secondly, consider the degree
> to which the statements are verifiable -- is the statement
> objectively capable of proof or disproof? . . . Thirdly, examine the
> context in which the statement occurs. . . . Examine, finally, the
> broader social context into which the statement fits.

*Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 137 (D. Mass. 1996) (ellipsis in original) (quoting *Ollman v. Evans*, 750 F.2d 970, 979-83 (D.C. Cir. 1984)); *see also Horsley*, 292 F.3d at 702 (noting that court should consider "the circumstances in which the statement was expressed"); *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995); *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 717 (11th Cir. 1985) (applying Florida law).

Similarly, "[t]he question of whether a [factual] statement is reasonably susceptible of a defamatory meaning is a threshold question for the court," *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012), and a "court may dismiss written defamation claims, *i.e.*, libel claims, if the communication is incapable of a defamatory meaning," *Amrak Prods. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005) (quotation marks omitted).  In determining whether a statement has defamatory meaning, "the court must analyze the statement in light of the totality of the circumstances, including the entire context of the publication." *Shay*, 702 F.3d at 81 (quotation marks omitted).

Here, the Statements consist of either opinions that are constitutionally protected, or non-defamatory statements of fact:

### 1. The Newsweek Statement

Ms. Green alleges that Mr. Cosby's publicist, acting as his agent, stated: "This is a 10-year-old, discredited accusation that proved to be nothing at the time, and is still nothing." There is no dispute that Ms. Green's allegation that Mr. Cosby sexually assaulted her is 10 years

16

old.  The remainder of the statement is not actionable because it is a constitutionally protected opinion, or simply non-defamatory.

First, nothing in the Newsweek Statement is defamatory.  The Newsweek Statement does not assert that Ms. Green is a "liar"—*i.e.*, a habitual teller of untruths.  It says her allegation has been discredited and amounted to nothing.  Like the assertion in *Gibney* that the plaintiff's allegation was "unfounded," the words are used to describe the allegation, not the person who made it, and could not reasonably be viewed as holding Ms. Green up to scorn or ridicule.  While Plaintiff Green alleges she was branded a liar, this is far from the case.  The Newsweek Statement disputed a statement she made about Mr. Cosby.  It said nothing about her general veracity, her character, or the truthfulness of any other statement she has ever made.

Alternatively, whether Ms. Green's accusation has been "discredited" should qualify as a non-actionable statement of opinion.  In context, the term is accompanied by a wholly subjective description—that the allegation amounted to "nothing" and is still "nothing"— signaling to the reader that the entire comment is an expression of the subjective point of view of the speaker.  *See Price v. Viking Penguin*, 881 F.2d 1426, 1438 (8th Cir. 1989) ("Our conclusion that the second part of the challenged statement is opinion contributes to our view that the first part of the challenged statement is opinion as well.").  In common parlance, "discredited" means "unrespected" or "lacking in credit or repute."  Webster's Third New International Dictionary 647 (Philip Babcock Gove ed., 2002); *accord* American Heritage Dictionary of the English Language 516 (5th ed. 2011) (defining "discredit" as "to cause to be doubted or distrusted").  Whether an accusation should be "unrespected," "doubted," or "distrusted" is a subjective judgment, and not a factual assertion that is provably true or false.  In the only court decision we have found in which the term "discredited" was assessed in the context of defamation, the Court

of Appeals for the Eighth Circuit characterized it as an opinion. *See Price*, 881 F.2d at 1438

("The author concludes with the opinion that the only certainty is that the episode discredited the

prosecution.").  The court reasoned that because that utterance was an opinion, it signaled that

other allegedly defamatory assertions in proximity to it should also be deemed non-actionable.

　　　　　　　Just as there is no dispute that Ms. Green's accusations are 10 years old, it is

admitted that Mr. Cosby's attorney denied Ms. Green's allegations 10 years ago.  (Compl. ¶ 25.)

Nothing came of Ms. Green's accusations—Ms. Green did not pursue them legally and Mr.

Cosby has never been charged, much less held civilly or criminally responsible, for sexually

assaulting Ms. Green (or anyone else).  It is also a matter of public record that Ms. Green, an

attorney, was suspended from the practice of law by the California Bar Court for serious

misconduct, that she was found by that tribunal to have "a mental health problem," and that she

failed to comply with the requirements of a mental health treatment program. *See* Decision and

Order Filing and Sealing Certain Documents, *In re Tamara Green, Member No. 134460* (Cal.

State Bar Ct. Dec. 27, 2005).[6]  The California Bar Court proceedings concerning Ms. Green were

publicized by the press at the time of her initial allegations against Mr. Cosby in 2005, and were

again reported by the Washington Post in 2014.[7]  Whether all or any of these circumstances are

sufficient to "discredit" Ms. Green's accusations is a subjective question.  It is not a matter that is

provably true or false, and is more properly viewed as a matter of opinion than as an assertion of

fact.

---

[6] Available at http://members.calbar.ca.gov/courtDocs/03-O-01469.pdf.

[7] *See, e.g.*, Marsha Kranes, *Cos Groped Me: 'Tainted' Lawyer*, N.Y. Post (Feb. 9, 2005, 5:00 AM), http://nypost.com/2005/02/09/cos-groped-me-tainted-lawyer/ (reporting charges against Ms. Green that led to state bar decision); Exh. B (reporting that Ms. Green's legal license was suspended in 2004).

The context in which the Newsweek Statement was made further demonstrates that it is an opinion.  This statement is a quintessential "predictable opinion."  In publishing the statement, Newsweek identified it as one given by "Cosby's publicist."  The average reader would identify a statement issued by Mr. Cosby's publicist as "a predictably one-sided account" that was designed to paint Mr. Cosby "in a better light."  *See Dreamstone*, 2014 U.S. Dist. LEXIS 116977, at *17-19.  Indeed, Newsweek is the type of publication in which readers expect a "generally freer style of personal expression" that "would signal the reader to expect a fair amount of opinion."  *See Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1304 (8th Cir. 1986).  Even if the language might in another context "be considered as statements of fact," the context in which the Newsweek Statement was issued made clear that it was a statement of opinion.  *See Ferlauto*, 88 Cal. Rptr. 2d at 849-50.

### 2.  The November 20 Statement

The November 20 Statement is also composed of non-defamatory statements of fact and/or constitutionally protected opinion.  The November 20 Statement uses three words to characterize Ms. Traitz's accusations:  "unsubstantiated," "ridiculous," and "fabrications," and then explains the factual basis for those characterizations.

The statement that Ms. Traitz's allegations are "unsubstantiated" cannot be considered defamatory.  Like "discredited," it is an assessment of the quality of the accusation, not the person making it.  Indeed, this assertion by Mr. Singer is literally true, because the only evidence of Ms. Traitz's allegations is her own word; the Complaint does not allege the existence of any corroborating evidence or witnesses substantiating her accusations or any court judgment finding misconduct by Mr. Cosby.

The assertion that Ms. Traitz's allegations are "ridiculous" is a mere epithet or rhetorical hyperbole, and as such it falls within the realm of opinion (or, simply, non-defamatory

19

utterance) and cannot be the subject of suit. *See Veilleux*, 206 F.3d at 115 (noting that "rhetorical hyperbole" and "imaginative expression" are constitutionally protected); *Levinsky's, Inc.*, 127 F.3d at 128, 130 ("loose, figurative" statements cannot be the basis of a defamation claim); *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 894 (9th Cir. 1988) ("Even apparent facts must be allowed as opinion . . . where certain remarks are necessarily understood as ridicule or vituperation, or both, but not as descriptive of factual matters." (quotation marks omitted)).

The statement that her claims are "fabrications" is *in context* likewise a statement of opinion. The remainder of the November 20 Statement discloses the facts supporting the conclusion that Ms. Traitz's accusations are fabricated. The November 20 Statement notes that the alleged incident occurred more than 40 years ago, that Ms. Traitz is raising these accusations "for the first time" now, and that Ms. Traitz has an "extensive criminal record" that includes "charges for criminal fraud" and other serious offenses. These statements are indisputably true. As in *Lewis v. Time, Inc.*, the speaker cited a prior judgment for fraud entered against the subject as one of several reasons to doubt her veracity. 710 F.2d at 556. This is constitutionally protected discourse.

In addition, "even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002) (quotation marks omitted). As a result, even if it were possible to objectively prove or disprove whether Ms. Traitz's accusations are accurate, the context in which the November 20 Statement was made renders it non-actionable. Mr. Singer's statement does not imply that he was an eyewitness to the alleged encounter, and he outlines the factual basis for his conclusion. *See Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("[W]hen an

author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.").  This is especially so where readers are "invited to draw their own conclusions," *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 731 (1st Cir. 1992), as Mr. Singer did in urging readers to "consider the source."  (Exh. F.)

Finally, the November 20 Statement was clearly identified as made by Mr. Cosby's attorney.  The typical reader would thus understand the statement to be a one-sided account, or "predictable opinion."  *See Amaretto Ranch Breedables, LLC*, 2013 U.S. Dist. LEXIS 95685 at *14 (a statement written "from its own perspective to paint itself in a better light" is a "predictable opinion," not a statement of fact).

### 3.  The November 21 Statement

Like the Newsweek Statement and the November 20 Statement, the November 21 Statement is also composed of either non-defamatory factual assertions or constitutionally protected opinions, neither of which can form the basis for a defamation action.

The November 21 Statement follows the same pattern as the November 20 Statement:  it begins with the assertion that "[t]he new, never-before-heard claims from women who have come forward in the past two weeks" are "unsubstantiated."   As with the November 20 Statement, that conclusion, even if deemed factual in nature, is not defamatory of any Plaintiff.

In any event, as with the November 20 Statement, the November 21 Statement is more properly viewed as constitutionally protected opinion because it explains the reasons supporting the  conclusion that the accusations against Mr. Cosby were unsubstantiated:  they are "never-before-heard claims" about events that allegedly occurred "30, 40 or even 50 years ago"

and that "it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement" over so many years. Thus, even if it were "provably false" that the accusations against Mr. Cosby were unsubstantiated, the November 21 Statement would remain protected because it is "expressing a subjective view" rather than "claiming to be in possession of objectively verifiable facts." *See Riley*, 292 F.3d at 289 (quotation marks omitted).

The November 21 Statement is also protected because the relevant portions are nothing more than rhetorical hyperbole. Statements describing the accusations against Mr. Cosby as "fantastical," "increasingly ridiculous," and "completely illogical" are not only incapable of being proved true or false, but also would not be understood by the reader as statements of fact. *See Levinsky's, Inc.*, 127 F.3d at 130-31 ("[E]xcesses of language" that involve "puffery or epithets" are "insufficiently fact-based" to support a claim for defamation); *Rosenaur v. Scherer*, 105 Cal. Rptr. 2d 674, 687-88 (App. Ct. 2001) ("[U]se of the words 'thief' and 'liar' in the course of a chance confrontation with a political foe at a shopping center was the type of loose, figurative, or hyperbolic language that is constitutionally protected.").

The context of the November 21 Statement also illustrates that it is an opinion. The November 21 Statement was identified as made by Mr. Cosby's attorney (Mr. Singer), and the "average reader would expect the press release to relate a predictably one-sided account." *Dreamstone*, 2014 U.S. Dist. LEXIS 116977, at *17-19.

## IV.    THE STATEMENTS ARE PROTECTED BY THE SELF-DEFENSE PRIVILEGE

Even if the Statements were deemed to contain any potentially false and defamatory statements of fact about the Plaintiffs, the Complaint should be dismissed because the Statements are protected by the common-law privilege of self-defense. Whether the self-

defense privilege applies "is a question of law" that can be "resolve[d] by simply comparing the two documents published." *State v. Eighth Judicial Dist. Court*, 42 P.3d 233, 239 (Nev. 2002).

> An individual is entitled to protect his reputation by publishing statements in response to or to refute injurious statements made by another. For more than 100 years, it has been recognized that if someone is "attacked in a newspaper, [he] may write to that paper to rebut the charges, and [he] may at the same time retort upon [his] assailant." *Foretich v. Capital Cities/ABC*, 37 F.3d 1541, 1559 (4th Cir. 1994) (quoting William Blake Odgers, *A Digest of the Law of Libel and Slander* \* 228 (1st Am. ed. Bigelow 1881)); *Conroy v. Fall River Herald News Publ'g Co.*, 28 N.E.2d 729, 730 (Mass. 1940) ("A libel may be privileged on the ground of self defence," because when an individual is attacked, he "has a right to defend himself" (quotation marks omitted)). The privilege of self-defense includes the right to "brand the accusations as false and calumnious" and to "comment upon the motives of the accuser." *Conroy*, 28 N.E.2d at 730. For example, it would include the privilege to describe one's attacker as an "unmitigated liar." *Foretich*, 37 F.3d at 1562 (quotation marks omitted); *see also* Restatement (Second) of Torts § 594 cmt. k (1977).[8]

> Without this privilege, individuals could be publicly accused of serious crimes without any ability to protect themselves that did not carry the risk of being embroiled in a defamation action. Each of the Plaintiffs ignited this controversy by going to the media and publicly accusing Mr. Cosby of sexual assault. (Compl. ¶¶ 24, 27, 48, 62.) One "who

---

[8] One appellate court in California has opined that California does not recognize "self-help" as an independent common law privilege, because California incorporates that doctrine into the more general "common interest" privilege set forth in the California Civil Code. *Finke v. Walt Disney Company*, 2 Cal. Rptr. 3d 436, 459 (Ct. App. 2003) (citing Cal. Code § 47(c)). That does not affect the result here, however, because in California, statements made in self-defense would certainly be privileged under the rubric of the "predictable opinion" doctrine, which has been consistently applied by California courts. *See* Point III.A, *supra*.

commences a newspaper war cannot subsequently come to the Court to complain that he has had the worst of it." *Shepherd v. Baer*, 53 A. 790, 791 (Md. 1902).

The Fourth Circuit has explored in depth the common law privilege of self-defense, and the numerous decisions that have adopted it. *See Foretich*, 37 F.3d at 1559-60 (collecting cases).[9]  In doing so, the Fourth Circuit identified three factors that courts consider when evaluating whether an utterance is within the privilege: (1) whether the "reply includes substantial defamatory matter that is 'irrelevant' or 'non-responsive' to the initial attack"; (2) whether the "reply includes substantial defamatory matter that is 'disproportionate' to the initial attack"; and (3) whether the publication of reply is "excessive" in that it is "addressed to too broad an audience." *Id.*

Here, each of the Statements is relevant, directly responsive, and proportional to the accusations made by Plaintiffs.[10]  The Statements contend variously that Plaintiffs' accusations were "discredited," "fabricated," "unsubstantiated," and unworthy of belief because the accusers waited so long to come forward.  These are exactly the types of statements that the privilege of self-defense protects.  *See id.* at 1560 ("Statements that simply deny the accusations, or directly respond to them, or express one's impressions upon first hearing them are certainly responsive.  So, too, are statements impugning the motives of the accuser . . . .").  In addition, because the accusations were publicized in national general interest media outlets such as

---

[9] *Foretich* reasoned that the common law self-defense privilege should be used to influence the determination whether someone who resorts to the media to respond to a verbal attack should for that reason be deemed a public figure.  Some courts have been skeptical of that extension of the common law doctrine.  *See, e.g., Lluberes v. Uncommon Prods. LLC*, 663 F.3d 6 (1st Cir. 2011).  *Lluberes,* however, does not question the continued vitality of the self-defense privilege as a defense to a defamation claim.

[10] As discussed in Point VI below, Defendant does not concede that the November 21 was of and concerning any individual accuser including the present Plaintiffs.  For purposes of the self-defense privilege, however, we assume arguendo that the November 21 Statement is, as alleged, directed to named Plaintiffs Traitz and Serignese.

*Newsweek*, the responsive Statements cannot be argued to be "excessive" in that they were "addressed to too broad of an audience." *See id.* at 1559.

There is no requirement that, to avail oneself of the self-defense privilege, the responsive statement be truthful. A plaintiff must prove falsity as an element of the tort of defamation in any matter of public interest (as this case surely is), *see, e.g.*, *Phila. Newspapers v. Hepps*, 475 U.S. 767 (1986), and truth is in all defamation actions an absolute defense. *Noonan v. Staples, Inc.*, 556 F.3d 20, 26 (1st Cir. 2009). If in order to invoke the self-defense privilege the speaker had to prove that the denial was the truth, it would be no privilege at all and an unnecessary appendage to the law. The reasoning behind a privileged category of responses "is that the defendant seeks exculpation for falsely detracting from the plaintiff's reputation . . . . If defendant's assertion is true, there is no need for a defense, and there is no need for a privilege." *Shenkmaan v. O'Malley*, 157 N.Y.S.2d 290, 301 (1st Dep't 1956). The self-defense privilege thus applies—and protects Mr. Cosby's spokespersons' statements from a defamation action— even if it is assumed that the words uttered are factual in nature and untrue.

## V.   PLAINTIFF TRAITZ'S CLAIMS SHOULD BE DISMISSED BECAUSE THE NOVEMBER 20 STATEMENT IS SUBSTANTIALLY TRUE AND COULD NOT HAVE CAUSED INCREMENTAL HARM TO HER REPUTATION FOR TRUTHFULNESS

If the November 20 Statement is deemed to constitute an unprivileged assertion of fact, it is substantially true. The Statement included Ms. Traitz's Florida rap sheet and the truthful statement that she was criminally convicted of multiple felonies involving fraud, dishonest acts, and false statements. (Exh. F.) Under the circumstances, Ms. Traitz's contention that her reputation was sullied by the statement that she fabricated a story about Mr. Cosby having a briefcase of drugs and "coming on" to her fails to state a claim upon which relief can be granted.

This is not the first time that a plaintiff has tried to misuse the laws of defamation to claim damage to her reputation when she has no relevant reputation to lose. As a felon convicted of serious offenses including fraud, Ms. Traitz's claim is vulnerable to dismissal under two closely related doctrines: substantial truth, and the incremental harm doctrine.

### A.     The November 20 Statement Is Substantially True

A court should dismiss a defamation claim where the challenged statement is substantially true. "Since a given statement, even if libelous, must also be false to give rise to a cause of action, the defendant may assert the statement's truth as an absolute defense to a libel claim." *Noonan,* 556 F.3d at 26. By extension, the defense of "substantial truth" "absolve[s] a defendant even if she cannot justify every word of the alleged defamatory statement" "so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991) (quotation marks omitted); *see also Noonan*, 556 F.3d at 26, 28 ("substantial truth is all that is required"); *Wehling v. Columbia Broad. Sys.*, 721 F.2d 506, 509 (5th Cir. 1983); *Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173-RYSKAMP/HOPKINS, 2014 U.S. Dist. LEXIS 156499, at *31 (S.D. Fla. July 7, 2014). Simply put, "a statement that is substantially true is not defamatory." *Wehling*, 721 F.2d at 509 (quotation marks omitted).

The test for substantial truth is whether the statement "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 517 (quotation marks omitted); *see also Jews for Jesus, Inc.*, 997 So. 2d at 1107 (Florida standard jury instructions state that a "statement is substantially true *if its substance or gist* conveys essentially the same meaning that the truth would have conveyed" (quotation marks omitted)); *LaChance v. Bos. Herald*, 942 N.E.2d 185, 188-89 (Mass. App. Ct.

2011) (no falsity where "'the substance, the gist, the sting, of the libelous charge be justified'" (quoting *Masson*, 501 U.S. at 517)).

Here, Plaintiff Traitz alleges that the "sting" of the November 20 Statement is that it branded her as a liar. Even if that contention is accepted, the effect of this allegedly false statement is the same as that of the true statements regarding Ms. Traitz's criminal history. That history contains several fraud-related charges and convictions. Those true statements demonstrate that Ms. Traitz has repeatedly lied in the past on matters of importance, frequently enough to generate a criminal record that is several pages long. Because "the substance, the gist, the sting" of the November 20 Statement is justified, it is substantially true and not actionable as defamation. *See Masson*, 501 U.S. at 517.

### B.    Plaintiff Traitz Suffered No Incremental Harm

Closely related to the substantial truth rule is the doctrine of incremental harm, sometimes categorized as one branch of the "libel-proof plaintiff" doctrine. A court may dismiss a defamation claim where the challenged statement "cannot realistically cause impairment of reputation because the person's reputation is already so low *or because the true portions of a statement have such damaging effects*" that recovery of more than nominal damages is unlikely. *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986), *cert. denied*, 479 U.S. 1091 (1987) (emphasis added); *see also Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639-40 (2d Cir. 1975); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 352-53 (S.D.N.Y. 1998); *Bose Corp. v. Consumers Union*, 529 F. Supp. 357, 362 (D. Mass. 1981). Whether this doctrine applies is a question of law for the Court to decide, and hence suitable for disposition on a motion to dismiss. *See Cardillo*, 518 F.3d at 639; *Cerasani*, 991 F. Supp. at 354. If a court determines that this doctrine applies, "the claim should be dismissed so that the costs of defending against the claim of libel, which can themselves impair vigorous freedom of expression, will be avoided."

*Guccione*, 800 F.2d at 303.  Massachusetts law is in accord.  *Jackson v. Longcope*, 476 N.E.2d

617, 619-20 (Mass. 1985) ("[A] libel-proof plaintiff is not entitled to burden a defendant with a

trial in which the most favorable result the plaintiff could achieve is an award of nominal

damages.").

    Here, the challenged portion of Mr. Singer's statement—allegedly, that Ms. Traitz

is a liar—is no more damaging to her reputation than the unquestionably true report, in the same

statement, that she was convicted of criminal fraud as well as several other felonies.  The

determination that a plaintiff is libel-proof may be based on her "[criminal] record and

relationships or associations," and numerous federal courts have dismissed defamation claims by

known criminals.  *See Cardillo*, 518 F.2d at 640; *see also Lavergne v. "Dateline" NBC*, No.

6:13-2118, 2014 U.S. Dist. LEXIS 32210, at *13-14 (W.D. La. Feb. 12, 2014) (collecting cases).

A plaintiff need not even have a criminal record for a court to apply the doctrine.  *See Guccione*,

800 F.2d 303 (admitted adulterer libel-proof with respect to an accusation of adultery).

## VI. THE NOVEMBER 21 STATEMENT IS NOT OF AND CONCERNING PLAINTIFFS TRAITZ AND SERIGNESE

    The November 21 Statement is a general comment bemoaning certain media's

rush to air serious accusations against Mr. Cosby without assessing the reliability of the women

making those accusations.  It does not mention Ms. Traitz or Ms. Serignese, or indeed any other

accuser, by name, but refers only to "claims from women who have come forward in the past

two weeks."  Plaintiffs Traitz and Serignese (but not Green) allege that the November 21

Statement defames them.  (Compl. ¶¶ 82, 93.)  The November 21 Statement cannot support a

defamation action for the additional reason that it is not "of and concerning" these Plaintiffs.

    A plaintiff seeking to recover for defamation must establish that a potentially

actionable statement was "of and concerning" her, meaning that "the statement referred to the

plaintiff, either explicitly or by implication." *Emerito Estrada Rivera-Isuzu De P.R., Inc. v. Consumers Union of U.S., Inc.*, 233 F.3d 24, 26 (1st Cir. 2000). This requirement is difficult to meet when the statement does not refer to a specific named person but instead refers to a group of people. *Cf. Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1200 (9th Cir. 1989) ("the permissibility of group libel claims is highly questionable at best").

"Whether a challenged statement reasonably can be understood as of and concerning the plaintiff is a question of law for the Court, which should ordinarily be resolved at the pleading stage." *Gilman v. Spitzer*, 902 F. Supp. 2d 389, 394 (S.D.N.Y. 2012) (quotation marks omitted); *accord Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 893-94 (N.D. Ohio 2003); *Tamkin v. CBS Broad., Inc.*, 122 Cal. Rptr. 3d 264, 274 (Ct. App. 2011).

An unnamed group member may assert a claim individually only if the wording of the defendant's statement creates a "high degree of suspicion" that the defendant was referring specifically to the individual plaintiff. *See Arcand v. Evening Call Publ'g Co.*, 567 F.2d 1163, 1164 (1st Cir. 1977); *Noral v. Hearst Publ'ns, Inc.*, 104 P.2d 860, 862-63 (Cal. Ct. App. 1940). In this case, there was nothing in the November 21 Statement that would have led a reader to believe that the statement was specifically singling out either Ms. Traitz or Ms. Serignese. It is common knowledge that a large number of persons have come forward and made similar allegations against Mr. Cosby, and the Complaint admits that the November 21 Statement was not just about Ms. Traitz and Ms. Serignese. (Compl. ¶¶ 50, 66 (claiming that it is about these plaintiffs "among other women")). The November 21 Statement did not reference any of the specific allegations made by either Ms. Traitz or Ms. Serignese, and it did not in any way differentiate these two Plaintiffs from the larger group of accusers. As a result, there is no need to consider the November 21 Statement in assessing Ms. Traitz's claim, and Ms. Serignese has

no basis for a claim of defamation, as there is no allegedly defamatory statement of any kind about her.

## VII.   PLAINTIFFS HAVE FAILED TO PLAUSIBLY PLEAD CONSTITUTIONALLY REQUIRED FAULT

"As a matter of constitutional bedrock, a plaintiff must show fault in order to impose liability" for defamation.  *Shay*, 702 F.3d at 82 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346-47 (1974)); *see also Khawar v. Globe Int'l, Inc.*, 965 P.2d 696, 708 (Cal. 1998); *Miami Herald Publ'g Co. v. Ane*, 458 So. 2d 239, 241 (Fla. 1984).  When the plaintiff is a public official or public figure, she must prove that the defendant acted with "actual malice," which includes actual knowledge or reckless disregard of falsity.  *Miami Herald Publ'g Co.*, 458 So. 2d at 241; *accord Gertz*, 418 U.S. at 334-35.  The First Amendment otherwise requires a plaintiff to demonstrate that the speaker acted at least negligently.  *See, e.g.*, *Brown v. Kelly Broad. Co.*, 771 P.2d 406, 424-25 (Cal. 1989); *Miami Herald Publ'g Co.*, 458 So. 2d at 241; *Stone v. Essex Cnty. Newspapers, Inc.*, 330 N.E.2d 161, 167-68 (Mass. 1975).  "Either way, *some* showing of fault is essential."  *Shay*, 702 F.3d at 82.  Here, Plaintiffs failed to adequately plead fault under either standard.

Although the Complaint is filed against Mr. Cosby, it is his publicist and his attorneys who are alleged to have made the relevant statements.  Plaintiffs proceed against Mr. Cosby on a theory of *respondeat superior*.  (*See, e.g.*, Compl. ¶¶ 26, 29, 35, 51, 53, 68, 80, 91, 102.)  "[T]here can be no vicarious liability [for libel] on the part of the employer if the employee himself is not liable except perhaps in certain unusual circumstances not here present."  *Karaduman v. Newsday*, 416 N.E.2d 557, 563-64 (N.Y. 1980); *see also Lucas v. City of Boston*, No. 07-cv-10979-DPW, 2009 U.S. Dist. LEXIS 55621, at *107 (D. Mass. June 19, 2009) (city not vicariously liable for defamation absent evidence that an employee acted negligently or

intentionally); *Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F. Supp. 2d 1256, 1267-68 (S.D.

Fla. 2004) (law school not vicariously liable absent evidence that professor spoke with malice);

*McGarry v. Univ. of San Diego*, 64 Cal. Rptr. 3d 467, 487-88 (Ct. App. 2007) (university not

vicariously liable absent evidence that official made statements with knowledge or reckless

disregard of their falsity).   Accordingly, it is the *speaker* who must be at fault in order for a

defamation claim to succeed against the speaker's alleged principal.   1 Robert D. Sack, *Sack on

Defamation* § 2:10.2, at 2-174 (4th ed. 2010) (defamation requires that "the person who actually

utters the defamation is personally at fault").   Thus, for example, if one employee knows that a

statement is not true and another innocently publishes it, there is no fault on which to base

liability on the part of either employee, and no liability to impute to the principal.   *Id.* (citing *N.Y.*

*Times Co. v. Sullivan*, 376 U.S. 254, 287-88 (1964)); *see also McFarlane v. Esquire Magazine*,

74 F.3d 1296, 1303 (D.C. Cir. 1996) (concluding that an employer's vicarious liability for

defamation requires "evidence of the information available to, and conduct of, its employees");

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925-26 (2d Cir. 1987) (vicarious liability

requires a showing that "the employees responsible for the statement knew of or suspected its

falsity").

       The Complaint fails to adequately allege that Mr. Cosby's publicist or attorneys

acted with fault in making the challenged Statements.   Although the Complaint asserts in

conclusory fashion that each gave his statement "with knowledge of its falsity; with reckless

disregard of the truth; with negligent disregard of the truth; and/or with actual malice" toward the

Plaintiffs, (*see* Compl. ¶¶ 74, 85, 96), these conclusory statements are nothing more than

"[t]hreadbare recitals of the elements of a cause of action" and are insufficient to survive a

motion to dismiss.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The Complaint offers no

support for its conclusory statements, and fails to plead facts supporting a plausible determination that Mr. Cosby's publicist or attorneys acted with fault.  To evaluate plausibility, the court first "must strip away and discard the complaint's conclusory legal allegations." *Shay*, 702 F.3d at 82.  "Next, the court must determine whether the remaining factual content permits the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation marks omitted).  Where the plaintiff fails to allege facts that support the conclusion of fault, a defamation complaint must be dismissed.  *See id.* (dismissing defamation claim asserting ill-will and actual malice because it "contain[ed] no factual assertions that in any way lend plausibility to these conclusions"); *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009) (dismissing defamation claim absent plausible allegations of actual malice).

Plaintiffs have failed to allege any facts supporting a plausible conclusion that Mr. Cosby's publicist or attorneys acted with fault in making any of the Statements.  In *Orenstein*, for example, the plaintiff asserted that an attorney acted "knowingly, recklessly, and maliciously" in writing a defamatory letter on behalf of his firm and client, but alleged no factual support for those conclusory allegations.  677 F. Supp. 2d at 708, 711 (quotation marks omitted). The court held that the plaintiff's "bald allegations," which were "unadulterated by any factual support whatsoever," failed to meet the plausibility standard and dismissed the claim.  *Id.* at 711. Here, the Complaint offers no explanation as to how Mr. Cosby's publicist or attorneys could or should have known the Statements were false.  Neither of them could have had first-hand knowledge of events that allegedly happened in private and decades ago.  Because the Complaint contains only conclusory allegations of fault on the part of those who made the Statements, unsupported by any facts, it fails to state a plausible claim for liability based on *respondeat superior* and should for that additional reason be dismissed.

32

## CONCLUSION

For the several independently sufficient reasons set forth above, Defendant respectfully requests that the Court grant his motions and dismiss Plaintiffs' claims against him with prejudice.

Plaintiff Green's claims should be dismissed because:

- Any claims based on the Washington Post Statement are barred by the statute of limitations;

- The Newsweek Statement and Washington Post Statement are constitutionally protected opinions;

- The Newsweek Statement and Washington Post Statement lack defamatory meaning;

- The Newsweek Statement and the Washington Post Statement are protected by the privilege of self-defense;

- Plaintiff Green has failed to adequately plead that Mr. Cosby's publicist or attorney acted with fault.

Plaintiff Traitz's claims should be dismissed because:

- The November 20 Statement and November 21 Statement are constitutionally protected opinions;

- The November 20 Statement and the November 21 Statement lack defamatory meaning;

- The November 20 Statement and November 21 Statement are protected by the privilege of self-defense;

7688352v.2

- The pertinent statements are substantially true as to Ms. Traitz and Ms. Traitz has suffered no incremental harm;

- The November 21 Statement is not of and concerning Ms. Traitz;

- Plaintiff Traitz has failed to adequately plead that Mr. Singer acted with fault.

Plaintiff Serignese's claims should be dismissed because:

- The November 21 Statement is a constitutionally protected opinion;

- The November 21 Statement lacks defamatory meaning;

- The November 21 Statement is protected by the privilege of self-defense;

- The November 21 Statement is not of and concerning Ms. Serignese;

- Plaintiff Serignese has failed to adequately plead that Mr. Singer acted with fault.


Dated:  February 27, 2015

PATTERSON BELKNAP WEBB & TYLER LLP

By:    /s/ Robert P. LoBue
       Robert P. LoBue
       1133 Avenue of the Americas
       New York, New York 10036
       Telephone No.:  (212) 336-2000
       Facsimile No.:  (212) 336-2222

BULKLEY, RICHARDSON AND GELINAS, LLP

By:    /s/ Jeffrey E. Poindexter
       Francis D. Dibble, Jr.
       Jeffrey E. Poindexter
       1500 Main Street, Suite 2700
       Springfield, Massachusetts 01115
       Telephone: (413) 781-2820

Fax: (413) 272-6806


*Attorneys for the Defendant William H. Cosby*


CERTIFICATE OF SERVICE AND
COMPLIANCE WITH LOCAL RULE 7.1(2)

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), this 27 day of February, 2015.  I further certify that Francis D. Dibble and I conferred with Plaintiffs' counsel Joseph Cammarata by telephone on February 20, 2015, and attempted in good faith to resolve and narrow the issues between the parties, but were unsuccessful.


*/s/ Robert P. LoBue*
Robert P. LoBue

1955260v1

7688352v.2