# IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS
### Western Division

TAMARA GREEN, et al.                    :
                                        :
        Plaintiffs,                     :   Case No. 3:14-cv-30211-MGM
                                        :
    v.                                  :
                                        :
WILLIAM H. COSBY, JR.                   :
                                        :
        Defendant.                      :

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Joseph Cammarata, Esquire
Matthew W. Tievsky, Esquire
**CHAIKIN, SHERMAN, CAMMARATA &**
**    SIEGEL, P.C.**
The Law Building
1232 Seventeenth Street, N.W.
Washington, D.C. 20036
Ofc: (202) 659-8600
Fax: (202) 659-8680
E-mail: Joe@dc-law.net
Attorneys for Plaintiffs

## Table of Contents

SUMMARY OF ARGUMENT...............................................................................1

STATEMENT OF FACTS ...................................…..................................4

ARGUMENT............................................................................................6

I.      STANDARD OF REVIEW.................................................................…..........6

II.     CALIFORNIA LAW AND/OR FLORIDA LAW GOVERN THE SUBSTANTIVE LAW OF THIS ACTION.....................................................7

III.    THE AMENDED COMPLAINT ADEQUATELY PLEADS THAT DEFENDANT COSBY IS PERSONALLY AND VICARIOUSLY AT FAULT FOR DEFAMATION...........................................................................8

IV.     THERE IS NO "SELF-DEFENSE" PRIVILEGE AVAILABLE UNDER CALIFORNIA OR FLORIDA LAW AND, EVEN IF THERE WERE, IT WOULD NOT BE AVAILABLE TO A DEFENDANT WHO KNOWINGLY LIES.............11

   A.   Neither California nor Florida recognizes a "self-defense privilege".....................11

   B.   The self-defense privilege is unavailable to a defendant who knowingly lies......................................................................................................12

V.      THE NOVEMBER 21 DEFAMATORY STATEMENT REFERS TO A SMALL NUMBER OF PERSONS THAT INCLUDES PLAINTIFFS TRAITZ AND SERIGNESE.  THEREFORE, THE NOVEMBER 21 DEFAMATORY STATEMENT IS "OF AND CONCERNING" THESE TWO PLAINTIFFS...........14

VI.     THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANT COSBY DEFAMED PLAINTIFFS BY BRANDING THEM AS LIARS, BASED ON THE PROVABLY FALSE PREMISE THAT DEFENDANT COSBY DID NOT COMMIT SEXUAL MISCONDUCT AGAINST THE PLAINTIFFS..............................................................................................15

   A.   A reasonable jury may find that each of the statements at issue defames the Plaintiff(s) referred to, by expressly or implicitly accusing them of lying...........15

      1.   November 21 defamatory statement by Mr. Singer, regarding Plaintiffs Traitz and Serignese...............................................................................................18

      2.   November 20 defamatory statement, by Mr. Singer, regarding Plaintiff Traitz..20

3.     The Washington Post statement by Mr. Phillips,  and the Newsweek statement by Mr. Brokaw, regarding Plaintiff Green……………………………...……………21

B.     Under the totality of the circumstances, the average reader would understand that the statements at issue represent declarations of fact by Defendant Cosby himself, that based upon his personal knowledge, he is innocent of sexual misconduct and the Plaintiffs are liars…………………………………………………………....23

VII.     THE COURT CANNOT DECIDE ON A RULE 12(b)(6) MOTION THAT MR. PHILLIPS DID NOT ISSUE THE WASHINGTON POST STATEMENT IN NOVEMBER OF 2014……………………………………………………………31

VIII.     THE COURT CANNOT RULE AS A MATTER OF LAW THAT THE INCREMENTAL HARM DOCTRINE APPLIES………………………………...33

A.     Neither California nor Florida recognizes the incremental harm doctrine……….33

B.     Assuming *arguendo* that the incremental harm doctrine could apply to this case, the Court cannot apply the doctrine as a matter of law (at least at this stage), because the parties need to conduct discovery on damages and there are material factual disputes………………………………………………………….……..35

1.     The Court should not consider Plaintiff Traitz's criminal record print-out to be part of the November 20 defamatory statement…………………………....………35

2.     At this stage, the Court cannot determine as a matter of law that Plaintiff Traitz has suffered no injury, based on the incremental harm doctrine………………....36

IX.     THE GIST OF THE NOVEMBER 20 DEFAMATORY STATEMENT IS COMPLETELY FALSE……………………………………………………………38

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
Western Division

TAMARA GREEN, et al.                          :
                                              :
             Plaintiffs,                      :   Case No. 3:14-cv-30211-MGM
                                              :
      v.                                      :
                                              :
WILLIAM H. COSBY, JR.                         :
                                              :
             Defendant.                       :

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

COME NOW the Plaintiffs, Tamara Green, Therese Serignese, and Linda Traitz, by and through their counsel, and hereby respond to Defendant William H Cosby, Jr.'s Motions to Dismiss for Failure to State a Claim ("Motion" or "Motion to Dismiss"), as follows:[1]

### SUMMARY OF ARGUMENT

In Defendant Cosby's Motion to Dismiss. Defendant Cosby claims a privilege to defame where none exists; tries to shield himself from liability, by hiding behind the actions of his spokespersons; tortures the plain defamatory meaning of the statements at issue; and infects the Motion with irrelevant matters, in an attempt to prejudice the Court. Each of these actions is calculated to frustrate the discovery and dissemination of truth, which are the foundational aims of our system of justice.[2]

---

[1] The Motion to Dismiss is directed to Plaintiffs' Amended Complaint, not the proposed Second Amended Complaint. The Second Amended Complaint makes a new allegation that would moot Defendant Cosby's argument that Plaintiff Green's claim is partially time-barred. That argument is addressed in Plaintiffs' pending Motion for Leave to File Second Amended Complaint.

[2] In that vein, and in an effort to uncover the truth, Plaintiffs intend to file a Motion for leave to serve a subpoena to obtain documents generated in previous federal litigation that was brought against Defendant Cosby in Pennsylvania in 2005, arising out of another alleged sexual assault. There is reason to believe that these documents will contradict assertions in Defendant Cosby's Motion to Dismiss. This would be an independent reason for the Court not to grant Defendant Cosby's Motion to Dismiss, at least until Plaintiffs obtain the documents they seek, as the documents may be germane to the Motion to Dismiss.

Defendant Cosby claims that, under a so-called "self-defense privilege," he enjoys a license to lie about anyone who truthfully accuses him of misconduct. That would plainly be an abuse of such a privilege. (Moreover, the governing law in this case, California and/or Florida law, does not even recognize a "self-defense privilege.") The law does not permit a defendant to attack an accuser in "self-defense," **when the defendant <u>knows</u> that the accuser is telling the truth.** Defendant Cosby's position devalues the importance of honesty.

Now that Defendant Cosby is being called to account for intentionally communicating to the general public that the Plaintiffs are liars, Defendant Cosby refuses to take ownership of the statements and shirks any responsibility for the harm they caused. Defendant Cosby claims that because he directed spokespersons to make the defamatory statements at issue, rather than uttering the statements himself, he is somehow absolved of liability. Defendant Cosby seeks to circumvent basic principles of the law of agency, and to create a loophole in defamation law. Under Defendant Cosby's approach, anyone can freely defame another person, merely by employing an unwitting agent to utter the defamatory words. Defendant Cosby's position is not the law, and he remains responsible and accountable for the defamatory statements.

When Defendant Cosby made the four defamatory statements at issue (by and through his spokespersons), this is the message that the average reader received, as Defendant Cosby intended: "I did not commit sexual misconduct, and the Plaintiffs are liars." The four statements at issue are not ambiguous in this regard. They are not expressions of "personal opinion" by Defendant Cosby's own spokespersons, and no reasonable person regarded them as such. The four statements at issue are Defendant Cosby's own declarations of supposed fact regarding his past conduct, and the honesty of the Plaintiffs. It was Defendant Cosby's intent to turn public

2

belief in his favor, and direct public ire against the Plaintiffs.  Defendant Cosby cannot backtrack now that he is before this Court.

Plaintiffs further address the remaining arguments in Defendant Cosby's Motion to Dismiss:

- The statement that Martin D. Singer issued on November 21, 2014, at the direction of Defendant Cosby, is "of and concerning" Plaintiffs Traitz and Serignese.  Under the law, a defamatory statement that refers to a small enough number of persons (25 or fewer) is "of and concerning" every one of them.  Here, the statement at issued refers to 11 women, at the most.

- There is a dispute of fact over when Walter M. Phillips, Jr., published (or republished) the statement defaming Plaintiff Green, that appeared in The Washington Post on November 22, 2014.  The Court cannot itself resolve this question of fact, and certainly not before discovery has begun.

- Similarly, whether Mr. Singer's November 20, 2014 statement damaged Plaintiff Traitz's good reputation is another question of fact that the Court should not resolve by itself, much less without the benefit of discovery.  This is especially so, given that Plaintiff Traitz attests under oath that her reputation has indeed been injured.  That said, it **is** apparent at this stage that the November 20 defamatory statement was not substantially true, because the gist of the statement – that Plaintiff Traitz lied about Defendant Cosby – is false.

Defendant Cosby protests that he is innocent of sexual assault, and that this lawsuit for defamation is an "end run around the relevant statutes of limitations for the alleged assaults." Memo. of Law in Support of Defendant's Mot. to Dismiss (hereinafter "Memo.") at 1. Defendant Cosby is soliciting the Court's sympathy, as if Plaintiffs have wronged him.  But as Defendant Cosby knows, it is not for the Court to decide whether Defendant Cosby is guilty of sexual assault.  That is for the Plaintiffs to prove to a jury, later in this lawsuit.

Plaintiffs' claims are solely for Defendant Cosby's irresponsible attacks upon their character.  Defendant Cosby's appeal to the statute of limitations for sexual assault is another misdirection and irrelevancy.  The length of time that has passed since the underlying sexual assaults is totally irrelevant to the issues currently before the Court; what matters is whether

Defendant Cosby newly harmed the Plaintiffs within the statute of limitations for defamation. The law provides that when defamation injures a person's good name and reputation, that person may sue for damages. This is not a "misuse" of the law of defamation, and for Defendant Cosby to call it that confuses the adjudication of an otherwise straightforward claim.

Defendant Cosby's attempt to infect this case with matters so extraneous to the real issues, is a grasp at straws. It is an effort to avoid taking responsibility, and being held accountable, for publishing in national news media false statements that have badly damaged the reputation of each Plaintiff.

## STATEMENT OF FACTS

Defendant Cosby sexually assaulted each of the three Plaintiffs. In the early 1970s, Defendant Cosby drugged Plaintiff Green, then sexually assaulted her in her own bedroom. *Am. Compl.* at ¶¶ 10-18. In 1976, Defendant Cosby raped Plaintiff Serignese after giving her drugs to incapacitate her. *Am. Compl.* at ¶¶ 37, 41-47. And, in or about 1970, Defendant Cosby offered pills to Plaintiff Traitz, tried to convince her to ingest them, and, when she refused, Defendant Cosby sexually assaulted Plaintiff Traitz by groping her breasts and vaginal area and attempting to force his body on top of hers. *Am. Compl.* at ¶¶ 55-61.

On February 7, 2014, Plaintiff Green publically disclosed Defendant Cosby's assault against her, in an interview with Newsweek. *Am. Compl.* at ¶ 27. At the end of the published interview, Newsweek published a response by David Brokaw ("the Newsweek statement"), a publicist acting at the direction of Defendant Cosby. *Am. Compl.* at ¶ 28-29. The Newsweek statement is quoted in full *infra*, and a copy is included as *Exhibit A* to the Motion. In substance, the Newsweek statement branded Plaintiff Green a liar. *Am. Compl.* at ¶¶ 30, 71-72.

On November 18, 2014, Plaintiff Traitz disclosed Defendant Cosby's sexual assault through a post she made on her personal Facebook page, *Am. Compl.* at ¶ 62; and, on November 19, 2014, Plaintiff Serignese publically disclosed that Defendant Cosby had sexually assaulted her. *Am. Compl.* at ¶ 48.

On November 20, 2014, Mr. Singer, an attorney acting at the direction of Defendant Cosby, issued to numerous media outlets a defamatory statement ("the November 20 defamatory statement"). *Am. Compl.* at ¶ 49, 51, 63. The November 20 defamatory statement is quoted in full *infra*, and a copy is included in *Exhibit F* to the Motion. The November 20 defamatory statement branded Plaintiff Traitz a liar. *Am. Compl.* at ¶¶ 63-64, 93-94.

On November 21, 2014, Mr. Singer issued to numerous media outlets another written statement ("the November 21 defamatory statement"), this one addressed to accusations against Defendant Cosby by several women, including Plaintiffs Serignese and Traitz. *Am. Compl.* at ¶¶ 49, 65. The November 21 defamatory statement is quoted in full *infra*, and a copy is attached as *Exhibit D* to the Motion. The November 21 defamatory statement branded Plaintiffs Traitz and Serignese (among others) liars. *Am. Compl.* at ¶¶ 49-50, 65-66, 82-83, 93-94.

On November 22, 2014, Plaintiff Green publically discussed Defendant Cosby's assault, in an interview with The Washington Post. *Am. Compl.* at ¶ 31. Within The Washington Post article published on that date, The Washington Post published a defamatory statement ("The Washington Post statement") that had been made recently by Walter M. Phillips, Jr., an attorney acting at the direction of Defendant Cosby. *Am. Compl.* at ¶¶ 26, 32. The Washington Post statement is quoted in full *infra*, and a copy of the article in which it appeared is attached hereto as *Exhibit 1*. Like the Newsweek statement, The Washington Post statement branded Plaintiff Green a liar. *Am. Compl.* at ¶¶ 33, 71-72.

Defendant Cosby knew that Plaintiffs' accusations were true when he made the statements at issue, by and through his spokespersons. *Am. Compl.* at ¶¶ 34-35, 52-53, 67-68, 76, 80, 87, 91, 98, 102.  Furthermore, each spokesperson either knew this as well from Defendant Cosby, or else should have (but did not) ask Defendant Cosby the truth of the matter before making the statements on Defendant Cosby's behalf. *Am.Compl.* at ¶¶ 74-75, 85-86, 96-97.

## ARGUMENT

### I.    STANDARD OF REVIEW

Upon a Rule 12(b)(6) motion, the Court must take all of Plaintiffs' allegations as true, and indulge all reasonable inferences in the Plaintiffs' favor. *McCloskey* v. *Mueller*, 446 F.3d 262, 266 (1st Cir. 2006).  Plaintiffs need only set forth "a plausible claim upon which relief may be granted." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353 (1st Cir. 2013).  Furthermore, the Court may only dismiss a case, based on an affirmative defense, if "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004).

Claims for defamation are subject to the usual notice pleading requirements of Federal Rule of Civil Procedure ("Rule") 8, and nothing stricter. *N. Shore Pharm. Servs. v. Breslin Assocs. Consulting LLC*, 491 F. Supp. 2d 111, 124 (D. Mass. March 9, 2007), *adopted*, 491 F. Supp. 2d 111 (D. Mass. May 15, 2007).  Consequently, Plaintiffs were only obligated to plead their defamation claims so as to give Defendant Cosby "fair notice" of their claims, not to quote any portion the defamatory statements verbatim. *Id*; *accord Nieman v. N'wide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 911 (C.D. Ill. 2010).  In the Memo. at 7, Defendant Cosby claims to the

contrary on the basis of *Dorn v. Astray USA*, 975 F. Supp. 388, 396 (D. Mass. 1997), but **Dorn has been bad law for at least a decade, insofar as the decision purports to construe federal pleading requirements.** *See Bleau v. Greater Lynn Mental Health & Retardation Ass'n*, 371 F. Supp. 2d 1 (D. Mass. 2005) (citing *Andresen v. Diorio*, 349 F.3d 8, 17 (1st Cir. 2003)).

Barring "narrow exceptions," courts considering a Rule 12(b)(6) motion usually consider only the complaint, and documents attached to it and/or expressly incorporated into it. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 70-71 (1st Cir. 2014). Plaintiffs are not required to submit evidence to defeat a Rule 12(b)(6)motion. *Id.* The Court should decide Defendant Cosby's Motion based upon the Amended Complaint (and the Second Amended Complaint, once the Court accepts it) as well as the statements at issue – with two caveats. First, the December 12, 2014 "Correction" appended to the beginning of the revised Washington Post article (attached to the Motion as *Exhibit B*) is not properly before the Court. Second, the print-out of Plaintiff Traitz's criminal record included with the November 21 defamatory statement (attached to the Motion as *Exhibit F*) was not actually part of the statement.

## II.     CALIFORNIA LAW AND/OR FLORIDA LAW GOVERN THE SUBSTANTIVE LAW OF THIS ACTION.

Defendant Cosby concedes that, other than the law of Massachusetts, the law of California and/or Florida may govern this action. Memo. at 9 n.4. However, Defendant Cosby asserts that there is no need to make a choice of law, because there is no pertinent conflict of laws between these three jurisdictions. Defendant Cosby is incorrect. Among other possible conflicts with Massachusetts law, it appears that neither California nor Florida recognizes a self-defense privilege. Accordingly, it is necessary to apply choice-of-law principles.

In a diversity action, this Court applies the substantive law of whichever jurisdiction a Massachusetts state court would apply. *See Servicios Comerciales Andinos, S.A. v. GE Del*

*Caribei*, 145 F.3d 463, 479 (1st Cir. 1998).  Under Massachusetts choice-of-law principles, when a defamatory statement is communicated across multiple states (as is true here), the Court generally applies the law of the state where the plaintiff was domiciled at the time of publication (assuming the statement was also published in the domicile state, as is also true here).  *See Davidson v. Yihai Cao*, 211 F. Supp. 2d 264, 273-74 (D. Mass. 2002) (citing RESTATEMENT (2ND) OF CONFLICT OF LAWS, § 150 (1971)); *Xuncax v. Gramajo*, 886 F. Supp. 162, 195-96 (D. Mass. 1995).  Furthermore, in a defamation action that includes plaintiffs domiciled in multiple jurisdictions, the Court may choose to apply one jurisdiction's law to the entire action, to ensure uniform results.  *See Davidson*, 211 F. Supp. 2d at 274.

When the statements at issue were published (and as is true now), Plaintiff Green was domiciled in California, and Plaintiffs Traitz and Serignese were domiciled in Florida.  Accordingly, the law governing this action must be California law, Florida law, and/or some combination of the two.  No conflict between the laws of these two states is apparent yet, so there is no need to choose between the two at this time.  In any event, Massachusetts law does not govern the action.

## III.   THE AMENDED COMPLAINT ADEQUATELY PLEADS THAT DEFENDANT COSBY IS PERSONALLY AND VICARIOUSLY AT FAULT FOR DEFAMATION.

According to Defendant Cosby, the claims against him rest entirely upon the theory that he is vicariously at fault.  Defendant Cosby further contends that this theory fails, because the Amended Complaint does not plausibly allege that Defendant Cosby's spokespersons were at least negligent.  Defendant Cosby is wrong in both respects.

Defendant Cosby is incorrect, first of all, because the Amended Complaint charges Defendant Cosby with liability based upon **personal** fault (as well as the alternative theory of

vicarious fault). The Amended Complaint pleads that Defendant Cosby directed his spokespersons to publish the untrue statements and, under basic agency principles, this means that Defendant Cosby effectively published the statements himself. *See* RESTATEMENT (2ND) OF AGENCY § 212 Cmt. c (1957) ("The master may be liable although the actor is not liable. This is true in those cases in which liability is based upon knowledge of facts which the master has but which the servant does not have.").[3]  Furthermore, Defendant Cosby (by and through his spokespersons) published the statements at issue even though he knew they were false, which means Defendant Cosby acted with malice.  Thus, Defendant Cosby is personally at fault for defamation, regardless of whether his spokespersons are also personally liable.

Defendant Cosby cites no authority to the contrary.  The case law cited in the Memo. at 30-31 speaks to vicarious fault, not personal fault.  Furthermore, Defendant Cosby **misrepresents** the authority SACK ON DEFAMATION (hereinafter "SACK") § 2:10.2, at 2-174 (4th ed. 2010).  In the Memo. at 31, Defendant Cosby represents that "it is the **speaker** who must be at fault in order for a defamation claim to succeed against the speaker's alleged principal" (emphasis in original), and that "defamation requires that [quoting SACK] 'the person who actually utters the defamation is personally at fault.'"  But the unabridged quoted sentence from SACK states: "**Although the person or entity vicariously liable may not have been personally at fault,** the rule of *Gertz*[4] does not bar vicarious liability, provided, importantly, that the person who actually utters the defamation is personally at fault."  (Emphasis added.)  In other words, SACK states that, **if** the principal is not personally at fault, then he can only be vicariously liable if

---

[3] Relatedly, Defendant Cosby made the defamatory statements to his spokespersons, and then his spokespersons widely distributed the statements as Defendant Cosby expected.  Thus, Defendant Cosby is personally liable for the foreseeable republications of the statements by his spokespersons. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1252 (M.D. Fla. 2014); *Shively v. Bozanich*, 31 Cal. 4th 1230, 1243 (Cal. 2003).

[4] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), held that the First Amendment restricts the imposition of defamation liability in the absence of fault.

his agent is personally at fault. This comports with the RESTATEMENT quoted *supra*. Here, the Amended Complaint pleads that Defendant Cosby **is** personally at fault. Therefore, it is unnecessary to establish that his spokespersons were also personally at fault.

Defendant Cosby is contending that he can avoid liability for directing his agent to publish a defamatory statement that Defendant Cosby knew to be false, simply because Defendant Cosby (supposedly) did not reveal this fact to his agent. This is absurd and, if correct, would tear a gaping hole in defamation law and violate basic agency principles.

Defendant Cosby is also incorrect when he contends that the Amended Complaint fails to plausibly charge him with vicarious fault. The Amended Complaint alleges a close agency relationship between Defendant Cosby and his spokespersons. From that, at a minimum, it can reasonably be inferred that when Defendant Cosby directed his spokespersons to publish the statements at issue, the spokespersons did not make reasonable inquiry into the truth or falsity of the statements. This supports an inference of negligence, if not malice. *See McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (Cal. Ct. App. 2007) (deliberate failure to investigate truth of likely false nature of statement may rise to the level of malice); *Kuhn v. Tribune-Republican Publishing Co.*, 637 P.2d 315, 319 (Colo. 1981) ("In this context, a reporter's failure to pursue the most obvious available sources of possible corroboration or refutation may clearly and convincingly evidence a reckless disregard for the truth."). Alternatively, it can be inferred that Defendant Cosby told his spokespersons that the statements were false. Under either scenario, the spokespersons were at fault, and this is imputed to Defendant Cosby.

IV.     **THERE IS NO "SELF-DEFENSE PRIVILEGE" AVAILABLE UNDER CALIFORNIA OR FLORIDA LAW AND, EVEN IF THERE WERE, IT WOULD NOT BE AVAILBLE TO A DEFENDANT WHO KNOWINGLY LIES.**

Defendant Cosby asserts that a purported "self-defense privilege" shields him from liability for defaming Plaintiffs.  However, the applicable law does not recognize such a privilege, and even if it did, Defendant Cosby would not enjoy a license to lie.

**A.  Neither California nor Florida recognizes a "self-defense privilege."**

Defendant Cosby acknowledges, Memo. at 23 n.8, that California has expressly rejected the sort of "self-defense privilege" that Defendant Cosby is asserting.  *See Finke v. Walt Disney Co.*, 110 Cal. App. 4th 1210, 1237-38 (Cal. Ct. App. 2003).  The privilege to defame in protection of one's own interests is codified at California Civil Code Section 47(c); *Finke* refers to this as the "common interest privilege."  *Id.*  That section plainly does not apply here, and Defendant Cosby does not claim otherwise.

There is no indication that Florida recognizes a "self-defense privilege," either.  Plaintiffs have been unable to find any Florida case applying such a broad privilege.  To the contrary, Florida recognizes a privilege similar to California's common interest privilege.  *See In re Std. Jury Instrs. in Civil Cases*, 35 So. 3d 666, 735 (Fla. 2010).  This privilege only belongs to "one having an interest or a legal, moral, or social duty in regard to a certain subject, when speaking to another 'having a corresponding interest or duty,'" *e.g.*, "'a communication to an employer regarding the employee's performance.'"  *Id.* (quoting *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984)).  That does not describe Defendant Cosby's communications to the public at large.

Because neither California nor Florida recognizes a "self-defense privilege," the Court should disregard this defense entirely.

**B. The self-defense privilege is unavailable to a defendant who knowingly lies.**

Assuming the truth of the Amended Complaint (as the Court must), Defendant Cosby knew that the Plaintiffs were telling the truth when they accused him of sexual misconduct; yet he retaliated by calling them liars, which he knew was false. Based on the pleadings, the Court cannot rule that a "self-defense privilege" bars Plaintiffs' claims. To the contrary, "a self-defense privilege" would not apply at all.

Defendant Cosby makes the bald assertion, without citing controlling authority, that "[t]here is no requirement that, to avail oneself of the self-defense privilege, the responsive statement be truthful." Memo. at 25. Even if that were correct, it would miss the point. A defendant has no right to "defend" himself by making a statement that he **knows** is false, which is what Defendant Cosby did. As the RESTATEMENT (2ND) OF TORTS § 594 Cmt. a states, **"[t]he privilege may be abused and its protection lost** by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter."[5]  (Emphasis added.) *See also Tomson v. Stephan*, 699 F. Supp. 860, 864 (D. Kan. 1988) (defendant not entitled to self-defense privilege as a matter of law where he insinuated plaintiff was a liar, after she accused him of sexual harassment); *Shepherd v. Baer*, 53 A. 790, 791 (Md. 1902) (in defending himself, the defendant "cannot avail himself of the occasion to make false charges of fact");[6] *Conroy v. Fall River Herald News Pub'g Co.*, 28 N.E.2d 729, 730 (Mass. 1940) ("A libel may be privileged on the ground of self defence.  One **attacked by a slander or libel** has a right to defend himself, but he

---

[5] In support of his position that he enjoys a "self defense privilege" to lie, in the Memo. at 23, Defendant Cosby cites Comment k of § 594 of the Restatement, **without acknowledging** that Comment a contradicts his position.  For that matter, so does Comment k, which states: "A conditional privilege exists under the rule stated in this Section when the person making the publication **reasonably believes that his interest in his own reputation has been unlawfully invaded by another person.**"  (Emphasis added.)  If Defendant Cosby knew that the Plaintiffs were truthfully accusing him of misconduct, then he could not have reasonably believed that they were **unlawfully** damaging his reputation.

[6] In the Memo. at 23-24, Defendant Cosby cites *Shepherd* **without acknowledging** that the case expressly states that the defendant may not lie in "self-defense."  Although the *Shepherd* court affirmed the dismissal of a defamation complaint, in that case the plaintiff had not alleged that the defendant made any false statement.

has no right to turn his defence into a slanderous or libelous attack, unless it clearly appears that such attack was necessary for his justification.  A defence could seldom be effective unless one has a right **in good faith** to brand the accusations as false and calumnious." (emphasis added, internal quotation omitted)); 7 William Blake Odgers, A DIGEST OF THE LAW OF LIBEL AND SLANDER * 22 (1st Am. ed. Bigelow 1881) ("Every man has a right to defend his character against **false** aspersion." (emphasis added)).  A "self-defense privilege" would not serve a useful social function if it allowed a defendant to defame a person who truthfully accused him of misconduct (as Plaintiffs allege has occurred in this case).

Defendant Cosby relies heavily upon *Foretich v. Capital Cities/ABC*, 37 F.3d 1541 (4th Cir. 1994), but this decision does not hold that a defendant may freely lie as a matter of "self-defense."  *Foretich* was not even decided under a "self-defense privilege."  Rather, *Foretich* concerned whether the plaintiffs qualified as public figures by virtue of the fact that they publically replied to the defamation against them.  The *Foretich* court held that the plaintiffs did not so qualify, as long as their reply was a reasonable response.  *Id.* at 1558.  To determine that, *Foretich* borrowed principles from the "self-defense privilege," but **only** to determine whether their reply was responsive and proportionate to the attacks against them.  *Id.* at 1559.  The *Foretich* court did not purport to list all the ways in which a "self-defense privilege" may be waived, *see id.* (note the use of the phrase "*inter alia*"), and in fact the court expressly noted that the truth of the plaintiffs' statements was not at issue at that point in the case, *see id.* at 1560 n.20.

It is also notable that Defendant Cosby only cites a single decision in which a court dismissed a case on the pleadings on the basis of a "self-defense privilege."  That is *Shepherd*.

---

[7] In the Memo. at 23, Defendant Cosby reprints select portions of this quotation from *Conroy* out of context, thus **hiding** the limitations that *Conroy* places upon any "self-defense privilege."

However, as noted *supra*, in that case the plaintiff did not even allege that the defendant had made a false statement. Here, of course, the Plaintiffs have alleged not only that Defendant Cosby made false statements, but that he did so knowingly.

Given that the Court must assume the truth of Plaintiffs' allegations, the Court cannot rule as a matter of law that a "self-defense privilege" bars their claims. Plaintiffs are entitled to prove their allegations, which would defeat a "self-defense privilege" (if it could possibly apply to this case, which it cannot under California or Florida law). Defendant Cosby does not enjoy a license to lie about the women who truthfully accused him of assaulting them.

**V.     THE NOVEMBER 21 DEFAMATORY STATEMENT REFERS TO A SMALL NUMBER OF PERSONS THAT INCLUDES PLAINTIFFS TRAITZ AND SERIGNESE.  THEREFORE, THE NOVEMBER 21 DEFAMATORY STATEMENT IS "OF AND CONCERNING" THESE TWO PLAINTIFFS.**

The mere fact that the November 21 defamatory statement refers to more women than just Plaintiffs Traitz and Serignese does not absolve Defendant Cosby of liability. The Amended Complaint plainly alleges that the November 21 defamatory statement is "of and concerning" Plaintiffs Traitz and Serignese. The statement refers to "[t]he new, never-before-heard claims from women who have come forward in the past two weeks" to accuse Defendant Cosby of sexual assault. The Amended Complaint pleads that Plaintiffs Traitz and Serignese each came forward to accuse Defendant Cosby within three days before the November 21 defamatory statement issued. It is immaterial that the November 21 defamatory statement does not expressly name these two Plaintiffs, because the statement refers to them by implication. *See Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1044 n.1 (Cal. 1986); Robert D. Sack, SACK ON DEFAMATION § 2:9.1, 2-148 (4th ed. 2010).

From the face of the Amended Complaint and the November 21 defamatory statement itself, construed in Plaintiffs' favor, it is reasonable to infer that the statement refers to only a

small number of women.  (In fact, no more than 11 women came forward to accuse Defendant

Cosby within the two weeks before Mr. Singer issued the November 21 defamatory statement.

*See Exhibit 2*, Declaration of Joseph Cammarata, Esquire at ¶ 2.)  When a defamatory statement

refers collectively to such a small number of persons (the usual cut-off is 25 persons), the

statement may be "of and concerning" every one of them.  *See Blatty*, 42 Cal. 3d at 1046;

*Thomas v. Jacksonvile TV*, 699 So. 2d 800, 805 (Ct. App. Fla. 1997); RESTATEMENT (2ND) OF

TORTS, § 564A, Cmt. b; *see also Arcand v. Evening Call Publ'g Co.*, 567 F.2d 1163, 1164 (1st

Cir. 1977) ("A second principle recognizes a civil action if a defamatory statement applies to all

members of a small group . . . .").

Therefore, the Amended Complaint sufficiently alleges that the November 21 defamatory

statement is "of and concerning" Plaintiffs Traitz and Serignese.

### VI. THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANT COSBY DEFAMED PLAINTIFFS BY BRANDING THEM LIARS, BASED ON THE PROVABLY FALSE PREMISE THAT DEFENDANT COSBY DID NOT COMMIT SEXUAL MISCONDUCT AGAINST THE PLAINTIFFS.

**A.     A reasonable jury may find that each of the statements at issue defames the Plaintiff(s) referred to, by expressly or implicitly accusing them of lying.**

To be actionable, Defendant Cosby's statements must be defamatory as to the Plaintiffs.

*See Sanders v. Walsh*, 219 Cal. App. 4th 855, 862 (Cal. Ct. App. 2013); *Internet Solutions Corp.*

*v. Marshall*, 39 So. 3d 1201, 1214 n.8 (Fla. 2010).  As to each of the four statements here at

issue, the question is whether a reasonable jury could construe the statement as an accusation that

the Plaintiff(s) concerned are lying.  *See Stanton v. Metro Corp.*, 438 F.3d 119, 124-25 (1st Cir.

2006); *Hughes v. Hughes*, 122 Cal. App. 4th 931, 936-37 (Cal. Ct. App. 2004); *Greene v. Times*

*Publ. Co.*, 130 So. 3d 724, 730 (Fla. 2013).

> [W]e are required to place ourselves "'in the situation of the . . . reader, and
> determine the sense or meaning of the language . . . according to its natural and
> popular construction.' [We must measure the publication]   not so much by its
> effect when subjected to the critical analysis of a mind trained in the law, but by
> the natural and probable effect upon the mind of the average reader.  A defendant
> is liable for what is insinuated, as well as for what is stated explicitly . . . .

*Mullins v. Thieriot*, 19 Cal. App. 3d 302, 303 (Cal. Ct. App. 1971) (quoting *MacLeod*

*v.Tribune Publishing Co.*, 52 Cal. 2d 535, 547 (Cal. 1956)); *accord Greene*, 130 So.3d at

730.

California and Florida each recognize that a statement should **not** be construed by

only considering the literal meaning of the language used.  Even if a statement is literally

true, the statement may insinuate or imply a false assertion of fact.  *See Forsher v.*

*Bugliosi*, 26 Cal. 3d 792, 803 (Cal. 1980)l; *Wong v. Jing*, 189 Cal. App. 4th 1354, 1372

(Cal. Ct. App. 2010); *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106-07 (Fla. 2008).

Viewed from the perspective of the average reader, it is not merely reasonable to find, but

**obvious**, that each of the four statements at issue accuses the Plaintiff(s) at issue of lying.  By

accusing each Plaintiff of inventing a story, Defendant Cosby stated and/or insinuated that each

Plaintiff is a liar.  To that effect, see *Community for Creative Non-Violence v. Pierce*, 814 F.2d

663 (D.C. Cir. 1987) (hereinafter *"CCNV"*).  The plaintiff, CCNV, had publically issued an

estimate that the United States homeless population exceeded 2 million.  In response, the

Secretary of the Department of Housing and Urban Development ("HUD") stated publically that

the figure "is absolutely ridiculous" and that CCNV "grabbed [the figure] out of the air."

Additionally, another HUD officer stated publically that he had "check[ed] with Mr. Snyder [one

of the CCNV members responsible for the figure] to determine the basis of [the two million

figure], . . . it turned out that there was no legitimate or systematic basis or basis for the figure . .

. ." Noting that "[c]ourts generally accept that an imputation of dishonesty or fraud is

defamatory," *id.* at 671, the D.C. Circuit held that these statements were actionable because they could be construed to mean "that CCNV intentionally fabricated the two million figure out of whole cloth," *id.* at 671-72.[8] In this case, the statements at issue similarly communicate that each Plaintiff fabricated her accusation that Defendant Cosby sexually assaulted her.

When a plaintiff truthfully accuses a person of wrongful conduct, and the defendant then falsely claims that the plaintiff is lying, then that false claim gives rise to a defamation action. *See Cook v. Winfrey*, 141 F.3d 322, 329-30 (7th Cir. 1998) (applying Ohio law, where plaintiff publically alleged that defendant Oprah Winfrey had a sexual relationship with him, and used illegal drugs, and plaintiff subsequently filed suit against defendant, defendant's post-suit accusation that plaintiff was a "liar" and the lawsuit was a "pack of lies" held actionable as defamation *per se*); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 601-02 (E.D. N.Y. 2001) (where plaintiff athletic trainer claimed that he personally administered steroids to defendant baseball player Roger Clemens of illicitly using steroids, defendant's statement that plaintiff was lying held actionable); *Pease v. Int'l Union of Operating Eng'eers Local 150*, 567 N.E.2d 614, 619 (App. Ct. Ill. 1991) (where employer accused union of vandalism, and union leader responded that employer "lies a lot," statement held actionable as defamation *per se*); *Davis v. Boeheim*, 24 N.Y.3d 262, 272 (N.Y. 2014) (where plaintiff accused university's assistant basketball coach of sexual molestation, head basketball coach's statement that plaintiff was lying held actionable); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) (stating in *dicta* that the statement "Jones is a liar" would be actionable); *Costello v. Capital Cities Comms., Inc.*, 532

---

[8] In contrast, the D.C. Circuit held that there was no defamation when HUD issued a report that merely questioned the reliability of CCNV's figure. In doing so, the report noted that no thorough census of the homeless population had been performed, and the report reviewed CCNV's methodology. The D.C. Circuit noted that this could be construed as a claim that CCNV's figure was inaccurate, but not fraudulent; hence the statement was not defamatory. *Id.* at 671.

N.E.2d 790, 796 (Ill. 1988) (newspaper's accusation that politician "lied" by breaking campaign promise held actionable).

Defendant Cosby, by and through his spokespersons, intentionally communicated to the general public that the Plaintiffs are liars. There is no other way for the average reader to understand the statements at issue. However, now that Defendant Cosby is being called to account, he urges the Court to ignore the common understanding of the statements that he made about the Plaintiffs. Defendant Cosby cannot have it both ways. Plaintiffs herein explain why each statement at issue, in particular, is susceptible of a defamatory meaning – if not unambiguously defamatory.

1. **November 21 defamatory statement by Mr. Singer, regarding Plaintiffs Traitz and Serignese**

The November 21 defamatory statement is as follows:

The new, never-before-heard claims from women who have come forward in the past two weeks with **unsubstantiated, fantastical stories** about things they say occurred 30, 40, or even 50 years ago have escalated **far past the point of absurdity.**

These brand new claims about alleged decades-old events are becoming **increasingly ridiculous**, and it is **completely illogical** that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims **if they thought they had been assaulted** over a span of so many years.

Lawsuits are filed against people in the public eye every day. There has never been a shortage of lawyers willing to represent people with claims against rich, powerful men, so **it makes no sense** that not one of these new women who just came forward for the first time now ever asserted a legal claim back at the time they allege they had been sexually assaulted.

This situation is an unprecedented example of the media's breakneck rush to run stories without any corroboration or adherence to traditional journalistic standards. Over and over again, we have refuted these new **unsubstantiated stories** with documentary evidence, only to have a new **uncorroborated story** crop up out of the woodwork. When will it end?

It is long past time for this media vilification of Mr. Cosby to stop.

*Exhibit D* to Mot. to Dismiss (emphasis added).

As the emphasized words in the quoted statement illustrate, Mr. Singer repeatedly expressed that Plaintiffs Traitz and Serignese's respective accusations were lies. To take one of the most egregious examples, Mr. Singer called the Plaintiffs' accusations "fantastical stories." In this context, "fantastic" means "based on fantasy : not real." "fantastic," *Merriam-Webster.com*, 2015, *http://www.merriam-webster.com/dictionary/fantastic* (15 March 2015). Even these two words alone would be sufficient to support a defamation action. *See Masson v. New Yorker Magazine*, 501 U.S. 496, 510 (1991) (under California law, "[t]he test of libel is not quantitative; a single sentence may be the basis for an action in libel even though buried in a much longer text," albeit it is possible for the defamatory statement to be "diluted to the point of impotency" (quoting *Washburn v. Wright*, 261 Cal. App. 2d 789, 795 (Cal. 1968)). To like effect are the phrases "far past the point of absurdity," "increasingly ridiculous," "completely illogical," and "it makes no sense."

The average reader would construe each of these phrases to mean, "the accusers are lying." The phrase "if they thought they had been assaulted" further confirms this interpretation. In context, this phrase means that Plaintiffs never really thought that they had been assaulted; therefore, Plaintiffs must be lying when they now claim the assaults took place. Furthermore, in the context of the complete November 21 defamatory statement, even the comparatively weaker language, "unsubstantiated stories" and "uncorroborated story" takes on the same clear defamatory meaning, by implication.

Compare *Gibney v. Fitzgibbon*, 547 F. App'x 111 (3d Cir. 2013), an unreported decision cited by Defendant Cosby in the Memo. at 15. In *Gibney*, the plaintiff believed that his employer

had been improperly billing a third party corporation, and he notified the third party corporation to that effect. The third party corporation's in-house lawyer wrote to the plaintiff that the corporation had investigated the allegations, which were "determined to be unfounded." The Third Circuit held that this statement did not accuse the plaintiff of lying; it merely stated the corporation came to a different conclusion. *Id.* at 114. This is not at all comparable to the November 20 defamatory statement, or any of the other statements at issue. The corporation in *Gibney* made no comment even indirectly about the plaintiff himself. Furthermore, the corporation merely expressed its own findings after investigation into a factually complex issue, on which reasonable persons might disagree. (This concept plays a role in the discussion of the opinion/fact distinction, *infra*.) In contrast, in the November 21 defamatory statement, Mr. Singer flatly stated that Plaintiff's Traitz and Serignese were inventing "fantastical stories."

### 2. November 20 defamatory statement, by Mr. Singer, regarding Plaintiff Traitz

The November 20 defamatory statement is as follows:

Ms. Traitz is the latest example of people[9] coming out of the woodwork with **fabricated** or **unsubstantiated stories** about my client.

Linda Joy Traitz is making **ridiculous claims** and suddenly seems to have a lot to say about a fleeting incident she says happened with my client more than 40 years ago, but she hasn't mentioned either her 3 ½ year incarceration or her extensive criminal record with charges spanning from the 1980's through 2008.

For the first time, she is claiming that in approximately 1970, my client supposedly drove her to the beach and had a briefcase filled with drugs and offered her pills to relax, which she says she turned down and demanded to be taken home after Mr. Cosby came on to her. **There was no briefcase of drugs**, and this is an **absurd fabrication**.

Ms. Traitz's long criminal record for numerous offenses including charges for criminal fraud, possession of Oxycodone, cocaine possession, marijuana possession, and possession of drug paraphernalia, speaks for itself.

---

[9] "[T]he latest example of people" is a reference to other persons who had recently publically accused Defendant Cosby. This includes Plaintiff Serignese, who had come forward just one day earlier on November 19, 2014. After the Court rules upon the proposed Second Amended Complaint, Plaintiffs intend to request a further amendment to their pleading, to add a claim for Plaintiff Serignese based upon the November 20 defamatory statement.

As the old saying goes, "consider the source."

*Exhibit F* to Mot. to Dismiss (emphasis added).[10]

Mr. Singer twice accuses Plaintiff Traitz of a "fabrication" or "fabricating . . . stories." To "fabricate" means "to create or make up (something, such as a story) in order to trick people." "fabricate," *Merriam-Webster.com*, 2015, *http://www.merriam-webster.com/dictionary/fabricate* (15 March 2015). . To the same effect, Mr. Singer flatly denies the existence of a "briefcase of drugs." Furthermore, the phrases "ridiculous claims" and "unsubstantiated stories" are defamatory, for the same reasons that similar phrases are defamatory in the November 21 defamatory statement.

### 3. The Washington Post statement by Mr. Phillips, and the Newsweek statement by Mr. Brokaw, regarding Plaintiff Green

(i)     The Washington Post statement is as follows:

Another Cosby attorney, Walter M. Phillips, Jr., called Green's allegations "absolutely false."

"Mr. Cosby does not know the name Tamara Green or Tamara Lucier [her maiden name] and the incident she describes did not happen," Phillips said in a statement issued this past week. He said it was "irresponsible" to publish an "uncorroborated story of an incident that is alleged to have happened thirty years ago."

*Exhibit 1*, November 22, 2014 Washington Post Article at A13.

(ii)     The Newsweek statement is as follows:

[Mr. Brokaw told Newsweek:] This is a 10-year-old, discredited accusation that proved to be nothing at the time, and is still nothing.

*Exhibit A* to Mot. to Dismiss, at 4.

---

[10] As explained *infra*, the criminal record print-out also included within *Exhibit F* cannot be considered a part of the November 20 defamatory statement, upon Defendant Cosby's Motion to Dismiss.

The Washington Post Statement denies Plaintiff Green's accusation (assumed to be true, for purposes of the Motion to Dismiss) as "absolutely false," and flatly states that her truthful version of events "did not happen."  Note that Plaintiff Green's accusation is that Defendant Cosby drugged her, then forcibly, sexually molested her.  A reasonable jury could (and would) find that Mr. Phillips is not merely offering a different interpretation of facts.  Rather, Mr. Phillips is starkly drawing a line between Plaintiff Green's accusation and the supposed truth.  The plain implication is that Plaintiff Green is lying.

Further confirming this implication is Mr. Phillips' claim that "Mr. Cosby does not know [Plaintiff Green's] name," the unambiguous implication being that Mr. Cosby had never met Plaintiff Green in his life.  This provably false statement implies that it was impossible for Mr. Cosby to assault Plaintiff Green, and therefore Plaintiff Green must be lying.

The Newsweek statement means the same as The Washington Post statement, albeit Mr. Brokaw makes the point more pithily than Mr. Phillips did.  "Nothing" is susceptible of a defamatory meaning, because it means that Plaintiff Green's accusation is supposedly "of no interest, value, or consequence" ("nothing," *Merriam-Webster.com*, 2015, *http://www.merriam-webster.com/dictionary/nothing* (15 March 2015)), *i.e.*, the accusation has no basis in reality.  Moreover, Mr. Brokaw goes further and states that the accusation has "**proved**" to be nothing, implying that Plaintiff Green has no good faith basis to maintain her accusation.  This is reinforced by Mr. Brokaw's claim that Plaintiff Green's accusation was "discredited."

There is little doubt that the average reader understood from these two statements that Defendant Cosby was calling Plaintiff Green a liar, albeit without saying so explicitly. Part of the reason is that – unlike the in-house lawyer in *Gibney* – the speakers in this case were **Defendant Cosby's own spokespersons,** whom the public would understand shared personal knowledge with Defendant Cosby whether Plaintiff Green's accusations were true or false. Therefore, the general public understood that each spokesperson spoke with the authority to declare: "I know the underlying facts; there was no sexual misconduct at all; and therefore, Plaintiff Green is a liar." Even if the literal words of either of these two statements are not provably false statements of fact, each spokesperson defamed Plaintiff Green by implication, or so a jury may find. *See Wong*, 189 Cal. App. 4th at 1371-75 (finding statements implicitly accused dentist of negligence and incompetence, even if construed literally they had an innocent meaning).

    **B. Under the totality of the circumstances, the average reader would understand that the statements at issue represent declarations of fact by Defendant Cosby himself, that based upon his personal knowledge, he is innocent of sexual misconduct and the Plaintiffs are liars.**

Under *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), even if a statement is purportedly one of opinion, it is actionable if the statement declares or implies a provably false assertion of fact. *Levinsky's, Inc. v. Wal-Mart* Stores, 127 F.3d 122, 127 (1st Cir. 1997); *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (Cal. Ct. App. 2004); *Scott v. Busch*, 907 So. 2d 662, 668 (Ct. App. Fla. 2005).

Whether a statement constitutes opinion or fact is determined by looking at the totality of the circumstances. Specifically, the Court should review the language of the statement at issue, as well as the context in which the statement was published, including but not limited to the identity of the speaker, whether the statement included any cautionary language signaling mere

opinion, the medium by which the statement is disseminated, and the audience to which it is published. *See Wong v. Jing*, 189 Cal. App. 4th 1354, 1370 (Cal. Ct. App. 2010); *From v. Tallahassee Democrat*, 400 So. 2d 52, 57 (Fla. 1981) (citing *Information Control v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)); *see also Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 389 (Ct. App. 2004) (considering identity of speaker as factor in opinion/fact determination).

Under the totality of the circumstances, a reasonable jury may find (indeed, **would** find) that Defendant Cosby (acting by and through his spokespersons) delivered to the public not an "opinion," but a declaration of fact: "The Plaintiffs are lying. I did not sexually assault them." It is no coincidence that Defendant Cosby's Memo., at 1, similarly leads with a firm denial of Plaintiffs' accusations of sexual misconduct. This is not Defendant Cosby's "opinion"; it is his (false) statement of fact.

The decisions in *Tomson v. Stephan*, 696 F. Supp. 1407 (D. Kan. 1988) (hereinafter *Tomson I*) and 699 F. Supp. 860 (D. Kan. 1988) (hereinafter *Tomson II*) are directly on-point in this case. In the *Tomson* cases, the plaintiff originally sued her employer, the Kansas Attorney General, for sexual harassment. The parties reached a confidential settlement agreement. Later, as the Attorney General prepared to run for higher political office, he and a close advisor held a news conference. The two men stated that "the case was totally without merit, and preposterous allegations [were made]," and "the allegations in the suit were totally unfounded." The plaintiff sued the Attorney General and his advisor for false light publicity. (As the court noted in *Tomson I*, the torts of false light publicity and defamation differ in terms of the injuries they seek to redress, but each tort is predicated upon the publication of a false statement, as opposed to the

expression of an opinion. 696 F. Supp. at 1411. Therefore, the analysis of the opinion/fact

distinction in the *Tomson* cases is germane to the instant case.)

Although the defendants requested summary judgment on the ground that the statements

were protected opinion, the court disagreed:

> [T]he statements that [the plaintiff's] original action was "without merit" and
> "totally unfounded" must be interpreted as statements of fact. Neither [the
> Attorney General] nor [his advisor] prefaced their statements with the phrase "in
> my opinion." They did not qualify their statements in any way. Instead of stating
> that they "believed" the suit to be "without merit" or "totally unfounded," they
> stated that they *were* baseless. **Coming not from an objective third party
> analyzing the legal merits of the case, but instead from the party with actual
> knowledge of the facts of the case and from one of that party's closest
> advisors, the statements translated into this: [The Attorney General] did not
> sexually harass [the plaintiff]**; he did not make sexual advances toward her, and
> he did not make offensive sexual comments to her." Regardless of whether this
> statement is true or false, it is certainly a statement of fact and not one of opinion.

*Tomson I*, 696 F. Supp. at 1412 (emphasis added). Upon denying a motion for reconsideration,

the court explained further why the advisor's statement did not qualify as opinion: "It is

reasonable to assume that one claiming to have personal knowledge of the facts giving rise to the

case, or at least to have closely advised the defendant in the case, would be asserting as fact that

the case was 'without merit.'" *Tomson II*, 699 F. Supp. at 861. Furthermore, because the

defendants' comments bore upon whether sexual misconduct occurred, which is a verifiable

claim, this too indicated that the defendants were implying provably false statements of fact. *See

id.* at 862-63 (distinguishing *Janklow v. Newsweek, Inc.*, 788 F.2d 1300 (8th Cir. 1986), cited by

Defendant Cosby in the Mot. at 19).

In numerous respects, the instant case is akin to *Tomson*, and unlike the cases that

Defendant Cosby cites on the opinion/fact distinction. First, each of the statements at issue states

or implies that Defendant Cosby did not commit sexual assault, which is provably false. That, in

itself, renders each statement actionable. If a speaker bases his "opinion" upon disclosed facts

that are **false or misleadingly presented**, then the statement is actionable. *See Milkovich*, 497 U.S. at 18-19; *Flowers v. Carville*, 310 F.3d 1118, 1129 (9th Cir. 2002); *Lipsig v. Ramlawi*, 760 So. 2d 170, 184 (Fla. 2000). (In each of the cases that Defendant Cosby cites for the proposition that full disclosure of the underlying facts renders an opinion non-actionable, Memo. at 12-13, there was no dispute over the truth of the underlying facts.) Based on the allegations of the Amended Complaint, the Court must assume that any spokesperson who disclosed the "fact" that Defendant Cosby did not assault any of the Plaintiffs, was making a false statement. Therefore, the statements at issue cannot be protected opinion.

Second, a reasonable jury may (and surely will) find that, by virtue of each spokesperson's intimate relationship with Defendant Cosby, **each statement at issue implies the undisclosed and provably false "fact" that Defendant Cosby personally knows that the accusations are not true**. *See Milkovich*, 497 U.S. at 18 ("'In my opinion John Jones is a liar,' . . . implies a knowledge of facts which lead to the conclusion that Jones told an untruth."); *Garrett v. Tandy Corp.*, 295 F.3d 94, 103 (1st Cir. 2003) ("[E]ven a statement that is couched as an opinion may be actionable if it reasonably could be understood by the ordinary listener as implying the existence of undisclosed facts that are false and defamatory."). A reasonable jury would not believe that Defendant Cosby's own spokespersons were merely offering their personal opinions based only upon the facts available to the general public. Rather, in the eyes of the general public, each of Defendant Cosby's three spokespersons appeared to speak with complete authority on the facts of the alleged sexual assaults, because each spokesperson spoke at the direction of Defendant Cosby himself and with his knowledge of the underlying events.[11] This is not the situation where a person offers his uncertain interpretation of conflicting evidence

---

[11] Defendant Cosby's claim that Mr. Singer's November 20 defamatory statement "does not imply that he was an eyewitness to the alleged encounter [with Plaintiff Traitz]," Mot. at 20, is a misdirection. What the November 20 defamatory statement implies is that Defendant Cosby, who **was** an eyewitness, told Mr. Singer what to say.

as a mere observer. *See Tomson I*, 696 F. Supp. at 1412; *see also Phantom Touring*, 953 F.2d at 730-31 (holding that where a speaker occupies a position of authority that gives him access to facts not available to general public, the audience is more likely to regard his statements as fact rather than opinion); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 601 (E.D. N.Y. 2011) (where plaintiff trainer accused Roger Clemens of steroid use, "some of Clemens' statements branding [the plaintiff] a liar contain the actionable implication that [Clemens] knows certain facts, unknown to his audience, which support his opinion" (internal quotation omitted)); *Davis v. Boeheim*, 998 N.Y.S.2d 131, 139 (N.Y. 2014) (where head coach claimed that plaintiff lied by accusing assistant coach of sexual molestation, head coach's position of authority within university indicated his statement was not opinion, because he had access to facts not available to the general public); *cf. Franklin*, 116 Cal. App. 4th at 389 (defendant's stated legal claim regarding copyright held to constitute opinion where speaker did not purport to be an attorney, and thus there was no implication that he was relying upon any specialized, undisclosed knowledge).[12] The general public knew that Defendant Cosby was effectively speaking by and through his spokespersons to proclaim the fact that he was innocent, and that Plaintiffs were liars.

The third circumstance is that none of the statements at issue is couched in terms of opinion. *See Info. Control*, 611 F.2d at 784. To the contrary, the defamatory statements at issue were unambiguous, and plainly designed to put an end to public doubt over Defendant Cosby's supposed innocence. This was not the situation where the speaker weighs conflicting evidence, comes to his own conclusion, and invites the audience to do the same. *See Riley v. Harr*, 292 F.3d 282, 290 (1st Cir. 2002); *Phantom Touring*, 953 F.2d at 730 ("Of greatest importance,

---

[12] Similar to *Franklin*, in *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394 (Cal. Ct. App. 1999), discussed *infra*, the court found that the defendant's commentary upon a legal matter was non-actionable opinion, in a case where the defendant herself was a movie producer rather than a legal expert with specialized knowledge.

however, is the breadth of Kelly's articles, which not only discussed all the facts underlying his views but also gave information from which readers might draw contrary conclusions.").[13]

The fourth circumstance that this case shares with the *Tomson* cases is that the factual claim underlying each of the statements at issue – whether or not Defendant Cosby committed sexual assault – is a discrete claim that is subject to objective proof. *See Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1422 (8th Cir. 1999) (specificity and verifiability of claim each indicate a statement of fact rather than opinion). Defendant Cosby's spokespersons did not purport to offer a personal interpretation of a factually complex issue upon which reasonable persons could differ. Instead, Defendant Cosby's spokespersons stated flatly that the accused misconduct simply did not happen. This distinguishes the instant case from the many cases cited by Defendant Cosby, in which defendants were found not liable for making statements regarding political disputes, labor disputes, or lawsuits. Furthermore, courts are generally hesitant to apply defamation liability in such matters because debates on issues of public concern particularly implicate the First Amendment. *See id.* at 1433; Robert D. Sack, SACK ON DEFAMATION § 4.3.1, 4-32 (4th ed. 2010) ("It must be borne in mind, however, that the likely understanding of listeners to speech in a political or labor context is not the only factor at work in protecting such speech. Particular solicitude is given to protection of such speech as a matter of policy, in order to safeguard the political and labor bargaining process.").

Defendant Cosby places great weight upon what he calls the "predictable opinion doctrine" found in California law. To call this a "doctrine" is something of an exaggeration. The phrase "predictable opinion" appears in four cases cited by Defendant Cosby in his Memo.

---

[13] In the Memo. at 20, Defendant Cosby suggests that, in the November 20 defamatory statement, Mr. Singer did invite the audience to reach its own conclusion regarding the credibility of Plaintiff Traitz, by uttering the phrase "consider the source" at the end of his statement. This argument is not credible. After having expressly accused Plaintiff Traitz of fabrication, and then having raked her over the coals by disclosing part of her criminal history, the obvious meaning of Mr. Singer's parting shot is, "**disbelieve** the source."

at 14. *Dreamstone Entm't Ltd. v. Maysalward Inc.*, 2014 U.S. Dist. LEXIS 116977 (C.D. Cal. 2014) (in breach of contract case, lawyer stated that opposing litigant "maliciously absconded with my clients' valuable intellectual property and hard earned money"); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2013 U.S. Dist. LEXIS 95685 (N.D. Cal. 2013) (in the midst of copyright case, litigant stated that opponent "infringed on the intellectual property of [the litigant]" and that "what [the opponent] did is not fair competition"); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394 (Cal. Ct. App. 1999) (author's accusation against lawyer that previous litigation involving dispute over directorial control of a film, was frivolous), and *Information Control, supra*, 611 F.2d 781 (in the midst of contract dispute, lawyer stated that litigant's filing suit was a "device . . . to avoid payment of its obligations"). In each case, the court noted that the defendant was taking a "predictable opinion" **as a party to a lawsuit**, which is the defining characteristic of these cases. The presence of a lawsuit is significant in at least two ways: First, the lawsuit may be factually complex and give rise to different conflicting interpretations and therefore opinion, *see Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (book regarding lawyer's performance in murder trial held to constitute opinion); and, second, there is value in allowing free commentary on public judicial proceedings, *see Info. Control*, 611 F.2d at 783-84. Defendant Cosby has identified not a "predictable opinion" doctrine, but rather a judicial reluctance to impose defamation liability for speech arising out of a lawsuit.

In this case, Plaintiffs and Defendant Cosby were not, and had never, engaged in a lawsuit against each other when Defendant Cosby defamed the Plaintiffs. Indeed, there was not even the potential for a lawsuit at the time, because the statute of limitations had run on any sexual assault claim. *See Tomson II*, 699 F. Supp. at 861-62 (where dispute could not give rise to litigation due to past settlement, commentary on the dispute held less likely to constitute opinion;

distinguishing *Information Control*). If anything, the four "predictable opinion" cases (in reality, lawsuit cases) cited by Defendant Cosby, favor the Plaintiffs' position. These four cases certainly do not hold that a defendant may freely make defamatory statements so long as they are "predictable." Otherwise a defendant would be free to defame as a liar any person who truthfully accuses him of misconduct, which is contrary to the numerous cases cited *supra* finding such conduct actionable.

Plaintiffs close their discussion of the opinion/fact by addressing the issue of "puffery." *See* Memo. at 22 (citing *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 130-31 (1st Cir. 1997)). In the first place, none of the spokespersons here used puffery at all. It is apparent that each spokesperson literally meant every word he used. Compare *Ferlauto*, 74 Cal. App. 4th 1394, where the court found that the defendant's book was rife with "caricature, imaginative expression, and rhetorical hyperbole," which "generally constitute a legitimate exercise of literary style." *Id.* at 1403.[14]

In any event, contrary to what Defendant Cosby seems to suggest, the mere use of heated rhetoric in a defamatory statement does not automatically transform the statement into opinion. (Indeed, the use of heated rhetoric may increase the damage to the plaintiff's reputation.) What case law does hold is that an exaggerated statement **that no reasonable person would believe presents facts**, is not actionable. *See Levinsky's, Inc.*, 127 F.3d at 128 (store manager's statement that competitor's store was "trashy" held not actionable, whereas it was actionable for manager to state that upon calling competitor's store "you are sometimes put on hold for 20 minutes – or the phone is never picked up at all"). The fact that the spokespersons used heated rhetoric did not transform the statements at issue into opinions. To the contrary, words such as

---

[14] The *Ferlauto* court further noted that over the course of an entire book, the defendant committed only a single, insubstantial factual error, *id.* at 1404. In contrast, the statements here at issue are **devoted** to the material and false claim that Defendant Cosby did not assault the Plaintiffs.

"ridiculous," "absurd," and "fabrication" had the opposite effect.  They intentionally conveyed to the general public that there was no room for doubt: The Plaintiffs were lying and the accused misconduct did not occur.  "This is not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that [the plaintiff lied]." *Milkovich*, 497 U.S. at 21.

Defendant Cosby communicated a provably false statement of fact: Defendant Cosby never sexually assaulted the Plaintiffs, and therefore the Plaintiffs are lying.  It would be error for the Court to rule that any of the statements at issue is pure "opinion."

### VII.  THE COURT CANNOT DECIDE ON A RULE 12(b)(6) MOTION THAT MR. PHILLIPS DID NOT ISSUE THE WASHINGTON POST STATEMENT IN NOVEMBER OF 2014.

Defendant Cosby contends that The Washington Post statement was exclusively issued in 2005, and therefore Plaintiff Green's claim based on this statement is time-barred.[15]  To the contrary, the Amended Complaint alleges that Mr. Phillips issued The Washington Post statement in November of 2014.  Defendant Cosby is asking the Court to resolve a classic factual dispute on a Rule 12(b)(6) motion, which the Court cannot do.

In the November 22, 2014 Washington Post article that contains The Washington Post statement, attached hereto as *Exhibit 1*, the author wrote unequivocally that Mr. Phillips had issued the statement "this past week."  This supports the inference that Mr. Phillips issued the statement for the very first time in November of 2014; or that, in November of 2014, Mr. Phillips gave The Washington Post a copy of a statement that he originally published in 2005; or that, in November of 2014, Mr. Phillips directed The Washington Post to republish the older statement.

---

[15] Even if Defendant Cosby is correct, the proposed Second Amended Complaint would moot his argument, because it alleges that even if The Washington Post statement was first published in 2005, Defendant Cosby is liable for its foreseeable republication in 2014.

Under any of these scenarios, there is a basis to allege that Mr. Phillips made the Washington Post statement in November of 2014.

Defendant Cosby asks the Court to simply disregard these possibilities, by asking the Court to take judicial notice of a subsequent revised version of the November 22, 2014 article, published on December 12, 2012. The revised article includes a new paragraph at the beginning ("the Correction paragraph"), according to which "[t]he statement [at issue] was made when Green's allegations first surfaced in 2005." There are multiple flaws in Defendant Cosby's argument.

First, the Court cannot take judicial notice of the Correction paragraph. The Correction paragraph contains no actionable defamatory language, and thus is not the basis of Plaintiff Green's claim and is not incorporated into the pleadings. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). The Court also cannot take judicial notice of this evidence, because Defendant Cosby is introducing it to prove the truth of the matter asserted in the Correction paragraph. *See Kosilek v. Spencer*, 889 F. Supp. 2d 190, 215 n.6 (D. Mass. 2012); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D. N.Y. 2013). Nor can the Court consider the Correction paragraph even if it converts Defendant Cosby's Motion to a request for summary judgment, *see* Rule 12(d), because the Correction paragraph is hearsay, and neither signed nor sworn. *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 689-90 (1st Cir. 1993).

Second, even if the Court does take consideration of the Correction paragraph, the Amended Complaint supports the inference that in November of 2014, Mr. Phillips gave The Washington Post a copy of a statement that he originally published in 2005; or that, in November

of 2014, Mr. Phillips directed The Washington Post to republish the older statement. Either

scenario is consistent with the Correction paragraph.

Finally, at most the Correction paragraph creates a dispute of fact for the jury. *See*

*Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (contradiction within witness's

testimony presents issue for trier of fact). A reasonable jury may choose to believe the original

article over the revised article. Additionally, any factual dispute indicates the need for further

discovery, under Rule 12(d) and/or Rule 56(f). *See Exhibit 2*, Declaration of Joseph Cammarata,

Esquire at ¶ 3).

There is a factual dispute over when and how The Washington Post statement came to be

published. The Court would not be able to resolve this dispute on summary judgment, much less

can the Court do so on a Rule 12(b)(6) motion.

### VIII.   THE COURT CANNOT RULE AS A MATTER OF LAW THAT THE INCREMENTAL HARM DOCTRINE APPLIES.[16]

#### A. Neither California nor Florida recognizes the incremental harm doctrine.

The incremental harm doctrine, a branch of the broader libel-proof doctrine, precludes a

claim when the defendant makes a defamatory statement that contains true material so damaging

to the plaintiff's reputation, that the false material cannot do further damage. *See Thomas v.*

*Telegraph Publ'g Co.*, 929 A.2d 991, 1002-03 (N.H. 2007). It does not appear that California or

Florida recognize this doctrine.

---

[16] Defendant Cosby has only expressly requested that the Court apply the incremental harm doctrine, in the Memo. at 27-28, and not the separate "issue-specific" libel-proof doctrine. *See Thomas v. Telegraph Publ'g Co.*, 929 A.2d 991, 1002-04 (N.H. 2007). Had Defendant Cosby requested that the Court apply the issue-specific libel-proof doctrine, presumably he would have asked the Court to dismiss both of Plaintiff Traitz's claims, not just her claim premised on the November 20 defamatory statement. If Defendant Cosby raises the doctrine at a later date, Plaintiffs reserve the right to provide further argument on the merits. In any event, the Court cannot dismiss the case based on the issue-specific libel-proof doctrine, both because it has not been raised, and also for substantially the same reasons that the Court cannot dismiss the case based on the related incremental harm doctrine.

As to California, *see Masson v. New Yorker Magazine* (hereinafter *Masson I*), 501 U.S. 496, 523 (1991) (holding that First Amendment does not justify incremental harm doctrine, and noting that the doctrine has not been independently adopted by California as a matter of state law); *Masson v. New Yorker Magazine* (hereinafter *Masson II*), 960 F.2d 896, 898-99 (9th Cir. 1992) (confirming that California does not recognize incremental harm doctrine);

Neither does it appear that Florida has adopted the incremental harm doctrine. A Lexis.com search turns up not a single Florida state appellate decision or federal decision in a defamation case, containing the phrases "incremental harm" or "libel-proof." Moreover, whereas Florida's standardized jury instructions include several defenses, they do not include the incremental harm or issue-specific libel-proof doctrines. *See* Fla. Standardized Jury Instructions – Civil Cases § 405.9 ("Defamation -- Issues on Plaintiff's Claim – Private Claimant").

As the D.C. Circuit explained, in rejecting the incremental harm doctrine: "The law . . . proceeds upon the optimistic premise that there is a little bit of good in all of us -- or perhaps upon the pessimistic assumption that no matter how bad someone is, he can always be worse." *Liberty Lobby v. Anderson*, 746 F.2d 1563, 1568 (D.C. Cir. 1984) (Scalia, J.), *vacated on other grounds*, 477 U.S. 242 (1986); *accord Sargeant v. Serrani*, 866 F. Supp. 657, 666 n.13 (D. Conn. 1994); *see also Noonan v. Staples, Inc.*, 707 F. Supp. 85, 90 (D. Mass. 2010) (declining to apply incremental harm doctrine); *Stern v. Cosby*, 645 F. Supp. 2d 258, 270 (S.D. N.Y. 2009) ("There is some question . . . as to whether the libel-proof plaintiff doctrine is valid in the wake of the Supreme Court's decision in *Masson* . . . , where the Court held that the incremental harm doctrine – the 'cousin' of the libel–proof doctrine, . . . is not properly grounded in the First Amendment, and therefore not valid under federal law.").

Defendant Cosby cannot avoid liability under the incremental harm doctrine, because apparently it has not been adopted in California or Florida.

**B.      Assuming *arguendo* that the incremental harm doctrine could apply to this case, the Court cannot apply the doctrine as a matter of law (at least at this stage), because the parties need to conduct discovery on damages and there are material factual disputes.**

**1.   The Court should not consider Plaintiff Traitz's criminal record print-out to be part of the November 20 defamatory statement.**

The print-out of Plaintiff Traitz's criminal record, included within *Exhibit F* of the Motion, is not a part of the November 20 defamatory statement.  Therefore, it is immaterial to the incremental harm doctrine.

By Mr. Singer's own admission in his affidavit attached to the Motion, when he forwarded the November 20 defamatory statement to media outlets, he attached the criminal record to the November 20 defamatory statement only in "some" instances.  Declaration of Martin D. Singer in Support of William H. Cosby Jr.'s Motion to Dismiss at ¶ 7.  This term is conspicuously left undefined.  Therefore, for purposes of the Motion, Plaintiff Traitz's criminal record print-out cannot be considered as part of the November 20 defamatory statement, because it is disputed whether the print-out is an authentic part of the November 20 defamatory statement referred to in the Amended Complaint.  *See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) ("When the complaint relies upon a document, **whose authenticity is not challenged**, such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." (emphasis added, internal quotation omitted)).

Furthermore, even if the Court were to give any weight to the criminal record print-out, there is no way to tell how widely the print-out was publicized.  Thus it is impossible to rule as a

matter of law that the print-out ruined Plaintiff Traitz's reputation beyond recovery. *See Brooks v. Am. Broadcast Co.*, 932 F.2d 495, 501-02 (6th Cir. 1991) (reversing grant of summary judgment because evidence showed only limited publicity of prior misconduct); *Thomas*, 929 A.2d at 1005 (reversing grant of summary judgment because "criminal convictions, alone, are not enough to justify application of the doctrine" without sufficient publicity); *McBride v. New Braunfels Herald-Zeitung*, 894 S.W.2d 6, 10 (Ct. App. Tex 1994) (same reasoning as *Thomas*).

### 2. At this stage, the Court cannot determine as a matter of law that Plaintiff Traitz has suffered no injury, based on the incremental harm doctrine.

It is inappropriate to apply the incremental harm doctrine to dismiss a defamation case where there are material factual disputes, and there has been no discovery on the issue of damages. *See Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594 (S.D. N.Y. 1996) (declining to grant summary judgment based on libel-proof doctrine), *aff'd sub nom.*, *Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001). Here, there are anticipated factual disputes that a jury should resolve, and that demand discovery on damages. *See Exhibit 2*, Declaration of Joseph Cammarata, Esquire at ¶ 4.

Even the courts that have applied the libel-proof doctrine recognize that it "is to be applied with caution . . . since few plaintiffs will have so bad a reputation that they are not entitled to obtain redress for defamatory statements" *Guccione v. Huster Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986). Plaintiff Traitz is not a member of the Mafia, *cf. Cardillo v. Doubleday & Co.*, 518 F.2d 638 (2d Cir. 1975), *Cerasani v. Sony Corp.*, 991 F. Supp. 343 (S.D. N.Y. 1998), nor is Plaintiff Traitz a violent criminal who is presently incarcerated at the time of suit, *cf. Lavergne v. "Dateline" NBC*, 2014 U.S. Dist. LEXIS 32210, *13-14 (W.D. La. 2014), *Jackson v. Longcope*, 476 N.E. 2d 617 (Mass. 1985). Based on Mr. Singer's typewritten November 20 defamatory statement (because the criminal record print-out is not under

consideration), the Court cannot say as a matter of law at this stage that Mr. Singer's limited recitation of Plaintiff Traitz's criminal record was so devastating, that the false claim that Plaintiff Traitz lied about being assaulted by Defendant Cosby had no effect upon her reputation.

Indeed, the obvious thrust of the November 20 defamatory statement is that **Plaintiff Traitz is a liar for having accused Defendant Cosby**, not her criminal record. Hence Plaintiff Traitz attests that it is the claim that she has falsely accused Defendant Cosby that has harmed her reputation. *See Exhibit 3*, Declaration of Linda Traitz at ¶ 6. In contrast, it is doubtful that the general public would care about Plaintiff Traitz's criminal record, standing alone. As Plaintiff Traitz forthrightly acknowledges in her attached Declaration at Paragraphs 2 and 3, Plaintiff Traitz's criminal history largely stems from her past addiction to painkillers. This is not at all comparable to the subject matter of the defamation, *i.e.*, that Plaintiff Traitz "falsely" accused Defendant Cosby. Given that Defendant Cosby defamed Plaintiff Traitz in a manner totally unrelated to her drug history, a reasonable jury may find that being defamed as a false accuser brought fresh disrepute upon Plaintiff Traitz.

Furthermore, per the November 20 defamatory statement itself, Plaintiff Traitz has not incurred any criminal convictions since 2008. Since that time, Plaintiff Traitz beat her addiction to painkillers and rehabilitated her reputation. *See Exhibit 3*, Declaration of Plaintiff Linda Traitz at ¶ 5. A reasonable jury may credit this. *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1074 (5th Cir. 1987) (denying summary judgment under the libel-proof doctrine where plaintiffs submitted affidavits demonstrating rehabilitation in the six years since criminal convictions); *Da Silva v. Time Inc.*, 908 F. Supp. 184, 187 (S.D. N.Y. 1995) (denying summary judgment under libel-proof doctrine where plaintiff submitted affidavit demonstrating rehabilitation since she ceased working as a prostitute).

The November 20 defamatory statement defames Plaintiff Traitz by claiming that she falsely accused a popular celebrity of a sex crime.  It would not be just to bar Plaintiff Traitz from the courthouse to seek redress after Defendant Cosby lied about and defamed her, merely because Defendant Cosby also released records of Plaintiff Traitz's criminal past, from which she has moved on.  A reasonable jury may find that the defamatory portion of the November 20 defamatory statement did, indeed, cause at least some "incremental harm" to Plaintiff Traitz; or, at least, Plaintiffs are entitled to discovery on the issue.

## IX.     THE GIST OF THE NOVEMBER 20 DEFAMATORY STATEMENT IS COMPLETELY FALSE.

A reasonable jury may find that the November 20 defamatory statement is not substantially true.  *See Hughes v. Hughes*, 122 Cal. App. 4th 931, 936-37 (Cal. Ct. App. 2004) (whether a statement is substantially true is ordinarily a jury question); *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 1999) (trial court erred by not delivering jury instruction on substantial truth).  As the Supreme Court explained in *Masson*, 501 U.S. at 516-17:

> As in other jurisdictions, California law permits the defense of substantial truth and would absolve a defendant even if she cannot "justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of **slight inaccuracy in the details**." . . . . **Minor inaccuracies** do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified." . . . . Put another way, the statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."

(Emphasis added, citations omitted.)  *Accord Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107-08 (Fla. 2008).

Mr. Singer did not simply err in the "details" when he stated that Plaintiff Traitz falsely accused Defendant Cosby.  Rather, the entire gist of the November 20 defamatory statement is false.  As noted *supra*, the central thesis of the November 20 defamatory statement is that

Plaintiff Traitz lied when she accused Defendant Cosby. Plaintiff Traitz's criminal history is a totally different subject and of secondary importance, in the November 20 defamatory statement; Mr. Singer only brought it up to discredit her accusation. Mr. Singer's accusation that Plaintiff Traitz lied about Defendant Cosby is the most important element of the November 20 defamatory statement. Therefore, the November 20 defamatory statement as a whole is not substantially true.

Furthermore, the mere fact that the false portion and the true portion of the November 20 defamatory statement each damage Plaintiff Traitz's reputation, does not make the statement as a whole substantially true. *See Gannett Co., Inc. v. Preston*, 496 A.2d 553, 557-58 (Del. 1985) (where article about inventor truthfully recounted recent indictments against him, but also misleadingly stated that an earlier demonstration of his invention was a failure, held statement was not substantially true as a matter of law); RESTATEMENT (2ND) OF TORTS § 581A Cmt. f ("It is also the truth or falsity of the particular charge that is to be determined. It is not enough that the accused person is found to have engaged in some other substantially different kind of misconduct even though it is equally or more reprehensible.").

Surely, if Mr. Singer had not issued the November 20 defamatory statement in its present form, but instead had told the truth and admitted that Plaintiff Traitz's accusation was accurate, then the November 20 defamatory statement "would have [had] a different effect on the mind of the reader." *Masson*, 501 U.S. at 517. Thus, a reasonable jury may find that the November 20 defamatory statement was not substantially true.

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendant's Motions to Dismiss for Failure to State a Claim.

Respectfully submitted,

*/s/ Joseph Cammarata*
Joseph Cammarata, Esquire
**CHAIKIN, SHERMAN, CAMMARATA &**
   **SIEGEL, P.C.**


*/s/ Matthew W. Tievsky*
Matthew W. Tievsky, Esquire
**CHAIKIN, SHERMAN, CAMMARATA &**
   **SIEGEL, P.C.**
The Law Building
1232 Seventeenth Street, N.W.
Washington, D.C. 20036
Ofc: (202) 659-8600
Fax: (202) 659-8680
E-mail: Joe@dc-law.net
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of March, 2015, a copy of the foregoing Memorandum in Support of Plaintiffs' Opposition to Defendant's Motions to Dismiss for Failure to State a Claim, was served by Case Management / Electronic Case Files upon:

> Francis D. Dibble, Jr.
> Jeffrey E. Poindexter
> Bulkley Richardson & Gelinas
> 1500 Main Street
> Suite 2700
> P.O. Box 15507
> Springfield, MA 01115
>
> Robert P. LoBue
> Patterson Belknap Webb & Tyler, LLP
> 1133 Avenue of the Americas
> New York, NY 10036
>
> Andrew Abraham, Esquire
> Abraham & Associates, P.C.
> 2 Center  Plaza, Suite 620
> Boston, MA 02108

> /s/ Joseph Cammarata
> Joseph Cammarata, Esquire

41