UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

TAMARA GREEN;
THERESE SERIGNESE; and
LINDA TRAITZ

                           Plaintiffs,

       v.

WILLIAM H. COSBY, JR.,

                           Defendant.

Civil Action No.:
14-cv-30211 (MGM)

**WILLIAM H. COSBY JR.'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTIONS TO DISMISS**

Robert P. LoBue
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2000
Fax:  (212) 336-2222

Francis D. Dibble, Jr.
Jeffrey E. Poindexter
BULKLEY, RICHARDSON AND GELINAS, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115
Telephone: (413) 781-2820
Fax: (413) 272-6806

*Attorneys for William H. Cosby, Jr.*

# TABLE OF CONTENTS

**Page**

I.    THE RELEVANT STATEMENTS ARE CONSTITUTIONALLY
      PROTECTED OPINIONS OR NON-DEFAMATORY STATEMENTS
      OF FACT ...........................................................................................................1

      A.  This Court Should Examine the Actual Text of the Statements in Light of the
          Principle That Statements of Opinion Are Constitutionally Protected and Non-
          Defamatory Statements Are Not Actionable .......................................................1

      B.  The Actual Text of the Statements Reveals They Are Either Protected Opinion
          or Non-Defamatory...............................................................................................4

          1.    The Newsweek Statement..............................................................................4

          2.    The November 20 Statement ........................................................................5

          3.    The November 21 Statement ........................................................................6

II.   THE STATEMENTS ARE PROTECTED BY THE SELF-DEFENSE
      PRIVILEGE......................................................................................................7

III.  PLAINTIFFS HAVE FAILED TO PLAUSIBLY PLEAD VICARIOUS
      OR DIRECT LIABILITY...................................................................................10

IV.   THE NOVEMBER 21 STATEMENT IS NOT OF AND CONCERNING
      PLAINTIFFS TRAITZ AND SERIGNESE ........................................................12

V.    PLAINTIFF TRAITZ'S CLAIMS SHOULD BE DISMISSED BECAUSE
      THE NOVEMBER 20 STATEMENT IS SUBSTANTIALLY TRUE
      AND COULD NOT HAVE CAUSED INCREMENTAL HARM TO HER
      REPUTATION FOR TRUTHFULNESS ............................................................15

VI.   PLAINTIFF GREEN'S CLAIM BASED ON THE WASHINGTON
      POST STATEMENT IS BARRED BY THE STATUTE OF
      LIMITATIONS.................................................................................................16

CONCLUSION...............................................................................................................19

William H. Cosby, Jr. respectfully submits this reply memorandum in support of his

motions to dismiss Counts I, II and III of the Amended Complaint (the "Amended Complaint")

asserted by Plaintiffs Tamara Green, Therese Serignese, and Linda Traitz, respectively.

## I.    THE RELEVANT STATEMENTS ARE CONSTITUTIONALLY PROTECTED OPINIONS OR NON-DEFAMATORY STATEMENTS OF FACT

### A.   This Court Should Examine the Actual Text of the Statements in Light of the Principle That Statements of Opinion Are Constitutionally Protected and Non-Defamatory Statements Are Not Actionable

Plaintiffs' response, like the Amended Complaint, rests on their characterization of the

Statements, and not the actual text.  But the allegedly defamatory words uttered—and there is no

dispute as to the identity and content of the Statements as annexed to Defendant's motion—

cannot be ignored.  The determination whether those words constitute protected opinion is a

matter of law for the court.  *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1016 (1st Cir. 1988);

*Langadinos v. Bd. of Trs. of the Univ. of Mass.*, No. 12-11159-GAO, 2013 U.S. Dist. LEXIS

140767, at *36 (D. Mass. Aug. 29, 2013).  Similarly, "[t]he question of whether a [factual]

statement is reasonably susceptible of defamatory meaning is a threshold question for the court."

*Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012).  The court's analysis should begin with "the

allegedly defamatory words themselves" and then turn to an examination of whether the

statements are verifiable, the context in which the statement occurs, and the broader social

context into which the statement fits.  *Gillette Co. v. Norelco Consumer Prods. Co*., 946 F. Supp.

115, 137 (D. Mass. 1996).  Plaintiffs ignore these important steps in their rush to mischaracterize

each of the Statements as a "false[] claim[] that the plaintiff is lying."  (*See* Opp. at 17.)

Plaintiffs do not dispute that statements of opinion are constitutionally protected.  *See*

*Veilleux v. NBC*, 206 F.3d 92, 108 (1st Cir. 2000); *see also Hotchner v. Castillo-Puche*, 551 F.2d

910, 913 (2d Cir. 1977) ("A writer cannot be sued for simply expressing his opinion of another

1

person, however unreasonable the opinion or vituperous the expressing of it may be.").  Nor do

they dispute that an opinion based on *disclosed* facts is not actionable.  *See Lewis v. Time, Inc.*,

710 F.2d 549, 556 (9th Cir. 1983) ("[W]here a publication sets forth the facts underlying its

statement of opinion that someone is dishonest, and those facts are true, the Constitution protects

that opinion from liability for defamation.").  Further, Plaintiffs do not dispute that the

Statements *did* disclose facts underlying the relevant opinions.  Instead, Plaintiffs assert that this

Court must assume that "each statement at issue implies the undisclosed and provably false 'fact'

that Defendant Cosby personally knows that the accusations are not true."  (Opp. at 26.)  The

cases Plaintiffs cite in support of this theory, however, say nothing of the sort.  *Milkovich* and

*Garrett* stand for the unremarkable proposition that an otherwise factual statement cannot escape

liability for defamation simply because the speaker prefaces the statement with "[i]n my

opinion" or "I suspect."  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990); *Garrett v.

Tandy Corp.*, 295 F.3d 94, 104 (1st Cir. 2002).  Plaintiffs' citation of these cases misses the

point:  Defendant does not argue that the Statements are protected opinions because Mr. Cosby's

spokespersons characterized them as such.  Rather, the Statements are opinions because (i) they

are not statements of fact and are not provable as false (*see* Defendant's Mem. at 12-23) and/or

(ii) they *did* disclose the facts on which they were based.[1]  *See Yohe v. Nugent*, 321 F.3d 35, 41

(1st Cir. 2003) (opinion "based on disclosed nondefamatory facts" is not actionable); *Riley v.

Harr*, 292 F.3d 282, 289 (1st Cir. 2002) ("when an author outlines the facts available to him, thus

making it clear that the challenged statements represent his own interpretation of those facts and

---

[1] The supposed "implication" Plaintiffs seek to draw should also be rejected because the Constitution requires "a greater showing to prove defamation by implication."  *Tomblin v. WHCS-TV8*, 434 F. App'x 205, 219 (4th Cir. 2011).  "[I]f a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, **the libel is not established.**"  *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990) (emphasis added).

leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.").

The very fact that the Statements were issued by Mr. Cosby's spokespersons would make a reader *more likely* to understand them as "predictable opinions." "[T]he average reader would expect the press release to relate a predictably one-sided account" of the alleged sexual assaults. *Dreamstone Entm't Ltd. v. Maysalward Inc.*, No. 2:14-cv-02063-CAS(SSx), 2014 U.S. Dist. LEXIS 116977, at *17-18 (C.D. Cal. Aug. 18, 2014); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. CV 10-5696 CRB, 2013 U.S. Dist. LEXIS 95685, at *14 (N.D. Cal. July 9, 2013) (a statement written "from its own perspective to paint itself in a better light" is understood as a "predictable opinion," rather than a statement of fact). Plaintiffs attempt to distinguish cases applying the predictable opinion doctrine on the basis that the relevant defendants were "a party to a lawsuit." (Opp. at 29.) Contrary to Plaintiffs' assertion, however, that is not "the defining characteristic of these cases." (*Id.*)[2] Rather, the predictable opinion doctrine applies whenever statements are published in a "setting in which the audience may anticipate efforts by the parties to persuade others to their positions." *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401-02 (Ct. App. 1999); *see also Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 729 (1st Cir. 1992) (no claim for defamation where "the context of each article" and the "sum effect of the format, tone and entire content of the articles is to make it unmistakably clear that [the speaker] was expressing a point of view only"). Here, the sum effect of the articles—which presented Plaintiffs' accusations and then a statement by Mr.

---

[2] A separate privilege protects statements made in the course of litigation. *See* Cal. Civ. Code § 47(b); *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007).

Cosby's spokespersons—makes it unmistakably clear that Mr. Cosby's spokespersons were expressing a particular point of view.

Faced with the absence of defamatory factual language in the Statements, and the absence of supportive case law from any of the three potentially relevant jurisdictions, Plaintiffs instead rely extensively on a pair of 1988 decisions: *Tomson v. Stephan,* 696 F. Supp. 1407 (D. Kan. 1988) ("*Tomson I*"); 699 F. Supp. 860 (D. Kan. 1988) ("*Tomson II*").  This Court is not bound by a District of Kansas court's analysis of the tort of false light (a tort not pleaded in the present case) under Kansas law.  In any event, the statement analyzed in *Tomson*—in which the speaker held a press conference in order to tell "the people of Kansas 'the truth' about the prior litigation," *Tomson II*, 699 F. Supp. at 862—used materially different terms than Mr. Cosby's spokespersons used here.  Mr. Cosby's spokespersons did not purport to discuss "the truth" of Plaintiffs' accusations and invited the readers to make up their own minds.

### B.  The Actual Text of the Statements Reveals They Are Either Protected Opinion or Non-Defamatory

#### 1.   The Newsweek Statement

Ms. Green alleges that Mr. Cosby's publicist, acting as his agent, stated:  "This is a 10-year-old, discredited accusation that proved to be nothing at the time, and is still nothing."  The Newsweek Statement does not refer to Ms. Green as a liar, nor does it accuse Ms. Green of lying.  The actual words in the Newsweek Statement (rather than Plaintiff Green's characterization of them) consist only of non-defamatory statements or constitutionally protected opinions.

In an attempt to manufacture defamatory meaning, Plaintiff Green argues that characterizing her accusation of Mr. Cosby as "nothing" is "susceptible of defamatory meaning because it means that Plaintiff Green's accusation is supposedly 'of no interest, value, or consequence.'"  (Opp. at 22 (citing Merriam-Webster.com).)  But recasting the actual words of

the Statement in that fashion only confirms that it is opinion:  these are "imprecise, inherently subjective" judgments that convey no factual assertion.  *Cluff v. O'Halloran*, No. 99-0428A, 2000 Mass. Super. LEXIS 474, at *17-19 (Super. Ct. Dec. 22, 2000); *see also Veilleux*, 206 F.3d at 108.  Plaintiff Green never explains, moreover, why a statement that Ms. Green's 10-year-old accusation against Mr. Cosby "proved to be nothing at the time, and is still nothing" is (if treated as factual) *defamatory of Ms. Green*.  A statement is only defamatory when it holds "the plaintiff up to contempt, hatred, scorn, or ridicule or tend[s] to impair his standing in the community, at least to his discredit in the minds of a considerable and respectable class in the community." *Yohe*, 321 F.3d at 40 (quotation marks omitted).  Plaintiff Green never explains why a statement that her accusation against Mr. Cosby was "of no interest, value, or consequence" would tend to impair Ms. Green's standing in the community.

Finally, any statements that could be considered factual are also true.  As explained in Mr. Cosby's initial memorandum of law, nothing came of Ms. Green's accusations against Mr. Cosby:  she did not pursue them legally, and Mr. Cosby has never been charged or held legally responsible for sexually assaulting Ms. Green (or anyone else).  Plaintiff Green does not dispute these facts.

### 2.      The November 20 Statement

The November 20 Statement uses three words to characterize Ms. Traitz's accusations: "unsubstantiated," "ridiculous," and "fabrications," explains the factual basis for those characterizations, and then asks the reader to "consider the source."[3]

---

[3] Plaintiffs contend that Ms. Traitz's criminal history (Exh. F) may not properly be considered on this motion to dismiss because Mr. Singer states that he did not include it in every copy he distributed of the November 20 Statement.  But regardless of whether the criminal record is itself considered by this Court, there can be no doubt that the November 20 Statement disclosed that it relied on Ms. Traitz's "extensive criminal record with charges spanning from the 1980s through 2008" that included "charges for criminal fraud, possession of Oxycodone,

Plaintiffs do not dispute that calling a specific accusation "unsubstantiated" cannot be considered defamatory of the accuser. Nor do they respond to Defendant's prior explanation that the term "ridiculous" is mere epithet or rhetorical hyperbole, and thus opinion. *See* (Defendant's Mem. at 20); *Veilleux*, 206 F.3d at 115 ("rhetorical hyperbole" and "imaginative expression" are constitutionally protected). Instead, Plaintiffs' argument with respect to the November 20 Statement is focused on the word "fabrication." In context, however, the statement that Ms. Traitz fabricated a story about a briefcase of drugs is opinion, because the remainder of the Statement sets forth the facts supporting the conclusion that this was a fabrication—*i.e.,* that Ms. Traitz made accusations "for the first time" more than 40 years after the alleged event is said to have occurred, and that Ms. Traitz has an "extensive criminal record," including "charges for criminal fraud"—and then asks readers to "consider the source." This statement is thus an opinion based on disclosed facts that is constitutionally protected. *See Yohe*, 321 F.3d at 41 (opinion "based on disclosed nondefamatory facts" is not actionable); *Phantom Touring*, 953 F.2d at 730 (noting protection where readers are "invited to draw their own conclusions").

### 3.     The November 21 Statement

The November 21 Statement contains only constitutionally protected opinions and/or non-defamatory statements. This statement describes "[t]he new, never-before-heard claims from women who have come forward in the past two weeks" as "unsubstantiated."

Plaintiffs again do not dispute that the term "unsubstantiated" is a statement of opinion. Nor do they offer any support for their argument that phrases such as "far past the point of

---

cocaine possession, marijuana possession, and possession of drug paraphernalia." There can thus be no dispute that the November 20 Statement fully disclosed the portions of Ms. Traitz's criminal history that it relied on. Nor is there any dispute that the November 20 Statement's description of Ms. Traitz's criminal record is truthful. A certified copy of Ms. Traitz's criminal record is submitted herewith as Exhibit 1 to the Declaration of Jared S. Buszin, Esq.

absurdity," "increasingly ridiculous," "completely illogical," and "it makes no sense" are anything other than rhetorical hyperbole and therefore protected statements of opinion.  Indeed, commenting on whether something is *logical* or *makes sense* is the archetype of an opinion.  It is not provably true or false whether something is absurd, ridiculous, illogical, or makes no sense— those are all judgments that the reader is invited to make.  Plaintiffs seem to put special weight on the word "fantastical," but in context, this word means no more than any of the others:  it is a rhetorical tool designed to express that the accusations against Mr. Cosby make no sense.

Moreover, Mr. Cosby's spokesperson set forth the reasons supporting his conclusion— the accusations were "never-before-heard claims" about events that allegedly occurred "30, 40 or even 50 years ago" and "it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement" over so many years.  Contrary to Plaintiffs' assertion, these characterizations do not imply special knowledge:  rather, they express the subjective opinion (based on reasons that were fully disclosed) that the accusations against Mr. Cosby were improbable.  The statements describing the accusations against Mr. Cosby as "fantastical," "increasingly ridiculous," and "completely illogical" are not only incapable of being proved true or false, but also would not be understood by the reader as statements of fact. *See Levinsky's, Inc.*, 127 F.3d at 130-31 ("[E]xcesses of language" that involve "puffery or epithets" are "insufficiently fact-based" to support a claim for defamation).

## II.    THE STATEMENTS ARE PROTECTED BY THE SELF-DEFENSE PRIVILEGE

Plaintiffs' own authority recognizes that "[g]eneral denials of accusations are not actionable as defamation."  *McNamee v. Clemens*, No. 09-cv-1647 (SJ) (CLP), 2013 U.S. Dist. LEXIS 107551, at *9-11 (E.D.N.Y. July 31, 2013) (cited at p. 27 of Opp.).  Plaintiffs do not dispute that Massachusetts has adopted the privilege of self-defense.  Nor can they.  *See Conroy v. Fall River Herald News Publ'g Co.*, 28 N.E.2d 729, 730 (Mass. 1940) ("A libel may be

privileged on the ground of self defence."); *Afrasiabi v. Mottahedeh*, 53 Mass. App. Ct. 1108, 2001 WL 1609074 (App. Ct. 2001) (noting privilege "to respond to verbal attacks").

Instead, Plaintiffs argue that Florida law applies to Ms. Traitz and Ms. Serignese's claims, and that "[t]here is no indication that Florida recognizes a 'self-defense privilege.'" (Opp. at 11.)  Even if Florida law were to apply, Florida courts have never rejected the self-defense privilege, and it should be assumed that the privilege would be recognized in Florida. *See Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984) (noting that "[t]he law of Florida embraces a broad range of the privileged occasions that have come to be recognized under the common law").  In any event, because Florida has not yet addressed the self-defense privilege, there is no conflict between Massachusetts and Florida law.  *See Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29-30 (1st Cir. 1997) ("The first step in performing a choice of law analysis is to determine whether there is a conflict between the substantive laws of the interested jurisdictions.").  Thus, the self-defense privilege applies, at minimum, to the claims brought by Plaintiffs Traitz and Serignese.[4]

Plaintiffs' claim that the self-defense privilege is unavailable to a defendant whose denial is untruthful is equally flawed.  There is no requirement that, to avail oneself of the self-defense privilege, the responsive statement be truthful. For example, the leading Massachusetts case *Conroy* acknowledges that a privileged response may include "a slanderous or libelous attack" where "such attack was necessary" to justify the response, and permits the responding speaker to

---

[4] Plaintiffs argue that choice of law is necessary on the issue of the self-defense privilege and that therefore Florida law applies to Plaintiffs Traitz and Serignese and California law to Plaintiff Green.  However, for reasons discussed in this memorandum, there is no meaningful difference in the law among California, Florida and Massachusetts and thus no choice of law is necessary.  As Defendant discussed in his initial memorandum, one appellate court in California has opined that California does not recognize "self-help" as an independent common law privilege.  That does not affect the result here, however, because statements made in self-defense are privileged under the "predictable opinion" doctrine, which has been consistently applied by California courts.

"brand the accusations as false as calumnious" and "comment upon the motives of the accuser."

306 Mass. at 489.  That result makes sense, for reasons explained in Defendant's opening brief

(at p. 25) but not addressed by Plaintiffs:  a plaintiff must always prove falsity as an element of

the tort of defamation, and truth is an absolute defense in all defamation actions.  *Noonan v.

Staples, Inc.*, 556 F.3d 20, 26 (1st Cir. 2009).  The self-defense privilege is designed to apply

precisely when "the defendant seeks exculpation for falsely detracting from the plaintiff's

reputation."  *Shenkman v. O'Malley*, 157 N.Y.S.2d 290, 301 (1st Dep't 1956).  If Plaintiffs'

characterization of the privilege were accurate—that it would not apply whenever a speaker

denied accusations he knew to be true—then there would be "no need for a privilege" at all.  *Id.*

Moreover, without such a privilege, full and open public discourse would be discouraged:

individuals who were verbally attacked would be deterred even from *truthfully* defending

themselves due to fear of a resulting defamation action.  *See generally New York Times Co. v.

Sullivan,* 376 U.S. 254, 279 (1964) (some falsehood must be tolerated lest truthful speakers

"steer far wide of the unlawful zone").

This is not to say, however, that there are no limitations on the privilege.  In the most

detailed modern exploration of the privilege of self-defense, the Fourth Circuit identified three

factors that courts consider when evaluating whether an utterance is within the privilege:

(1) whether the "reply includes substantial defamatory matter that is 'irrelevant' or 'non-

responsive' to the initial attack"; (2) whether the "reply includes substantial defamatory matter

that is 'disproportionate' to the initial attack"; and (3) whether the publication of reply is

"excessive" in that it is "addressed to too broad an audience."  *Foretich v. Capital Cities/ABC*,

37 F.3d 1541, 1559-60 (4th Cir. 1994).[5]  Plaintiffs do not dispute that each of the Statements is relevant, directly responsive, and proportional to Plaintiffs' accusations.  Defendant therefore did not abuse the privilege, and the Statements are protected.

## III.   PLAINTIFFS HAVE FAILED TO PLAUSIBLY PLEAD VICARIOUS OR DIRECT LIABILITY

Plaintiffs erect a straw man in suggesting that Defendant is claiming that anyone bent on defamation could simply hand his statement to an agent to publish and thereby escape liability.  That is not Defendant's contention.   If Mr. Cosby wrote or read and approved defamatory statements before they were issued, he would be *directly* liable for defamation, irrespective of whether he or his agents personally issued the statements.  But that is not what the Amended Complaint alleges:  it expressly asserts in each Count that Mr. Cosby is liable under the theory of *respondeat superior* (Am. Compl. ¶¶ 80, 91, 102), *i.e., vicarious* liability.

A principal's vicarious liability arises when his agent commits a tort while acting within the scope of employment or with apparent authority, and "*turns on whether the agent is liable*."  Restatement (Third) of Agency § 7.03 & cmt. b. (2006) (emphasis added).   In the context of defamation, a principal can only be vicariously liable if "the person who actually utters the defamation is personally at fault."  Sack on Defamation (hereinafter "Sack") § 2.10, at 2-174 (4th ed. 2010).[6]

Here, Plaintiffs have pleaded no facts that plausibly establish fault on the part of those agents, and therefore their pleading is insufficient to assert a claim of vicarious liability for

---

[5] Plaintiffs argue that *Foretich* is not a case decided upon the self-defense privilege.  While *Foretich* discusses the privilege in the context of a determination as to whether the plaintiffs qualified as limited purpose public figures, it is a clear interpretation and reaffirmation of the privilege and the analysis for applying it.  *Foretich*, 37 F.3d at 1559.

[6] Plaintiffs suggest that Mr. Cosby misrepresented the authority in the Sack treatise by failing to quote a passage that acknowledges that a principal may be personally liable for a statement made by his agent. The passage quoted by Plaintiffs has no relevance in this case because they have alleged only vicarious liability, and have pleaded no facts that would support direct liability.

defamation.  Their conclusory allegations regarding the agents' supposed knowledge or reckless disregard of falsity do not satisfy the minimum pleading standards established by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (affirming dismissal of a defamation action where the complaint "used actual-malice buzzwords" such as "knowledge" and "reckless disregard," but lacked "well-pled facts").  Because the Amended Complaint does not state a plausible defamation claim against Mr. Cosby's agents, there is no liability to impute to Mr. Cosby, and the Court should dismiss Plaintiffs' claims of vicarious liability.

Recognizing these failures, Plaintiffs now suggest that the Amended Complaint alleges the direct liability of Mr. Cosby.  In contrast to vicarious liability, direct liability is based on the principal's "own fault" and "own conduct."  Restatement (Third) of Agency § 7.03 cmt. b; *see also Toland v. Sunland Housing Grp., Inc.*, 955 P.2d 504, 512 (Cal. 1998) (the "traditional theory of direct liability" applies to "the risks created by one's own conduct"); *Martin v. Pacificare of Calif.*, 198 Cal. App. 4th 1390, 1407 (Ct. App. 2011) ("A claim is based on direct liability when a party is held liable for its own acts or omissions.").  The conduct that is "essential to liability," whether it is direct or vicarious, is "publication of the defamatory matter." Restatement (Second) of Torts § 577 & cmt. a (1977).  Therefore, to plead direct liability for defamation based on a statement published by a third party, a plaintiff must plausibly allege that the principal furnished (or, at minimum, saw and approved) its content.  *See Mitchell v. Superior Court*, 690 P.2d 625, 633 (Cal. 1984) ("[I]f a source acting with actual malice furnishes defamatory material to a publisher with the expectation that the material (either verbatim or in substance) will be published, the source should be liable for the publication."); *Smith v.*

*Maldonado*, 72 Cal App. 4th 637, 406 (Ct. App. 1999) (no liability where defendants "were not responsible for *any* written statement or comment themselves").

The Amended Complaint is devoid of any allegation that Mr. Cosby furnished the Statements to his agents for publication, or that he reviewed or ratified them before they were published.  At most, the Amended Complaint offers conclusory allegations that Mr. Cosby "issued" the Statements, but that is merely a reference to Plaintiffs' theory that Defendant is legally responsible for statements published by his spokespersons.  There is no plausible allegation that Mr. Cosby himself published any of the Statements, and thus direct liability is not pleaded.  *See Dockery v. Fla. Democratic Party*, 719 So. 2d 9, 10 (Fla. Dist. Ct. App. 1998); *Martin*, 198 Cal. App. 4th at 1408-09.  Plaintiffs' newly-asserted claim of direct liability should be dismissed.

## IV.   THE NOVEMBER 21 STATEMENT IS NOT OF AND CONCERNING PLAINTIFFS TRAITZ AND SERIGNESE

Plaintiffs' argument glosses over the fact that the November 21 Statement referred to "new, never-before-heard claims" from women accusing Mr. Cosby of misconduct.  As Plaintiff Serignese has publicly stated,[7] she came forward with her accusations against Mr. Cosby in November 2005 as a Jane Doe witness in another lawsuit against Mr. Cosby.  Therefore, the November 21 Statement could not have been "of and concerning" Ms. Serignese because it is indisputable that her accusations were neither "new" nor "never-before-heard."  For this reason alone, it is clear that the November 21 Statement is not "of and concerning" Ms. Serignese.

In addition, Plaintiffs Traitz and Serignese claim that the November 21 Statement is "of and concerning" them because it referred to a relatively small group of women that included

---

[7] Ms. Serignese made this admission in the same Huffington Post article in which she publicly broadcast her accusations against Mr. Cosby, which is therefore deemed incorporated in her complaint.  (*See* Exhibit C to the Declaration of Martin D. Singer, Esq.)

them.  (Opp. at 14-15.)  While it is generally true that an alleged defamation targeted at a group of 25 or more is not actionable by any group member, contrary to Plaintiffs' suggestion a statement is not necessarily "of and concerning" every member of a group just because the group contains fewer than 25 members.  *See Service Parking Corp. v. Wash. Times Co.*, 92 F.2d 502 (D.C. Cir. 1937) (affirming directed verdict against defamation plaintiff who alleged that it had been defamed by an article referring to a group of ten to twelve companies of which it was a member).

A statement about a group, regardless of its size, is "of and concerning" individual members when it can be said "with certainty" that the specific defamatory words were directed toward an identifiable group member.  *See Brewer v. Hearst Publ'g Co.*, 185 F.2d 846, 848-49 (7th Cir. 1950) (holding that a statement was not "of and concerning" plaintiffs because "[f]rom the publication it could not be said *with certainty* that the [defamatory] written words *necessarily* referred to every individual within the group" (emphasis added)); *Noral v. Hearst Publ'ns, Inc.*, 40 Cal. App. 2d 348, 352 (Ct. App. 1940) ("Even where there is a small group involved and the language fails to indicate affirmatively that all members were involved in the charge, it was held that defamatory words must refer to some ascertained or ascertainable person, and that that person must be the particular plaintiff." (quotation marks omitted)); *see also Riverhouse Publ'g Co. v. Porter*, 287 F. Supp. 1, 4 (D.R.I. 1968) ("Defamatory words, in order to be actionable, must refer to some ascertained or ascertainable person, and that person must be plaintiff.  If the words used really contain no reflection on any particular individual, no averment can make them defamatory."); *United Med. Labs., Inc. v. Columbia Broad. Sys., Inc.*, 258 F. Supp. 735, 742 (D. Or. 1966) ("While the size of the class is not of paramount importance, there is a general rule

that no action will lie unless some circumstance makes the statements reasonably susceptible of special application to the plaintiff.").

The D.C. Circuit's decision in *Service Parking* is illustrative.  In that case, the Washington Times published an article accusing unnamed parking lot owners operating in a certain section of Washington D.C. of engaging in an illegal "racket."  In the section of the city referred to in the article, there were only ten to twelve parking lot operators, and one of those operators sued the newspaper for defamation.  The D.C. Circuit nevertheless affirmed a directed verdict in favor of the Washington Times after concluding that the plaintiff had failed to establish that the defamatory words "referred 'solely or especially' to him."  *Service Parking Corp.*, 92 F.2d at 506.  As the D.C. Circuit explained, "if the [defamatory] words reflect impartially on either A. or B., or on some one of a certain number or class, and there is nothing to show which one was meant, no one can sue."[8]  *Id.* at 504 (quotation marks omitted).

The facts in the present case mirror those in *Service Parking*.  According to Plaintiffs, the November 21 Statement referred to a group of eleven women who had come forward with "new, never-before-heard" accusations against Mr. Cosby in the two weeks before the date when the statement was made.  The statement did not identify any specific group member by name and it did not include descriptive information that would have singled out either Ms. Traitz or Ms. Serignese from the rest of the larger group.  Similar to the facts in *Service Parking*, there was nothing in the statement to show that the allegedly defamatory language referred "solely or

---

[8] As one district court later explained, in *Service Parking* the D.C. Circuit held that the newspaper article was not "of and concerning" the plaintiff even though "someone reading the newspaper article there readily could have found out the identities of the few parking-lot owners the article disparaged."  *Alexis v. Williams*, 77 F. Supp. 2d 35, 43 (D.D.C. 1999).  Therefore, it does not matter that someone reading the November 21 Statement could have sought out other sources to determine whether Ms. Traitz and Ms. Serignese had made public accusations within two weeks prior to the November 21 Statement.

especially" to Plaintiffs Traitz and Serignese.  As a result, the statement was not "of and concerning" either of them.

**V.     PLAINTIFF TRAITZ'S CLAIMS SHOULD BE DISMISSED BECAUSE THE NOVEMBER 20 STATEMENT IS SUBSTANTIALLY TRUE AND COULD NOT HAVE CAUSED INCREMENTAL HARM TO HER REPUTATION FOR TRUTHFULNESS**

Under Florida law, which Plaintiff Traitz claims applies to her claims, defamation claims based on statements that were substantially true have consistently been dismissed.  *See, e.g.*, *Marshall v. Amerisys, Inc.*, 943 So. 2d 276 (Fla. Dist. Ct. App. 2006); *Cape Publ'ns, Inc. v. Reakes*, 840 So. 2d 277 (Fla. Dist. Ct. App. 2003); *Cuban Am. Nat'l Found.*, 731 So. 2d 702. Courts have also recognized that a statement, however derogatory, that did not cause damage to reputation is not actionable.  *See Miami Herald Publ'g Co. v. Brown*, 66 So. 2d  679, 681 (Fla. 1953).

"Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."  *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. App. Ct. 1999).   In this case, Ms. Traitz claims that the "gist" or "sting" of the November 20 Statement is that Ms. Traitz is untrustworthy.  Even if that were the case, that "gist" or "sting" is substantially true.  The November 20 Statement truthfully reported that Ms. Traitz has repeatedly been convicted of crimes with an element of fraud or misrepresentation. *See* Fla. Stat. Ann. § 893.13(7)(a) (obtaining controlled substance "by misrepresentation, fraud, forgery, deception, or subterfuge"); *id.* § 817.568 (fraud where person "fraudulently uses, or possesses with intent to fraudulently use personal identification information" of another); *id.* § 901.36(1) (unlawful for one arrested to "give a false name or otherwise falsely identify himself or herself in any way" to "law enforcement").  Ms. Traitz does not and cannot dispute that she committed these  felonies.  Ms. Traitz's criminal record establishes that she is not a reliable

source of information, and a reasonable reader of the November 20 Statement would have come away with that impression even without the purported assertion that she had fabricated her allegation against Mr. Cosby.  The November 20 Statement therefore cannot serve as the basis for a defamation claim.

## VI.   PLAINTIFF GREEN'S CLAIM BASED ON THE WASHINGTON POST STATEMENT IS BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs contend that the Court cannot conclude on a Rule 12(b)(6) motion that Ms. Green's claim based on the Washington Post Statement is time-barred because it would require the Court to resolve a factual dispute.[9]  That conclusion rests on a foundation of faulty premises.

First, Plaintiffs incorrectly assert that the Court must accept as true their allegation that the Washington Post Statement was issued in November 2014 because the original Washington Post article stated that Mr. Phillips issued the relevant statement "this past week."  (Opp. at 31.) That contention misses the mark because the corrected Washington Post article, which is incorporated by reference into Plaintiffs' Amended Complaint,[10] plainly states that Mr. Phillips's statement was issued in 2005.  It is well-established that the "Court need not accept as true allegations that contradict the complaint's exhibits, documents incorporated by reference, or matters properly subject to judicial notice."  *Uyeshiro v. Irongate Azrep BW LLC*, No. 13-00043-ACK-BMK, 2014 U.S. Dist. LEXIS 13046, at *19 (D. Haw. Feb. 3, 2014); *accord Yacubian v.*

---

[9] Plaintiffs argue in the alternative that even if it is undisputed that Mr. Phillips's statement was issued in 2005 instead of 2014, Ms. Green's claim based on that statement would not be time-barred because the statement was foreseeably republished in 2014.  As explained in detail in Mr. Cosby's opposition to Plaintiffs' motion for leave to file a second amended complaint, Ms. Green's claim would still be time-barred under Plaintiffs' alternative theory. Under the single publication rule, all causes of action arising from Mr. Phillips's 2005 statement accrued when it was circulated to the general public in 2005.

[10] For purposes of Ms. Green's claim based on the Washington Post Statement, the corrected article is the relevant version for the court to consider.  *See Catalanello v. Kramer*, 18 F. Supp. 3d 504, 507 n.1, 509 (S.D.N.Y. 2014) (concluding that an allegedly defamatory law review article was incorporated by reference in the plaintiff's complaint where the pleadings also referred to an earlier version of the allegedly defamatory article).

*United States*, 750 F.3d 100, 108 (1st Cir. 2014) (petition for cert. pending); *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008).

Second, Plaintiffs attempt to excise the correction from the Court's analysis by incorrectly arguing that the correction cannot be considered because it does not contain any defamatory language.  (Opp. at 32.)  But contrary to Plaintiffs' assertion, the entire article, including the correction, is incorporated by reference into the Amended Complaint.  *Fudge*, 840 F.2d at 1015.  As the First Circuit held in *Fudge*, a district court may properly consider an article containing allegedly defamatory words when ruling on a motion to dismiss because the entire article is central to the plaintiff's defamation claim.  *Id.* at 1015.  Courts have uniformly held that allegedly defamatory statements should not be examined in a vacuum but instead must be analyzed in context.  *See Veilleux*, 206 F.3d at 111; *Phantom Touring, Inc.*, 953 F.2d at 726. Doing so requires the Court to read the entire article in which the allegedly defamatory statement was published.

Plaintiffs also attempt to avoid the implications of the Washington Post's correction by trying to manufacture a factual dispute where there is none, claiming that a reasonable factfinder "may choose to believe the original article over the revised article."  (Opp. at 33.)  In other words, Plaintiffs suggest that the Washington Post may have decided to issue a false correction to an accurate story.  That implausible theory is exactly the kind of threadbare and speculative allegation that district courts are instructed to disregard when ruling on a motion to dismiss.  *See SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."); *see also A.G. v. Elsevier, Inc.*, 732 F.3d

77, 81 (1st Cir. 2013); *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011);

*United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992).

Plaintiffs rely on this speculative theory because, other than the uncorrected Washington

Post story, they have not identified anything else that would give them a good-faith basis for

alleging that Mr. Phillips issued his statement in 2014.[11]  As Plaintiffs have admitted, "[o]n the

basis of the [uncorrected] Washington Post article, [Plaintiff] Green alleged that [Mr.] Phillips

had issued the defamatory statement in November of 2014."  (Mem. in Supp. of Pls.' Mot. for

Leave to Amend ¶ 3.)  Now that Plaintiffs have become aware of the Washington Post's

correction, they have nothing other than implausible speculation to support their allegation.

Without more, Plaintiffs' far-fetched theory does not provide a good-faith basis for maintaining

Ms. Green's claim based on the Washington Post Statement.  *See, e.g.*, *Radford v. Wells Fargo*

*Bank*, No. 10-00767 SOM-KSC, 2011 U.S. Dist. LEXIS 51935, at *29 (D. Haw. May 13, 2011)

(warning a plaintiff that "any amended claim must have a good faith basis and not be asserted

based on pure conjecture"); *Pellegrini v. Analog Devices, Inc.*, No. 02-11562-RWZ, 2006 U.S.

Dist. LEXIS 726, at *3 (D. Mass. Jan. 11, 2006) ("Rule 11(b)(3) requires that all allegations and

factual contentions have 'evidentiary support.'").  Plaintiffs' "bald assertions" and

"unsubstantiated conclusions" should not be accepted as true when ruling on Mr. Cosby's

---

[11] Plaintiffs further speculate that even if the Washington Post's correction is taken into account, it is still possible that Mr. Phillips could have given his 2005 statement to the Washington Post in 2014 or directed the Washington Post to republish it in 2014.  (Opp. at 32-33.)  However, that argument is not properly before the Court because there are no such allegations in Plaintiffs' Amended Complaint.  *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))); *Knowles v. Chase Home Fin., LLC*, No. 1:11-cv-01051-JDB-egb, 2012 U.S. Dist. LEXIS 166748, at *29 (W.D. Tenn. Aug. 2, 2012) ("A party may not amend its complaint by submitting additional allegations in response to a Rule 12(b)(6) motion to dismiss.").  In any event, Plaintiffs fail to identify any facts supporting their new allegations, making them nothing more than "threadbare" and "speculative" theories that "fail to cross the line between the conclusory and the factual."  *Penalbert-Rosa*, 631 F.3d at 595.

motions to dismiss.  *See AVX Corp.*, 962 F.2d at 115.  To permit Ms. Green's claim to proceed

when all parties acknowledge its dependence upon an inaccurate – and subsequently corrected –

publication would be to permit the waste of judicial resources, as the cause of action is clearly

time-barred.[12]

<div align="center"><u>**CONCLUSION**</u></div>

If every denial of a public allegation gave rise to a defamation suit, the courts would have

time for little else.  Fortunately, both the constitutional and common law of defamation are

designed to avoid that result.  For all of the reasons set forth above and in Defendant's initial

memorandum of law, Defendant respectfully requests that the Court grant his motions and

dismiss Plaintiffs' claims against him with prejudice.


Dated:  April 9, 2015

<div style="margin-left: 40%;">
The Defendant,<br>
WILLIAM H. COSBY, JR.<br><br>

 */s/ Robert P. LoBue*        <br>
Robert P. LoBue, Esq.<br>
Patterson Belknap Webb & Tyler LLP<br>
1133 Avenue of the Americas<br>
New York, New York 10036<br>
Telephone No.:  (212) 336-2000<br>
Facsimile No.:  (212) 336-2222<br>
rplobue@pbwt.com<br>
</div>

---

[12] Even if the claims based on the Washington Post Statement were not barred by the statute of limitations, Plaintiff Green's claims based on the Washington Post Statement should still be dismissed because they are constitutionally protected statements of opinion and/or non-defamatory statements of fact, because they are protected by the self-defense privilege, and because the Amended Complaint has failed to plead facts sufficient to support a viable claim either for direct or vicarious liability against Mr. Cosby.

The Defendant,
WILLIAM H. COSBY, JR.

/s/ Francis D. Dibble, Jr.
Francis D. Dibble, Jr., BBO 123220
Jeffrey E. Poindexter, BBO 931622
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115
Telephone: (413) 781-2820
Fax: (413) 272-6806
fdibble@bulkley.com
jpoindexter@bulkley.com

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), this 9th day of April, 2015.

/s/ Francis D. Dibble, Jr.
Francis D. Dibble, Jr.

1988432v1

20