UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TAMARA GREEN, THERESE SERIGNESE,   *
and LINDA TRAITZ   *
  *
    Plaintiffs,   *
  *      Civil Action No. 14-30211-MGM
  *
    v.   *
  *
  *
WILLIAM H. COSBY, JR.   *
  *
    Defendant.   *

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTIONS
TO DISMISS PLAINTIFFS' COMPLAINT

(Dkt. Nos. 21, 22, and 23)

October 9, 2015

MASTROIANNI, U.S.D.J.

## I. Introduction

On December 10, 2014, Tamara Green filed a complaint alleging that William H. Cosby, Jr.

("Defendant") publicly defamed her in statements made by individuals operating at his direction and/or

within the scope of their employment. (Dkt. No. 1, Compl.) The complaint was subsequently amended to

include similar claims by two additional plaintiffs, Therese Serignese and Linda Traitz (collectively, the three

are referred to as "Plaintiffs"). (Dkt. No. 13, Am. Compl.) Defendant filed motions to dismiss Plaintiffs'

amended complaint in its entirety (Dkt. Nos. 21, 22, 23), which Plaintiffs opposed. (Dkt. No. 31.) Plaintiffs

then sought leave to file a second amended complaint and, on April 16, 2015, the court granted Plaintiffs'

request. *Green v. Cosby*, Civil Action No. 14-30211-MGM, 2015 WL 1736487, at *2-3 (D. Mass. Apr. 16,

2015). Plaintiffs' second amended complaint ("SAC") supplemented factual allegations with respect to an

allegedly defamatory statement directed at Green.[1] (Dkt. No. 48, SAC.) The court held a hearing on the matter and considered the written filings.

## II. JURISDICTION

The SAC contains three defamation counts brought pursuant to state law. Defamation is not actionable under federal law. Federal courts have jurisdiction over suits brought pursuant to state law where there is complete diversity of citizenship between the adversaries and the amount in controversy exceeds a threshold amount of $75,000. 28 U.S.C. § 1332; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Based on the content of the complaint, which Defendant has not disputed, the court finds Defendant is a citizen of Massachusetts and Plaintiffs are citizens of either California or Florida. (SAC ¶¶ 2, 4-6.) Plaintiffs each assert they are entitled to damages in excess of the statutory threshold amount. In the absence of any challenge from Defendant, the court finds it has jurisdiction in this case pursuant to 28 U.S.C. § 1332.

## III. MOTION TO DISMISS STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012). The burden is on the moving party to demonstrate that even when viewed in the light most favorable to the plaintiff, the complaint lacks "sufficient factual matter" to state an actionable claim for relief that is "'plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

---

[1] When the court granted leave for Plaintiffs to file the SAC, the court simultaneously afforded Defendant the opportunity to "file a motion to dismiss which responds to the newly amended complaint, or which supplements the [motions to dismiss] previously filed." (Dkt. No. 46.) Defendant notified the court of his continued reliance on previously-filed submissions. (Dkt. No. 62, Def. Letter/request (non-motion).) Accordingly, the court evaluates Defendant's previously-filed motions to dismiss, and arguments in support thereof, in relation to Plaintiffs' SAC.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating the sufficiency of the factual allegations contained in the complaint, the court must be careful both to credit the factual assertions made by the plaintiff and to disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A complaint must survive a motion to dismiss if the facts alleged are sufficient as to each element to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23 (1st Cir. 2015) ("Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." (internal quotation marks omitted)).

## IV.    FACTS AS ALLEGED BY PLAINTIFFS[2]

During the 1970s, Defendant, "an internationally known actor and comedian," met each Plaintiff and subsequently sexually assaulted her. (SAC ¶¶ 3, 7, 18-21, 39, 47-48, 57, 63.) With respect to Plaintiff Green, "[o]n a certain date in the early 1970s," Defendant offered her two pills, telling her they were over-the-counter cold medicine. (*Id.* ¶¶ 10, 12.) She took the pills and became weak and dizzy. (*Id.* ¶¶ 13-14.) Defendant then drove Plaintiff Green to her apartment, where he subjected her to sexual contact against her

---

[2] The court's factual summary includes an abbreviated version of those facts alleged by Plaintiffs. The court also makes use of the full text versions of the allegedly defamatory statements. For three of those statements, the court utilizes full text versions provided by Defendant as exhibits to his memorandum in support of his motions. (Dkt. No. 25, Decl. re: Mem. Supp. Mot. to Dismiss, Exs. A, D, F.) Plaintiffs have not contested the accuracy of the full versions of these statements provided by Defendant and the court considers them as "documents sufficiently referred to in the complaint" and as "central to plaintiffs' claims." *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) (affirming District Court's decision, under similar circumstances, to consider a copy of the article submitted by the defendant which had formed the basis of the defamation action, as it was central to the plaintiff's complaint). Additionally, the court uses the full text version of a fourth statement provided by Plaintiffs as an exhibit to their motion for leave to file their SAC. (Dkt. No. 20, Pls.' Mem. Supp. re: Mot. for Leave to File Second Am. Compl., Ex. C.)

will and despite her repeated demands to stop. (*Id.* ¶¶ 17-21.) Plaintiff Green was unable to defend herself during the sexual assault because she remained weak and vulnerable. (*Id.* ¶ 22.)

In 1970, Plaintiff Traitz met Defendant while working as a waitress. (*Id.* ¶ 57.) On one occasion she accepted a ride home from Defendant, but he instead drove her to a beach. (*Id.* ¶¶ 58-59.) He parked his car and then opened a briefcase containing pills and urged Plaintiff Traitz to take some pills "to relax." (*Id.* ¶ 60.) When Plaintiff Traitz declined the pills, Defendant groped her, pushed her down, and attempted to lie on top of her, despite her resistance. (*Id.* ¶¶ 62-63.)

Plaintiff Serignese met Defendant in Las Vegas in 1976 and attended his show. (*Id.* ¶¶ 39, 42-43.) Afterwards, she was invited to a room backstage where Defendant gave her two pills and instructed her to take them. (*Id.* ¶¶ 43-44.) Plaintiff Serignese complied and the pills caused her to be in an altered state of consciousness. (*Id.* ¶¶ 44-45.) While she was in this altered state, Defendant subjected her to sexual contact without her consent. (*Id.* ¶¶ 47-48.) Like Plaintiff Green, Plaintiff Serignese was physically unable to defend herself. (*Id.* ¶ 49.)

Many years later, in February of 2005, the *Philadelphia Daily News* published an interview with Plaintiff Green in which she publicly disclosed the sexual assault that had occurred in the 1970s. (*Id.* ¶ 24.) Plaintiff Green also disclosed the allegations during appearances on television shows around the same time. (*Id.*) Nine years later, on or about February 7, 2014, *Newsweek* published an interview with Plaintiff Green in which she repeated her description of being sexually assaulted by Defendant in the 1970s. (*Id.* ¶ 27.)

On November 18, 2014, Plaintiff Traitz made an entry on her personal Facebook page publicly disclosing that Defendant had sexually assaulted her. (*Id.* ¶ 64.) The following day, Plaintiff Serignese publicly disclosed that she had been sexually assaulted by Defendant.[3] (*Id.* ¶ 50.) Several days later, on

---

[3] While Plaintiff Serignese is not specific as to how or where this allegation was disclosed (*see* SAC ¶ 50), Defendant states that it was disclosed to the *Huffington Post*. (Dkt. No. 24, Def.'s Mem. Supp. Mots. to Dismiss ("Def.'s Mem.") 5 (citing SAC ¶ 48).) Defendant has attached a document which he asserts to be the *Huffington Post* article in question. (Decl. re: Mot. to Dismiss, Ex. C.) Plaintiff Serignese has not offered a conflicting explanation.

November 22, 2014, details of Plaintiff Green's sexual assault were published by the *Washington Post*. (*Id.* ¶ 31.)

Plaintiffs allege that Defendant, acting through his agents,[4] issued statements to the media in response to the public disclosures made by Plaintiffs. (*Id.* ¶¶ 25-26, 28-29, 30, 32-35, 37-38, 51-53, 55-56, 65-68, 70-71.) Defendant knew each statement was false at the time it was made. (*Id.* ¶¶ 36, 54, 69, 79, 90, 101.) Despite knowing the statements were false, Defendant directed the statements be made. (*Id.* ¶¶ 37, 55, 70.) Each of the statements was widely read by many people, including Plaintiffs' families, friends, and neighbors, and Plaintiffs suffered damages, including to their reputations, as a result of the publication of the statements. (*Id.* ¶¶ 38, 56, 71, 80-82, 91-93, 102-104.) The statements were made as follows:

### A.     Newsweek Statement – February 7, 2014

Prior to the publication of *Newsweek*'s interview with Plaintiff Green in February of 2014, Defendant, acting through a publicist, believed by Plaintiffs to be David Brokaw ("Brokaw"), made a statement to *Newsweek*. (*Id.* ¶¶ 28-30.) The publicist provided the statement to *Newsweek* while acting as Defendant's authorized agent, employee, or authorized representative and he knew or should have known the statement was false when it was made. (*Id.* ¶¶ 29, 77-78) The statement was appended to the end of the story and read, in its entirety:

> This is a 10-year-old, discredited accusation that proved to be nothing at the time, and is still nothing.

(Dkt. No. 25, Decl. re: Mem. Supp. Mot. to Dismiss ("Decl. re: Mot. to Dismiss"), Ex. A at 3, hereinafter "Newsweek Statement.")

---

[4] In the SAC, Plaintiffs describe two of the individuals who issued the statements as doing so while an "agent, authorized representative, lawyer, servant, and/or employee" of Defendant and one as doing so while an "agent, authorized representative, servant, and/or employee" of Defendant. (SAC ¶¶ 26, 29, 53.) As any distinctions among the meanings of these terms are not material at this stage, throughout this opinion the court refers to these individuals as Defendant's "agents."

### B.    November 20, 2014 Statement

Two days after Plaintiff Traitz wrote on her personal Facebook page about Defendant sexually assaulting her in the 1970s, Defendant, acting through Martin D. Singer ("Singer"), released a responsive statement to numerous media outlets. (SAC ¶ 65.) Singer gave the statement while acting as Defendant's authorized agent, employee, or authorized representative and he knew or should have known the statement was false when it was made. (*Id.* ¶¶ 53, 99-100.) The statement read, in its entirety, as follows:

> Ms. Traitz is the latest example of people coming out of the woodwork with fabricated or unsubstantiated stories about my client.

> Linda Joy Traitz is making ridiculous claims and suddenly seems to have a lot to say about a fleeting incident she says happened with my client more than 40 years ago, but she hasn't mentioned either her 3 ½ year incarceration or her extensive criminal record with charges spanning from the 1980's through 2008.

> For the first time, she is claiming that in approximately 1970, my client supposedly drove her to the beach and had a briefcase filled with drugs and offered her pills to relax, which she says she turned down and demanded to be taken home after Mr. Cosby came on to her. There was no briefcase of drugs, and this is an absurd fabrication.

> Ms. Traitz's long criminal record for numerous offenses including charges for criminal fraud, possession of Oxycodone, cocaine possession, marijuana possession, and possession of drug paraphernalia, speaks for itself.

> As the old saying goes, "consider the source."

(Decl. re: Mot. to Dismiss, Ex. F at 1, hereinafter "November 20, 2014 Statement.")

### C.    November 21, 2014 Statement

On November 21, 2014, Defendant, again acting through Singer, released a responsive statement to numerous media outlets. (SAC ¶¶ 51, 67.) Singer gave the statement while acting as Defendant's authorized agent, employee, or authorized representative and he knew or should have known the statement was false when it was made. (*Id.* ¶¶ 53, 88-89, 99-100.) The statement responded to allegations by Plaintiffs Traitz, Serignese, and other individuals who are not parties to this suit, without directly identifying any individuals by name, and read, in its entirety, as follows:

The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.

These brand new claims about alleged decades-old events are becoming increasingly ridiculous, and it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assaulted over a span of so many years.

Lawsuits are filed against people in the public eye every day. There has never been a shortage of lawyers willing to represent people with claims against rich, powerful men, so it makes no sense that not one of these new women who just came forward for the first time now ever asserted a legal claim back at the time they allege they had been sexually assaulted.

This situation is an unprecedented example of the media's breakneck rush to run stories without any corroboration or adherence to traditional journalistic standards. Over and over again, we have refuted these new unsubstantiated stories with documentary evidence, only to have a new uncorroborated story crop up out of the woodwork. When will it end?

It is long past time for this media vilification of Mr. Cosby to stop.

(Decl. re: Mot. to Dismiss, Ex. D at 1, hereinafter "November 21, 2014 Statement.")

**D.     Washington Post Statement, November 22, 2014**

On November 22, 2014, the *Washington Post* published its interview with Plaintiff Green, along with a responsive statement from Defendant. (SAC ¶¶ 31-33.) Defendant, acting through Walter M. Phillips Jr. ("Phillips"), either "gave" the statement to the *Washington Post* in 2014, or "originally published" the statement in 2005 with the expectation and intent that the statement be republished if Plaintiff Green's allegations were reported again in the future, as occurred in November of 2014. (*Id.* ¶¶ 34-35.) Phillips provided the statement while acting as Defendant's authorized agent, employee, or authorized representative and he knew or should have known the statement was false when it was made. (*Id.* ¶¶ 26, 77-78.) The article quoted Phillips as stating Plaintiff Green's allegations were "absolutely false." (Dkt. No. 20, Pls.' Mem. Supp. re: Mot. for Leave to File Second Am. Compl. ("Mem. re: Mot. to Am.") 15, Exs. B and C.) Phillips also stated: "Mr. Cosby does not know the name Tamara Green or Tamara Lucier [her maiden name] and the incident she describes did not happen." (*Id.*) In addition, Phillips stated the publication of "an

uncorroborated story of an incident that is alleged to have happened thirty years ago" was "irresponsible."

(*Id.*)[5]

The *Washington Post* publishes articles both online and in print. The online version of the article is dated November 22, 2014 ("November 22, 2014 Washington Post Online Article") and the print version is dated November 23, 2014 ("November 23, 2014 Washington Post Print Article"). (Mem. re: Mot. to Am., Exs. B and C.) In the November 23, 2014 Washington Post Print Article, Phillips is identified as "[a]nother Cosby attorney" and the statement is identified as having been "issued this past week." (Mem. re: Mot. to Am., Ex. B.) After publishing the original articles, the *Washington Post* issued slightly different correction notices with respect to both the online and print versions of the article, and, by December 12, 2014, had incorporated the correction itself into the body of the November 22, 2014 Washington Post Online Article. (Mem. re: Mot. to Am, Ex. C; Dkt. No. 28, Decl. re: Opp. to Pls.' Mot. for Leave to File Second Am. Compl., Ex. 1.) Plaintiffs attached a copy of the corrected version of the November 22, 2014 Washington Post Online Article, which included the correction notice at the top of the article, as an exhibit in support of their motion for leave to file a second amended complaint. (Mem. re: Mot. to Am., Ex. C.) In this corrected version of the November 22, 2014 Washington Post Online Article, dated December 12, 2014, the text has been changed from the print version[6] to identify Phillips as "[a] previous Cosby attorney" and the statement is identified as having been "issued in 2005 when the allegations first surfaced." (*Id.* at 15.) The correction notice to the online version reads in its entirety: "This story originally said Cosby lawyer Walter M. Phillips Jr. had denied the allegations of Tamara Green in a statement issued during the past week. The statement was made when Green's allegations first surfaced in 2005. The story has been corrected." (*Id.* at 1.)[7]

---

[5] The court will refer to these responsive statements, collectively, as the "Washington Post Statement."

[6] The parties have not provided the court with a copy of the original, uncorrected version of the November 22, 2014 Washington Post Online Article.

[7] Defendant, in turn, has also provided the court with a copy of the correction notice issued with respect to the print edition and dated December 12, 2014. (Dkt. No. 28, Decl. re: Opp. to Pls.' Mot. for Leave to File Second Am. Compl., Ex. 1.) It reads in its entirety: "1A Nov. 23 Page One article about the allegations of sexual assault against Bill Cosby misstated the timing of a statement of denial issued by an attorney for Cosby. The statement denying Tamara Green's allegations was issued by lawyer Walter M. Phillips Jr. when Green's allegations first surfaced in 2005, not in the week before the article was published." (*Id.* at 2.)

## V.     DISCUSSION

### A.     Choice of Law

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The court "determine[s] which state's law applies by applying the choice of law rules of the forum state," in this case, Massachusetts. *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 14 (1st Cir. 2012). In tort cases, Massachusetts courts "consider choice-of-law issues 'by assessing various choice-influencing considerations,' . . . including those provided in the *Restatement (Second) of Conflict of Laws* (1971)." *Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 834 (Mass. 1994) (internal citation omitted) (quoting *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985)).

Pursuant to section 150 of the *Restatement (Second) of Conflict of Laws*, "the law of the state where the defamed person was domiciled at the time of publication applies 'if the matter complained of was published in that state.'" *Davidson v. Cao*, 211 F. Supp. 2d 264, 274 (D. Mass. 2002) (quoting *Restatement (Second) Conflict of Laws* § 150(2) & cmt. b). The statements at issue in this case were published nationally, so the court applies the law of the state in which each Plaintiff was domiciled when the alleged publication occurred. Accordingly, California law applies relative to the claims of Plaintiff Green and Florida law applies as to the claims of Plaintiffs Traitz and Serignese.

### B.     Statute of Limitations as to Claim Based on the Washington Post Statement

The original cause of action asserted by Plaintiff Green referred to allegedly defamatory statements made by Defendant, through his agents, published in *Newsweek* and the *Washington Post* in 2014. Two days after this action was filed, the *Washington Post* issued the corrections indicating Phillips' statement (on behalf of Defendant) had actually been made in 2005 when Plaintiff Green first publicly disclosed the alleged sexual assault, and not in 2014 after Green publicly repeated these allegations. Thereafter, Plaintiffs filed the SAC, in which they continued to allege that Defendant, through Phillips, "gave" the statement to the

*Washington Post* in 2014. (SAC ¶ 34.) The SAC also alleges "[i]n addition, or in the alternative," that the statement was originally published in 2005 with Defendant's "expectation and intent that the statement would be republished by news outlets in the event that Plaintiff Green should repeat her accusations, and/or should these accusations be reported again, on a later date." (*Id.* ¶ 35.) Furthermore, Plaintiffs allege, "it was reasonably foreseeable" that Defendant's 2005 statement would be republished by news media in stories regarding Green's repeated allegations, including the November 22, 2014 *Washington Post* article. (*Id.*)

Defendant argues Plaintiff Green's claim based on the November 22, 2014 *Washington Post* article is barred by the statute of limitations. (Dkt. No. 24, Def.'s Mem. Supp. of Mots. to Dismiss ("Def.'s Mem.") 9-11); Dkt. No. 27, Def.'s Opp'n to Pls.' Mot. for Leave to File Second Am. Compl.) California has adopted a one-year statute of limitations for defamation claims. *See* Cal. Code Civ. Pro. § 340(c). According to Defendant, the "single publication rule" mandates that the limitations period commences on the date the statement was first published, in this case 2005, thereby rendering Green's claim untimely.

As an initial matter, the parties contest whether the court may even consider the *Washington Post* correction in ruling on Defendant's motion to dismiss. According to Plaintiffs, because the correction contains no actionable defamatory language, it is not central to Green's claim and thus is not incorporated into the pleadings. Plaintiffs, however, attached a copy of the corrected November 22, 2014 Washington Post Online Article as an exhibit in support of their motion for leave to file a second amended complaint. (Mem. re: Mot. to Am., Ex. C.) Plaintiffs cannot rightfully have benefited from their own reliance on the correction and then assert they should also be shielded from what it says. Accordingly, while Plaintiffs did not attach the correction to the SAC following the court's allowance of their motion for leave to amend, the court believes, as a matter of fair and practical application of Rule 10(c) of the Federal Rules of Civil Procedure, their strategic use of that correction should have the same effect. *See Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes' including Rule 12(b)(6)." (quoting Fed R. Civ. P. 10(c)));

*West v. Temple*, Civil Action No. 5:14-CV-86 (MTT), 2015 WL 757650, at *4 (M.D. Ga. Feb. 23, 2015) ("The Court will consider the information contained in the 'carbon-copy grievance' attached to [the plaintiff's] motion to amend as part of his Complaint."); *cf. Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."). At the very least, therefore, the court believes it may consider the correction to the November 22, 2014 Washington Post Online Article, even though Plaintiffs did not formally attach it to the SAC.[8]

Plaintiffs next assert that even if the court considers the correction, it is not inconsistent with the allegation in paragraph 34 of the SAC that Phillips in 2014 "gave" the *Washington Post* the statement, even if it was originally published in 2005.[9] Defendant, on the other hand, contends Plaintiffs' allegation is contradicted by the correction and the court cannot now credit their allegation. *See Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("'[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'" (quoting *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 229 n.1 (1st Cir. 2013))). The court agrees with Plaintiffs that the correction is not necessarily

---

[8] As mentioned, the correction notice issued with respect to the November 23, 2014 Washington Post Print Article, provided by Defendant, is worded slightly differently than the correction notice for the November 22, 2014 Washington Post Online Article used by Plaintiff. (*See* Dkt. 28, Decl. re: Opp. to Pls.' Mot. for Leave to File Second Am. Compl., Ex. 1; Mem. re: Mot. to Am., Ex. C) The court generally limits its discussion to the correction with respect to the online article, as that correction is treated as an attachment to the complaint, but recognizes both corrections make the same operative point.

[9] Plaintiffs also argue the court may not take judicial notice of the correction because Defendant is attempting to use it to prove the truth of the matter asserted therein, *i.e.*, that Phillips in fact provided his statement in 2005, not in 2014. *See, e.g., Kosilek v. Spencer*, 889 F. Supp. 2d 190, 215 n.6 (D. Mass. 2012), *aff'd*, 740 F.3d 733 (1st Cir. 2014), *rev'd en banc on other grounds*, 774 F.3d 63 (1st Cir. 2014). The court is not taking judicial notice of the correction pursuant to Rule 201 of the Federal Rules of Evidence because Plaintiffs used it to support their motion to amend and relied on it in their SAC, effectively attaching it to their complaint. Accordingly, this limitation (documents judicially noticed under Rule 201 may not be considered for the truth of the matter asserted) is a non-issue. *See, e.g., Papadopoulos v. Amaker*, No. 12-CV-3608 (DLI)(RLM), 2013 WL 3226757, at *1 n.1 (E.D.N.Y. June 25, 2013).

inconsistent with the allegation that Defendant (through Phillips) "gave" the statement to the *Washington Post* in 2014. The term "gave" does not necessarily mean verbally speaking the words but could be taken to mean, at this stage of the litigation, that Defendant's agent referred the *Washington Post* to the old statement or otherwise made the newspaper aware of the statement. Defendant asserts that because this allegation is "threadbare" and "speculative," the court should disregard it. *See Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011). The Supreme Court has explained, however, that "the pleading standard Rule 8 announces does not require 'detailed factual allegations.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs have explained in their opposition to dismissal that paragraph 34 of the SAC should be read to mean "that in November of 2014, Mr. Phillips gave the *Washington Post* a copy of a statement that he originally published in 2005; or that, in November of 2014, Mr. Phillips directed the *Washington Post* to republish the older statement." (Dkt. No. 32, Pls.' Mem. Supp. Opp'n to Def.'s Mots. to Dismiss ("Pls.' Mem.") 32-33.) *See Penalbert-Rosa*, 631 F.3d at 596 (indicating that a plaintiff may supply a missing detail in an opposition to a motion to dismiss). Plaintiffs also argue the *Washington Post*, in 2014, originally reported in an unambiguous way the statement had been "issued this past week." At this stage of the litigation, before the commencement of the discovery process, this provides a good-faith basis for Plaintiffs to allege Defendant, through an agent, by some means "gave" the statement to the newspaper in 2014. *See Rodriguez-Vives v. P.R. Firefighters Corps*, 743 F.3d 278, 286 (1st Cir. 2014) (explaining that the "threadbare" and "speculative" exception to assuming a plaintiff's factual allegations as true only applies when it is "clear that the plaintiff is merely speculating about the fact alleged and therefore has not shown that it is plausible that the allegation is true").

The online correction merely states "the statement was made when Green's allegations first surfaced in 2005." (Mem. re: Mot. to Am., Ex. C.) This does not rule out the possibility, consistent with paragraph 34 of the SAC, that although Phillips originally "made" the statement in 2005, he also provided or directed the same statement to the *Washington Post* in 2014 in response to Green's more recent public accusations. *See*

*Shively v. Bozanich*, 80 P.3d 676, 683 (Cal. 2003) ("The rule that each publication of a defamatory statement gives rise to a new cause of action for defamation applies when the original defamer repeats or recirculates his or her original remarks to a new audience."). The discovery process may very well bear this issue out and sharpen the parties' arguments on this point, but at this stage the court must resolve all reasonable inferences in Plaintiffs' favor.[10] Dismissal of a portion of Plaintiff Green's claim based on a correction made to the *Washington Post* article is not warranted on statute of limitations grounds.

Most importantly, even if Defendant's reading of the correction were accurate and the court declined to accord paragraph 34 of the SAC the presumption of truth, Defendant's statute of limitations argument would still fail based on Plaintiffs' theory asserted in paragraph 35 of the SAC. As discussed, Plaintiffs allege in paragraph 35, "[i]n addition, or in the alternative, to paragraph 34," that Phillips "originally published" the statement in 2005 "with the expectation and intent" that the statement be republished if Plaintiff Green's allegations were reported again in the future. (SAC ¶ 35.) "In general, the repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the *original defamer*, when the repetition was reasonably foreseeable." *Shively*, 80 P.3d at 683; *see also Mitchell v. Superior Court*, 690 P.2d 625, 633 (Cal. 1984) ("According to the *Restatement (Second) of Torts* (1977) section 576, the original defamer is liable if either 'the repetition was authorized or intended by the original defamer' (subd. (b)) or 'the repetition was reasonably to be expected' (subd. (c)). California decisions follow the restatement rule."); *Schneider v. United Airlines, Inc.*, 256 Cal. Rptr. 71, 74 (Cal. Ct. App. 1989) ("[T]he originator of the defamatory matter can be liable for each 'repetition' of the defamatory matter by a second party, 'if he could reasonably have foreseen the repetition.'" (quoting *McKinney v. Cty. of Santa Clara*, 168 Cal. Rptr. 89, 93 (Cal. Ct. App. 1980))). "It is the foreseeable subsequent

---

[10] The court notes that, if it were to consider both the online and print versions of the correction notices, the slightly different wording between the two, which may well be innocuous, could arguably raise questions about the manner in which the *Washington Post* came to include the Phillips statement in the article, further demonstrating the benefit in allowing the parties to engage the discovery process to seek clarification of these factual issues; the need for fact clarification is not a basis for dismissal at this stage.

*repetition* of the remark that constitutes publication and an actionable wrong in this situation, even though it is the original author of the remark who is being held accountable." *Shively*, 80 P.3d at 683. The court does not agree with Defendant's assertion that, under the "single publication rule," Plaintiff Green's defamation claim accrued exclusively in 2005 and the limitations period did not reset upon the issuance of the November 22, 2014 *Washington Post* article.

In *Shively*, the California Supreme Court extensively set forth the history and rationale of the single publication rule. The court explained:

> Under the common law as it existed in the 19th century and early part of the 20th century, the principle that each communication of a defamatory remark to a new audience constitutes a separate "publication," giving rise to a separate cause of action, led to the conclusion that each sale or delivery of a copy of a newspaper or book containing a defamation also constitutes a separate publication of the defamation to a new audience, giving rise to a separate cause of action for defamation. . . . This conclusion had the potential to subject the publishers of books and newspapers to lawsuits stating hundreds, thousands, or even millions of causes of action for a single issue of a periodical or edition of a book. This conclusion also had the potential to disturb the repose that the statute of limitations ordinarily would afford, because a new publication of the defamation could occur if a copy of the newspaper or book were preserved for many years and then came into the hands of a new reader who had not discovered it previously. The statute of limitations could be tolled indefinitely, perhaps forever, under this approach.

*Id.* at 683-84 (internal citations omitted). In response to these concerns, "courts fashioned what became known as the single-publication rule, holding that, for any single edition of a newspaper or book, there was but a single potential action for a defamatory statement contained in the newspaper or book, no matter how many copies of the newspaper or the book were distributed." *Id.* at 684.[11] Critically, however, "[n]otwithstanding the single-publication rule, a new edition or new issue of a newspaper or book still constitutes a new publication, giving rise to a new and separate cause of action and a new accrual date for

---

[11] California has adopted the Uniform Single Publication Act, codifying the single publication rule at Cal. Civ. Code § 3425.3. That section provides:

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

the purpose of the statute of limitations." *Id.* at 685 n.7; *see also id.* at 685 ("Accrual at that point is believed to provide adequate protection to potential plaintiffs, especially in view of the qualification that repetition of the defamatory statement in a new edition of a book or newspaper constitutes a new publication of the defamation that may give rise to a new cause of action, with a new accrual date.").

Therefore, if Green had asserted a claim based merely on the original 2005 article containing Phillips' statements, the single publication rule would operate to bar such a claim because accrual would have occurred "on the 'first general distribution of the publication to the public.'" *Id.* at 685 (quoting *Belli v. Roberts Bros. Furs*, 49 Cal. Rptr. 625, 629 (Cal. Ct. App. 1966)). Because Green's claim is instead based on the November 22, 2014 *Washington Post* article, an entirely different issuance, the single publication rule does not apply. *See id.* at 685 & n.7; *Schneider*, 256 Cal. Rptr. at 74-75 ("'[T]he single publication rule . . . does not include separate aggregate publications on different occasions.'" (quoting *Kanarek v. Bugliosi*, 166 Cal. Rptr. 526, 530 (Cal. Ct. App. 1980))); *cf. Christoff v. Nestle USA, Inc.*, 213 P.3d 132, 138 (Cal. 2009) ("The prefatory note to the uniform act states that under the single-publication rule 'any single integrated publication, such as one edition of a newspaper or magazine, or one broadcast, is treated as a unit, giving rise to only one cause of action.'" (quoting Unif. Single Publ'n Act, 14 U.L.A. 469 (2005))). Accordingly, Defendant has not established that Plaintiff Green's claim based on the November 22, 2014 *Washington Post* article is barred by California's statute of limitations and, consistent with paragraph 35 of the SAC, he may be held liable for the foreseeable republication of Phillips' 2005 statement. *See Shively*, 80 P.3d at 683.

Accordingly, the court will not dismiss any portion of Plaintiff Green's claim based on a single publication theory that the statute of limitations has expired.

## C.     Adequacy of Plaintiffs' Defamation Allegations

Having determined the laws of California and Florida are applicable and that the claim related to the Washington Post Statement is not barred by the statute of limitations, the court next considers the substance of Plaintiffs' defamation claims. Both California and Florida recognize the following essential

elements of defamation: (1) a publication; (2) that is false; (3) defamatory, meaning damaging to the good reputation of the person who is the subject of the statement; (4) made by an actor with the requisite degree of fault; (5) is not protected by any privilege; and (6) causes injury to the subject.[12] *See, e.g., Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008); *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007), *abrogated on other grounds by Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115 (Cal. 2011); *Blatty v. N.Y. Times Co.*, 728 P.2d 1177, 1182-83, 1186 (Cal. 1986). Defendant moves to dismiss Plaintiffs' claims, alleging inadequacies related to several of these elements. These challenges can generally be organized as follows. First, Defendant asserts that none of the allegedly defamatory statements contain false factual assertions that are also defamatory. As part of this argument, Defendant specifically asserts the claim based upon the November 20, 2014 Statement regarding Plaintiff Traitz fails because the statement was substantially true and the claims based upon the November 21, 2014 Statement fail because that statement was not sufficiently "of and concerning" Plaintiffs Traitz or Serignese. Second, Defendant argues he cannot be liable for defamation because Plaintiffs have failed to plead that either Defendant or his agents acted with the constitutionally required degree of fault. Third, Defendant argues the November 20, 2014 Statement did not cause Plaintiff Traitz to suffer incremental harm. Fourth, Defendant asserts the allegedly defamatory statements are protected by a "self-defense privilege." The court addresses these arguments in turn.

     1.  <u>The Statements: Factual, True, Defamatory, Of and Concerning</u>

In order for a defamation claim to survive a motion to dismiss, the allegedly defamatory statement must contain at least one false factual assertion which is also defamatory. *See, e.g., Jews For Jesus, Inc.*, 997 So. 2d at 1106; *Taus*, 151 P.3d at 1209. Depending on the nature of the statement and the context in which it was made, courts will place different emphasis on these two components. In this case, Defendant argues three of the four statements at issue do not contain factual assertions that are false, or even capable of being

---

[12] Relevant differences which may exist between California and Florida law regarding defamation are addressed as applicable throughout this Discussion.

false.[13] Defendant further asserts that even if the statements can be understood as expressing false factual assertions, they are not defamatory because they do not hold Plaintiffs "'up to contempt, hatred, scorn, or ridicule or tend to impair [their] standing in the community.'" (Def.'s Mem. 14-15 (quoting *Yohe v. Nugent*, 321 F.3d 35, 40 (1st Cir. 2003)).) The court addresses each statement individually, applying California law to the Newsweek Statement regarding Plaintiff Green and Florida law to the November 20, 2014 and November 21, 2014 Statements as to one or both of Plaintiffs Traitz and Serignese.

Before delving into the state-specific analysis, the court considers the Supreme Court case law applicable to defamation cases in which the parties dispute whether a statement contains actionable statements of fact or protected statements of opinion. In *Milkovich v. Lorain Journal Co.*, the Supreme Court reviewed the history of the tort of defamation and development of constitutional protections to ensure the tort does not interfere with "the freedom of expression guaranteed by the First Amendment." 497 U.S. 1, 21 (1990). The Court reviewed existing constitutional requirements, including that plaintiffs must (a) establish the requisite level of fault on the part of a defendant and (b) allege a statement that can "'reasonably [be] interpreted as stating actual facts' about an individual." *Id.* at 20 (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)). The Court considered whether to create an additional constitutional privilege for "anything that might be labeled 'opinion.'" *Id.* at 18. In declining to adopt such a privilege, the Court explained there is not a clear division between statements of opinion and fact. "If a speaker says, 'in my opinion John Jones is a liar,' [the speaker] implies a knowledge of facts which lead to the conclusion that Jones told an untruth" and, as a result, such a statement may imply a false assertion of fact by failing to state what it was based on or because any facts referenced are incorrect or incomplete. *Id.* The Supreme Court directs courts to determine "whether a reasonable factfinder could conclude that the [allegedly defamatory] statements . . . imply an assertion [of fact]" and whether that assertion "is sufficiently factual to be

---

[13] Defendant makes this argument as to the Newsweek Statement, the November 20, 2014 Statement, and the November 21, 2014 Statement, but not as to the Washington Post Statement.

susceptible of being proved true or false," rather than simply determine whether a statement expresses an opinion or asserts a fact. *Id.* at 21. At this stage of the litigation, the court's concern is whether any fact contained in or implied by an allegedly defamatory statement is susceptible to being proved true or false; if so capable, Defendant cannot avoid application of defamation law by claiming the statement expresses only opinion. *See Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 849 (Cal. Ct. App. 1999); *Zambrano v. Devanesan*, 484 So. 2d 603, 606 (Fla. Dist. Ct. App. 1986). Ultimately, if Plaintiffs' claims survive this initial challenge, Defendant will have the opportunity, at the procedurally appropriate time, to fully develop a defense based on the truth of the facts contained in or implied by each statement.

a. The Newsweek Statement Pertaining to Plaintiff Green

i. Substantially True

Defendant argues the Newsweek Statement—"This is a 10-year-old, discredited accusation that proved to be nothing at the time, and is still nothing"—does not contain any defamatory content because it is true. Even if a statement is offensive, it cannot be the basis for a defamation suit if it is true. *Smith v. Maldonado*, 85 Cal. Rptr. 2d 397, 403 (Cal. Ct. App. 1999). While a "defendant need not justify the literal truth of every word," to prevail in a defamation action, the defendant must "prove[] true the *substance* of the charge." *Id.* An "'imputation is substantially true'" if it "justif[ies] the 'gist or sting'" of the remark. *Id.* (quoting *Campanelli v. Regents of Univ. of Cal.*, 51 Cal. Rptr. 2d 891, 897 (Cal. Ct. App. 1996)). It is uncontested that the meaning of the first part of the statement is accurate—Plaintiff Green had first made her accusations approximately ten years earlier. As to the rest of the statement, Defendant argues the substance is true because (1) Plaintiff Green's attorney disciplinary issues in California, which are not mentioned in the statement, were sufficient to discredit her and (2) the substance of the allegations was never the subject of a civil or criminal legal proceeding. The court does not agree. First, Plaintiff Green does not claim the language in the Newsweek Statement is defamatory because it describes her as being a discredited person related to her legal profession. Rather, she argues the statement asserts that her sexual assault allegation was

18

discredited. Second, an absence of civil or criminal proceedings does not establish that an allegation was "discredited" or "proved to be nothing." In the absence of legal proceedings, Plaintiff Green's allegations could not have been established to lack legal merit at a court hearing. The statement attributable to Defendant implies the allegations were somehow truly disproven without stating how or where, thereby failing to self-authenticate as a statement of true fact. A statement is considered false for the purposes of defamation if "it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Hughes v. Hughes*, 19 Cal. Rptr. 3d 247, 251 (Cal. Ct. App. 2004) (internal quotation marks and citation omitted). For that reason, California courts "look to what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication." *Forsher v. Bugliosi*, 608 P.2d 716, 721 (Cal. 1980).

### ii. Opinion or Fact

In addition to asserting the Newsweek Statement is not defamatory since it is substantially true, Defendant argues it is not defamatory because it expresses an opinion rather than a fact capable of being proved false. California courts have interpreted the Supreme Court's decision in *Milkovich* as establishing that the First Amendment only prohibits defamation liability for the expression of an opinion where the factual basis for the opinion is provided, the facts provided are true, and the opinion does not imply false assertions of facts. *GetFugu, Inc. v. Patton Boggs LLP*, 162 Cal. Rptr. 3d 831, 842 (Cal. Ct. App. 2013) (citing *Milkovich*, 497 U.S. at 18-19 and *McGarry v. Univ. of San Diego*, 64 Cal. Rptr. 3d 467, 479 (Cal. Ct. App. 2007)). Accordingly, "it is not the literal truth or falsity of each word or detail used in a statement" which determines whether it is a potentially defamatory statement of fact; "rather, the determinative question is whether the 'gist or sting' of the statement is true or false, benign or defamatory, in substance." *Ringler Assocs. Inc. v. Md. Cas. Co.*, 96 Cal. Rptr. 2d 136, 150 (Cal. Ct. App. 2000) (emphasis omitted) (internal quotation omitted); *see also Campanelli*, 51 Cal. Rptr. 2d at 897. The court can, as a matter of law, find a statement is not actionable, but when an allegedly defamatory statement can reasonably be interpreted as

either stating or implying a false fact or articulating an opinion, California courts put the issue before a jury. *See Ferlauto*, 88 Cal. Rptr. 2d at 849 ("If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury."). In determining whether a statement is capable of being interpreted as asserting or implying a fact, California courts use the "totality of the circumstances test." *Id.* This test has three parts: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003) (citations omitted) (applying California law).

As to the first part—general tenor—Defendant points out the statement was made "in response to serious charges" and argues this "is a strong contextual signal that the statement is non-actionable opinion." (Def.'s Mem. 14.) Specifically, Defendant suggests the court should treat the response as a "predictable opinion," which an average reader would understand as a one-sided attempt to bolster his position in a dispute.[14] Several California courts have used the phrase "predictable opinion" to describe a statement that, due to the context in which it is made, is understood to be a one-sided expression of opinion rather than fact. However, California courts have only applied the principle to cases where the statements related to pending or completed litigation. *See Dreamstone Entm't Ltd. v. Maysalward Inc.*, No. 2:12-cv-02063-CAS(SSx), 2014 WL 4181026, at *6 (C.D. Cal. Aug. 18, 2014) (treating statement attributed to attorneys, and linking to recently filed complaint, as "predictable opinion" rather than statement of fact); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. CV 10-5696 CRB, 2013 WL 3460707, at *4 (N.D. Cal. July 9, 2013) (finding the broad context of a blog entry, describing reasons for bringing lawsuit, demonstrated that the statement was

---

[14] Defendant suggests California's treatment of "predictable opinion" is similar to a "self-defense privilege." One obvious difference is that the phrase "predictable opinion" is used to describe a type of statement that is not defamatory because it does not assert a fact capable of being proved true or false, while a self-defense privilege, in the defamation context, generally prevents what may be a defamatory statement from being the basis for a defamation suit because of a specific exception under state law.

a "predictable opinion," rather than an actionable statement of fact); *GetFugu, Inc.*, 162 Cal. Rptr. 3d at 842 (finding tweet by attorney identifying opposing lawsuit as frivolous was a "predictable opinion" that could not be the basis for a defamation claim); *Ferlauto*, 88 Cal. Rptr. 2d at 850 (finding statements describing lawsuit as "frivolous" expressed only "predictable opinion" and could not be the basis of a defamation action, especially because context and literary tone of work where statements appeared clearly indicated to readers they were reading the subjective views of partisan participants to litigation); *Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (coining phrase "predicable opinion" to describe a statement unlikely to be understood by audience as a statement of fact because of the litigation position of the maker of the statement).

The context in which Defendant's agent made the Newsweek Statement was different from the context in which California courts have identified statements as "predictable opinions"; at the time this statement was made there was no pending litigation between Defendant and Plaintiff Green. Some readers may have understood any statement from Defendant to have been predictably self-serving, but there was no litigation pending when a publicist for Defendant provided the statement to the media. Accordingly, the court cannot determine at this stage that the statement fits within the "predictable opinion" doctrine recognized in California. Nor can the court conclude that the general tenor of the statement negates the impression that Defendant was asserting an objective fact.

Turning next to the specific language of the statement, the phrase—"discredited accusation that proved to be nothing at the time, and is still nothing"—has an obvious literal meaning, specifically, that Plaintiff Green's allegations are completely without merit and have been so proven. The operative phrases are not surrounded by hyperbole or figurative language that undercuts their literal meaning. *Cf. Standing Comm. on Discipline of U.S. Dist. Court v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (applying California law) (treating as rhetorical hyperbole the word "dishonest" because it was used within a "string of colorful adjectives"); *see also Knievel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (describing "slang phrases such as

'[d]udes rollin' deep' and '[k]ickin' it with much flavor'" as using loose and figurative language incapable of a "literal interpretation"). The phrasing used here allows a "reasonable factfinder [to] conclude the [statement] impl[ies] an assertion of defamatory fact," specifically, that there was some unidentified investigation or hearing into the allegations which officially determined Plaintiff Green's accusation was false. *Ringler Assocs. Inc.*, 96 Cal. Rptr. 2d at 149 (emphasis omitted).

Finally, the court considers whether Defendant's response, directly or by implication, makes a statement which is susceptible of being proved true or false. To the extent Defendant's response implies an investigation into Plaintiff Green's allegations was conducted, it is provable as true or false. Additionally, the gist of the statement—that Plaintiff Green fabricated her allegations—is also provable as true or false. It may take a trial to produce such proof, but Defendant's allegations are sufficiently specific "to be susceptible to proof or disproof." *James v. San Jose Mercury News, Inc.*, 20 Cal. Rptr. 2d 890, 898 (Cal. Ct. App. 1993) (finding statements not susceptible of being proved true or false because the statements contained too many generalizations, elastic terms, and subjective elements for it to be clear what facts were stated or implied); *see also Amaretto Ranch Breedables, LLC*, No. CV 10-5696 CRB, 2013 WL 3460707, at *5 (finding a statement might be provable as true or false, though it would require a lengthy lawsuit, but determining other factors prevented statement from being defamatory). Based on this "totality of the circumstances" analysis, the court concludes a reasonable factfinder could determine, based on the context and content, the Newsweek Statement asserted or implied factual statements that were susceptible of being proved true or false.

### iii. Defamatory Meaning

The court considers next whether the statement could be understood to have a defamatory meaning. Analogizing to *Gibney v. Fitzgibbon*, 547 F. App'x 111 (3d Cir. 2013) (unpublished), Defendant argues an assertion by a person that an allegation is unfounded cannot reasonably be viewed as exposing the person

who made the allegation to "scorn or ridicule." The facts of this case are easily distinguished from those in *Gibney* and the differences require the court to reach a different conclusion here.

In *Gibney*, the plaintiff had contacted a company that did business with his employer to allege his employer was improperly billing the company. *Id.* at 112. The company responded that the allegations had been investigated and determined to be unfounded. *Id.* The Third Circuit held that the company's response, even if untrue, was not capable of a defamatory meaning because a statement that "his allegations were unfounded" would not "'lower him in the estimation of the community or . . . deter third parties from associating or dealing with him.'" *Id.* at 114 (quoting *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004)). This conclusion makes sense where the detail of business billing procedures leaves open the possibility that a person making an allegation of wrongdoing could have made an honest mistake. In this respect, it is hard to even compare an allegation regarding billing procedures to a sexual assault allegation. A neutral-toned response relative to an investigation of billing history does not impart any flavor of fabrication or moral repugnance, both of which attach to Defendant's statement and its suggestion that Plaintiff intentionally lied about being sexually assaulted. Unlike a billing dispute, Plaintiff Green's allegations detail a specific set of events that either occurred substantially as alleged or were fabricated, leaving no room for an honest mistake.

The potential for reputational damage is increased where the response lacks the neutral tone conveyed in *Gibney* by the word "unfounded," which means "lacking a sound basis in . . . fact." *Webster's Third New International Dictionary* 2496 (1971). Defendant referred to serious sexual assault allegations as "discredited" and "nothing," both words suggesting that the allegations were not made in good faith. *Id.* at 647, 1544. Given the different nature of the allegations in this case and the wording of the response, the court cannot conclude here that, as a matter of law, Defendant's response is incapable of negatively impacting Plaintiff Green's reputation within the community. Ultimately, it will be up to a jury to decide whether those who read the Newsweek Statement understood it to have been defamatory. At this stage,

however, the court finds Defendant has not identified sufficient grounds for dismissal of Plaintiff Green's claims based on the Newsweek Statement.

b. The Statements Pertaining to Plaintiffs Traitz and Serignese

In Florida, as in California, "to be actionable, a defamatory publication must convey to a reasonable reader the impression that it describes actual facts about the plaintiff or the activities in which [s]he participated." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006). Generally, a court must decide, as a matter of law, whether a statement expresses a pure opinion or a "mixed opinion" from which unstated facts are likely to be inferred. *Scott v. Busch*, 907 So. 2d 662, 668 (Fla. Dist. Ct. App. 2005). However, where the statement could be understood in more than one way, the question should be submitted to the trier of fact. *See Ford v. Rowland*, 562 So. 2d 731, 735 (Fla. Dist. Ct. App. 1990); *see also Scott*, 907 So. 2d at 667.

Courts determining whether an allegedly defamatory statement is a protected expression of opinion "'must construe the [allegedly defamatory] statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication.'" *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 717 (11th Cir. 1985) (applying Florida Law) (quoting *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. Dist. Ct. App. 1984)); *accord Morse v. Ripken*, 707 So. 2d 921, 922 (Fla. Dist. Ct. App. 1998). The context in which a statement was published and whether the publisher used cautionary terms must also be considered. *Keller*, 778 F.2d at 717. Defendant argues the potentially defamatory aspects of the November 20, 2014 Statement (against Traitz) and the November 21, 2014 Statement (against Traitz and Serignese) constitute opinions because they are mere "rhetorical hyperbole," and they express a subjective view rather than objectively verifiable facts. (Def.'s Mem. 19-20, 22.) With respect to the November 21, 2014 Statement, Defendant also argues the statement is not defamatory as to either Traitz or Serignese because the statement is not "of and concerning" either plaintiff. The court disagrees.

i. November 20, 2014 Statement

The November 20, 2014 Statement was a press release issued by one of Defendant's agents for the purpose of further dissemination. The statement had two components: (1) descriptions of the allegations and (2) a description of Plaintiff Traitz's later, and unrelated, criminal history. Plaintiff Traitz does not contest the truth of the second component of the statement related to her criminal history and does not base her defamation claim on this portion of the statement. Plaintiff Traitz instead bases her claim on the descriptions of her sexual assault allegations as "fabricated or unsubstantiated stories," "ridiculous claims," and, as to one particular allegation—that Defendant offered her drugs from a briefcase—"an absurd fabrication." Defendant argues these words are either non-defamatory because they are technically accurate or rhetorical hyperbole that expresses opinion rather than stating fact. He asserts Plaintiff Traitz's failure to publicly present any proof beyond her own words, combined with her criminal record, make her claims "unsubstantiated."[15] Defendant also argues the word "ridiculous" did not imply any false facts, but was simply rhetorical hyperbole, and the words "fabricated" and "fabrication" expressed opinions about the nature of the allegations based on her delay in coming forward and her criminal record.

These arguments are not persuasive because the court is directed to consider the allegedly defamatory statements within the context of the entire publication. *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. Dist. Ct. App. 1999). Read in its entirety, one possible, and clearly defamatory, implication of the entire press release is that Plaintiff Traitz intentionally made absurdly false sexual assault allegations against Defendant. A jury must ultimately decide whether the statement asserted or implied this actual fact or merely opined that the allegations sounded far-fetched, without actually asserting or implying the allegations were false. *See Ford*, 562 So. 2d at 735 (reversing the dismissal of a libel claim because whether statements described actual facts or were merely absurd parodies depended on factual determinations to be

---

[15] Defendant's contention that Plaintiff Traitz has offered no corroboration is, at least arguably, factually inaccurate because of the multiplicity of similar claims, a fact acknowledged in Defendant's statements of November 20th and 21st. The similar claims could be considered by a fact finder as a form of corroboration a recognizably unique pattern of conduct.

made by jury). When making this determination, a jury can consider that the statement was made by Defendant's attorney. Perhaps, as Defendant argues, a jury will conclude the denigration of Plaintiff Traitz was a "one-sided" account expressing an opinion and providing the basis for that opinion, and therefore is not defamatory. However, at this stage it appears that a jury could conclude that the source of the statement—a person close to the subject of the allegations—made the statement in order to communicate the fact that Plaintiff Traitz's allegations were lies. Since the November 20, 2014 Statement can reasonably be understood as describing the actual fact that Plaintiff's allegations were false and since, at this stage, the court must accept Plaintiff Traitz's allegations as true, the court concludes Plaintiff Traitz has adequately pled her defamation claim related to the November 20, 2014 Statement. Defendant's request to dismiss the claim based on the November 20, 2014 Statement is denied.

ii.   November 21, 2014 Statement

Defendant argues the November 21, 2014 Statement cannot be the basis of a defamation claim because (1) it expresses opinions rather than stating facts, (2) any factual statements are not defamatory, or (3) any defamatory facts are not defamatory as to Plaintiffs Traitz and Serignese because this statement is not sufficiently "of and concerning" them. The November 21, 2014 Statement is the longest of the four statements attributed to Defendant in this suit and criticizes his accusers and the media for their various roles in the recent dissemination of the sexual assault allegations made against Defendant. Neither Plaintiff Traitz nor Plaintiff Serignese is identified by name within the statement, but it begins by identifying itself as a response to the "new, never-before-heard claims from women" who made allegations "in the past two weeks." Plaintiff Traitz made her allegations public on November 18, 2014, and Plaintiff Serignese made her allegations public on November 19, 2014; this timing sequence clearly indicates the statement refers to them.

In Florida, expressions of opinions are non-actionable "if the speaker states the facts on which he bases his opinion," and those facts are not "false or inaccurately presented." *Lipsig v. Ramlawi*, 760 So. 2d

170, 184 (Fla. Dist. Ct. App. 2000). A statement is also a "pure opinion, as a matter of law, when it is based on facts which are otherwise known or available to the reader or listener." *Razner v. Wellington Reg'l Med. Ctr., Inc.*, 837 So. 2d 437, 442 (Fla. Dist. Ct. App. 2002). In determining whether any portions of the statement are defamatory, the court must consider the statement "in the context of the publication, including the audience, the means by which it was delivered, and other circumstances surrounding the statement." *Ranbaxy Labs. Inc. v. First Databank, Inc.*, No. 3:13-CV-859-J-32MCR, 2015 WL 3618429, at *3 (M.D. Fla. June 9, 2015).

Defendant's attorney provided the November 21, 2014 Statement to the media with the intent that the statement be disseminated to the public. The statement begins by describing the allegations that had been made against Defendant during the previous two weeks as "new, never-before-heard claims" that are "unsubstantiated, fantastical stories" about events occurring "30, 40, or even 50 years ago." The allegations are characterized as having "escalated past the point of absurdity" and "becom[e] increasingly ridiculous." Next, the statement describes as "completely illogical" the silence, over many years, of the accusers. Implicit in this portion of the statement is the suggestion that the cause of the accusers' decades of silence was that they did not really believe they had been assaulted. The statement continues with two sentences about the opportunities the accusers had to sue Defendant and suggests "it makes no sense" that none of the accusers had brought legal action closer in time to the alleged sexual assaults. Defendant next shifts the focus from the accusers to the media, critiquing the speed with which allegations were reported and suggesting that the reporting violated journalistic standards because the stories were run without corroboration. Finally, the statement characterizes the media's reporting on the allegations as a "vilification" of Defendant.

The truth of portions of the statement, such as the length of time between when the incidents allegedly occurred and the date on which any particular allegation became public, is uncontested. Defendant argues these statements provide readers with the truthful facts on which he based his opinion that the allegations were unsubstantiated. This analysis is flawed because when read in its entirety, the statement is

capable of being understood as asserting not just that the allegations made during the previous two weeks were unsubstantiated, but also as implying they were false and entirely without merit. The court cannot predict whether a jury will actually conclude the statement implied that fact and, if so, whether the assertion of fact was false, but there is a sufficient factual question as to the meaning readers would have given to the statement to preclude dismissal at this stage.

Defendant maintains that, regardless of the analysis on whether there was a false statement of fact, the November 21, 2014 Statement was simply not defamatory. A statement is capable of a defamatory effect if it "naturally and proximately results in injury to another." *Cuban Am. Nat'l Found.*, 731 So. 2d at 705. As previously discussed, to falsely accuse another of sexual assault is morally repugnant; the natural result of the publication of a statement directly or indirectly indicating Plaintiffs made such false accusations is injury to their reputations.

Finally, the court turns to Defendant's argument that, even if the November 21, 2014 Statement contains defamatory statements, they were not "of and concerning" Plaintiffs Traitz and Serignese. As a matter of substantive law "a cause of action for group libel cannot be maintained unless it is shown that the libelous statements are 'of and concerning' the plaintiff." *Thomas v. Jacksonville TV, Inc.*, 699 So. 2d 800, 805 (Fla. Dist. Ct. App. 1997). A statement can be "of and concerning" members of a group, provided the group includes fewer than twenty-five individuals and the statement identifies and describes each plaintiff. *Cf. id.*

The November 21, 2014 Statement was released three days after Plaintiff Traitz made her public accusation and two days after Plaintiff Serignese made hers. Nothing in the statement indicates an intention to exclude any recent accusers from its sweep, and Plaintiffs assert there were eleven women who publicly made accusations against Defendant during the two weeks prior to the publication of the November 21, 2014 Statement. (Pls.' Mem., Ex. 2 at ¶ 2.) Taken together, these factors lead the court to the objectively reasonable inference that a factfinder could conclude the statement was "of and concerning" Traitz and Serignese. *See Jacksonville TV, Inc.*, 699 So. 2d at 805; *see also Restatement (Second) of Torts* § 617 cmt. a

(explaining that the question of whether the statement was "of and concerning the plaintiff" is "ordinarily for the jury or trier of fact to determine").

2. <u>Requisite Degree of Fault</u>

The Supreme Court requires the respective defamation law of each state to include an element of fault. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347-48 (1974). Recognizing the tension between providing protections for individuals' reputations and encouraging an open and free press, the Supreme Court requires a plaintiff to demonstrate a higher level of fault when the allegedly defamatory statement concerns a public figure, rather than when it concerns a private individual outside the public sphere. *Id.* at 342-46. Private-figure plaintiffs need only demonstrate a defendant (or defendant's agent acting within the scope of the agency) acted negligently. *See Mile Marker, Inc. v. Petersen Publ'g, LLC*, 811 So. 2d 841, 845 (Fla. Dist. Ct. App. 2002); *Sarver v. Hurt Locker LLC*, No. 2:10-cv-09034-JHN-JCx, 2011 WL 11574477, at *8 n.11 (C.D. Cal. Oct. 13, 2011). By contrast, if a plaintiff is a public figure, then such plaintiff must show the defendant (or defendant's agent acting within the scope of the agency) acted with actual malice in uttering the defamatory remark. *See Nguyen-Lam v. Cao*, 90 Cal. Rptr. 3d 205, 212 (Cal. Ct. App. 2009); *Miami Herald Publ'g Co. v. Ane*, 423 So. 2d 376, 382 (Fla. Dist. Ct. App. 1982). Malice exists, generally, if a defendant or a defendant's agent makes the statement knowing it is false or with reckless disregard to its truth. *See Nguyen-Lam*, 90 Cal. Rptr. 3d at 212; *Ane*, 423 So. 2d at 378, 382.

The parties have not raised the issue of Plaintiffs' public or private status for this litigation, and Defendant argues a failure to plead sufficient facts to establish either level of fault. Accordingly, the court considers Plaintiffs to be private individuals at this stage of the litigation. *See Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 16 (D. Me. 2012) (employing this approach in similar situation). Therefore, under both California and Florida law, Plaintiffs have sufficiently pled the requisite degree of fault if they allege facts demonstrating Defendant (or his agents acting within the scope of their agency) acted negligently. *See Brown v. Kelly Broad. Co.*, 771 P.2d 406, 425 (Cal. 1989); *Boyles v. Mid-Florida TV Corp.*, 431 So. 2d 627, 634 (Fla.

Dist. Ct. App. 1983), *aff'd* 467 So. 2d 282, 283 (Fla. 1985). Negligence exists if the statement is made without first exercising reasonable care to determine if it is, in fact, false. *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 137 Cal. Rptr. 3d 455, 471 (Cal. Ct. App. 2012); *Boyles*, 431 So. 2d at 634. Individuals not only clearly fail to exercise reasonable care if they make a statement known to be false, but also if a reasonable person would have known the statement was false. *See Brown*, 771 P.2d at 430; *Boyles*, 431 So. 2d at 634; *Carney v. Santa Cruz Women Against Rape*, 271 Cal. Rptr. 30, 34 n.2 (Cal. Ct. App. 1990).

The two legal theories for establishing fault in this case are: *respondeat superior* liability and direct liability. *Respondeat superior* is a "doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Black's Law Dictionary* 1505 (10th ed. 2014). Under the direct liability theory, Defendant would be held liable on the basis of his own fault for his conduct and involvement regarding the statements.

    a.  *Respondeat Superior* Liability

Defendant asserts the SAC does not sufficiently allege his agents possessed the requisite degree of fault necessary to hold Defendant liable for defamation on the basis of *respondeat superior*.[16] When a third party is harmed by an agent's conduct, the principal is subject to *respondeat superior* liability, a form of vicarious liability, if the agent was acting within the scope of work performed for the principal and the principal controlled or had a right to control the manner of the agent's work. *Restatement (Third) of Agency* §§ 7.03, 7.07 (2006); *see also Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1080 (9th Cir. 2003) ("[U]nder California law [an employer] may be held liable for defamatory statements made by its employees under the doctrine of *respondeat superior* . . . if the defamation occurred within the scope of the employee's employment."); *Mercury Motors Express, Inc. v. Smith*, 393 So. 2d 545, 549 (Fla. 1991) ("An employer is vicariously liable . . . [for] the negligent acts of employees committed within the scope of their employment

---

[16] In the SAC, Plaintiffs specifically allege Defendant is liable for the statements given by his agents on the basis of *respondeat superior*. (SAC ¶¶ 83, 94, 105.)

even if the employer is without fault."). It follows that, under this theory, "a principal's vicarious liability

turns on whether the agent is liable." *Restatement (Third) of Agency* § 7.03 cmt. b; *see id.* ("In most cases, direct

liability requires fault on the part of the principal whereas vicarious liability does not require that the

principal be at fault."); *accord Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 637 F. Supp. 2d 1029, 1037 (M.D.

Fla. 2009); *Palomares v. Bear Stearns Residential Mortg. Corp.*, No. 07cv01899 WQH (BLM), 2008 WL 686683, at

*4 (S.D. Cal. Mar. 13, 2008). In order to proceed on their theory of *respondeat superior* liability, Plaintiffs' SAC

must include sufficient allegations supporting a finding of fault on the part of those speaking for

Defendant—Phillips, Brokaw, and Singer. As discussed above, both California and Florida use a negligence

standard when evaluating whether a defendant has published a defamatory statement about a private

individual. *See Mile Marker, Inc.*, 811 So. 2d at 845; *Sarver*, 2011 WL 11574477, at *8 n.11. This standard

applies equally to authorized agents acting in the scope of their agency. *See Estate of Miller*, 637 F. Supp. 2d at

1037; *Palomares*, 2008 WL 686683, at *4.

Defendant contends Plaintiffs' allegations are threadbare or conclusory and cannot be the basis of a

"plausible determination" that Defendant's agents acted with fault. (Def.'s Mem. 31-32.) This argument

cannot succeed if, after accepting Plaintiffs' allegations as true, the court can reasonably infer that those

speaking for Defendant—Phillips, Brokaw, and Singer—were themselves negligent. The SAC states directly

and by inference that the individuals who issued the statements were professionals, employed by Defendant

for purposes including speaking to the media on his behalf. (SAC ¶¶ 25-26, 29-30, 33-35, 37, 51-53, 55, 65-

68, 70, 77, 88, 99.) Given Defendant's prominence in the entertainment field, the court infers he surrounded

himself with people accomplished in media relations and legal matters. The court also infers those making

Defendant's public statements had an open line of communication with him as well as some historical

perspective on his public relations matters. Based on the facts and inferences, the court finds it plausible at

this point to conclude (1) those agents would have had, at a minimum, some sense of Defendant's alleged

conduct, such that their duty of care would have required them to take steps to determine the truth or falsity

of the statements, and (2) the content of their responsive statements demonstrates such reasonable care was not taken.

In reaching its conclusions, the court notes that prior to the formal discovery process, facts pertaining to state of mind in defamation actions need not be alleged with extreme detail, due to the difficulty of definitively ascertaining them at this stage of litigation. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (in the defamation context, state of mind may be alleged generally); *see also generally* Fed. R. Civ. P. 9(b); *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012).

The court, at this stage, accepting all of Plaintiffs' well-pled averments as true, finds *respondeat superior* liability is sufficiently pled. Therefore, Defendant's motion for dismissal on this point is denied.

### b. Direct Liability

Defendant asserts that Plaintiffs do not identify direct liability as a legal theory upon which the defamation claims can be proven. However, the SAC does state Defendant acted "by and through" each of the people who actually gave each statement alleged to be defamatory. (SAC ¶¶ 25, 30, 33-35, 38, 51-52, 56, 65-68, 71, 73-74, 77, 80-82, 85, 88, 91-93, 96, 99, 102-04.) The SAC also states that Defendant's agents gave the statements "at the direction of Defendant." (*Id.* ¶¶ 37, 55, 70.) Additionally, the SAC states Defendant knew the claimed defamatory statements were false at the time they were published. (*Id.* ¶¶ 36, 54, 69, 79, 90, 101.) If a principal purposefully directs an agent to perform an action, and that agent performs the action, then the principal is directly responsible for the consequences of the action. *See Restatement (Third) of Agency* § 7.03; *see also HBSC Ins. Ltd. v. Scanwell Container Line Ltd.*, No. CV 00-05729SVW(SHX), 2001 WL 940673, at *2 (C.D. Cal. Jan. 17, 2001); *Partington v. Metallic Eng'g Co.*, 792 So. 2d 498, 501 (Fla. Dist. Ct. App. 2001).

The court is not persuaded by Defendant's argument that Plaintiffs did not adequately plead direct liability as a named legal theory. Under the applicable federal procedural requirements, a complaint need only put a defendant on notice as to legal theories and this can be done, as here, without formally naming

them; a plaintiff need not perfectly plead all legal theories. *See Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (reversing dismissal because "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *see also id.* at 347 ("'The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief.'" (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1219, at 277-78 (3d ed. 2002))).

Defendant rightfully concedes that if he had "approved defamatory statements before they were issued, he would be *directly* liable for defamation, irrespective of whether he or his agents personally issued the statements." (Dkt. No. 41, Def.'s Reply Mem. Supp. Mot. to Dismiss 10 ("Def.'s Reply Mem.").) *See Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 48 (Cal. Ct. App. 2007); *Island City Flying Serv. v. Gen. Elec. Credit Corp.*, 585 So. 2d 274, 278 (Fla. 1991). But he asserts in his reply brief there was a failure to plead sufficient facts to infer actual approval. (Def.'s Reply Mem. at 10.) The court does not agree. From examination of all the facts in the SAC, it does not take a speculative leap for the court to conclude Defendant would be personally involved in reviewing these types of accusations against him, crafting or approving the responsive statements, and directing the dissemination. The SAC alleges Defendant was an "internationally known" entertainment figure and the people making public statements for him were acting either as attorney or publicist and/or authorized representative or employee. (SAC ¶¶ 3, 26, 29, 53.) At this stage of the litigation, it would be unreasonable to view these particular circumstances, responding to very serious accusations of the nature involved here, as not having the direct involvement of Defendant.

The court therefore finds direct liability is sufficiently pled. Accordingly, Defendant's motion for dismissal on this point is denied.

### 3. Self-Defense Privilege

The court turns to Defendant's argument that Plaintiffs' claims should be dismissed even if the statements at issue are potentially defamatory because these statements are protected by the common-law

privilege of self-defense. (Def.'s Mem. 22-25.) Defendant relies in part on a Massachusetts case, contending "[t]he privilege of self-defense includes the right to 'brand the accusations as false and calumnious' and to 'comment upon the motives of the accuser.'" (*Id.* at 23 (quoting *Conroy v. Fall River Herald News Co.*, 28 N.E. 2d 729, 730 (Mass. 1940)).) Defendant also asserts, without citing any authority, "[t]here is no requirement that, to avail oneself of the self-defense privilege, the responsive statement be truthful." (*Id.* at 25.) The court concludes the state substantive law governing Plaintiffs' claims does not recognize this privilege and, even if it were recognized, the court at this stage could not find that it applies.

Neither California nor Florida recognize the self-defense privilege. As the parties acknowledge, California courts have rejected the notion of a privilege to defame in self-defense. (Pls.' Mem. 11; Def.'s Mem. 23 n.8.) *See Finke v. Walt Disney Co.*, 2 Cal. Rptr. 3d 436, 459 (Cal. Ct. App. 2003) ("California does not recognize 'self-help' as an independent privilege."), *review granted*, 79 P.3d 541 (Cal. 2003), *review dismissed as settled*, 99 P.3d 5 (Cal. 2004).[17] Similarly, while Florida recognizes several types of conditional defensive privileges in the context of defamation, self-defense is not one of them. *See Nodar v. Galbreath*, 462 So. 2d 803, 809-10 (Fla. 1984) (recognizing the privileges of mutuality of interest between the speaker and the listener, protection of the recipient's interest, and statements to a political authority regarding issues of public concern). Moreover, the court is not persuaded by Defendant's assertion that, because Florida courts have never explicitly rejected the self-defense privilege, it must be assumed the privilege would be recognized in Florida. In the court's view, the absence of any indication that Florida courts would adopt this privilege, especially when they have explicitly adopted other common-law defamation privileges, establishes no basis to assume the self-defense privilege would be recognized in Florida. *Cf. Klayman v. City Pages*, No. 5:13-cv-143-Oc-22PRL, 2015 WL 1546173, at *17 n.18 (M.D. Fla. Apr. 3, 2015) (declining to find that the

---

[17] Defendant nonetheless asserts statements made in self-defense fall within the "predictable opinion" doctrine recognized in California. This court, however, has already rejected Defendant's predictable opinion arguments. *See* Section V.C.1.a.ii., *supra*. Accordingly, his predictable opinion arguments fare no better here when linked to a purported self-defense privilege.

"libel-proof plaintiff" defamation defense exists in Florida when the defendants failed to provide any authority in support of that assertion).

The court recognizes that some jurisdictions do apply a version of the conditional self-defense privilege, which allows individuals, in certain circumstances, to publish defamatory responsive statements necessary to defend their reputation. However, as recognized by the cases Defendant himself cites, as well as the *Restatement*, such a privilege does not permit a defendant to knowingly publish false statements of fact. *See Conroy*, 28 N.E.2d at 730 ("[O]ne has a right *in good faith* to brand the accusations as false and calumnious." (emphasis added)); *Shepherd v. Baer*, 53 A. 790, 791 (Md. 1902) (explaining that an individual relying on the self-defense privilege "cannot avail himself of the occasion to make false charges of fact"); *Restatement (Second) of Torts* § 593 (conditional privilege may not be "abused"); *id.* § 600 (conditional privilege is abused if publisher "(a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity"). As explained in a treatise relied upon by both Plaintiffs and Defendant, the self-defense privilege permits the speaker to "call the accuser a liar, but she or he may not include in the reply defamatory matter that is irrelevant *or that the speaker knows or believes to be false.* To do so is to abuse, and therefore lose, the privilege." *Sack on Defamation* § 9:2.1, at 9-11 (4th ed. 2010) (emphasis added).

Accordingly, even in jurisdictions recognizing this conditional privilege, there is a clash with the applicable motion to dismiss standard. At the motion to dismiss stage, Plaintiffs' allegations are presumed true, *San Geronimo Caribe Project, Inc.* 687 F.3d at 471, so Defendant's allegedly defamatory self-defense responses, made through his agents, would necessarily be viewed as knowingly false under these specific circumstances. This alone would negate the good faith requirement regarding the self-defense privilege at the motion to dismiss stage.[18] *See Lundquist v. Reusser*, 875 P.2d 1279, 1291 (Cal. 1994) (conditional privileges which California does recognize are lost "if the person making the statement was . . . [m]otivated by hatred

---

[18] Arguably, a self-defense privilege could protect a defendant who made a responsive good faith statement that later turned out to be inaccurate. *See Sack on Defamation* § 9:1, at 9-3 & n.6.

or ill-will toward the plaintiff which induced the publication; or . . . [w]as without a good-faith belief in the truth of the statement"); *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. Dist. Ct. App. 2000) (explaining that an essential element for conditional privileges which Florida does recognize is "good faith"); *see also Bank of Am. Corp. v. Valladares*, 141 So. 3d 714, 718 (Fla. Dist. Ct. App. 2014) (conditional privilege to report a crime is lost "if the reporter acts maliciously, meaning the reporter either knows the report is false or recklessly disregards whether the report is false"), *review granted*, 168 So. 3d 231 (Fla. 2015). The court would thus be constrained to infer that Defendant abused, and therefore lost, the privilege. See *Sack on Defamation* § 9:1, at 9-2 ("In some situations, a speaker will not be held liable for false defamatory statements because the freedom to speak in protection of certain interests is deemed to be more important than the ability to redress harm to reputation that such speech may cause. But for the speaker to be protected in such situations, the statement must be made in good faith and for proper motives and the occasion must not be otherwise 'abused.'"); *see also id.* §§ 9:3.1-9:3.2, at 9-41 to 9-50 (discussing the different types of "malice" which courts find to be an abuse of conditional privileges).[19] Therefore, even if Florida and California did recognize this privilege, Defendant would not be able to invoke it at this stage to support his motion to dismiss.

### 4. Incremental Harm as to November 20, 2014 Statement about Plaintiff Traitz

Defendant argues the defamation claim by Plaintiff Traitz that stems from the November 20, 2014 Statement should be dismissed because she has not suffered incremental harm as a result of the statement. According to Defendant, the allegedly defamatory portion of Singer's statement is no more damaging to Traitz's reputation than the true reporting of her criminal convictions.

---

[19] The court notes that in some states, a defendant's negligence in ascertaining the truth of a conditionally privileged defamatory statement may constitute grounds for losing the privilege. *See Sack on Defamation* § 9:3.4, at 9-52 to 9-53. Under the Supreme Court's decision in *Gertz*, 418 U.S. 323, however, each state's defamation law must include an element of fault at least rising to negligence; therefore, "[e]stablishing the cause of action would, *ipso facto*, establish defeasance of qualified privilege." *Sack on Defamation* § 9:3.4, at 9-53. In any event, the court need not delve further into the complications surrounding a self-defense privilege, the ways in which it may be lost, and the tensions with the motion to dismiss standard, because neither California nor Florida recognizes the self-defense privilege.

The "incremental harm doctrine," which some courts have described as related to the "libel-proof plaintiff doctrine," *see Thomas v. Tel. Publ'g Co.*, 929 A.2d 991, 1002 (N.H. 2007); *Stern v. Cosby*, 645 F. Supp. 2d 258, 270 (S.D.N.Y. 2009), "measures the harm 'inflicted by the challenged statements beyond the harm imposed by the rest of the publication. If that harm is determined to be nominal or nonexistent, the statements are dismissed as not actionable.'" *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 898 (9th Cir. 1992) (quoting *Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir. 1986)); *see also Tel. Publ'g Co.*, 929 A.2d at 1002-03.[20]

Defendant has not provided any authority, and the court has not found any, indicating that Florida (the jurisdiction controlling resolution of Plaintiff Traitz's claims) recognizes this defense. Accordingly, just as the court in *Klayman*, 2015 WL 1546173, at *17 n.18, refused to recognize the libel-proof plaintiff doctrine under Florida law, this court, in the absence of any indication to the contrary, cannot conclude the Florida Supreme Court would adopt the incremental harm doctrine. *Cf. Masson*, 960 F.2d at 899 (concluding that "the incremental harm doctrine is not an element of California libel law," in part, "because the California courts have never adopted it"); *Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 90 (D. Mass. 2010) ("Since no court in the Commonwealth has ever recognized the doctrine of incremental harm, this Court refrains from doing so here."). Even if Florida did recognize this doctrine, the court would not conclude, especially at this

---

[20] The libel-proof plaintiff doctrine, in contrast, looks to a plaintiff's previously damaged reputation. *See Tel. Publ'g Co.*, 929 A.2d at 1002-04 (explaining the differences between the incremental harm and libel-proof plaintiff doctrines). Under that doctrine, "when a plaintiff's reputation is so diminished at the time of publication of the allegedly defamatory material that only nominal damages at most could be awarded because the person's reputation was not capable of sustaining further harm, the plaintiff is deemed to be libel-proof as a matter of law and is not permitted to burden a defendant with a trial." *Lamb v. Rizzo*, 391 F.3d 1133, 1137 (10th Cir. 2004) (internal citation omitted); *see Tel. Publ'g Co.*, 929 A.2d at 1005 ("To justify applying the doctrine, the evidence of record must show not only that the plaintiff engaged in criminal or anti-social behavior in the past, but also that his activities were widely reported to the public." (internal citation omitted)). As Plaintiffs note, Defendant has only expressly requested dismissal pursuant to the incremental harm doctrine, and not the separate libel-proof plaintiff doctrine. However, even if Defendant were pressing both grounds for dismissal, his argument would fail because Florida has not adopted the libel-proof plaintiff doctrine, *see Klayman*, 2015 WL 1546173, at *17 n.18, and Defendant has not established that Traitz falls into the narrow category of individuals with a sufficiently tarnished reputation such that a defamatory statement could not impair her reputation, *see Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986) ("The libel-proof plaintiff doctrine is to be applied with caution . . . since few plaintiffs will have so bad a reputation that they are not entitled to obtain redress for defamatory statements." (citation omitted)); *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594 (S.D.N.Y. 1996) ("Dismissal based on the libel-proof plaintiff doctrine is not appropriate at this stage of the litigation, because it requires the Court to make factual findings regarding plaintiff's reputation for a particular trait.").

stage of the litigation, that the challenged portion of Singer's statement—asserting that Plaintiff Traitz fabricated the sexual assault allegation—caused no more than nominal harm beyond the reporting of her criminal convictions. *See, e.g., Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594 (S.D.N.Y. 1996) ("[T]he doctrine requires a court to measure the harm flowing from the challenged statement as compared to the harm flowing from the rest of the publication . . . and the parties have not yet conducted discovery on the issue of damages." (citation omitted)).

## VI.    CONCLUSION

For the reasons set forth above, Defendant's motions to dismiss (Dkt. Nos. 21, 22, and 23) are DENIED in their entirety.

It is So Ordered.


  _/s/ Mark G. Mastroianni_____
MARK G. MASTROIANNI
United States District Judge