IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
Western Division

TAMARA GREEN                         :
                                     :
        and                          :
                                     :
THERESE SERIGNESE                    :
                                     :
        and                          :     Case No. 3:14-cv-30211-MGM
                                     :
LINDA TRAITZ                         :
                                     :
        and                          :
                                     :
LOUISA MORITZ                        :
                                     :
        and                          :
                                     :
BARBARA BOWMAN                       :
                                     :
        and                          :
                                     :
JOAN TARSHIS                         :
                                     :
        and                          :
                                     :
ANGELA LESLIE                        :
                                     :
        Plaintiffs,                  :
                                     :
        v.                           :
                                     :
WILLIAM H. COSBY, JR.                :
                                     :
        Defendant.                   :

THIRD AMENDED COMPLAINT[1]

COME NOW the Plaintiffs, by and through their counsel,

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(2), Defendant Cosby has consented in writing to the filing of this Third Amended Complaint without leave of the Court, by the previously filed Joint Stipulation Regarding Third Amended Complaint.


EXHIBIT
A

Joseph Cammarata, Esq., Matthew W. Tievsky, Esq., Alexandra Schmit, Esq., and Andrew Abraham, Esq., and hereby represent as follows:

<u>JURISDICTION AND PARTIES</u>

1.   This Court has jurisdiction of the within cause of action pursuant to diversity of citizenship and the amount in controversy, 28 U.S.C. § 1332.

2.   Venue lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391, in that Defendant William H. Cosby, Jr. resides and is domiciled in this District.

3.   Defendant Cosby is an internationally known actor and comedian.

4.   Plaintiff Tamara Green is an adult individual residing and domiciled in California.

5.   Plaintiff Therese Serignese is an adult individual residing and domiciled in Florida.

6.   Plaintiff Linda Traitz is an adult individual residing and domiciled in Florida.

7.   Plaintiff Louisa Moritz is an adult individual residing and domiciled in California.

8.   Plaintiff Barbara Bowman is an adult individual residing and domiciled in Arizona.

9.   Plaintiff Joan Tarshis is an adult individual residing and domiciled in New York.

10.   Plaintiff Angela Leslie is an adult individual residing and domiciled in Michigan.

## FACTUAL BACKGROUND

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

### A.   Plaintiff Tamara Green

11.   Plaintiff Green met Defendant Cosby in or about 1969 or 1970, through an introduction from a mutual friend.

12.   During that time, Plaintiff Green was a young and aspiring model and singer.

13.   Defendant Cosby solicited Plaintiff Green's assistance to raise money for Defendant Cosby from investors to establish a new club that Defendant Cosby intended to open.

14.   On a certain date in the early 1970s, Plaintiff Green telephoned Defendant Cosby to advise him that she was not feeling well and was unable to continue to assist him as described in Paragraph 13 above.

15.   Defendant Cosby invited Plaintiff Green to meet him for lunch at Café Figaro in Los Angeles, California, telling her

that she would feel better if she had something to eat.

16.   While at lunch together, Defendant Cosby offered Plaintiff Green some red and grey pills, telling Plaintiff Green that they were over-the-counter cold medicine.

17.   Plaintiff Green ingested the pills believing them to be what Defendant Cosby represented them to be.

18.   To Plaintiff Green's surprise, within a short period of time, the pills caused Plaintiff Green to feel weak, dizzy and woozy.

19.   Upon information and belief, Defendant Cosby deceived Plaintiff Green into ingesting narcotic or other type of drugs and not cold medicine.

20.   Defendant Cosby intentionally drugged Plaintiff Green into this altered state, in order to facilitate his later sexual assault.

21.   After feeling the effects of the drugs, lunch was ended prematurely and Defendant Cosby drove Plaintiff Green to her apartment.

22.   Once there, without Plaintiff Green's consent, Defendant Cosby undressed himself and Plaintiff Green. Defendant Cosby then began to take advantage of Plaintiff Green by running his hands all over her body, touching her breasts and vaginal

area, and he digitally penetrated her, while masturbating himself.

23.   Despite repeated demands to stop, Defendant Cosby continued his assault of Plaintiff Green.

24.   Plaintiff Green repeatedly told Defendant Cosby, "You're going to have to kill me" in an effort to stop the assault.

25.   It was not until Plaintiff Green was able to upend a table lamp that Defendant Cosby stopped.

26.   During the entirety of the sexual assault, Plaintiff Green remained weak, vulnerable and unable to fully defend her herself.

27.   Defendant Cosby eventually left Plaintiff Green's apartment, leaving two $100 bills on a coffee table.

28.   Plaintiff Green first widely publicly disclosed Defendant Cosby's sexual assault in or about February of 2005, by an interview with the Philadelphia Daily News, and then by appearances on television shows.

29.   Defendant Cosby, directly, and vicariously by and through his actual and/or apparent authorized representative, lawyer, agent, servant, and/or employee, Walter M. Phillips, Jr. ("Phillips"), responded that Defendant Cosby did not know

Plaintiff Green, and that Plaintiff Green's allegations were "absolutely false" and that the incident "did not happen in any way, shape, or form."

30.   On or about February 7, 2014, Newsweek published an interview of Plaintiff Green. In the interview, Plaintiff Green again detailed Defendant Cosby's sexual assault.

31.   Along with that interview, Newsweek published a response attributed to "[Defendant] Cosby's publicist." Upon information and belief, the publicist was David Brokaw ("Brokaw").

32.   In this response, Defendant Cosby, directly, and vicariously by and through his actual and/or apparent agent, authorized representative, servant, and/or employee, Brokaw, stated: "This is a 10-year-old, discredited accusation that proved to be nothing at the time, and is still nothing." (This statement is referred to herein as "the Newsweek defamatory statement.") Defendant Cosby thereby continued his pattern of branding Plaintiff Green as a liar that he began in 2005.

33.   Within the several weeks preceding November 16, 2014, Plaintiff Green's disclosure resurfaced in the news media, in relation to other recent accusations of sexual misconduct against Defendant Cosby (including but not limited co-Plaintiff

Bowman's accusation, described below).

34.   On or about November 16, 2014, Defendant Cosby, directly, and vicariously by and through his actual and/or apparent agent, authorized representative, lawyer, servant, and/or employee John P. Schmitt ("Schmitt"), responded to Plaintiff Green's disclosure, as well as to similar accusations by multiple other women, by publishing a defamatory statement on Defendant Cosby's web site.  The statement read as follows, in part or in whole:

> Over the past several weeks, decade-old, discredited allegations against Bill Cosby have resurfaced. The fact that they are being repeated does not make them true. Mr. Cosby does not intend to dignify these allegations with any comment. He would like to thank all his fans for the outpouring of support and assure them that, at age 77, he is doing his best work. There will be no further statement from Mr. Cosby or any of his representatives.

(The entirety of the statement is referred to herein as "the November 16 defamatory statement.")

35.   Defendant Cosby later clarified, directly, and vicariously by and through Schmitt, by a new statement published on Defendant Cosby's web site, that the November 16 defamatory statement was specifically not intended to refer to Andrea Constand, a woman who previously filed suit against Defendant

Cosby for sexual assault which resolved by way of a confidential settlement.

36.   On or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through his actual and/or apparent agent, authorized representative, lawyer, servant, and/or employee Martin D. Singer ("Singer"), responded to Plaintiff Green's disclosure, as well as to similar accusations by multiple other women (including but not limited to Plaintiff Traitz), by publishing a statement given to numerous media outlets (referred to herein as "the November 20 'woodwork' defamatory statement"), stating, in part, that Plaintiff Traitz was "the latest example of people coming out of the woodwork with unsubstantiated or fabricated stories about my client [Defendant Cosby]."  The statement continued, and attacked Plaintiff Traitz's honesty and credibility.

37.   Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Green's disclosure, as well as to similar accusations by multiple other women, including but not limited to Plaintiff Moritz, by a statement given to numerous media outlets (referred to herein as "the November 20 'absurdity' defamatory statement"), that stated, in part, "[w]e've reached a

point of absurdity.  The stories are getting more ridiculous. . . . I think people are trying to come up with these wild stories in order to justify why they have waited 40 to 50 years to disclose these ridiculous accusations."  The statement continued, and attacked Plaintiff Moritz's honesty and credibility.

38.  In or about November of 2014, Plaintiff Green repeated the substance of her allegations in an interview she gave to The Washington Post.  The interview was published on or about November 22, 2014.

39.  Along with that interview, The Washington Post published a response attributed to Phillips.

40.  In the response, Defendant Cosby, directly, and vicariously by and through Phillips, stated, in part, that Plaintiff Green's allegations were "absolutely false"; that they were an "uncorroborated story" and that "Mr. Cosby does not know the name of Tamara Green . . . and the incident she describes did not happen."  (The entirety of the statement is referred to herein as "the Washington Post defamatory statement.")

41.  Defendant Cosby, directly, and vicariously by and through Phillips, gave and/or forwarded the statement referred to in Paragraph 40, to The Washington Post for publication in

or about November of 2014.

42.   In addition, or in the alternative, to Paragraph 41:
Defendant Cosby, directly, and vicariously by and through
Phillips, originally published the statement referred to in
Paragraph 40, in or about 2005, in response to Plaintiff
Green's accusations against Defendant Cosby made in that same
year; and Defendant Cosby, directly, and vicariously by and
through Phillips, did so with the expectation and intent that
the statement would be republished by news outlets in the
event that Plaintiff Green should repeat her accusations,
and/or should these accusations be reported again, on a later
date.   Thus, when Defendant Cosby, directly, and vicariously
by and through Phillips, published the statement referred to
in Paragraph 40, in 2005, it was reasonably foreseeable at
that time, that the statement would be republished by third-
party news media as part of news accounts on Plaintiff Green's
repeated allegations, such as by The Washington Post in 2014.

**B.   Plaintiff Therese Serignese**

43.   On a certain date in or about 1976, Plaintiff
Serignese met Defendant Cosby in or near a gift shop at the Las
Vegas Hilton.

44.   During this time, Plaintiff Serignese was an aspiring

10

young model, who was in Las Vegas to visit her mother.

45.   At that time and place, Defendant Cosby approached Plaintiff Serignese from behind, put his arm around her, and asked, "Will you marry me?"

46.   Defendant Cosby thereafter invited Plaintiff Serignese to see his show at the Las Vegas Hilton.

47.   Plaintiff Serignese later attended the show, and at its conclusion was invited to a room backstage by Defendant Cosby.

48.   Once Defendant Cosby and Plaintiff Serignese were alone together in a room backstage, Defendant Cosby gave Plaintiff Serignese two pills, and instructed Plaintiff Serignese to ingest the pills.   Plaintiff Serignese complied.

49.   The pills put Plaintiff Serignese into an altered state of consciousness.

50.   Defendant Cosby intentionally drugged Plaintiff Serignese into this altered state, in order to facilitate his later sexual assault.

51.   Once the pills put Plaintiff Serignese into an altered State of consciousness, without Plaintiff Serignese's consent, Defendant Cosby undressed himself and Plaintiff Serignese. Defendant Cosby then began to take advantage of Plaintiff

Serignese sexually.

52.   Defendant Cosby stood behind Plaintiff Serignese, bent her over, sexually penetrated her, and raped her.

53.   During the entirety of the sexual assault, Defendant Cosby acted without Plaintiff Serignese's consent, and Plaintiff Serignese remained weak, vulnerable, and unable to fully defend herself.

54.   On or about November 19, 2014, Plaintiff Serignese publicly disclosed Defendant Cosby's sexual assault against her.

55.   On or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Serignese's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

56.   Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Serignese's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

57.   On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Serignese's disclosure, as well as to similar

accusations by multiple other women made publicly in the preceding weeks, by issuing a written defamatory statement to numerous media outlets.   The statement read, in part:

> The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.
>
> These brand new claims about alleged decades-old events are becoming increasing ridiculous, and it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assault over a span of so many years.

(The entirety of the statement is referred to herein as "the November 21 defamatory statement.")

### C.   **Plaintiff Linda Traitz**

58.   In or about 1970, Plaintiff Linda Traitz was approximately 18 years old, and a waitress at Café Figaro. Through her work at the restaurant, Plaintiff Traitz became acquainted with Defendant Cosby.

59.   One day that year, while Defendant Cosby was at the restaurant, he offered a ride home to Plaintiff Traitz, which she accepted.

60.   Instead of driving Plaintiff Traitz home, Defendant

Cosby drove with Plaintiff Traitz to a beach in Los Angeles, where Defendant Cosby parked his car.

61.   Defendant Cosby then opened a briefcase and presented Plaintiff Traitz with an assortment of pills.  Defendant Cosby pressured Plaintiff Traitz to ingest some of the pills, "to relax," as he said.

62.   As evidenced by his previous use of pills with Plaintiff Green and Plaintiff Serignese, Defendant Cosby's offer of pills to Plaintiff Traitz was an attempt to intentionally drug Plaintiff Traitz into an altered state of consciousness, to facilitate Defendant Cosby's planned sexual assault against Plaintiff Traitz.

63.   Plaintiff Traitz declined the pills.

64.   In response, Defendant Cosby became sexually aggressive with Plaintiff Traitz, groping Plaintiff Traitz's breasts and vaginal area. Defendant Cosby pushed Plaintiff Traitz down on the car seat, and attempted to lie on top of her. Plaintiff Traitz resisted Defendant Cosby's assault.

65.   On or about November 13, 2014, Plaintiff Traitz publicly disclosed this incident through a post she made on her personal Facebook page.

66.   On or about November 20, 2014, Defendant Cosby,

directly, and vicariously by and through Singer, responded to Plaintiff Traitz's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

67.   Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Traitz's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

68.   On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Traitz's disclosure, as well as to similar accusations by multiple other women, by issuing the November 21 defamatory statement.

        D.   **Plaintiff Louisa Moritz**

69.   On a certain date in or about April of 1969, Plaintiff Moritz, then a young actress, was waiting in a room backstage at the studio of the National Broadcasting Company to make an appearance on "The Tonight Show," in New York.  As she was dressed and waiting to appear, there was a knock on the door, and Defendant Cosby entered the room.

70.   Defendant Cosby expressed interest in Plaintiff

Moritz's work and her future, and implied that Plaintiff Moritz would become a major star through his direction.

71.   Without any invitation or other expression of consent from Plaintiff Moritz, Defendant Cosby approached Plaintiff Moritz, who was seated, and then exposed his penis, which was now in the front of Plaintiff Moritz's face, put his hands behind Plaintiff Moritz's head, and forced his penis into Plaintiff Moritz's mouth over her resistance.   Defendant Cosby said to Plaintiff Moritz, "Have a taste of this.   It will do you good in so many ways."   Defendant Cosby added, "I am going to make you something incredible."

72.   A person associated with "The Tonight Show" summoned Plaintiff Moritz to the show over an intercom.   Upon hearing this, Defendant Cosby stopped his assault and left the room.

73.   During the entirety of the assault, Defendant Cosby acted without Plaintiff Moritz's consent.

74.   As Defendant Cosby left the room, he told Plaintiff Moritz, "Now you don't want to upset me and the plans for your future, do you?"   Plaintiff Moritz understood this as Defendant Cosby's warning to her not to disclose to anyone else, what he had done to Plaintiff Moritz.

75.   On or about November 20, 2014, Plaintiff Moritz

disclosed this assault through a publicly issued written statement.

76.   Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Moritz's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" statement.

77.   Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Moritz's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" statement.

78.   On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Moritz's disclosure, as well as to similar accusations by multiple other women made publicly in the preceding weeks, by issuing the November 21 defamatory statement.

    E.   **Plaintiff Barbara Bowman**

79.   Plaintiff Bowman met Defendant Cosby in or about 1985, when she was a 17 year-old model and an aspiring actress. Plaintiff Bowman was introduced to Defendant Cosby in Denver,

Colorado, by her agent, Jo Farrell, with the understanding that Defendant Cosby would mentor Plaintiff Bowman to be a successful actress.

80.   Upon first meeting at a conference room in the Turn of the Century Nightclub in Denver, Colorado, Defendant Cosby directed Plaintiff Bowman to go to the bathroom and wet her hair, and she complied.   When she returned, Defendant Cosby directed Plaintiff Bowman to sit in a chair, close her eyes, and perform an improvisation exercise with him by acting intoxicated.   As she did so, Defendant Cosby stood behind Plaintiff Bowman and, without her consent, stroked her neck and upper chest.

81.   During their subsequent professional relationship, Defendant Cosby purported to be a father figure to Plaintiff Bowman, as well as a mentor and benefactor, aiding her acting career.

82.   As part of their professional relationship, Defendant Cosby flew Plaintiff Bowman to celebrity events and performances across the country, and he eventually moved her to New York.

83.   During their professional relationship, Defendant Cosby committed the following acts of sexual assault against Plaintiff Bowman:

a.   In or about 1986, Plaintiff Bowman was in Defendant Cosby's hotel suite in Reno, Nevada, for what she believed to be a professional meeting.  Defendant Cosby turned off the lights, laid Plaintiff Bowman down on a couch, ran his hands over her body, then grabbed Plaintiff Bowman's hand and placed it on his penis, then used her hand to masturbate himself.  Defendant Cosby acted without Plaintiff Bowman's consent throughout the assault.

b(i).   Subsequently, in New York, Plaintiff Bowman was invited by Defendant Cosby to his residence, for acting instruction.  Defendant Cosby served Plaintiff Bowman dinner, as well as a glass of red wine, which she drank some of.  The glass of wine rendered Plaintiff Bowman unconscious.  When Plaintiff Bowman regained consciousness, she was vomiting into a toilet bowl, wearing her own underpants but a man's T-shirt that she did not recognize, with Defendant Cosby standing over her wearing a bathrobe.  All of the staff at Defendant Cosby's house was gone, and Plaintiff Bowman was alone with Defendant Cosby in the house.

b(ii).   Upon information and belief, Defendant Cosby had sexually taken advantage of Plaintiff Bowman while she was unconscious, after intentionally drugging her to put her into an

altered state of consciousness.

b(iii).   During the entirety of the sexual assault, Defendant Cosby acted without Plaintiff Bowman's consent, and Plaintiff Bowman remained weak, vulnerable, and unable to defend herself.

c(i).   Subsequently, Plaintiff Bowman was invited by Defendant Cosby to see his show in Atlantic City, New Jersey. While in Defendant Cosby's hotel suite, Defendant Cosby physically assaulted Plaintiff Bowman by throwing her down onto his bed, jumping on top of her and using his forearm to pin her down by her neck.  While Plaintiff Bowman screamed for help and tried to wrestle out of his grip, Defendant Cosby attempted to forcibly remove Plaintiff Bowman's pants, and unbuckle his own belt, apparently intending to rape her.  However, deterred by Plaintiff Bowman's continuing screams, Defendant Cosby gave up his assault, called Plaintiff Bowman "a baby," and ejected her from the suite.  Defendant Cosby's last words to Plaintiff Bowman were, "I better never, ever see your face or hear your name again."

c(ii).   During the entirety of the assault, Defendant Cosby acted without Plaintiff Bowman's consent.  Immediately thereafter, Defendant Cosby totally ended his support for

Plaintiff Bowman.

84.   In or about 2006, Plaintiff Bowman publicly disclosed Defendant Cosby's sexual assaults against her.

85.   On or about October 27, 2014, Plaintiff Bowman publicly disclosed Defendant Cosby's sexual assaults against her, through a published interview with the Daily Mail.

86.   On or about November 13, 2014, Plaintiff Bowman publicly disclosed sexual assaults against her by Defendant Cosby, through an article that she wrote, published by The Washington Post.

87.   On or about November 16, 2014, Defendant Cosby, directly, and vicariously by and through Schmitt, responded to Plaintiff Bowman's disclosure, as well as to similar accusations by multiple other women, by publishing the November 16 defamatory statement.

88.   On or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Bowman's disclosures, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

89.   Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to

Plaintiff Bowman's disclosures, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

F.   **Plaintiff Joan Tarshis**

90.   Plaintiff Joan Tarshis first met Defendant Cosby through mutual friends, in Los Angeles, in or about 1969 or 1970, when she was a young, aspiring comedy writer.

91.   While in Los Angeles, Defendant Cosby subsequently invited Plaintiff Tarshis to meet him at his bungalow for a professional meeting, after he was done with a day's shooting for his television show, "The Bill Cosby Show."  Defendant Cosby told Plaintiff Tarshis that he wanted to work on comedy material with her.  Flattered and believing this would advance her career, Plaintiff Tarshis accepted.

92.   At his bungalow, Defendant Cosby prepared a mixed alcoholic drink for Plaintiff Tarshis, which she drank.  The drink incapacitated Plaintiff Tarshis and put her in an altered state of consciousness.  Upon information and belief, Defendant Cosby intentionally drugged Plaintiff Tarshis into this altered state of consciousness, in order to facilitate his later sexual assault.

93.   While Plaintiff Tarshis was in this altered state of

consciousness, and while on a couch, Defendant Cosby began to remove her underwear.  Plaintiff Tarshis asked, "What's going on?"  Defendant Cosby responded, "You know what's going on."

94.  Plaintiff Tarshis tried to dissuade Defendant Cosby from assaulting her by falsely telling Defendant Cosby that she had a vaginal infection that he could catch, and which would alert Defendant Cosby's wife to his infidelity.

95.  In response, Defendant Cosby grabbed Plaintiff Tarshis's head and hair such that she could not get away, and he forced her to perform oral sex on him.

96.  During the entirety of the assault, Defendant Cosby acted without Plaintiff Tarshis's consent.

97.  After the assault, Defendant Cosby gave Plaintiff Tarshis approximately 10 to 20 dollars and called her a cab to take her home.

98.  On a subsequent occasion, while Plaintiff Tarshis was at her parents' house, Defendant Cosby called Plaintiff Tarshis to invite her to watch him perform at the Westbury Music Fair in New York.  Plaintiff Tarshis accepted the invitation because she did not want to explain to her mother what had happened in his bungalow.  Defendant Cosby's driver picked her up and drove her to Defendant Cosby's hotel.  Once

there, Plaintiff Tarshis visited Defendant Cosby in his hotel suite.

99. While in Defendant Cosby's hotel suite, Plaintiff Tarshis noticed a man's leather shaving kit that was filled with bottles of pills.

100. Defendant Cosby again prepared a mixed drink for Plaintiff Tarshis, which she drank.

101. The two then travelled by car to the theater where Defendant Cosby was to perform. During the car ride, Defendant Cosby served Plaintiff Tarshis another alcoholic drink, which she drank.

102. One or both of the drinks eventually incapacitated Plaintiff Tarshis and put her in an altered state of consciousness. Upon information and belief, Defendant Cosby again intentionally drugged Plaintiff Tarshis into this altered state of consciousness, in order to facilitate his later sexual assault.

103. At the theater, Plaintiff Tarshis watched Defendant Cosby perform, while standing behind the seated audience. However, Plaintiff Tarshis felt drugged and could not stand. She felt like she ws going to pass out, and she ssked Defendant Cosby's chauffeur to take her back to Defendant

Cosby's car.  Plaintiff Tarshis was taken back to Defendant Cosby's car, where she lost consciousness.

104. When Plaintiff Tarshis regained consciousness the next morning, she was in Defendant Cosby's bed, naked and sore.  Next to her was Defendant Cosby, who was also naked. Upon information and belief, Defendant Cosby had sexually assaulted Plaintiff Tarshis again, without her consent, while she was unconscious.

105. Plaintiff Tarshis widely disclosed Defendant Cosby's sexual assaults upon her, by transmitting a written statement that was published on www.hollywood-elsewhere.com, on or about November 16, 2014.

106. On or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Tarshis's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

107. Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Tarshis's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

108. On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Tarshis's disclosure, as well as to similar accusations by multiple other women, by issuing the November 21 defamatory statement.

### G.   Plaintiff Angela Leslie

109. In or about 1990, Plaintiff Leslie was a 28 year-old model and actress, and she sent a letter, resume, headshot, and VHS tape to a casting agency, hoping to obtain a role in Defendant Cosby's upcoming movie, "Ghost Dad."

110. In response to Plaintiff Leslie's submission, Defendant Cosby personally contacted Plaintiff Leslie.  The two maintained a professional relationship, occasionally contacting one another, over approximately the next two years.

111. In or about 1992, Plaintiff Leslie accepted Defendant Cosby's invitation to meet him in Las Vegas, Nevada, for professional reasons.  Plaintiff Leslie was put up in a hotel room by Defendant Cosby, and she was asked to meet Defendant Cosby in his hotel suite, to work on acting techniques.

112. Once Plaintiff Leslie was inside Defendant Cosby's hotel suite, he directed her to perform in an impromptu "audition," by acting intoxicated.

113. Defendant Cosby then prepared an alcoholic drink and offered it to Plaintiff Leslie.  Plaintiff Leslie only tasted the drink.

114. Defendant Cosby directed Plaintiff Leslie to go to the bathroom and wet her hair, and she complied.  When she returned from the bathroom, Defendant Cosby had undressed and gotten into bed.

115. Without Plaintiff Leslie's consent, Defendant Cosby grabbed Plaintiff Leslie's hand, poured lotion into her hand, pulled her hand under the blankets, held his hand on top of hers, placed her hand on his penis, and used her hand to masturbate himself.

116. During the entirety of Defendant Cosby's assault against Plaintiff Leslie, he acted without her consent.

117. On or about November 20, 2014, Plaintiff Leslie publicly disclosed Defendant Cosby's sexual assault against her, in an interview published in the New York Daily News.

118. Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Leslie's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

119. Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Leslie's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

120. On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Leslie's disclosure, as well as to similar accusations by multiple other women, by issuing the November 21 defamatory statement.

### FACTS COMMON TO ALL THE PLAINTIFFS

121. At all relevant times before the publication of the Newsweek defamatory statement, the Washington Post defamatory statement, the November 16 defamatory statement, the November 20 defamatory "woodwork" defamatory statement, the November 20 "absurdity" defamatory statement, and/or the November 21 defamatory statement (collectively, "the defamatory statements at issue"), each Plaintiff enjoyed the respect, confidence and esteem of her family, friends, and neighbors, as well as others in the community.

122. At all relevant times, Brokaw, Phillips, Schmitt, and Singer each acted at the direction of Defendant Cosby, and as an

actual and/or apparent agent, authorized representative, lawyer, servant, and/or employee of Defendant Cosby, acting within the course and scope of his respective employment and/or agency.

123. Brokaw's, Phillips', Schmitt's, and Singer's conduct each was ratified by Defendant Cosby by, *inter alia*, his ongoing failure to retract the defamatory statements at issue; and by the public announcements in or about July of 2015, by Monique Pressley ("Pressley"), an actual and/or apparent agent, authorized representative, lawyer, servant, and/or employee of Defendant Cosby, acting at the direction of Defendant Cosby and within the course and scope of her agency. Pressley stated that the defamatory statements at issue were Defendant Cosby's, *e.g.*, Pressley stated that Defendant Cosby "is relying on able counsel to speak for him" in response to the accusations of sexual misconduct; that "when [Defendant Cosby's] attorneys speak, we're speaking for him"; and that the defamatory statements at issue were "the statement[s] of [Defendant] Bill Cosby."

124. Furthermore, upon information and belief, the public knew that the defamatory statements at issue were effectively Defendant Cosby's statements, when Brokaw, Phillips, Schmitt, and Singer each made his respective defamatory statement(s) at issue.

125. Defendant Cosby is directly liable for the conduct of Brokaw, Phillips, Schmitt, and Singer.

126. Defendant Cosby is also vicariously liable for the conduct of Brokaw, Phillips, Schmitt, and Singer.

127. Upon information and belief, Brokaw, Phillips, Schmitt, and Singer were each professionals, skilled in media relations.

128. Upon information and belief, Brokaw, Phillips, Schmitt, and Singer each had an open line of communications with Defendant Cosby, and furthermore was generally familiar with Defendant Cosby's past conduct, such as Defendant Cosby's past alleged sexual misconduct with multiple women (including but not limited to the women named herein, as well as Andrea Constand, who sued Defendant Cosby for sexual assault in or about 2005, and the other women known as "Jane Does" in Ms. Constand's lawsuit).

129. Brokaw, Phillips, Schmitt, and Singer each knew the falsity of his respective defamatory statement(s) at issue, and/or failed to make reasonable inquiry into the truth of the statement(s) that he respectively issued on behalf of Defendant Cosby, including but not limited to asking Defendant Cosby whether the statement(s) were true.

130. The defamatory statements at issue were not privileged.

## COUNT I
Newsweek Defamatory Statement – Defamation
Plaintiff Green

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

131. The Newsweek defamatory statement was of and concerning Plaintiff Green.

132. The Newsweek defamatory statement was printed, published, circulated and distributed by news outlets, and was widely read by the public.

133. The Newsweek defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after each was originally published.

134. In the Newsweek defamatory statement, Defendant Cosby, directly, and vicariously by and through Brokaw, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault against Plaintiff Green did not occur, and that she lied and was a liar.

135. The Newsweek defamatory statement was defamatory *per se*.

136. The Newsweek defamatory statement was false when made, in that Plaintiff Green's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that she was lying or a liar.

137. Defendant Cosby has known that Plaintiff Green's allegations of sexual misconduct were true and that Brokaw's and Defendant Cosby's denial, and their impugning of her honesty, were false.

138. Brokaw knew, or should have known, that the Newsweek defamatory statement was false at the time of the publication.

139. Defendant Cosby knew the Newsweek defamatory statement was false at the time of the publication.

140. Brokaw, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Brokaw, gave the Newsweek defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

141. The Newsweek defamatory statement on its face

impugned the reputation of Plaintiff Green, and tended to expose her to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation.

142. The Newsweek defamatory statement has directly and proximately caused Plaintiff Green damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

WHEREFORE, Plaintiff Tamara Green demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT II
Newsweek Defamatory Statement –
Invasion of Privacy (False Light)
Plaintiff Green

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

143. The publication of the Newsweek defamatory statement

cast Plaintiff Green in a false light that would be considered highly offensive to a reasonable person.

144. Brokaw, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Brokaw, gave the Newsweek defamatory statement with knowledge, or with reckless disregard, of the false light in which Plaintiff Green would be placed.

145. The publication of the Newsweek defamatory statement constituted a major misrepresentation of the character of Plaintiff Green.

WHEREFORE, Plaintiff Tamara Green demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

## COUNT III
Newsweek Defamatory Statement –
Intentional Infliction of Emotional Distress
Plaintiff Green

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

146. Brokaw, within the course and scope of his agency

with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Brokaw, gave the Newsweek defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized community.

147. Brokaw, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Brokaw, acted with intent to cause, or reckless disregard for causing, emotional distress to Plaintiff Green.

148. The publication of the Newsweek defamatory statement actually and proximately caused severe emotional distress to Plaintiff Green.

WHEREFORE, Plaintiff Tamara Green, demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

## COUNT IV
Washington Post Defamatory Statement – Defamation
Plaintiff Green

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

149. The Washington Post defamatory statement was of and concerning Plaintiff Green.

150. The Washington Post defamatory statement was printed, published, circulated and distributed by news outlets, and was widely read by the public.

151. The Washington Post defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after it was published or re-published on or about November 22, 2014.

152. In the Washington Post defamatory statement, Defendant Cosby, directly, and vicariously by and through Phillips, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault against Plaintiff Green did not occur, and that she lied and was a liar.

153. The Washington Post defamatory statement was defamatory *per se*.

154. The Washington Post defamatory statement was false when made, in that Plaintiff Green's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that she was lying or a liar.

155. Defendant Cosby has known that Plaintiff Green's allegations of sexual misconduct were true and that Phillips' and Defendant Cosby's denial, and their impugning of Plaintiff Green's honesty, were false.

156. Phillips knew, or should have known, that the Washington Post defamatory statement was false at the time of the publication.

157. Defendant Cosby knew the Washington Post defamatory statement was false at the time of the publication.

158. Phillips, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Phillips, gave the Washington Post defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

159. The Washington Post defamatory statement on its face impugned the reputation of Plaintiff Green, and tended to expose her to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation.

160. The Washington Post defamatory statement has directly and proximately caused Plaintiff Green damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

WHEREFORE, Plaintiff Tamara Green demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

<u>COUNT V</u>
Washington Post Defamatory Statement –
Invasion of Privacy (False Light)
Plaintiff Green

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

161. The publication of the Washington Post defamatory statement cast Plaintiff Green in a false light that would be considered highly offensive to a reasonable person.

162. Phillips, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Phillips, gave the Washington Post

defamatory statement with knowledge, or with reckless disregard, of the false light in which Plaintiff Green would be placed.

163. The publication of the Washington Post defamatory statement constituted a major misrepresentation of the character of Plaintiff Green.

WHEREFORE, Plaintiff Tamara Green demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

<u>COUNT VI</u>
Washington Post Defamatory Statement –
Intentional Infliction of Emotional Distress
Plaintiff Green

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

164. Phillips, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Schmitt, gave the Washington Post defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized community.

165. Phillips, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Phillips, acted with intent to cause, or reckless disregard for causing, emotional distress to Plaintiff Green.

166. The publication of the Washington Post defamatory statement actually and proximately caused severe emotional distress to Plaintiff Green.

WHEREFORE, Plaintiff Tamara Green demands judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

<u>COUNT VII</u>
November 16 Defamatory Statement – Defamation
Plaintiffs Green and Bowman

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

167. The November 16 defamatory statement was of and concerning Plaintiffs Green and Bowman, and no more than four women had publicly accused Defendant Cosby of sexual misconduct before the publication of the November 16

defamatory statement, since at least the beginning of 2014.

168. The November 16 defamatory statement was posted at the direction of Defendant Cosby on his website, and printed, published, circulated and distributed by news outlets, and was widely read by the public.

169. The November 16 defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after each was originally published.

170. In the November 16 defamatory statement, Defendant Cosby, directly, and vicariously by and through Schmitt, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault(s) against Plaintiffs Green and Bowman did not occur, and that each of these Plaintiffs lied and was a liar.

171. The November 16 defamatory statement was defamatory *per se*.

172. The November 16 defamatory statement was false when made, in that Plaintiffs Green's and Bowman's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that any of these Plaintiffs was lying or a liar.

173. Defendant Cosby has known that Plaintiffs Green's and Bowman's allegations of sexual misconduct were true and that Schmitt's and Defendant Cosby's denial, and their impugning of these Plaintiffs' honesty, were false.

174. Schmitt knew, or should have known, that the November 16 defamatory statement was false at the time of the publication.

175. Defendant Cosby knew the November 16 defamatory statement was false at the time of the publication.

176. Schmitt, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Schmitt, gave the November 16 defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

177. The November 16 defamatory statement on its face impugned the reputation of Plaintiffs Green and Bowman, and tended to expose each of these Plaintiffs to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause each to be shunned or avoided, and/or to injure each in her occupation,

good name, character, and reputation.

178. The November 16 defamatory statement has directly and proximately caused Plaintiffs Green and Bowman, each, damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

WHEREFORE, Plaintiffs Tamara Green and Barbara Bowman, each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT VIII
November 16 Defamatory Statement –
Invasion of Privacy (False Light)
Plaintiffs Green and Bowman

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

179. The publication of the November 16 defamatory statement cast Plaintiffs Green and Bowman each in a false light that would be considered highly offensive to a reasonable person.

180. Schmitt, within the course and scope of his agency

43

with Defendant Cosby, and Defendant Cosby, directly, and

vicariously by and through Schmitt, gave the November 16

defamatory statement with knowledge, or with reckless disregard,

of the false light in which Plaintiffs Green and Bowman would be

placed.

181. The publication of the November 16 defamatory

statement constituted a major misrepresentation of the character

of each of Plaintiffs Green and Bowman.

WHEREFORE, Plaintiffs Tamara Green and Barbara Bowman, each

demand judgment of and against Defendant William H. Cosby, Jr.,

in an amount in excess of the minimal jurisdictional limits of

the Court, in compensatory damages and punitive damages, plus

pre- and post-judgment interest, attorneys' fees, and costs.

## COUNT IX
November 16 Defamatory Statement –
Intentional Infliction of Emotional Distress
Plaintiffs Green and Bowman

Plaintiffs replead and incorporate by reference herein each

and every allegation set forth above and further state as

follows:

182. Schmitt, within the course and scope of his agency

with Defendant Cosby, and Defendant Cosby, directly, and

vicariously by and through Schmitt, gave the November 16

defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized community.

183. Schmitt, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Schmitt, acted with intent to cause, or reckless disregard for causing, emotional distress to Plaintiffs Green and Bowman.

184. The publication of the November 16 defamatory statement actually and proximately caused severe emotional distress to Plaintiffs Green and Bowman.

WHEREFORE, Plaintiffs Tamara Green and Barbara Bowman, each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

## COUNT X
November 20 "Woodwork" Defamatory Statement – Defamation
All Plaintiffs

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

185. The November 20 "woodwork" defamatory statement was

of and concerning every Plaintiff, and no more than 11 women had publicly accused Defendant Cosby of sexual misconduct before the publication of the November 20 "woodwork" defamatory statement, since at least the beginning of 2014.

186. The November 20 "woodwork" defamatory statement was printed, published, circulated and distributed by news outlets, and was widely read by the public.

187. The November 20 "woodwork" defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after it was originally published.

188. In the November 20 "woodwork" defamatory statement, Defendant Cosby, directly, and vicariously by and through Singer, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's attempted and/or actual sexual assault(s) against each Plaintiff did not occur, and that each Plaintiff lied and was a liar.

189. The November 20 "woodwork" defamatory statement was defamatory *per se*.

190. The November 20 "woodwork" defamatory statement was false when made, in that each Plaintiff's accusations against

Defendant Cosby were true, and there was no reasonable basis to publicly claim that any Plaintiff was lying or a liar.

191. Defendant Cosby has known that each Plaintiff's allegations of sexual misconduct were true and that Singer's and Defendant Cosby's denial, and their impugning of each Plaintiffs' honesty, were false.

192. Singer knew, or should have known, that the November 20 "woodwork" defamatory statement was false at the time of the publication.

193. Defendant Cosby knew the November 20 "woodwork" defamatory statement was false at the time of the publication.

194. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "woodwork" defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

195. The November 20 "woodwork" defamatory statement on its face impugned the reputation of each Plaintiff, and tended to expose each Plaintiff to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of

right-thinking persons, to cause each to be shunned or avoided, and/or to injure each in her occupation, good name, character, and reputation.

196. The November 20 "woodwork" defamatory statement has directly and proximately caused each Plaintiff damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

WHEREFORE, Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie, each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT XI
November 20 "Woodwork" Defamatory Statement
Invasion of Privacy (False Light)
Plaintiffs Moritz, Bowman, Leslie, Green

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

197. The publication of the November 20 "woodwork"

statement cast Plaintiffs Moritz, Bowman, Leslie, and Green each in a false light that would be considered highly offensive to a reasonable person.

198. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "woodwork" defamatory statement with knowledge, or with reckless disregard, of the false light in which Plaintiffs Moritz, Bowman, Leslie, and Green would be placed.

199. The publication of the November 20 "woodwork" defamatory statement constituted a major misrepresentation of the character of each of Plaintiffs Moritz, Bowman, Leslie, and Green.

WHEREFORE, Plaintiffs Louisa Moritz, Barbara Bowman, Angela Leslie, and Tamara Green, each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT XII
November 20 "Woodwork" Defamatory Statement
Intentional Infliction of Emotional Distress
All Plaintiffs

49

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

200. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "woodwork" defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized community.

201. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, acted with intent to cause, or reckless disregard for causing, emotional distress to each Plaintiff.

202. The publication of the November 20 "woodwork" defamatory statement actually and proximately caused severe emotional distress to each Plaintiff.

WHEREFORE, Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie, each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest,

attorneys' fees, and costs.

### COUNT XIII
November 20 "Absurdity" Defamatory Statement - Defamation
All Plaintiffs

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

203. The November 20 "absurdity" defamatory statement was of and concerning every Plaintiff, and no more than 11 women had publicly accused Defendant Cosby of sexual misconduct before the publication of the November 20 "absurdity" defamatory statement, since at least the beginning of 2014.

204. The November 20 "absurdity" defamatory statement was printed, published, circulated and distributed by news outlets, and was widely read by the public.

205. The November 20 "absurdity" defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after it was originally published.

206. In the November 20 "absurdity" defamatory statement, Defendant Cosby, directly, and vicariously by and through Singer, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's

attempted and/or actual sexual assault(s) against each Plaintiff did not occur, and that each Plaintiff lied and was a liar.

207. The November 20 "absurdity" defamatory statement was defamatory *per se*.

208. The November 20 "absurdity" defamatory statement was false when made, in that each Plaintiff's accusation(s) against Defendant Cosby were true, and there was no reasonable basis to publicly claim that any Plaintiff was lying or a liar.

209. Defendant Cosby has known that Plaintiffs' allegations of sexual misconduct were true and that Singer's and Defendant Cosby's denial, and their impugning of each Plaintiff's honesty, were false.

210. Singer knew, or should have known, that the November 20 "absurdity" defamatory statement was false at the time of the publication.

211. Defendant Cosby knew the November 20 "absurdity" defamatory statement was false at the time of the publication.

212. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "absurdity" defamatory statement intentionally, with knowledge of its

falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

213. The November 20 "absurdity" defamatory statement on its face impugned the reputation of each Plaintiff, and tended to expose each Plaintiff to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause each to be shunned or avoided, and/or to injure each in her occupation, good name, character, and reputation.

214. The November 20 "absurdity" defamatory statement has directly and proximately caused each Plaintiff damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

WHEREFORE, Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT XIV**
November 20 "Absurdity" Defamatory Statement
Invasion of Privacy (False Light)
Plaintiffs Green, Moritz, Bowman, Leslie

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

215. The publication of the November 20 "absurdity" statement cast Plaintiffs Green, Moritz, Bowman, and Leslie each in a false light that would be considered highly offensive to a reasonable person.

216. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "absurdity" defamatory statement with knowledge, or with reckless disregard, of the false light in which Plaintiffs Green, Moritz, Bowman, and Leslie would be placed.

217. The publication of the November 20 "absurdity" statement constituted a major misrepresentation of the character of each of Plaintiffs Green, Moritz, Bowman, and Leslie.

WHEREFORE, Plaintiffs Tamara Green, Louisa Moritz, Barbara Bowman, and Angela Leslie each demand judgment of and against

Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT XV
November 20 "Absurdity" Defamatory Statement
Intentional Infliction of Emotional Distress
All Plaintiffs

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

218. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "absurdity" defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized community.

219. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, acted with intent to cause, or reckless disregard for causing, emotional distress to each Plaintiff.

220. The publication of the November 20 "woodwork" defamatory statement actually and proximately caused severe

emotional distress to each Plaintiff.

WHEREFORE, Plaintiffs Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie, each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT XVI
November 21 Defamatory Statement – Defamation
Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

221. The November 21 defamatory statement was of and concerning Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie, and no more than 11 women had publicly accused Defendant Cosby of sexual misconduct before the publication of the November 21 defamatory statement, since at least the beginning of 2014.

222. The November 21 defamatory statement was printed, published, circulated and distributed by news outlets, and was widely read by the public.

223. The November 21 defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after it was originally published.

224. In the November 21 defamatory statement, Defendant Cosby, directly, and vicariously by and through Singer, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's attempted and/or actual sexual assault(s) against Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie did not occur, and that each of these Plaintiffs lied and was a liar.

225. The November 21 defamatory statement was defamatory *per se*.

226. The November 21 defamatory statement was false when made, in that Plaintiffs Serignese's, Traitz's, Moritz's, Tarshis's, and Leslie's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that any of these Plaintiffs was lying or a liar.

227. Defendant Cosby has known that Plaintiffs Serignese's, Traitz's, Moritz's, Tarshis's, and Leslie's allegations of sexual misconduct were true and that Singer's and Defendant Cosby's denial, and their impugning of these

Plaintiffs' honesty, were false.

228. Singer knew, or should have known, that the November 21 defamatory statement was false at the time of the publication.

229. Defendant Cosby knew the November 21 defamatory statement was false at the time of the publication.

230. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly and/or by and through Singer, gave the November 21 defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

231. The November 21 defamatory statement on its face impugned the reputation of Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie, and tended to expose each of these Plaintiffs to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause each to be shunned or avoided, and/or to injure each in her occupation, good name, character, and reputation.

232. The November 21 defamatory statement has directly and

proximately caused Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie, each, damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

WHEREFORE, Plaintiffs Therese Serignese, Linda Traitz, Louisa Moritz, Joan Tarshis, and Angela Leslie each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT XVII
November 21 Defamatory Statement
Invasion of Privacy (False Light)
Plaintiffs Moritz and Leslie

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

233. The publication of the November 21 statement cast Plaintiffs Moritz and Leslie each in a false light that would be considered highly offensive to a reasonable person.

234. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and

vicariously by and through Singer, gave the November 21 defamatory statement with knowledge, or with reckless disregard, of the false light in which Plaintiffs Moritz and Leslie would be placed.

235. The publication of the November 21 statement constituted a major misrepresentation of the character of each of Plaintiffs Moritz and Leslie.

WHEREFORE, Plaintiffs Louisa Moritz and Angela Leslie each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

### COUNT XVIII
November 21 Defamatory Statement
Intentional Infliction of Emotional Distress
Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie

Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:

236. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly and/or by and through Singer, gave the November 21 defamatory statement intentionally, and this constituted outrageous conduct, utterly

intolerable in a civilized community.

237. Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, acted with intent to cause, or reckless disregard for causing, emotional distress to Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie.

238. The publication of the November 21 defamatory statement actually and proximately caused severe emotional distress to Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie.

WHEREFORE, Plaintiffs Therse Serignese, Linda Traitz, Louisa Moritz, Joan Tarshis, and Angela Leslie, each demand judgment of and against Defendant William H. Cosby, Jr., in an amount in excess of the minimal jurisdictional limits of the Court, in compensatory damages and punitive damages, plus pre- and post-judgment interest, attorneys' fees, and costs.

Respectfully submitted,


*/s/ Joseph Cammarata*
Joseph Cammarata, Esquire
Matthew W. Tievsky, Esquire
**CHAIKIN, SHERMAN, CAMMARATA &
    SIEGEL, P.C.**
The Law Building
1232 Seventeenth Street, N.W.
Washington, D.C. 20036
Ofc: (202) 659-8600
Fax: (202) 659-8680
E-mail: joe@dc-law.net
Attorneys for All Plaintiffs


*/s/ Alexandra B. Schmit*
Alexandra B. Schmit, Esquire
BBO No. 662942
**THE BRESSLER FIRM LLC**
180 N. Michigan Ave., Suite 1800
Chicago, IL 60601
(312) 278-4450 (phone)
(312) 275-7104 (fax)
E-mail: alexandra_schmit@
bresslerfirm.com
Attorneys for Plaintiffs
Bowman, Tarshis, and Leslie Only


*/s/ Andrew Abraham*
Andrew Abraham, Esquire
BBO No. 631167
**ABRAHAM & ASSOCIATES, P.C.**
2 Center  Plaza, Suite 620
Boston, MA 02108
(617) 648-4499 (phone)
(617) 648-4493 (fax)
Attorneys for All Plaintiffs

## JURY DEMAND

Plaintiffs hereby request a trial by jury as to all issues triable herein.

/s/ Joseph Cammarata
Joseph Cammarata, Esquire

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of November, 2015, a copy of the foregoing Third Amended Complaint was served by Case Management / Electronic Case Files upon:

John J. Egan
Egan, Flanagan & Cohen, PC
67 Market Street
P.O. Box 9035
Springfield, MA 01102

Christopher Tayback
Marshall M. Searcy, III
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa
10th Floor
Los Angeles, CA 90017

/s/ Joseph Cammarata
Joseph Cammarata, Esquire