**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

| | |
|---|---|
| **TAMARA GREEN, THERESE SERIGNESE, LINDA TRAITZ, LOUISA MORITZ, BARBARA BOWMAN, JOAN TARSHIS, and ANGELA LESLIE,**<br><br>        **Plaintiffs,**<br><br>    **v.**<br><br>**WILLIAM H. COSBY, JR.,**<br><br>        **Defendant.** | **Case No.: 3:14-cv-30211-MGM**<br><br>**JURY TRIAL DEMANDED** |
| **WILLIAM H. COSBY, JR.,**<br><br>        **Counterclaim Plaintiff,**<br><br>    **v.**<br><br>**TAMARA GREEN, THERESE SERIGNESE, LINDA TRAITZ, LOUISA MORITZ, BARBARA BOWMAN, JOAN TARSHIS, and ANGELA LESLIE,**<br><br>        **Counterclaim Defendants.** | |

**WILLIAM H. COSBY JR.'S ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendant, William H. Cosby, Jr., by and through his undersigned counsel, answers

Plaintiffs' Third Amended Complaint (the "Complaint") as follows:

<u>**JURISDICTION AND PARTIES**</u>

1.    This Court has jurisdiction of the within cause of action pursuant to diversity of

citizenship and the amount in controversy, 28 U.S.C. § 1332.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 1 of the Complaint.

2.      Venue lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391, in that Defendant William H. Cosby, Jr. resides and is domiciled in this District.

**ANSWER:**      Mr. Cosby admits the allegations set forth in paragraph 2 of the Complaint.

3.      Defendant Cosby is an internationally known actor and comedian.

**ANSWER:**      Mr. Cosby admits the allegations set forth in paragraph 3 of the Complaint.

4.      Plaintiff Tamara Green is an adult individual residing and domiciled in California.

**ANSWER:**      Mr. Cosby admits that Plaintiff Tamara Green is an adult individual, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 4 of the Complaint.

5.      Plaintiff Therese Serignese is an adult individual residing and domiciled in Florida.

**ANSWER:**      Mr. Cosby admits that Plaintiff Therese Serignese is an adult individual, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 5 of the Complaint.

6.      Plaintiff Linda Traitz is an adult individual residing and domiciled in Florida.

**ANSWER:**      Mr. Cosby admits that Plaintiff Linda Traitz is an adult individual, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 6 of the Complaint.

7.      Plaintiff Louisa Moritz is an adult individual residing and domiciled in California.

**ANSWER:**      Mr. Cosby admits that Plaintiff Louisa Moritz is an adult individual, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 7 of the Complaint.

8.      Plaintiff Barbara Bowman is an adult individual residing and domiciled in Arizona.

**ANSWER:**    Mr. Cosby admits that Plaintiff Barbara Bowman is an adult individual, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 8 of the Complaint.

9.      Plaintiff Joan Tarshis is an adult individual residing and domiciled in New York.

**ANSWER:**    Mr. Cosby admits that Plaintiff Joan Tarshis is an adult individual, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 9 of the Complaint.

10.      Plaintiff Angela Leslie is an adult individual residing and domiciled in Michigan.

**ANSWER:**    Mr. Cosby admits that Plaintiff Angela Leslie is an adult individual, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 10 of the Complaint.

## FACTUAL BACKGROUND

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

### A.      Plaintiff Tamara Green

11.      Plaintiff Green met Defendant Cosby in or about 1969 or 1970, through an introduction from a mutual friend.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint.

12.      During that time, Plaintiff Green was a young and aspiring model and singer.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint.

13.    Defendant Cosby solicited Plaintiff Green's assistance to raise money for Defendant Cosby from investors to establish a new club that Defendant Cosby intended to open.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint.

14.    On a certain date in the early 1970s, Plaintiff Green telephoned Defendant Cosby to advise him that she was not feeling well and was unable to continue to assist him as described in Paragraph 13 above.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 of the Complaint.

15.    Defendant Cosby invited Plaintiff Green to meet him for lunch at Café Figaro in Los Angeles, California, telling her that she would feel better if she had something to eat.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of the Complaint.

16.    While at lunch together, Defendant Cosby offered Plaintiff Green some red and grey pills, telling Plaintiff Green that they were over-the-counter cold medicine.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 of the Complaint.

17.    Plaintiff Green ingested the pills believing them to be what Defendant Cosby represented them to be.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 17 of the Complaint.

18.    To Plaintiff Green's surprise, within a short period of time, the pills caused Plaintiff Green to feel weak, dizzy and woozy.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 18 of the Complaint.

19.     Upon information and belief, Defendant Cosby deceived Plaintiff Green into

ingesting narcotic or other type of drugs and not cold medicine.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 19 of the Complaint.

20.     Defendant Cosby intentionally drugged Plaintiff Green into this altered state, in

order to facilitate his later sexual assault.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 20 of the Complaint.

21.     After feeling the effects of the drugs, lunch was ended prematurely and Defendant

Cosby drove Plaintiff Green to her apartment.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 21 of the Complaint.

22.     Once there, without Plaintiff Green's consent, Defendant Cosby undressed

himself and Plaintiff Green. Defendant Cosby then began to take advantage of Plaintiff Green by

running his hands all over her body, touching her breasts and vaginal area, and he digitally

penetrated her, while masturbating himself.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 22 of the Complaint.

23.     Despite repeated demands to stop, Defendant Cosby continued his assault of

Plaintiff Green.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 23 of the Complaint.

24.     Plaintiff Green repeatedly told Defendant Cosby, "You're going to have to kill

me" in an effort to stop the assault.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 24 of the Complaint.

25.     It was not until Plaintiff Green was able to upend a table lamp that Defendant Cosby stopped.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 25 of the Complaint.

26.     During the entirety of the sexual assault, Plaintiff Green remained weak, vulnerable and unable to fully defend her herself.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 26 of the Complaint.

27.     Defendant Cosby eventually left Plaintiff Green's apartment, leaving two $100 bills on a coffee table.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 27 of the Complaint.

28.     Plaintiff Green first widely publicly disclosed Defendant Cosby's sexual assault in or about February of 2005, by an interview with the Philadelphia Daily News, and then by appearances on television shows.

**ANSWER:**     Mr. Cosby admits that Plaintiff Green publicly disclosed her allegations in or around February 2005, but denies any allegation in paragraph 28 of the Complaint that he engaged in any sexual assault.

29.     Defendant Cosby, directly, and vicariously by and through his actual and/or apparent authorized representative, lawyer, agent, servant, and/or employee, Walter M. Phillips, Jr. ("Phillips"), responded that Defendant Cosby did not know Plaintiff Green, and that Plaintiff Green's allegations were "absolutely false" and that the incident "did not happen in any way, shape, or form."

**ANSWER:**     Paragraph 29 of the Complaint states conclusions or characterizations of law and therefore no response is required.

30.     On or about February 7, 2014, Newsweek published an interview of Plaintiff Green. In the interview, Plaintiff Green again detailed Defendant Cosby's sexual assault.

**ANSWER:**     Mr. Cosby admits that Newsweek published an interview of Plaintiff Green on or around February 7, 2014, but denies any allegation in paragraph 30 of the Complaint that he engaged in any sexual assault.

31.     Along with that interview, Newsweek published a response attributed to "[Defendant] Cosby's publicist." Upon information and belief, the publicist was David Brokaw ("Brokaw").

**ANSWER:**     Mr. Cosby admits the allegations set forth in paragraph 31 of the Complaint.

32.     In this response, Defendant Cosby, directly, and vicariously by and through his actual and/or apparent agent, authorized representative, servant, and/or employee, Brokaw, stated: "This is a 10-year-old, discredited accusation that proved to be nothing at the time, and is still nothing." (This statement is referred to herein as "the Newsweek defamatory statement.") Defendant Cosby thereby continued his pattern of branding Plaintiff Green as a liar that he began in 2005.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 32 of the Complaint states conclusions or characterizations of law, no response is required.

33.     Within the several weeks preceding November 16, 2014, Plaintiff Green's disclosure resurfaced in the news media, in relation to other recent accusations of sexual misconduct against Defendant Cosby (including but not limited co-Plaintiff Bowman's accusation, described below).

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 33 of the Complaint.

34.     On or about November 16, 2014, Defendant Cosby, directly, and vicariously by

and through his actual and/or apparent agent, authorized representative, lawyer, servant, and/or

employee John P. Schmitt ("Schmitt"), responded to Plaintiff Green's disclosure, as well as to

similar accusations by multiple other women, by publishing a defamatory statement on

Defendant Cosby's web site. The statement read as follows, in part or in whole:

> Over the past several weeks, decade-old, discredited allegations against
> Bill Cosby have resurfaced. The fact that they are being repeated does not make
> them true. Mr. Cosby does not intend to dignify these allegations with any
> comment. He would like to thank all his fans for the outpouring of support and
> assure them that, at age 77, he is doing his best work. There will be no further
> statement from Mr. Cosby or any of his representatives.

(The entirety of the statement is referred to herein as "the November 16 defamatory statement.")

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 34 of the Complaint states conclusions or

characterizations of law, no response is required.

35.     Defendant Cosby later clarified, directly, and vicariously by and through Schmitt,

by a new statement published on Defendant Cosby's web site, that the November 16 defamatory

statement was specifically not intended to refer to Andrea Constand, a woman who previously

filed suit against Defendant Cosby for sexual assault which resolved by way of a confidential

settlement.

**ANSWER:**     Paragraph 35 of the Complaint states conclusions or characterizations of law and

therefore no response is required.

36.     On or about November 20, 2014, Defendant Cosby, directly, and vicariously by

and through his actual and/or apparent agent, authorized representative, lawyer, servant, and/or

employee Martin D. Singer ("Singer"), responded to Plaintiff Green's disclosure, as well as to similar accusations by multiple other women (including but not limited to Plaintiff Traitz), by publishing a statement given to numerous media outlets (referred to herein as "the November 20 `woodwork' defamatory statement"), stating, in part, that Plaintiff Traitz was "the latest example of people coming out of the woodwork with unsubstantiated or fabricated stories about my client [Defendant Cosby]." The statement continued, and attacked Plaintiff Traitz's honesty and credibility.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 36 of the Complaint states conclusions or characterizations of law, no response is required.

37.    Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Green's disclosure, as well as to similar accusations by multiple other women, including but not limited to Plaintiff Moritz, by a statement given to numerous media outlets (referred to herein as "the November 20 'absurdity' defamatory statement"), that stated, in part, "[w]e've reached a point of absurdity. The stories are getting more ridiculous. . . . I think people are trying to come up with these wild stories in order to justify why they have waited 40 to 50 years to disclose these ridiculous accusations." The statement continued, and attacked Plaintiff Moritz's honesty and credibility.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 37 of the Complaint states conclusions or characterizations of law, no response is required.

38.     In or about November of 2014, Plaintiff Green repeated the substance of her allegations in an interview she gave to The Washington Post. The interview was published on or about November 22, 2014.

**ANSWER:**     Mr. Cosby admits that The Washington Post published an interview of Plaintiff Green on or about November 22, 2014, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 38.

39.     Along with that interview, The Washington Post published a response attributed to Phillips.

**ANSWER:**     Mr. Cosby admits the allegations set forth in paragraph 39 of the Complaint.

40.     In the response, Defendant Cosby, directly, and vicariously by and through Phillips, stated, in part, that Plaintiff Green's allegations were "absolutely false"; that they were an "uncorroborated story" and that "Mr. Cosby does not know the name of Tamara Green . . . and the incident she describes did not happen." (The entirety of the statement is referred to herein as "the Washington Post defamatory statement.")

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 40 of the Complaint states conclusions or characterizations of law, no response is required.

41.     Defendant Cosby, directly, and vicariously by and through Phillips, gave and/or forwarded the statement referred to in Paragraph 40, to The Washington Post for publication in or about November of 2014.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 41 of the Complaint.

42.     In addition, or in the alternative, to Paragraph 41: Defendant Cosby, directly, and vicariously by and through Phillips, originally published the statement referred to in Paragraph 40, in or about 2005, in response to Plaintiff Green's accusations against Defendant Cosby made in that same year; and Defendant Cosby, directly, and vicariously by and through Phillips, did so with the expectation and intent that the statement would be republished by news outlets in the event that Plaintiff Green should repeat her accusations, and/or should these accusations be reported again, on a later date.  Thus, when Defendant Cosby, directly, and vicariously by and through Phillips, published the statement referred to in Paragraph 40, in 2005, it was reasonably foreseeable at that time, that the statement would be republished by third-party news media as part of news accounts on Plaintiff Green's repeated allegations, such as by The Washington Post in 2014.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 42 of the Complaint.

### B.     Plaintiff Therese Serignese

43.     On a certain date in or about 1976, Plaintiff Serignese met Defendant Cosby in or near a gift shop at the Las Vegas Hilton.

**ANSWER:**     Mr. Cosby admits that he met Plaintiff Serignese in or near a gift shop at the Las Vegas Hilton, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 43 of the Complaint.

44.     During this time, Plaintiff Serignese was an aspiring young model, who was in Las Vegas to visit her mother.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 44 of the Complaint.

45.     At that time and place, Defendant Cosby approached Plaintiff Serignese from behind, put his arm around her, and asked, "Will you marry me?"

**ANSWER:**     Mr. Cosby admits that he joked with Plaintiff Serignese by saying "will you marry me?" but denies the remaining allegations set forth in paragraph 45 of the Complaint.

46.     Defendant Cosby thereafter invited Plaintiff Serignese to see his show at the Las Vegas Hilton.

**ANSWER:**     Mr. Cosby admits the allegations set forth in paragraph 46 of the Complaint.

47.     Plaintiff Serignese later attended the show, and at its conclusion was invited to a room backstage by Defendant Cosby.

**ANSWER:**     Mr. Cosby admits the allegations set forth in paragraph 47 of the Complaint.

48.     Once Defendant Cosby and Plaintiff Serignese were alone together in a room backstage, Defendant Cosby gave Plaintiff Serignese two pills, and instructed Plaintiff Serignese to ingest the pills. Plaintiff Serignese complied.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 48 of the Complaint.

49.     The pills put Plaintiff Serignese into an altered state of consciousness.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 49 of the Complaint.

50.     Defendant Cosby intentionally drugged Plaintiff Serignese into this altered state, in order to facilitate his later sexual assault.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 50 of the Complaint.

51.     Once the pills put Plaintiff Serignese into an altered State of consciousness, without Plaintiff Serignese's consent, Defendant Cosby undressed himself and Plaintiff Serignese. Defendant Cosby then began to take advantage of Plaintiff Serignese sexually.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 51 of the Complaint.

52.     Defendant Cosby stood behind Plaintiff Serignese, bent her over, sexually penetrated her, and raped her.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 52 of the Complaint.

53.     During the entirety of the sexual assault, Defendant Cosby acted without Plaintiff Serignese's consent, and Plaintiff Serignese remained weak, vulnerable, and unable to fully defend herself.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 53 of the Complaint.

54.     On or about November 19, 2014, Plaintiff Serignese publicly disclosed Defendant Cosby's sexual assault against her.

**ANSWER:**     Mr. Cosby admits that Serignese's allegations were published online on or about November 19, 2014, but denies any allegation in paragraph 54 Complaint that he engaged in any sexual assault.

55.     On or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Serignese's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 55 of the Complaint states conclusions or characterizations of law, no response is required.

56.     Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Serignese's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 56 of the Complaint states conclusions or characterizations of law, no response is required.

57.     On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Serignese's disclosure, as well as to similar accusations by multiple other women made publicly in the preceding weeks, by issuing a written defamatory statement to numerous media outlets. The statement read, in part:

> The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.

> These brand new claims about alleged decades-old events are becoming increasing ridiculous, and it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assault over a span of so many years.

(The entirety of the statement is referred to herein as "the November 21 defamatory statement.")

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 57 of the Complaint states conclusions or characterizations of law, no response is required.

C.    **Plaintiff Linda Traitz**

58.    In or about 1970, Plaintiff Linda Traitz was approximately 18 years old, and a waitress at Café Figaro. Through her work at the restaurant, Plaintiff Traitz became acquainted with Defendant Cosby.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 58 of the Complaint.

59.    One day that year, while Defendant Cosby was at the restaurant, he offered a ride home to Plaintiff Traitz, which she accepted.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 59 of the Complaint.

60.    Instead of driving Plaintiff Traitz home, Defendant Cosby drove with Plaintiff Traitz to a beach in Los Angeles, where Defendant Cosby parked his car.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 60 of the Complaint.

61.    Defendant Cosby then opened a briefcase and presented Plaintiff Traitz with an assortment of pills. Defendant Cosby pressured Plaintiff Traitz to ingest some of the pills, "to relax," as he said.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 61 of the Complaint.

62.    As evidenced by his previous use of pills with Plaintiff Green and Plaintiff Serignese, Defendant Cosby's offer of pills to Plaintiff Traitz was an attempt to intentionally drug Plaintiff Traitz into an altered state of consciousness, to facilitate Defendant Cosby's planned sexual assault against Plaintiff Traitz.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 62 of the Complaint.

63.     Plaintiff Traitz declined the pills.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 63 of the Complaint.

64.     In response, Defendant Cosby became sexually aggressive with Plaintiff Traitz, groping Plaintiff Traitz's breasts and vaginal area. Defendant Cosby pushed Plaintiff Traitz down on the car seat, and attempted to lie on top of her. Plaintiff Traitz resisted Defendant Cosby's assault.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 64 of the Complaint.

65.     On or about November 13, 2014, Plaintiff Traitz publicly disclosed this incident through a post she made on her personal Facebook page.

**ANSWER:**     Mr. Cosby admits that Traitz's allegations were published online on or about November 13, 2014, but denies any allegation in paragraph 65 of the Complaint that he engaged in any sexual assault.

66.     On or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Traitz's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 66 of the Complaint states conclusions or characterizations of law, no response is required.

67.     Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Traitz's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements.
To the extent paragraph 67 of the Complaint states conclusions or
characterizations of law, no response is required.

68.     On or about November 21, 2014, Defendant Cosby, directly, and vicariously by
and through Singer, responded to Plaintiff Traitz's disclosure, as well as to similar accusations
by multiple other women, by issuing the November 21 defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements.
To the extent paragraph 68 of the Complaint states conclusions or
characterizations of law, no response is required.

**D.     Plaintiff Louisa Moritz**

69.     On a certain date in or about April of 1969, Plaintiff Moritz, then a young actress,
was waiting in a room backstage at the studio of the National Broadcasting Company to make an
appearance on "The Tonight Show," in New York. As she was dressed and waiting to appear,
there was a knock on the door, and Defendant Cosby entered the room.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 69 of the Complaint.

70.     Defendant Cosby expressed interest in Plaintiff Moritz's work and her future, and
implied that Plaintiff Moritz would become a major star through his direction.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 70 of the Complaint.

71.     Without any invitation or other expression of consent from Plaintiff Moritz,
Defendant Cosby approached Plaintiff Moritz, who was seated, and then exposed his penis,
which was now in the front of Plaintiff Moritz's face, put his hands behind Plaintiff Moritz's
head, and forced his penis into Plaintiff Moritz's mouth over her resistance. Defendant Cosby

said to Plaintiff Moritz, "Have a taste of this. It will do you good in so many ways." Defendant

Cosby added, "I am going to make you something incredible."

**ANSWER:**      Mr. Cosby denies the allegations set forth in paragraph 71 of the Complaint.

72.      A person associated with "The Tonight Show" summoned Plaintiff Moritz to the

show over an intercom. Upon hearing this, Defendant Cosby stopped his assault and left the

room.

**ANSWER:**      Mr. Cosby denies the allegations set forth in paragraph 72 of the Complaint.

73.      During the entirety of the assault, Defendant Cosby acted without Plaintiff

Moritz's consent.

**ANSWER:**      Mr. Cosby denies the allegations set forth in paragraph 73 of the Complaint.

74.      As Defendant Cosby left the room, he told Plaintiff Moritz, "Now you don't want

to upset me and the plans for your future, do you?" Plaintiff Moritz understood this as Defendant

Cosby's warning to her not to disclose to anyone else, what he had done to Plaintiff Moritz.

**ANSWER:**      Mr. Cosby denies the allegations set forth in paragraph 74 of the Complaint.

75.      On or about November 20, 2014, Plaintiff Moritz disclosed this assault through a

publicly issued written statement.

**ANSWER:**      Mr. Cosby denies knowledge or information sufficient to form a belief as to the

                        truth of the allegations set forth in paragraph 75 of the Complaint.

76.      Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously

by and through Singer, responded to Plaintiff Moritz's disclosure, as well as to similar

accusations by multiple other women, by issuing the November 20 "woodwork" statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 76 of the Complaint states conclusions or characterizations of law, no response is required.

77.     Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Moritz's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 77 of the Complaint states conclusions or characterizations of law, no response is required.

78.     On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Moritz's disclosure, as well as to similar accusations by multiple other women made publicly in the preceding weeks, by issuing the November 21 defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 78 of the Complaint states conclusions or characterizations of law, no response is required.

### E.     Plaintiff Barbara Bowman

79.     Plaintiff Bowman met Defendant Cosby in or about 1985, when she was a 17 year-old model and an aspiring actress. Plaintiff Bowman was introduced to Defendant Cosby in Denver, Colorado, by her agent, Jo Farrell, with the understanding that Defendant Cosby would mentor Plaintiff Bowman to be a successful actress.

**ANSWER:**     Mr. Cosby admits that he met Plaintiff Bowman through her agent, Jo Farrell, in or about 1985, but denies knowledge or information sufficient to form a belief as

to the truth of the remaining allegations set forth in paragraph 79 of the

Complaint.

80.     Upon first meeting at a conference room in the Turn of the Century Nightclub in

Denver, Colorado, Defendant Cosby directed Plaintiff Bowman to go to the bathroom and wet

her hair, and she complied.  When she returned, Defendant Cosby directed Plaintiff Bowman to

sit in a chair, close her eyes, and perform an improvisation exercise with him by acting

intoxicated. As she did so, Defendant Cosby stood behind Plaintiff Bowman and, without her

consent, stroked her neck and upper chest.

**ANSWER:**     Mr. Cosby denies the allegations set forth in the last sentence of paragraph 80 of

the Complaint, lacks knowledge or information sufficient to form a belief as to whether the

remaining allegations set forth in paragraph 80 of the Complaint occurred "upon their first

meeting," and admits the remaining allegations set forth in paragraph 80 of the Complaint.

81.     During their subsequent professional relationship, Defendant Cosby purported to

be a father figure to Plaintiff Bowman, as well as a mentor and benefactor, aiding her acting

career.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the

                truth of the allegations set forth in paragraph 81 of the Complaint.

82.     As part of their professional relationship, Defendant Cosby flew Plaintiff

Bowman to celebrity events and performances across the country, and he eventually moved her

to New York.

**ANSWER:**     Mr. Cosby admits that he flew Plaintiff Bowman to celebrity events and

                performances, but denies that he moved Plaintiff Bowman to New York, and

further denies knowledge or information sufficient to form a belief as to the truth

of the remaining allegations set forth in paragraph 82 of the Complaint.

83.     During their professional relationship, Defendant Cosby committed the following

acts of sexual assault against Plaintiff Bowman:

a.      In or about 1986, Plaintiff Bowman was in Defendant Cosby's hotel suite in

Reno, Nevada, for what she believed to be a professional meeting. Defendant Cosby turned off

the lights, laid Plaintiff Bowman down on a couch, ran his hands over her body, then grabbed

Plaintiff Bowman's hand and placed it on his penis, then used her hand to masturbate himself.

Defendant Cosby acted without Plaintiff Bowman's consent throughout the assault.

b(i).     Subsequently, in New York, Plaintiff Bowman was invited by Defendant Cosby

to his residence, for acting instruction. Defendant Cosby served Plaintiff Bowman dinner, as well

as a glass of red wine, which she drank some of. The glass of wine rendered Plaintiff Bowman

unconscious. When Plaintiff Bowman regained consciousness, she was vomiting into a toilet

bowl, wearing her own underpants but a man's T-shirt that she did not recognize, with Defendant

Cosby standing over her wearing a bathrobe. All of the staff at Defendant Cosby's house was

gone, and Plaintiff Bowman was alone with Defendant Cosby in the house.

b(ii).     Upon information and belief, Defendant Cosby had sexually taken advantage of

Plaintiff Bowman while she was unconscious, after intentionally drugging her to put her into an

altered state of consciousness.

b(iii).     During the entirety of the sexual assault, Defendant Cosby acted without Plaintiff

Bowman's consent, and Plaintiff Bowman remained weak, vulnerable, and unable to defend

herself.

c(i).     Subsequently, Plaintiff Bowman was invited by Defendant Cosby to see his show in Atlantic City, New Jersey. While in Defendant Cosby's hotel suite, Defendant Cosby physically assaulted Plaintiff Bowman by throwing her down onto his bed, jumping on top of her and using his forearm to pin her down by her neck. While Plaintiff Bowman screamed for help and tried to wrestle out of his grip, Defendant Cosby attempted to forcibly remove Plaintiff Bowman's pants, and unbuckle his own belt, apparently intending to rape her. However, deterred by Plaintiff Bowman's continuing screams, Defendant Cosby gave up his assault, called Plaintiff Bowman "a baby," and ejected her from the suite. Defendant Cosby's last words to Plaintiff Bowman were, "I better never, ever see your face or hear your name again."

c(ii).    During the entirety of the assault, Defendant Cosby acted without Plaintiff Bowman's consent. Immediately thereafter, Defendant Cosby totally ended his support for Plaintiff Bowman.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 83 of the Complaint, including each and every subpart therein.

84.     In or about 2006, Plaintiff Bowman publicly disclosed Defendant Cosby's sexual assaults against her.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 84 of the Complaint.

85.     On or about October 27, 2014, Plaintiff Bowman publicly disclosed Defendant Cosby's sexual assaults against her, through a published interview with the Daily Mail.

**ANSWER:**     Mr. Cosby admits that Bowman's allegations were published online on or about October 27, 2014, but denies any allegation in paragraph 85 of the Complaint that he engaged in any sexual assault.

86.     On or about November 13, 2014, Plaintiff Bowman publicly disclosed sexual assaults against her by Defendant Cosby, through an article that she wrote, published by The Washington Post.

**ANSWER:**     Mr. Cosby admits that Bowman's allegations were published online on or about November 13, 2014, but denies any allegation in paragraph 86 of the Complaint that he engaged in any sexual assault.

87.     On or about November 16, 2014, Defendant Cosby, directly, and vicariously by and through Schmitt, responded to Plaintiff Bowman's disclosure, as well as to similar accusations by multiple other women, by publishing the November 16 defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 87 of the Complaint states conclusions or characterizations of law, no response is required.

88.     On or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Bowman's disclosures, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 88 of the Complaint states conclusions or characterizations of law, no response is required.

89.     Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Bowman's disclosures, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 89 of the Complaint states conclusions or characterizations of law, no response is required.

###     F.     **Plaintiff Joan Tarshis**

90.     Plaintiff Joan Tarshis first met Defendant Cosby through mutual friends, in Los Angeles, in or about 1969 or 1970, when she was a young, aspiring comedy writer.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 90 of the Complaint.

91.     While in Los Angeles, Defendant Cosby subsequently invited Plaintiff Tarshis to meet him at his bungalow for a professional meeting, after he was done with a day's shooting for his television show, "The Bill Cosby Show." Defendant Cosby told Plaintiff Tarshis that he wanted to work on comedy material with her. Flattered and believing this would advance her career, Plaintiff Tarshis accepted.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 91 of the Complaint.

92.     At his bungalow, Defendant Cosby prepared a mixed alcoholic drink for Plaintiff Tarshis, which she drank. The drink incapacitated Plaintiff Tarshis and put her in an altered state of consciousness. Upon information and belief, Defendant Cosby intentionally drugged Plaintiff Tarshis into this altered state of consciousness, in order to facilitate his later sexual assault.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 92 of the Complaint.

93.     While Plaintiff Tarshis was in this altered state of consciousness, and while on a couch, Defendant Cosby began to remove her underwear. Plaintiff Tarshis asked, "What's going on?" Defendant Cosby responded, "You know what's going on."

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 93 of the Complaint.

94.     Plaintiff Tarshis tried to dissuade Defendant Cosby from assaulting her by falsely telling Defendant Cosby that she had a vaginal infection that he could catch, and which would alert Defendant Cosby's wife to his infidelity.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 94 of the Complaint.

95.     In response, Defendant Cosby grabbed Plaintiff Tarshis's head and hair such that she could not get away, and he forced her to perform oral sex on him.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 95 of the Complaint.

96.     During the entirety of the assault, Defendant Cosby acted without Plaintiff Tarshis's consent.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 96 of the Complaint.

97.     After the assault, Defendant Cosby gave Plaintiff Tarshis approximately 10 to 20 dollars and called her a cab to take her home.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 97 of the Complaint.

98.     On a subsequent occasion, while Plaintiff Tarshis was at her parents' house, Defendant Cosby called Plaintiff Tarshis to invite her to watch him perform at the Westbury Music Fair in New York. Plaintiff Tarshis accepted the invitation because she did not want to explain to her mother what had happened in his bungalow. Defendant Cosby's driver picked her up and drove her to Defendant Cosby's hotel.  Once there, Plaintiff Tarshis visited Defendant Cosby in his hotel suite.

**ANSWER:**     Mr. Cosby denies any allegation in paragraph 98 of the Complaint that he
                engaged in any sexual assault, and further denies knowledge or information

sufficient to form a belief as to the truth of the remaining allegations set forth in

paragraph 98 of the Complaint.

99.     While in Defendant Cosby's hotel suite, Plaintiff Tarshis noticed a man's leather

shaving kit that was filled with bottles of pills.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 99 of the Complaint.

100.     Defendant Cosby again prepared a mixed drink for Plaintiff Tarshis, which she

drank.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 100 of the Complaint.

101.     The two then travelled by car to the theater where Defendant Cosby was to

perform. During the car ride, Defendant Cosby served Plaintiff Tarshis another alcoholic drink,

which she drank.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 101 of the Complaint.

102.     One or both of the drinks eventually incapacitated Plaintiff Tarshis and put her in

an altered state of consciousness. Upon information and belief, Defendant Cosby again

intentionally drugged Plaintiff Tarshis into this altered state of consciousness, in order to

facilitate his later sexual assault.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 102 of the Complaint.

103.     At the theater, Plaintiff Tarshis watched Defendant Cosby perform, while

standing behind the seated audience. However, Plaintiff Tarshis felt drugged and could not stand.

She felt like she was going to pass out, and she asked Defendant Cosby's chauffeur to take her

back to Defendant Cosby's car. Plaintiff Tarshis was taken back to Defendant Cosby's car,

where she lost consciousness.

**ANSWER:**     Mr. Cosby denies knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 103 of the Complaint.

104.     When Plaintiff Tarshis regained consciousness the next morning, she was in

Defendant Cosby's bed, naked and sore. Next to her was Defendant Cosby, who was also naked.

Upon information and belief, Defendant Cosby had sexually assaulted Plaintiff Tarshis again,

without her consent, while she was unconscious.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 104 of the Complaint.

105.     Plaintiff Tarshis widely disclosed Defendant Cosby's sexual assaults upon her, by

transmitting a written statement that was published on [www.hollywood-elsewhere.com](http://www.hollywood-elsewhere.com), on or

about November 16, 2014.

**ANSWER:**     Mr. Cosby admits that Tarshis' allegations were published online on or about

November 16, 2014, but denies any allegation in paragraph 105 of the Complaint

that he engaged in any sexual assault.

106.     On or about November 20, 2014, Defendant Cosby, directly, and vicariously by

and through Singer, responded to Plaintiff Tarshis's disclosure, as well as to similar accusations

by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 106 of the Complaint states conclusions or

characterizations of law, no response is required.

107.     Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously

by and through Singer, responded to Plaintiff Tarshis's disclosure, as well as to similar

accusations by multiple other women, by issuing the November 20 "absurdity" defamatory

statement.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 107 of the Complaint states conclusions or characterizations of law, no response is required.

108.    On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Tarshis's disclosure, as well as to similar accusations by multiple other women, by issuing the November 21 defamatory statement.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 108 of the Complaint states conclusions or characterizations of law, no response is required.

### G.    Plaintiff Angela Leslie

109.    In or about 1990, Plaintiff Leslie was a 28 year-old model and actress, and she sent a letter, resume, headshot, and VHS tape to a casting agency, hoping to obtain a role in Defendant Cosby's upcoming movie, "Ghost Dad."

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 109 of the Complaint.

110.    In response to Plaintiff Leslie's submission, Defendant Cosby personally contacted Plaintiff Leslie. The two maintained a professional relationship, occasionally contacting one another, over approximately the next two years.

**ANSWER:**    Mr. Cosby admits that he and Plaintiff Leslie contacted each other over a period of approximately two years, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 110 of the Complaint.

111.    In or about 1992, Plaintiff Leslie accepted Defendant Cosby's invitation to meet him in Las Vegas, Nevada, for professional reasons. Plaintiff Leslie was put up in a hotel room by Defendant Cosby, and she was asked to meet Defendant Cosby in his hotel suite, to work on acting techniques.

**ANSWER:**    Mr. Cosby admits that Plaintiff Leslie accepted his invitation to meet him in Las Vegas, Nevada, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 111 of the Complaint.

112.    Once Plaintiff Leslie was inside Defendant Cosby's hotel suite, he directed her to perform in an impromptu "audition," by acting intoxicated.

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 112 of the Complaint.

113.    Defendant Cosby then prepared an alcoholic drink and offered it to Plaintiff Leslie. Plaintiff Leslie only tasted the drink.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 113 of the Complaint.

114.    Defendant Cosby directed Plaintiff Leslie to go to the bathroom and wet her hair, and she complied. When she returned from the bathroom, Defendant Cosby had undressed and gotten into bed.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 114 of the Complaint.

115.    Without Plaintiff Leslie's consent, Defendant Cosby grabbed Plaintiff Leslie's hand, poured lotion into her hand, pulled her hand under the blankets, held his hand on top of hers, placed her hand on his penis, and used her hand to masturbate himself.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 115 of the Complaint.

116.    During the entirety of Defendant Cosby's assault against Plaintiff Leslie, he acted without her consent.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 116 of the Complaint.

117.    On or about November 20, 2014, Plaintiff Leslie publicly disclosed Defendant Cosby's sexual assault against her, in an interview published in the New York Daily News.

**ANSWER:**    Mr. Cosby admits that Leslie's allegations were published online on or about November 20, 2014, but denies any allegation in paragraph 117 of the Complaint that he engaged in any sexual assault.

118.    Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Leslie's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "woodwork" defamatory statement.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 118 of the Complaint states conclusions or characterizations of law, no response is required.

119.    Also on or about November 20, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Leslie's disclosure, as well as to similar accusations by multiple other women, by issuing the November 20 "absurdity" defamatory statement.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 119 of the Complaint states conclusions or characterizations of law, no response is required.

120.     On or about November 21, 2014, Defendant Cosby, directly, and vicariously by and through Singer, responded to Plaintiff Leslie's disclosure, as well as to similar accusations by multiple other women, by issuing the November 21 defamatory statement.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 120 of the Complaint states conclusions or characterizations of law, no response is required.

## FACTS COMMON TO ALL THE PLAINTIFFS

121.     At all relevant times before the publication of the Newsweek defamatory statement, the Washington Post defamatory statement, the November 16 defamatory statement, the November 20 defamatory "woodwork" defamatory statement, the November 20 "absurdity" defamatory statement, and/or the November 21 defamatory statement (collectively, "the defamatory statements at issue"), each Plaintiff enjoyed the respect, confidence and esteem of her family, friends, and neighbors, as well as others in the community.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 121 of the Complaint states conclusions or characterizations of law, no response is required.

122.     At all relevant times, Brokaw, Phillips, Schmitt, and Singer each acted at the direction of Defendant Cosby, and as an actual and/or apparent agent, authorized representative, lawyer, servant, and/or employee of Defendant Cosby, acting within the course and scope of his respective employment and/or agency.

**ANSWER:**     Paragraph 122 of the Complaint states conclusions or characterizations of law and therefore no response is required.

123.     Brokaw's, Phillips', Schmitt's, and Singer's conduct each was ratified by Defendant Cosby by, inter alia, his ongoing failure to retract the defamatory statements at issue;

and by the public announcements in or about July of 2015, by Monique Pressley ("Pressley"), an

actual and/or apparent agent, authorized representative, lawyer, servant, and/or employee of

Defendant Cosby, acting at the direction of Defendant Cosby and within the course and scope of

her agency. Pressley stated that the defamatory statements at issue were Defendant Cosby's, e.g.,

Pressley stated that Defendant Cosby "is relying on able counsel to speak for him" in response to

the accusations of sexual misconduct; that "when [Defendant Cosby's] attorneys speak, we're

speaking for him"; and that the defamatory statements at issue were "the statement[s] of

[Defendant] Bill Cosby."

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 123 of the Complaint states conclusions or

characterizations of law, no response is required.

124.    Furthermore, upon information and belief, the public knew that the defamatory

statements at issue were effectively Defendant Cosby's statements, when Brokaw, Phillips,

Schmitt, and Singer each made his respective defamatory statement(s) at issue.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 124 of the Complaint states conclusions or

characterizations of law, no response is required.

125.    Defendant Cosby is directly liable for the conduct of Brokaw, Phillips, Schmitt,

and Singer.

**ANSWER:**    Paragraph 125 of the Complaint states conclusions or characterizations of law and

therefore no response is required.

126.    Defendant Cosby is also vicariously liable for the conduct of Brokaw, Phillips,

Schmitt, and Singer.

**ANSWER:**    Paragraph 126 of the Complaint states conclusions or characterizations of law and therefore no response is required.

127.    Upon information and belief, Brokaw, Phillips, Schmitt, and Singer were each professionals, skilled in media relations.

**ANSWER:**    Paragraph 127 of the Complaint states conclusions or characterizations of law and therefore no response is required.

128.    Upon information and belief, Brokaw, Phillips, Schmitt, and Singer each had an open line of communications with Defendant Cosby, and furthermore was generally familiar with Defendant Cosby's past conduct, such as Defendant Cosby's past alleged sexual misconduct with multiple women (including but not limited to the women named herein, as well as Andrea Constand, who sued Defendant Cosby for sexual assault in or about 2005, and the other women known as "Jane Does" in Ms. Constand's lawsuit).

**ANSWER:**    Mr. Cosby denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 128 of the Complaint, and further denies any allegation in paragraph 128 of the Complaint that he engaged in any sexual assault.

129.    Brokaw, Phillips, Schmitt, and Singer each knew the falsity of his respective defamatory statement(s) at issue, and/or failed to make reasonable inquiry into the truth of the statement(s) that he respectively issued on behalf of Defendant Cosby, including but not limited to asking Defendant Cosby whether the statement(s) were true.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 129 of the Complaint states conclusions or characterizations of law, no response is required.

130.    The defamatory statements at issue were not privileged.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 130 of the Complaint states conclusions or

characterizations of law, no response is required.

**COUNT I**
Newsweek Defamatory Statement – Defamation
Plaintiff Green

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

131.    The Newsweek defamatory statement was of and concerning Plaintiff Green.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 131 of the Complaint states conclusions or

characterizations of law, no response is required.

132.    The Newsweek defamatory statement was printed, published, circulated and

distributed by news outlets, and was widely read by the public.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 132 of the Complaint states conclusions or

characterizations of law, no response is required.

133.    The Newsweek defamatory statement was (given the newsworthiness of the

subject matter) foreseeably republished nationwide across multiple media, for days or more after

each was originally published.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 133 of the Complaint states conclusions or

characterizations of law, no response is required.

134.    In the Newsweek defamatory statement, Defendant Cosby, directly, and vicariously by and through Brokaw, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault against Plaintiff Green did not occur, and that she lied and was a liar.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 134 of the Complaint states conclusions or characterizations of law, no response is required.

135.    The Newsweek defamatory statement was defamatory *per se*.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 135 of the Complaint states conclusions or characterizations of law, no response is required.

136.    The Newsweek defamatory statement was false when made, in that Plaintiff Green's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that she was lying or a liar.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 136 of the Complaint states conclusions or characterizations of law, no response is required.

137.    Defendant Cosby has known that Plaintiff Green's allegations of sexual misconduct were true and that Brokaw's and Defendant Cosby's denial, and their impugning of her honesty, were false.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 137 of the Complaint.

138.    Brokaw knew, or should have known, that the Newsweek defamatory statement was false at the time of the publication.

**ANSWER:** Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 138 of the Complaint states conclusions or characterizations of law, no response is required.

139. Defendant Cosby knew the Newsweek defamatory statement was false at the time of the publication.

**ANSWER:** Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 139 of the Complaint states conclusions or characterizations of law, no response is required.

140. Brokaw, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Brokaw, gave the Newsweek defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

**ANSWER:** Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 140 of the Complaint states conclusions or characterizations of law, no response is required.

141. The Newsweek defamatory statement on its face impugned the reputation of Plaintiff Green, and tended to expose her to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of her in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation.

**ANSWER:** Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 141 of the Complaint states conclusions or characterizations of law, no response is required.

142.     The Newsweek defamatory statement has directly and proximately caused

Plaintiff Green damages by virtue of her loss of reputation, shame, mortification, hurt feelings,

and/or damage to her property, business, trade, profession, or and/or occupation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 142 of the Complaint states conclusions or

characterizations of law, no response is required.


WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiff Tamara Green take nothing by reason of the Third Amended

Complaint;

B.     That judgment be entered in favor of Defendant William H. Cosby, Jr. and against

Plaintiff Tamara Green;

C.     That the Third Amended Complaint be dismissed *with prejudice*;

D.     That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.     For such other further relief as the Court deems just and proper.

**<u>COUNT II</u>**
Newsweek Defamatory Statement –
Invasion of Privacy (False Light)
Plaintiff Green

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

143.     The publication of the Newsweek defamatory statement cast Plaintiff Green in a

false light that would be considered highly offensive to a reasonable person.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 143 of the Complaint states conclusions or characterizations of law, no response is required.

144.     Brokaw, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Brokaw, gave the Newsweek defamatory statement with knowledge, or with reckless disregard, of the false light in which Plaintiff Green would be placed.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 144 of the Complaint states conclusions or characterizations of law, no response is required.

145.     The publication of the Newsweek defamatory statement constituted a major misrepresentation of the character of Plaintiff Green.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 145 of the Complaint states conclusions or characterizations of law, no response is required.


WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiff Tamara Green take nothing by reason of the Third Amended Complaint;

B.     That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiff Tamara Green;

C.     That the Third Amended Complaint be dismissed *with prejudice*;

D.     That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.     For such other further relief as the Court deems just and proper.

**COUNT III**
Newsweek Defamatory Statement
Intentional Infliction of Emotional Distress
Plaintiff Green

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

146.   Brokaw, within the course and scope of his agency with Defendant Cosby, and

Defendant Cosby, directly, and vicariously by and through Brokaw, gave the Newsweek

defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in

a civilized community.

**ANSWER:**   Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 146 of the Complaint states conclusions or

characterizations of law, no response is required.

147.   Brokaw, within the course and scope of his agency with Defendant Cosby, and

Defendant Cosby, directly, and vicariously by and through Brokaw, acted with intent to cause, or

reckless disregard for causing, emotional distress to Plaintiff Green.

**ANSWER:**   Paragraph 147 of the Complaint states conclusions or characterizations of law and

therefore no response is required.

148.   The publication of the Newsweek defamatory statement actually and proximately

caused severe emotional distress to Plaintiff Green.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 148 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.    That Plaintiff Tamara Green take nothing by reason of the Third Amended Complaint;

B.    That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiff Tamara Green;

C.    That the Third Amended Complaint be dismissed *with prejudice*;

D.    That Defendant William H. Cosby, Jr. be awarded his cost of suit, including reasonable attorneys' fees; and

E.    For such other further relief as the Court deems just and proper.

### COUNT IV
Washington Post Defamatory Statement – Defamation
Plaintiff Green

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

149.    The Washington Post defamatory statement was of and concerning Plaintiff Green.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 149 of the Complaint states conclusions or characterizations of law, no response is required.

150.    The Washington Post defamatory statement was printed, published, circulated and distributed by news outlets, and was widely read by the public.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 150 of the Complaint states conclusions or characterizations of law, no response is required.

151.     The Washington Post defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after it was published or re-published on or about November 22, 2014.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 151 of the Complaint states conclusions or characterizations of law, no response is required.

152.     In the Washington Post defamatory statement, Defendant Cosby, directly, and vicariously by and through Phillips, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault against Plaintiff Green did not occur, and that she lied and was a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 152 of the Complaint states conclusions or characterizations of law, no response is required.

153.     The Washington Post defamatory statement was defamatory *per se*.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 153 of the Complaint states conclusions or characterizations of law, no response is required.

154.     The Washington Post defamatory statement was false when made, in that Plaintiff Green's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that she was lying or a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 154 of the Complaint states conclusions or characterizations of law, no response is required.

155.     Defendant Cosby has known that Plaintiff Green's allegations of sexual misconduct were true and that Phillips' and Defendant Cosby's denial, and their impugning of Plaintiff Green's honesty, were false.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 155 of the Complaint.

156.     Phillips knew, or should have known, that the Washington Post defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 156 of the Complaint states conclusions or characterizations of law, no response is required.

157.     Defendant Cosby knew the Washington Post defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 157 of the Complaint states conclusions or characterizations of law, no response is required.

158.     Phillips, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Phillips, gave the Washington Post defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 158 of the Complaint states conclusions or characterizations of law, no response is required.

159.     The Washington Post defamatory statement on its face impugned the reputation of Plaintiff Green, and tended to expose her to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause her to be shunned or avoided, and/or to injure her in her occupation, good name, character, and reputation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 159 of the Complaint states conclusions or characterizations of law, no response is required.

160.     The Washington Post defamatory statement has directly and proximately caused Plaintiff Green damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 160 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiff Tamara Green take nothing by reason of the Third Amended Complaint;

B.     That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiff Tamara Green;

C.     That the Third Amended Complaint be dismissed *with prejudice*;

D.      That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.      For such other further relief as the Court deems just and proper.

**COUNT V**
Washington Post Defamatory Statement –
Invasion of Privacy (False Light)
Plaintiff Green

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

161.    The publication of the Washington Post defamatory statement cast Plaintiff Green

in a false light that would be considered highly offensive to a reasonable person.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 161 of the Complaint states conclusions or

characterizations of law, no response is required.

162.    Phillips, within the course and scope of his agency with Defendant Cosby, and

Defendant Cosby, directly, and vicariously by and through Phillips, gave the Washington Post

defamatory statement with knowledge, or with reckless disregard, of the false light in which

Plaintiff Green would be placed.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 162 of the Complaint states conclusions or

characterizations of law, no response is required.

163.    The publication of the Washington Post defamatory statement constituted a major

misrepresentation of the character of Plaintiff Green.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 163 of the Complaint states conclusions or

characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiff Tamara Green take nothing by reason of the Third Amended

Complaint;

B.     That judgment be entered in favor of Defendant William H. Cosby, Jr. and against

Plaintiff Tamara Green;

C.     That the Third Amended Complaint be dismissed *with prejudice*;

D.     That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.     For such other further relief as the Court deems just and proper.

## COUNT VI
Washington Post Defamatory Statement –
Intentional Infliction of Emotional Distress
Plaintiff Green

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

164.    Phillips, within the course and scope of his agency with Defendant Cosby, and

Defendant Cosby, directly, and vicariously by and through Schmitt, gave the Washington Post

defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in

a civilized community.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 164 of the Complaint states conclusions or characterizations of law, no response is required.

165.    Phillips, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Phillips, acted with intent to cause, or reckless disregard for causing, emotional distress to Plaintiff Green.

**ANSWER:**    Mr. Cosby denies the allegations set forth in paragraph 165 of the Complaint.

166.    The publication of the Washington Post defamatory statement actually and proximately caused severe emotional distress to Plaintiff Green.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 166 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.    That Plaintiff Tamara Green take nothing by reason of the Third Amended Complaint;

B.    That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiff Tamara Green;

C.    That the Third Amended Complaint be dismissed *with prejudice*;

D.    That Defendant William H. Cosby, Jr. be awarded his cost of suit, including reasonable attorneys' fees; and

E.    For such other further relief as the Court deems just and proper.

**COUNT VII**
November 16 Defamatory Statement – Defamation
Plaintiffs Green and Bowman

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

167.    The November 16 defamatory statement was of and concerning Plaintiffs Green and Bowman, and no more than four women had publicly accused Defendant Cosby of sexual misconduct before the publication of the November 16 defamatory statement, since at least the beginning of 2014.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 167 of the Complaint states conclusions or characterizations of law, no response is required.

168.    The November 16 defamatory statement was posted at the direction of Defendant Cosby on his website, and printed, published, circulated and distributed by news outlets, and was widely read by the public.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 168 of the Complaint states conclusions or characterizations of law, no response is required.

169.    The November 16 defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after each was originally published.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 169 of the Complaint states conclusions or characterizations of law, no response is required.

170.     In the November 16 defamatory statement, Defendant Cosby, directly, and vicariously by and through Schmitt, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's sexual assault(s) against Plaintiffs Green and Bowman did not occur, and that each of these Plaintiffs lied and was a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 170 of the Complaint states conclusions or characterizations of law, no response is required.

171.     The November 16 defamatory statement was defamatory *per se*.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 171 of the Complaint states conclusions or characterizations of law, no response is required.

172.     The November 16 defamatory statement was false when made, in that Plaintiffs Green's and Bowman's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that any of these Plaintiffs was lying or a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 172 of the Complaint states conclusions or characterizations of law, no response is required.

173.     Defendant Cosby has known that Plaintiffs Green's and Bowman's allegations of sexual misconduct were true and that Schmitt's and Defendant Cosby's denial, and their impugning of these Plaintiffs' honesty, were false.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 173 of the Complaint.

174.     Schmitt knew, or should have known, that the November 16 defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 174 of the Complaint states conclusions or characterizations of law, no response is required.

175.     Defendant Cosby knew the November 16 defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 175 of the Complaint states conclusions or characterizations of law, no response is required.

176.     Schmitt, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Schmitt, gave the November 16 defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 176 of the Complaint states conclusions or characterizations of law, no response is required.

177.     The November 16 defamatory statement on its face impugned the reputation of Plaintiffs Green and Bowman, and tended to expose each of these Plaintiffs to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause each to be shunned or avoided, and/or to injure each in her occupation, good name, character, and reputation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 177 of the Complaint states conclusions or characterizations of law, no response is required.

178.     The November 16 defamatory statement has directly and proximately caused Plaintiffs Green and Bowman, each, damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 178 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiffs Tamara Green and Barbara Bowman take nothing by reason of the Second Amended Complaint;

B.     That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiffs Tamara Green and Barbara Bowman;

C.     That the Third Amended Complaint be dismissed *with prejudice*;

D.     That Defendant William H. Cosby, Jr. be awarded his cost of suit, including reasonable attorneys' fees; and

E.     For such other further relief as the Court deems just and proper.

## COUNT VIII
November 16 Defamatory Statement –
Invasion of Privacy (False Light)
Plaintiffs Green and Bowman

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

179.    The publication of the November 16 defamatory statement cast Plaintiffs Green and Bowman each in a false light that would be considered highly offensive to a reasonable person.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 179 of the Complaint states conclusions or characterizations of law, no response is required.

180.    Schmitt, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Schmitt, gave the November 16 defamatory statement with knowledge, or with reckless disregard, of the false light in which Plaintiffs Green and Bowman would be placed.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 180 of the Complaint states conclusions or characterizations of law, no response is required.

181.    The publication of the November 16 defamatory statement constituted a major misrepresentation of the character of each of Plaintiffs Green and Bowman.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 181 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.      That Plaintiffs Tamara Green and Barbara Bowman take nothing by reason of the

        Second Amended Complaint;

B.      That judgment be entered in favor of Defendant William H. Cosby, Jr. and against

        Plaintiffs Tamara Green and Barbara Bowman;

C.      That the Third Amended Complaint be dismissed *with prejudice*;

D.      That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

        reasonable attorneys' fees; and

E.      For such other further relief as the Court deems just and proper.

### COUNT IX
November 16 Defamatory Statement –
Intentional Infliction of Emotional Distress
Plaintiffs Green and Bowman

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

182.    Schmitt, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Schmitt, gave the November 16 defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized community.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

               To the extent paragraph 182 of the Complaint states conclusions or

               characterizations of law, no response is required.

183.    Schmitt, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Schmitt, acted with intent to cause, or reckless disregard for causing, emotional distress to Plaintiffs Green and Bowman.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 183 of the Complaint.

184.     The publication of the November 16 defamatory statement actually and proximately caused severe emotional distress to Plaintiffs Green and Bowman.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 184 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiffs Tamara Green and Barbara Bowman take nothing by reason of the Second Amended Complaint;

B.     That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiffs Tamara Green and Barbara Bowman;

C.     That the Third Amended Complaint be dismissed *with prejudice*;

D.     That Defendant William H. Cosby, Jr. be awarded his cost of suit, including reasonable attorneys' fees; and

E.     For such other further relief as the Court deems just and proper.

### COUNT X
November 20 "Woodwork" Defamatory Statement – Defamation
All Plaintiffs

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

185.     The November 20 "woodwork" defamatory statement was of and concerning every Plaintiff, and no more than 11 women had publicly accused Defendant Cosby of sexual misconduct before the publication of the November 20 "woodwork" defamatory statement, since at least the beginning of 2014.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 185 of the Complaint states conclusions or characterizations of law, no response is required.

186.     The November 20 "woodwork" defamatory statement was printed, published, circulated and distributed by news outlets, and was widely read by the public.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 186 of the Complaint states conclusions or characterizations of law, no response is required.

187.     The November 20 "woodwork" defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after it was originally published.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 187 of the Complaint states conclusions or characterizations of law, no response is required.

188.     In the November 20 "woodwork" defamatory statement, Defendant Cosby, directly, and vicariously by and through Singer, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's attempted and/or actual sexual assault(s) against each Plaintiff did not occur, and that each Plaintiff lied and was a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 188 of the Complaint states conclusions or characterizations of law, no response is required.

189.     The November 20 "woodwork" defamatory statement was defamatory *per se*.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 189 of the Complaint states conclusions or characterizations of law, no response is required.

190.     The November 20 "woodwork" defamatory statement was false when made, in that each Plaintiff's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that any Plaintiff was lying or a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 190 of the Complaint states conclusions or characterizations of law, no response is required.

191.     Defendant Cosby has known that each Plaintiff's allegations of sexual misconduct were true and that Singer's and Defendant Cosby's denial, and their impugning of each Plaintiffs' honesty, were false.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 191 of the Complaint.

192.     Singer knew, or should have known, that the November 20 "woodwork" defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 192 of the Complaint states conclusions or characterizations of law, no response is required.

193.     Defendant Cosby knew the November 20 "woodwork" defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 193 of the Complaint states conclusions or characterizations of law, no response is required.

194.    Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "woodwork" defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 194 of the Complaint states conclusions or characterizations of law, no response is required.

195.    The November 20 "woodwork" defamatory statement on its face impugned the reputation of each Plaintiff, and tended to expose each Plaintiff to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause each to be shunned or avoided, and/or to injure each in her occupation, good name, character, and reputation.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 195 of the Complaint states conclusions or characterizations of law, no response is required.

196.    The November 20 "woodwork" defamatory statement has directly and proximately caused each Plaintiff damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 196 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.       That Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz,

         Barbara Bowman, Joan Tarshis, and Angela Leslie take nothing by reason of the

         Third Amended Complaint;

B.       That judgment be entered in favor of Defendant William H. Cosby, Jr. and against

         Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara

         Bowman, Joan Tarshis, and Angela Leslie;

C.       That the Third Amended Complaint be dismissed *with prejudice*;

D.       That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

         reasonable attorneys' fees; and

E.       For such other further relief as the Court deems just and proper.

### COUNT XI
November 20 "Woodwork" Defamatory Statement
Invasion of Privacy (False Light)
Plaintiffs Moritz, Bowman, Leslie, Green

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

197.     The publication of the November 20 "woodwork" defamatory statement cast

Plaintiffs Moritz, Bowman, Leslie, and Green each in a false light that would be considered

highly offensive to a reasonable person.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

         To the extent paragraph 197 of the Complaint states conclusions or

         characterizations of law, no response is required.

198.    Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "woodwork" defamatory statement with knowledge, or with reckless disregard, of the false light in which Plaintiffs Moritz, Bowman, Leslie, and Green would be placed.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 198 of the Complaint states conclusions or characterizations of law, no response is required.

199.    The publication of the November 20 "woodwork" defamatory statement constituted a major misrepresentation of the character of each of Plaintiffs Moritz, Bowman, Leslie, and Green.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 199 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.    That Plaintiffs Tamara Green, Louisa Moritz, Barbara Bowman, and Angela Leslie take nothing by reason of the Third Amended Complaint;

B.    That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiffs Tamara Green, Louisa Moritz, Barbara Bowman, and Angela Leslie;

C.    That the Third Amended Complaint be dismissed *with prejudice*;

D.    That Defendant William H. Cosby, Jr. be awarded his cost of suit, including reasonable attorneys' fees; and

E.    For such other further relief as the Court deems just and proper.

<u>**COUNT XII**</u>
November 20 "Woodwork" Defamatory Statement
Intentional Infliction of Emotional Distress
All Plaintiffs

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

200.     Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "woodwork" defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized community.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 200 of the Complaint states conclusions or characterizations of law, no response is required.

201.     Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, acted with intent to cause, or reckless disregard for causing, emotional distress to each Plaintiff.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 201 of the Complaint.

202.     The publication of the November 20 "woodwork" defamatory statement actually and proximately caused severe emotional distress to each Plaintiff.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 202 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.    That Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie take nothing by reason of the Third Amended Complaint;

B.    That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie;

C.    That the Third Amended Complaint be dismissed *with prejudice*;

D.    That Defendant William H. Cosby, Jr. be awarded his cost of suit, including reasonable attorneys' fees; and

E.    For such other further relief as the Court deems just and proper.

## COUNT XIII
November 20 "Absurdity" Defamatory Statement – Defamation"
All Plaintiffs

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

203.    The November 20 "absurdity" defamatory statement was of and concerning every Plaintiff, and no more than 11 women had publicly accused Defendant Cosby of sexual misconduct before the publication of the November 20 "absurdity" defamatory statement, since at least the beginning of 2014.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 203 of the Complaint states conclusions or characterizations of law, no response is required.

204.    The November 20 "absurdity" defamatory statement was printed, published, circulated and distributed by news outlets, and was widely read by the public.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 204 of the Complaint states conclusions or characterizations of law, no response is required.

205.    The November 20 "absurdity" defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after it was originally published.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 205 of the Complaint states conclusions or characterizations of law, no response is required.

206.    In the November 20 "absurdity" defamatory statement, Defendant Cosby, directly, and vicariously by and through Singer, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's attempted and/or actual sexual assault(s) against each Plaintiff did not occur, and that each Plaintiff lied and was a liar.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 206 of the Complaint states conclusions or characterizations of law, no response is required.

207.    The November 20 "absurdity" defamatory statement was defamatory *per se*.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 207 of the Complaint states conclusions or characterizations of law, no response is required.

208.    The November 20 "absurdity" defamatory statement was false when made, in that each Plaintiff's accusation(s) against Defendant Cosby were true, and there was no reasonable basis to publicly claim that any Plaintiff was lying or a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 208 of the Complaint states conclusions or characterizations of law, no response is required.

209.     Defendant Cosby has known that Plaintiffs' allegations of sexual misconduct were true and that Singer's and Defendant Cosby's denial, and their impugning of each Plaintiff's honesty, were false.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 209 of the Complaint.

210.     Singer knew, or should have known, that the November 20 "absurdity" defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 210 of the Complaint states conclusions or characterizations of law, no response is required.

211.     Defendant Cosby knew the November 20 "absurdity" defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 211 of the Complaint states conclusions or characterizations of law, no response is required.

212.     Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "absurdity" defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 212 of the Complaint states conclusions or characterizations of law, no response is required.

213.     The November 20 "absurdity" defamatory statement on its face impugned the reputation of each Plaintiff, and tended to expose each Plaintiff to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause each to be shunned or avoided, and/or to injure each in her occupation, good name, character, and reputation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 213 of the Complaint states conclusions or characterizations of law, no response is required.

214.     The November 20 "absurdity" defamatory statement has directly and proximately caused each Plaintiff damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 214 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie take nothing by reason of the Third Amended Complaint;

B.      That judgment be entered in favor of Defendant William H. Cosby, Jr. and against

Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara

Bowman, Joan Tarshis, and Angela Leslie;

C.      That the Third Amended Complaint be dismissed *with prejudice*;

D.      That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.      For such other further relief as the Court deems just and proper.

## COUNT XIV
November 20 "Absurdity" Defamatory Statement
Invasion of Privacy (False Light)
Plaintiffs Green, Moritz, Bowman, Leslie

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

215.    The publication of the November 20 "absurdity" statement cast Plaintiffs Green,

Moritz, Bowman, and Leslie each in a false light that would be considered highly offensive to a

reasonable person.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 215 of the Complaint states conclusions or

characterizations of law, no response is required.

216.    Singer, within the course and scope of his agency with Defendant Cosby, and

Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20

"absurdity" defamatory statement with knowledge, or with reckless disregard, of the false light

in which Plaintiffs Green, Moritz, Bowman, and Leslie would be placed.

**ANSWER:**   Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 216 of the Complaint states conclusions or characterizations of law, no response is required.

217.   The publication of the November 20 "absurdity" statement constituted a major misrepresentation of the character of each of Plaintiffs Green, Moritz, Bowman, and Leslie.

**ANSWER:**   Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 217 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.   That Plaintiffs Tamara Green, Louisa Moritz, Barbara Bowman, and Angela Leslie take nothing by reason of the Third Amended Complaint;

B.   That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiffs Tamara Green, Louisa Moritz, Barbara Bowman, and Angela Leslie;

C.   That the Third Amended Complaint be dismissed *with prejudice*;

D.   That Defendant William H. Cosby, Jr. be awarded his cost of suit, including reasonable attorneys' fees; and

E.   For such other further relief as the Court deems just and proper.

**COUNT XV**
November 20 "Absurdity" Defamatory Statement
Intentional Infliction of Emotional Distress
All Plaintiffs

Mr. Cosby reincorporates his responses to each and every allegation set forth above and further responds as follows:

218.     Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, gave the November 20 "absurdity" defamatory statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized community.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 218 of the Complaint states conclusions or characterizations of law, no response is required.

219.     Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, acted with intent to cause, or reckless disregard for causing, emotional distress to each Plaintiff.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 219 of the Complaint states conclusions or characterizations of law, no response is required.

220.     The publication of the November 20 "woodwork" defamatory statement actually and proximately caused severe emotional distress to each Plaintiff.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 220 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie take nothing by reason of the Third Amended Complaint;

B.      That judgment be entered in favor of Defendant William H. Cosby, Jr. and against

Plaintiffs Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara

Bowman, Joan Tarshis, and Angela Leslie;

C.      That the Third Amended Complaint be dismissed *with prejudice*;

D.      That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.      For such other further relief as the Court deems just and proper.

### COUNT XVI
November 21 Defamatory Statement – Defamation
Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

221.    The November 21 defamatory statement was of and concerning Plaintiffs

Serignese, Traitz, Moritz, Tarshis, and Leslie, and no more than 11 women had publicly accused

Defendant Cosby of sexual misconduct before the publication of the November 21 defamatory

statement, since at least the beginning of 2014.

**ANSWER:**      Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 221 of the Complaint states conclusions or

characterizations of law, no response is required.

222.    The November 21 defamatory statement was printed, published, circulated and

distributed by news outlets, and was widely read by the public.

**ANSWER:**      Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 222 of the Complaint states conclusions or

characterizations of law, no response is required.

223.     The November 21 defamatory statement was (given the newsworthiness of the subject matter) foreseeably republished nationwide across multiple media, for days or more after it was originally published.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 223 of the Complaint states conclusions or characterizations of law, no response is required.

224.     In the November 21 defamatory statement, Defendant Cosby, directly, and vicariously by and through Singer, stated explicitly, stated in effect, stated by innuendo, implied, and/or insinuated, that Defendant Cosby's attempted and/or actual sexual assault(s) against Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie did not occur, and that each of these Plaintiffs lied and was a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 224 of the Complaint states conclusions or characterizations of law, no response is required.

225.     The November 21 defamatory statement was defamatory *per se*.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 225 of the Complaint states conclusions or characterizations of law, no response is required.

226.     The November 21 defamatory statement was false when made, in that Plaintiffs Serignese's, Traitz's, Moritz's, Tarshis's, and Leslie's accusations against Defendant Cosby were true, and there was no reasonable basis to publicly claim that any of these Plaintiffs was lying or a liar.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 226 of the Complaint states conclusions or characterizations of law, no response is required.

227.     Defendant Cosby has known that Plaintiffs Serignese's, Traitz's, Moritz's, Tarshis's, and Leslie's allegations of sexual misconduct were true and that Singer's and Defendant Cosby's denial, and their impugning of these Plaintiffs' honesty, were false.

**ANSWER:**     Mr. Cosby denies the allegations set forth in paragraph 227 of the Complaint.

228.     Singer knew, or should have known, that the November 21 defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 228 of the Complaint states conclusions or characterizations of law, no response is required.

229.     Defendant Cosby knew the November 21 defamatory statement was false at the time of the publication.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 229 of the Complaint states conclusions or characterizations of law, no response is required.

230.     Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly and/or by and through Singer, gave the November 21 defamatory statement intentionally, with knowledge of its falsity; with malice; with actual malice; with intent to injure and defame; with reckless disregard of the truth; and/or with negligent disregard of the truth.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 230 of the Complaint states conclusions or characterizations of law, no response is required.

231.     The November 21 defamatory statement on its face impugned the reputation of Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie, and tended to expose each of these Plaintiffs to public contempt, ridicule, aversion or disgrace, to induce an evil opinion of each in the minds of right-thinking persons, to cause each to be shunned or avoided, and/or to injure each in her occupation, good name, character, and reputation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 231 of the Complaint states conclusions or characterizations of law, no response is required.

232.     The November 21 defamatory statement has directly and proximately caused Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie, each, damages by virtue of her loss of reputation, shame, mortification, hurt feelings, and/or damage to her property, business, trade, profession, or and/or occupation.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 232 of the Complaint states conclusions or characterizations of law, no response is required.

WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.     That Plaintiffs Therese Serignese, Linda Traitz, Louisa Moritz, Joan Tarshis, and Angela Leslie take nothing by reason of the Third Amended Complaint;

B.      That judgment be entered in favor of Defendant William H. Cosby, Jr. and against

Plaintiffs Therese Serignese, Linda Traitz, Louisa Moritz, Joan Tarshis, and

Angela Leslie;

C.      That the Third Amended Complaint be dismissed *with prejudice*;

D.      That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.      For such other further relief as the Court deems just and proper.

## COUNT XVII
November 21 Defamatory Statement
Invasion of Privacy (False Light)
Plaintiffs Moritz and Leslie

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

233.    The publication of the November 21 statement cast Plaintiffs Moritz and Leslie

each in a false light that would be considered highly offensive to a reasonable person.

**ANSWER:**      Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 233 of the Complaint states conclusions or

characterizations of law, no response is required.

234.    Singer, within the course and scope of his agency with Defendant Cosby, and

Defendant Cosby, directly, and vicariously by and through Singer, gave the November 21

defamatory statement with knowledge, or with reckless disregard, of the false light in which

Plaintiffs Moritz and Leslie would be placed.

**ANSWER:**      Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 234 of the Complaint states conclusions or

characterizations of law, no response is required.

235.    The publication of the November 21 statement constituted a major

misrepresentation of the character of each of Plaintiffs Moritz and Leslie.

**ANSWER:**    Mr. Cosby denies that he or his representative made any defamatory statements.

To the extent paragraph 235 of the Complaint states conclusions or

characterizations of law, no response is required.


WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.    That Plaintiffs Louisa Moritz and Angela Leslie take nothing by reason of the

Third Amended Complaint;

B.    That judgment be entered in favor of Defendant William H. Cosby, Jr. and against

Plaintiffs Louisa Moritz and Angela Leslie;

C.    That the Third Amended Complaint be dismissed *with prejudice*;

D.    That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.    For such other further relief as the Court deems just and proper.

## COUNT XVIII
November 21 Defamatory Statement
Intentional Infliction of Emotional Distress
Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie

Mr. Cosby reincorporates his responses to each and every allegation set forth above and

further responds as follows:

236.    Singer, within the course and scope of his agency with Defendant Cosby, and

Defendant Cosby, directly and/or by and through Singer, gave the November 21 defamatory

statement intentionally, and this constituted outrageous conduct, utterly intolerable in a civilized

community.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 236 of the Complaint states conclusions or characterizations of law, no response is required.

237.    Singer, within the course and scope of his agency with Defendant Cosby, and Defendant Cosby, directly, and vicariously by and through Singer, acted with intent to cause, or reckless disregard for causing, emotional distress to Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 237 of the Complaint states conclusions or characterizations of law, no response is required.

238.    The publication of the November 21 defamatory statement actually and proximately caused severe emotional distress to Plaintiffs Serignese, Traitz, Moritz, Tarshis, and Leslie.

**ANSWER:**     Mr. Cosby denies that he or his representative made any defamatory statements. To the extent paragraph 238 of the Complaint states conclusions or characterizations of law, no response is required.


WHEREFORE, Defendant William H. Cosby, Jr. demands judgment as follows:

A.      That Plaintiffs Therese Serignese, Linda Traitz, Louisa Moritz, Joan Tarshis, and Angela Leslie take nothing by reason of the Third Amended Complaint;

B.      That judgment be entered in favor of Defendant William H. Cosby, Jr. and against Plaintiffs Therese Serignese, Linda Traitz, Louisa Moritz, Joan Tarshis, and Angela Leslie;

C.      That the Third Amended Complaint be dismissed *with prejudice*;

D.      That Defendant William H. Cosby, Jr. be awarded his cost of suit, including

reasonable attorneys' fees; and

E.      For such other further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

*Failure To State A Claim.*  The Third Amended Complaint, and each purported cause of action alleged therein, fails to state facts sufficient to constitute any cause of action against Mr. Cosby.

### SECOND AFFIRMATIVE DEFENSE

*Statute of Limitations.*  Plaintiff Tamara Green's claim based on the November 2014 Washington Post article is barred by the statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

*Constitutionally Protected Opinions.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) were constitutionally protected opinions.

### FOURTH AFFIRMATIVE DEFENSE

*Non-Defamatory Statements of Fact.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) were non-defamatory statements of fact.

## FIFTH AFFIRMATIVE DEFENSE

*Self-Defense Privilege.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) were protected by the self-defense privilege.

## SIXTH AFFIRMATIVE DEFENSE

*Substantial Truth.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) were substantially true.

## SEVENTH AFFIRMATIVE DEFENSE

*Libel-Proof Plaintiff.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) cannot realistically have caused impairment to any of Plaintiffs' reputations.

## EIGHTH AFFIRMATIVE DEFENSE

*Not Of and Concerning.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) were not "of and concerning" any Plaintiffs.

## NINTH AFFIRMATIVE DEFENSE

*Lack of Constitutional Fault.*  Plaintiffs' claims against Mr. Cosby are barred, including claims pursuant to a theory of *respondeat superior*, because neither Mr. Cosby nor his agents (if any) acted with fault in making the statements contested herein.

## TENTH AFFIRMATIVE DEFENSE

*Good-Motive and Fair Comment.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) were made with good motive and were fair comments made as a private citizen exercising his right of free speech, discussing matters of public importance, as a concerned citizen of the community.

## ELEVENTH AFFIRMATIVE DEFENSE

*Qualified and/or Conditional Privilege.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) were protected by qualified and/or conditional privilege.

## TWELFTH AFFIRMATIVE DEFENSE

*Actual Malice.*  Plaintiffs' claims are barred because, as public figures, they are unable to prove that Mr. Cosby acted with "actual malice."

## THIRTEENTH AFFIRMATIVE DEFENSE

*Lack of Subject Matter Jurisdiction.*  This Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims because they do not exceed the sum or value of $75,000, exclusive of interest and costs.  *See* 28 U.S.C.§ 1332(a).

## FOURTEENTH AFFIRMATIVE DEFENSE

*No Damages or Failure to Mitigate.*  Plaintiffs' claims are barred because the relevant statements and comments made by Mr. Cosby or his agents (if any) neither caused nor contributed to any damages suffered by Plaintiffs.  To the extent Plaintiffs have suffered an injury, Plaintiffs have failed to take reasonable, necessary, appropriate and feasible steps to mitigate their alleged damages, and to the extent of such failure to mitigate, Plaintiffs should be barred from recovering some or all of the alleged damages they seek.

## FIFTEENTH AFFIRMATIVE DEFENSE

*Equitable Defenses.*  Plaintiffs' claims are barred by the equitable doctrines of estoppel, waiver, laches and/or unclean hands.

## **COUNTERCLAIMS**

Counterclaim Plaintiff, William H. Cosby, Jr., by and through his undersigned counsel and in accordance with Rule 13 of the Federal Rules of Civil Procedure, brings these counterclaims against Counterclaim Defendants Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie for their malicious, opportunistic, and false and defamatory accusations of sexual misconduct against Mr. Cosby.

1. Mr. Cosby is an internationally known American comedian, actor, and philanthropist. Beginning with his novel television work as a young African American actor on *I Spy*, the transformative cultural impact of *The Cosby Show*, and continuing throughout the past half-century as a philanthropist dedicated to promoting social justice issues with his involvement and contributions to causes from education to sickle cell anemia, Mr. Cosby prides himself in the legacy and reputation he has earned throughout his life, particularly as an entertainer and philanthropist. Mr. Cosby is an Emmy Award winner, a 1998 Kennedy Center Honors recipient, and in 2002 Mr. Cosby was awarded the Presidential Medal of Freedom.

2. The honorable legacy and reputation that Mr. Cosby has long cultivated, however, has been tarnished. Relying solely on unsubstantiated accusations, Counterclaim Defendants have engaged in a campaign to assassinate Mr. Cosby's reputation and character by willfully, maliciously, and falsely accusing Mr. Cosby of multi-decade-old purported sexual misconduct. Counterclaim Defendants' campaign is nothing more than an opportunistic attempt to extract financial gain from him.

3. Despite the recent barrage of unsubstantiated accusations, Mr. Cosby has never been criminally charged nor found liable by any Court for any sexual misconduct. And, despite that the Counterclaim Defendants' purported events supposedly took place over multiple decades

ago, by their own admissions none of them filed a report with law enforcement regarding their stories nor have any of them asserted any civil claims for relief based on their own stories of sexual misconduct.

4.      Instead, Counterclaim Defendants did not file any claims against Mr. Cosby until *after* he was set to make a return to television by starring in a new family comedy television series on the National Broadcasting Company ("NBC").  Once news of Mr. Cosby's television resurgence became well publicized, in 2014, each Counterclaim Defendant repeatedly and maliciously published their unsubstantiated stories through multiple interviews and posts on social media platforms.

5.      Then, once Martin Singer defended Mr. Cosby by denying certain false accusations of sexual misconduct volleyed against him, Counterclaim Defendants filed a defamation lawsuit against Mr. Cosby to silence his defenses and monetize their false accusations.

6.      Mr. Cosby brings these counterclaims to redress the injury and damages caused by Counterclaim Defendants' malicious and unlawful conduct.

## JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Mr. Cosby's counterclaims occurred in this District.

## PARTIES

9.      Counterclaim Plaintiff William H. Cosby, Jr. is an internationally known American comedian, actor, and philanthropist.  Mr. Cosby resides within this District.

10.     Counterclaim Defendant Tamara Green is an adult individual residing and domiciled in California.

11.     Counterclaim Defendant Therese Serignese is an adult individual residing and domiciled in Florida.

12.     Counterclaim Defendant Linda Traitz is an adult individual residing and domiciled in Florida.

13.     Counterclaim Defendant Louisa Moritz is an adult individual residing and domiciled in California.

14.     Counterclaim Defendant Barbara Bowman is an adult individual residing and domiciled in Arizona.

15.     Counterclaim Defendant Joan Tarshis is an adult individual residing and domiciled in New York.

16.     Counterclaim Defendant Angela Leslie is an adult individual residing and domiciled in Michigan.

## FACTUAL ALLEGATIONS

17.     At or around the beginning of 2014, Mr. Cosby entered into an agreement with NBC to star in a new family comedy television series.  Once news of Mr. Cosby's television resurgence became well publicized, in 2014, upon information and belief, each Counterclaim Defendant engaged in a campaign to assassinate Mr. Cosby's reputation and character by

willfully, maliciously, and falsely accusing Mr. Cosby of multi-decade-old purported sexual misconduct in an opportunistic attempt to extract financial gain from their allegations.

18.     Counterclaim Defendant Green has maliciously and knowingly published multiple false accusations that Mr. Cosby sexually assaulted her.  For example, on at least two occasions in 2014, at least once in an interview with *Newsweek*, Ms. Green participated in interviews where she claimed that Mr. Cosby drugged and sexually assaulted her over 40 years ago.

19.     Mr. Cosby neither drugged nor sexually assaulted Ms. Green.  Aside from Ms. Green's bare allegations, her claims of a sexual assault that purportedly occurred over 40 years ago remain unsubstantiated.  Ms. Green admits that she never filed a report with law enforcement regarding her story nor has she asserted any civil claim for relief based on Mr. Cosby's alleged sexual misconduct.  Instead, upon information and belief, Ms. Green made these false statements in an effort to cause damage to Mr. Cosby's reputation and to extract financial gains by means of them.

20.     Counterclaim Defendant Serignese has also published false accusations that Mr. Cosby sexually assaulted her.  For example, in or around November 2014, Ms. Serignese reached out to the Huffington Post and falsely asserted that Mr. Cosby drugged and raped her over 38 years ago, purportedly in 1976.

21.     According to Ms. Serignese's November 2014 story, she purportedly called Mr. Cosby after the alleged incident at her mother's encouragement that "maybe [Mr. Cosby]'ll take care of you."  She subsequently accepted housing from Mr. Cosby at a Hilton penthouse for three weeks.  Then, according to Ms. Serignese, in 1985 she contacted Mr. Cosby again as she was going through a divorce and ended up engaging in another sexual encounter with him.  In 1993,

Ms. Serignese claims, she again contacted Mr. Cosby to ask for and accept money from him after being involved in a traffic accident.

22.     Mr. Cosby neither drugged nor sexually assaulted Ms. Serignese.  Like the other Counterclaim Defendants, Ms. Serignese admits that she never filed a report with law enforcement regarding her story nor has she asserted any civil claim for relief based on her story of Mr. Cosby's alleged sexual misconduct.  Instead, upon information and belief, Ms. Serignese made these false statements in an effort to cause damage to Mr. Cosby's reputation and to extract financial gains by means of them.

23.     In or around November 2014, Counterclaim Defendant Traitz published at least three false statements and accusations that Mr. Cosby sexually assaulted her over 40 years ago.  Like her other Counterclaim Defendants, Mr. Cosby did not sexually assault Ms. Traitz.  Likewise, by Ms. Traitz's own admission, she never filed a report with law enforcement regarding her story nor has she asserted any civil claim for relief based on her story of Mr. Cosby's alleged sexual misconduct.  Instead, upon information and belief, Ms. Traitz made these false statements in an effort to cause damage to Mr. Cosby's reputation and to extract financial gains by means of them.

24.     Counterclaim Defendant Moritz published false statements and accusations that Mr. Cosby sexually assaulted her through a public statement on or about November 20, 2014.  Consistent with her other Counterclaim Defendants' scheme, Ms. Moritz's uncorroborated and bare assertions of sexual assault that purportedly occurred over 45 years ago remain unsubstantiated.  Ms. Moritz's fabrication is highlighted by the fact that, despite her repeated accounts that she was sexually assaulted by Mr. Cosby on set while waiting to make an appearance on "The Tonight Show," Mr. Cosby was neither on the set of The Tonight Show nor

was he physically present at the location she alleges the assault took place.  Instead, Mr. Cosby did not sexually assault Ms. Moritz.  Likewise, by Ms. Moritz's own admission, she never filed a report with law enforcement regarding her story nor has she asserted any civil claim for relief based on her story of Mr. Cosby's alleged sexual misconduct.  Instead, upon information and belief, Ms. Moritz made these false statements in an effort to cause damage to Mr. Cosby's reputation and to extract financial gains by means of them.

25.    Counterclaim Defendant Bowman published false, uncorroborated, and multi-decade old allegations of sexual assault against Mr. Cosby at least twice in 2014.  Once through an interview with the Daily Mail on or around October 27, 2014, and again through an article she authored that was published online on or around November 13, 2014.  In her interview with the Daily Mail, Ms. Bowman admitted that her new allegations were meant to address her "fear [] that [Mr. Cosby] will actually hit the NBC airways again;" indeed she brags that "the timing couldn't be better.  It sickens me to think he'll be on TV again."

26.    Counterclaim Defendant Tarshis published false, uncorroborated, and multi-decade old allegations of sexual assault against Mr. Cosby by sending her "old friend" a written statement that was published online on or around November 16, 2014.  Likewise, Counterclaim Defendant Leslie published false, uncorroborated, and multi-decade old allegations of sexual assault against Mr. Cosby by giving an interview to the New York Daily News on or around November 20, 2014.

27.    Like all the other Counterclaim Defendants, however, Mr. Cosby did not sexually assault Ms. Bowman, Ms. Tarshis, nor Ms. Leslie.  And, like all the other Counterclaim Defendants, by their own admissions, neither Ms. Bowman, Ms. Tarshis, nor Ms. Leslie filed a report with law enforcement regarding their stories nor have any of them asserted any civil claim

for relief based on their story of Mr. Cosby's alleged sexual misconduct.  Instead, upon information and belief, Ms. Bowman, Ms. Tarshis, and Ms. Leslie, along with their fellow Counterclaim Defendants, have made these false statements in an effort to cause damage to Mr. Cosby's reputation and to extract financial gains by means of them.

28.     Counterclaim Defendants' intentional and malicious campaign to defame Mr. Cosby has caused him substantial injury.  As a result of their false, opportunistic, and malicious allegations, Mr. Cosby's reputation has been irretrievably damaged and his planned reemergence to network television destroyed as they intended.

## FIRST CLAIM FOR RELIEF

### (Defamation *Per Se* Against All Counterclaim Defendants)

29.     Mr. Cosby repeats and re-alleges, as if fully set forth herein, the responses, affirmative defenses, and allegations of all of the preceding paragraphs.

30.     At all relevant times, Mr. Cosby enjoyed the respect, confidence and esteem of his neighbors, as well as others in the community.

31.     In or around February 2014 and November 2014, and at various times continuing through the present day, Ms. Green published to one or more third parties false and defamatory statements concerning Mr. Cosby as set forth above.

32.     In or around November 2014, and at various times continuing through the present day, Ms. Serignese published to one or more third parties false and defamatory statements concerning Mr. Cosby as set forth above.

33.     In or around November 2014, and at various times continuing through the present day, Ms. Traitz published to one or more third parties at least three false and defamatory statements concerning Mr. Cosby as set forth above.

34.     In or around November 2014, and at various times continuing through the present day, Ms. Moritz published to one or more third parties at least three false and defamatory statements concerning Mr. Cosby as set forth above.

35.     In or around October and November 2014, and at various times continuing through the present day, Ms. Bowman published to one or more third parties at least three false and defamatory statements concerning Mr. Cosby as set forth above.

36.     In or around November 2014, and at various times continuing through the present day, Ms. Tarshis published to one or more third parties at least three false and defamatory statements concerning Mr. Cosby as set forth above.

37.     In or around November 2014, and at various times continuing through the present day, Ms. Leslie published to one or more third parties at least three false and defamatory statements concerning Mr. Cosby as set forth above.

38.     Each Counterclaim Defendant intentionally made and published the false and defamatory statements with actual malice, knowledge of, and reckless disregard as to the falsity of those statements because each Counterclaim Defendant knew that Mr. Cosby neither drugged nor sexually assaulted them.

39.     Counterclaim Defendants' false statements were defamatory because they held Mr. Cosby up to hatred, distrust, contempt, disgrace, scorn, and ridicule among considerable and respectable segments of the community, including from the media coverage and public reaction to Counterclaim Defendants' false and defamatory statements.

40.     Counterclaim Defendants' false statements were defamatory *per se* because they falsely impute that Mr. Cosby engaged in criminal conduct.

41.     Counterclaim Defendants' false and defamatory statements have proximately caused and continue to cause Mr. Cosby to suffer substantial injuries and damages including, but not limited to, tarnish of reputation and public image, delay and/or cancellation of pending contracts, shame, mortification, hurt feelings, damages to property, business, trade, profession, and occupation.

## SECOND CLAIM FOR RELIEF

### (Defamation Against All Counterclaim Defendants)

42.     Mr. Cosby repeats and re-alleges, as if fully set forth herein, the responses, affirmative defenses, and allegations of all of the preceding paragraphs.

43.     At all relevant times, Mr. Cosby enjoyed the respect, confidence and esteem of his neighbors, as well as others in the community.

44.     Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie have each published to one or more third parties false and defamatory statements concerning Mr. Cosby as set forth above.

45.     Each Counterclaim Defendant intentionally made and published the false and defamatory statements with actual malice, knowledge of, and reckless disregard as to the falsity of those statements because each Counterclaim Defendant knew that Mr. Cosby neither drugged nor sexually assaulted them.

46.     Counterclaim Defendants' false statements were defamatory because they held Mr. Cosby up to hatred, distrust, contempt, disgrace, scorn, and ridicule among considerable and respectable segments of the community, including from the media coverage and public reaction to Counterclaim Defendants' false and defamatory statements.

47.     Counterclaim Defendants' false and defamatory statements have proximately caused and continue to cause Mr. Cosby to suffer substantial injuries and damages including, but not limited to, tarnish of reputation and public image, delay and/or cancellation of pending contracts, shame, mortification, hurt feelings, damages to property, business, trade, profession, and occupation.

## THIRD CLAIM FOR RELIEF

### (Tortious Interference Against All Counterclaim Defendants)

48.     Mr. Cosby repeats and re-alleges, as if fully set forth herein, the responses, affirmative defenses, and allegations of all of the preceding paragraphs.

49.     At or before the beginning of 2014, Mr. Cosby had an existing contract or an expectation of a contract to feature in a new family comedy series on NBC.  Mr. Cosby also had existing contracts or an expectation of contract with Netflix at that time.

50.     Each Counterclaim Defendant knew of Mr. Cosby's existing or pending 2014 contracts with NBC and Netflix because, among other things, Mr. Cosby's television resurgence became well publicized in the media.

51.     Each Counterclaim Defendant induced both NBC and Netflix to postpone or cancel their contracts with Mr. Cosby by engaging in a campaign to assassinate Mr. Cosby's reputation and character by willfully, maliciously, and falsely accusing Mr. Cosby of multi-decade-old purported sexual misconduct in an opportunistic attempt to extract financial gain from their allegations.

52.     Counterclaim Defendants' unlawful conduct has proximately caused and continues to cause Mr. Cosby to suffer substantial injuries and damages including, but not

limited to, tarnish of reputation and public image, delay and/or cancellation of pending contracts, shame, mortification, hurt feelings, damages to property, business, trade, profession, and occupation.

## FOURTH CLAIM FOR RELIEF

**(Intentional Infliction of Emotional Distress Against All Counterclaim Defendants)**

53.     Mr. Cosby repeats and re-alleges, as if fully set forth herein, the responses, affirmative defenses, and allegations of all of the preceding paragraphs.

54.     Each Counterclaim Defendant intentionally engaged in a campaign to assassinate Mr. Cosby's reputation and character by willfully, maliciously, and falsely accusing Mr. Cosby of engaging in sexual misconduct in an opportunistic attempt to extract financial gain from their allegations.

55.     Counterclaim Defendants' conduct was extreme and outrageous and beyond all possible bounds of decency because, among other things, falsely accusing another of sexual assault is morally repugnant and subjected Mr. Cosby to severe emotional distress from public ridicule, shame, and contempt of such a nature that no reasonable person could be expected to endure it.

56.     As a result of Counterclaim Defendants' intentional, extreme, outrageous, and morally repugnant conduct, Mr. Cosby has suffered and continues to suffer from severe emotional distress including, but not limited to, tarnish of reputation and public image, shame, mortification, hurt feelings, and shock and harm to his peace of mind by Counterclaim Defendants' intentional invasion of Mr. Cosby's mental and emotional tranquility.

WHEREFORE, Counterclaim Plaintiff William H. Cosby, Jr. respectfully requests that the Court enter judgment in his favor and against Counterclaim Defendants Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara Bowman, Joan Tarshis, and Angela Leslie (collectively "Counterclaim Defendants") as follows:

A.    An award for compensatory damages to the maximum extent permitted by law;

E.    An award for punitive damages to the maximum extent permitted by law;

B.    A permanent injunction enjoining Counterclaim Defendants from continuing to publish its defamatory statements;

C.    An injunction requiring Counterclaim Defendants to publically issue a statement and press release retracting and correcting its defamatory statements;

D.    An award of all costs and fees in this action, including attorneys' fees and pre- and post-judgment interest; and

E.    All other such relief as this Court deems just and proper.

Dated:  December 14, 2015                Respectfully submitted,


By: *s/ John J. Egan*
Christopher Tayback
Marshall M. Searcy III
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443 3000

John J. Egan
EGAN, FLANAGAN & COHEN, PC
67 Market Street
PO Box 9035
Springfield, MA 01102-9035
413-737-0260

*Attorneys for William H. Cosby, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 14, 2015, I caused the foregoing document to be electronically filed using the CM/ECF, which will automatically transmit Notice of Electronic Filing to all attorneys of record, as follows:

**Joseph Cammarata**
**Matthew W. Tievsky**
Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 Seventeenth Street, N.W.
Washington, DC 20036

**Andrew M. Abraham**
Abraham & Associates, P.C.
2 Center Plaza, Suite 620
Boston, MA 02108

**Ira Sherman**
The Law Building
1232 Seventeenth Street, N.W.
Washington, DC 20036

**Alexandra B. Schmit**
**Michael A. Bressler**
The Bressler Firm LLC
Suite 1800
180 N. Michigan Avenue
Chicago, IL 60601

_____*s/John J. Egan*_____
John J. Egan