UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| TAMARA GREEN, et al.,<br><br>    Plaintiffs/Counter-Defendants,<br><br>v.<br><br>WILLIAM H. COSBY, JR.,<br><br>    Defendant/Counter-Plaintiff. | Case No.: 3:14-cv-30211-MGM-DHH |

**PLAINTIFFS' OPPOSITION TO THE COSBYS' MOTION TO QUASH CAMILLE COSBY'S DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

COME NOW the Plaintiffs, by and through their counsel, and hereby oppose the Motion of Defendant William H. Cosby, Jr.,[1] and his wife, Camille Cosby, to prohibit Plaintiffs from ever deposing Mrs. Cosby ("Motion").

After the Plaintiffs noted Mrs. Cosby's deposition on December 1, 2015 (the day after discovery opened), the Cosbys delayed by waiting 17 days to file their Motion, on December 18, 2015. That was the last date on which the Cosbys could possibly file their Motion, with the opposition deadline (January 4, 2016) still falling before Mrs. Cosby's scheduled deposition date of January 6, 2016. If Plaintiffs were to use their full allotted time to file their Opposition, the Court would be unable to decide the Motion before the deposition, which would have to be rescheduled. Accordingly, to prevent Defendant from forcing the postponement of Mrs. Cosby's

---

[1] The Motion to Quash is captioned as if it is Camille Cosby's alone, but this is a mere formality. The Cosbys have a mutual interest in quashing the subpoena, and the attorneys who have filed the Motion for Mrs. Cosby are also Mr. Cosby's attorneys in this case. Indeed, on page 6 of the Memorandum in support of the Motion, Defendant makes a representation about what evidence he intends to present at trial. In substance, the Motion belongs to both the Defendant and his wife.

deposition, Plaintiffs have filed the instant Opposition on an extremely accelerated basis, so that the Court can decide the Motion in advance of the deposition date.

The Court should reject the Cosbys' Motion out of hand. The position taken by the Cosbys' attorneys can fairly be summarized as follows: "Mr. Cosby will answer all of the Plaintiffs' discovery requests completely and honestly, so there is no need to depose Mrs. Cosby. Also, practically everything relevant to this action that Mrs. Cosby knows, is undiscoverable. **Trust us**." In support of these bold claims, the Cosbys offer merely the unsworn assertions of their attorneys. Furthermore, the Cosbys cite no authority for the startling proposition that a deposition can be precluded on the basis that the persons resisting discovery insist that nothing useful will come of the deposition.

In fact, **Mrs. Cosby is likely the single person with the most relevant information regarding this action,** other than the parties themselves. There are numerous, relevant lines of inquiry that Plaintiffs may pose to Mrs. Cosby, notwithstanding the Cosbys' assurance of Mrs. Cosby's ignorance. Mrs. Cosby's status as Defendant's wife is important and, in addition, she is his business manager. Moreover, Massachusetts' spousal disqualification rule **does not authorize Mrs. Cosby to refuse to answer questions at her deposition**, although even if it did, the rule is far narrower than the Cosbys acknowledge in their Motion.

The Cosbys' attempt to shut down an important deposition before it even occurs, based on their own say-so (unsworn, and through their attorneys) that Mrs. Cosby has nothing of value to say, is contrary to the federal judiciary's basic philosophy favoring liberal discovery. The Plaintiffs ask that this Court summarily deny the Cosbys' Motion to Quash, so that Mrs. Cosby's deposition may proceed as scheduled, on January 6, 2016.

Plaintiffs explain further, as follows:

### I.    Mrs. Cosby's deposition testimony will likely be relevant to this action on numerous topics.

"[T]he Federal Rules of Civil Procedure are to be construed liberally in favor of discovery." *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). In particular, "[a] party may, by oral questions, depose **any person** . . . ." FRCP 30(a)(1) (emphasis added). The scope of discovery is very broad, and "information is discoverable if there is any possibility it might be relevant to the subject matter of the action," *EEOC v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996), even if it "is not directly related to the subject of the underlying litigation," *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001). *See* FRCP 26(b)(1). Even testimony not admissible at trial may be elicited at a deposition, because it may lead to the discovery of admissible evidence. *See id.* ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); FRCP 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection."); *Wertz v. GEA Heat Exchangers, Inc.*, Case No. 1:14-CV-1991, 2015 U.S. Dist. LEXIS 167947, *3 (M.D. Pa. Dec. 16, 2015) (analyzing FRCP 26(b)(1) since recent amendment).

Given the breadth of permissible discovery in federal proceedings, it is no surprise that the Cosbys have cited **not a single case** in which a court completely precluded a deposition on the ground that the expected testimony would supposedly be entirely irrelevant and/or inadmissible at trial. On page 5 of the Memorandum of Law in support of the Cosbs' Motion (hereinafter "Memo."), Defendant cites *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998) and *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38 (1st Cir. 2003), but these cases each pertained to a subpoena for documents, not a subpoena for testimony as in this case.

Indeed, in *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421 (1st Cir. 1961), the First Circuit held, in reviewing the quashing of a subpoena *duces tecum*, that an attorney's assurance that his client possesses no relevant information, even when supported by an affidavit, "would be altogether too facile a way for a witness to avoid testifying," particularly because "the exact nature of the expected evidence could not [be] predicted." *Id.* at 425. *See also, e.g.*, *Dang v. Eslinger*, Case No. 6:15-cv-37, 2014 U.S. Dist. LEXIS 99550, *8-9 (M.D. Fla. July 22, 2014) (denying Plaintiff's request to be excused from being deposed on the ground of mental incompetence); *Doe v. Handman*, Case No. 95 Civ. 8005, 1999 U.S. Dist. LEXIS 17856, *5-9 (S.D.N.Y. Nov. 16, 1999) (allowing deposition of party's spouse, subject to New York spousal communications privilege); *Trockman v. Duddy's, Inc.*, 21 Fed. R. Serv. 2d 58 (D. Mass. Sept. 16, 1975) (allowing deposition of opposing party's counsel).

Indeed, even in the midst of a deposition, a deponent is not supposed to refuse to answer a particular question on the ground of supposed irrelevance. *See* FRCP 30(c)(2); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *In re Stratosphere Corp. Secs. Litig.*, 182 F.R.D. 614, 618-19 (D. Nev. 1998). Yet the Cosbys are insisting that Mrs. Cosby should not have to answer **any** questions, before her deposition has even begun. The Court should not indulge the Cosbys' request for such special treatment and extraordinary relief.

The Cosbys, of course, are in a better position than Plaintiffs to know what relevant information Mrs. Cosby has. Nevertheless, it is already apparent that Mrs. Cosby likely has information regarding several relevant topics, including but not limited to the following:[2]

---

[2] In the Motion, the Cosbys assert that lead counsel for the Plaintiffs, Joseph Cammarata, Esquire, told defense counsel earlier this month that he intended to depose Mrs. Cosby on the grounds that (1) she is Mr. Cosby's business manager, and (2) she made a public statement in Mr. Cosby's support on December 15, 2014. This is not a fully accurate recitation of what Mr. Cammarata said (Mr. Cammarata did make the first point, but not the second), but in any event it does not matter. As Mr. Cammarata expressly told defense counsel (and as the Cosbys acknowledge), Mr. Cammarata refused to divulge his strategy to the defense by laying out in detail all the topics he will ask Mrs.

4

First, there is likely no single person, other than Mr. Cosby himself, who has more knowledge of Mr. Cosby's sexual proclivities and encounters (consensual and non-consensual), as well as his use of Quaaludes and other sedatives, than Mrs. Cosby.  Mrs. Cosby may have learned important information based on, *e.g.*, her own observations, information from third parties close to the Cosbys, and/or information she learned from Mr. Cosby himself.  (As explained *infra*, the spousal disqualification rule imposes no limit upon what Plaintiffs may ask Mrs. Cosby at her deposition, but even if it did, the rule potentially applies only to the last category of information.)

Mrs. Cosby's knowledge on this topic likely derives from her being both Mr. Cosby's wife, **and** Mr. Cosby's business manager, because the accusations against Mr. Cosby have affected his business, and his business (managed by Mrs. Cosby) has responded by defending Mr. Cosby from the damaging accusations.  For example, news media reported in July of 2015 that Mrs. Cosby was directing a public relations response to the sexual assault accusations against Defendant.  *See Exhibit A*, "Bill Cosby's wife says accusers 'consented' to drugs and sex," New York Post, July 12, 2015.  As Defendant's business manager and wife, Mrs. Cosby likely has significant insight into the veracity of the sexual assault accusations.  Mrs. Cosby's knowledge on this topic is important to establishing that Mr. Cosby did assault the Plaintiffs, often accompanied by the attempted or actual use of Quaaludes or other sedatives.

---

Cosby about.  Accordingly, Mr. Cammarata did not purport to tell the defense all the ways in which Mrs. Cosby's testimony will be relevant.

Additionally, on pages 1 and 6 of the Memo., Defendant contends that Plaintiffs have "concede[d]" various facts about the supposed limits of Mrs. Cosby's knowledge. Defendant does not explain when Plaintiffs supposedly made these concessions, and Plaintiffs vigorously dispute that their counsel ever made such concessions.

The Cosbys assert that any relevant information possessed by Mr. Cosby is "repetitive." That is a dubious claim, given that discovery has barely begun and Plaintiffs have not received any discovery responses from Defendant or anyone else.

Perhaps the Cosbys mean that any information that Mrs. Cosby has, the Plaintiffs could instead obtain from Mr. Cosby. Yet the Court cannot simply take this untested, self-serving assertion by the Cosbys at face value. "[A]n essential part of discovery is allowing the parties to access information that tests the truthfulness and validity of their opponents' claims." *Appler v. Mead Johnson & Co., LLC*, Case No. 3:14-cv-166, 2015 U.S. Dist. LEXIS 133769, *10 (S.D. Ind. Oct. 1, 2015); *see also Comercio E Industria Continental, S.A. v. Dresser Industries, Inc.*, 19 F.R.D. 513, 514 (S.D. N.Y. 1956) ("Discovery is founded upon the policy that trial should not be treated as a sporting event, but as a search for truth." ). Indeed, the thrust of Plaintiffs' case is that Defendant is lying about sexually assaulting the Plaintiffs.

Plaintiffs have a right to depose Mrs. Cosby, to obtain information that Defendant either does not have or will not give, or that contradicts Defendant's discovery responses. It would be Kafkaesque to severely curtail Plaintiffs' discovery at the outset, based upon an unsworn, implied assurance from the Cosbys' attorneys, that Defendant Cosby will completely and honestly answer all of Plaintiffs' discovery requests. (Albeit even a sworn affidavit from Defendant Cosby himself would not justify the Cosbys' Motion to Quash.)

Second, there is also likely no single person, other than Mr. Cosby himself, who has more knowledge of the scope of authority of Mr. Cosby's spokespersons to make the defamatory statements at issue, than Mrs. Cosby. This too is evident, in light of the fact that Mrs. Cosby is Mr. Cosby's business manager. This is significant, because Defendant has already made clear that he intends to seriously dispute the scope of his spokespersons' authority to make the

defamatory statements at issue. *See* William H. Cosby, Jr.'s Response to Plaintiffs' Supplemental Brief in Support of Their Proposed Discovery Plan (Dkt. No. 113) at 5-6.

Third, Mrs. Cosby is likely the person with the most information about Defendant's counterclaim damages. As Mr. Cosby's business manager, Mrs. Cosby likely has important information regarding the economic damages that Defendant asserts in his defamation and tortious interference counterclaims. As Defendant's wife, Mrs. Cosby likely has important information regarding the emotional distress he claims to have suffered, in his counterclaim for intentional infliction of emotional distress. Plaintiffs are entitled to discover what Mrs. Cosby knows of Defendant's asserted damages, regardless of the fact that Defendant represents (on page 6 of the Memo.) that he will not call Mrs. Cosby to testify at trial regarding his damages. (Indeed, Defendant may be making that promise precisely because Mrs. Cosby's testimony will damage his counterclaims.)

The above is not a comprehensive list of the relevant topics that Mrs. Cosby may have information regarding. Plaintiffs cannot predict exactly what Mrs. Cosby knows or how the deposition will proceed. Moreover, Plaintiffs should not have to give the Cosbys an unfair advantage by presenting the entire list of questions that Plaintiffs intend to ask of Mrs. Cosby. (Indeed, the Cosbys have already gained an advantage by compelling Plaintiffs to file this Opposition to the Cosbys' ill-founded Motion.) Suffice it to say that it is already obvious that Mrs. Cosby has testimony to give that is admissible, and/or that is likely to lead to the discovery of admissible evidence. Accordingly, under FRCP 26, Plaintiffs are entitled to depose Mrs. Cosby.

> II. **The Massachusetts spousal disqualification rule is not a ground to excuse Mrs. Cosby from being deposed.**

The Cosbys self-servingly assert that the spousal disqualification rule authorizes Mrs.

Cosby to refuse to answer almost every question that Plaintiffs will pose to her.  This is far from the truth.  To the contrary, Mrs. Cosby must answer all questions at her deposition, notwithstanding the spousal disqualification rule.  The rule only limits the testimony that Mrs. Cosby may give **at trial** regarding the contents of private conversations between the Cosbys – and, even then, the rule is subject to numerous limits under Massachusetts law.

### A. Mrs. Cosby must answer all questions at her deposition, notwithstanding the Massachusetts spousal disqualification rule.

As the Cosbys correctly note, the Massachusetts spousal disqualification rule concerns the **competence** of a spouse to testify, and is not a privilege.  *Gallagher v. Goldstein*, 524 N.E.2d 53, 60 (Mass. 1988).[3]  The distinction is critical, as it applies to Mrs. Cosby's deposition. According to FRCP 30(c)(2), whereas a deponent may refuse to answer a question on the ground of privilege, a deponent may **not** refuse to answer a question on the ground of incompetence. *See Dang v. Eslinger*, Case No. 6:15-cv-37, 2014 U.S. Dist. LEXIS 99550, *8-9 (M.D. Fla. July 22, 2014) ("Assuming Plaintiff is not competent to testify, his deposition may still lead to the discovery of admissible evidence."); *see also In re Stratosphere Corp. Secs. Litig.*, 182 F.R.D. 614, 618-19 (D. Nev. 1998) (discussing issue of relevance).  Hence, a party's objection to incompetence generally is preserved, even if not raised at a deposition (unlike an objection based on privilege, but like an objection to irrelevance).  FRCP 32(d)(3).

Accordingly, Plaintiffs are fully entitled to Mrs. Cosby's deposition testimony regarding her private communications with Mr. Cosby.  Even if that deposition testimony is not **admissible** at trial, Plaintiffs are entitled to elicit Mrs. Cosby's testimony, in order to discover other,

---

[3] Accordingly, the Massachusetts spousal disqualification rule applies to this case by virtue of Federal Rule of Evidence ("FRE") 601, not FRE 501 as Defendant contends.  In a diversity action under FRE 601, the Court applies the forum state's rules on conflicts of law, to determine which state's competency rules will apply.  *See Amell v. Kucewicz*, 53 F. Supp. 2d 145, 146-47 (D. Mass. 1999).  For purposes of the spousal disqualification rule, Plaintiffs will not contest Defendant's assumption that a Massachusetts court would apply Massachusetts law.  However, Plaintiffs reserve the right to contest whether Massachusetts law applies to any other issues in this action.

admissible evidence.  The spousal disqualification rule does not excuse Mrs. Cosby from being deposed, because she must answer deposition questions regardless of the disqualification rule.

> **B. Even assuming *arguendo* that Mrs. Cosby may refuse to answer some deposition questions under the spousal disqualification rule, it does not follow that she may be entirely excused from a deposition.**

Even if Mrs. Cosby could refuse to give deposition testimony specifically covered by Massachusetts' spousal disqualification rule, this would not excuse her from being deposed at all.  *See Three Juveniles v. Commonwealth*, 455 N.E.2d 1203, 1206 (Mass. 1983) ("There is, however, no privilege for a spouse not to testify against the other spouse in a civil action, even if that testimony may be highly destructive of the marital relationship.").[4]  The disqualification rule only applies to testimony regarding the contents of "private conversations" between spouses. *Id.*  There are, of course, a wide range of questions on other subjects that Plaintiffs may ask of Mrs. Cosby.

Furthermore, even as to private conversations between the Cosbys, the spousal disqualification rule is subject to numerous limits.   "The[] underpinnings of the marital disqualification rule have fallen in extreme disfavor among courts and commentators alike," and the rule "may be viewed as a statutory preservation of a remnant of an outdated common law concept."  *Gallagher*, 524 N.E.2d at 55.  The rule only applies to conversations that are confidential in some respect.  *See Commonwealth v. Gillis*, 263 N.E.2d 437, 439-40 (Mass. 1970). Furthermore, Massachusetts courts have declined to apply the rule in a variety of situations, including but not limited to the following:

- The spousal disqualification rule does not apply to written communications between spouses.  *Commonwealth v. Szczuka*, 464 N.E.2d 38, 46 n.14 (Mass. 1984).

---

[4] ALM GL Ch. 233, § 20 does separately establish a privilege excusing one spouse from testifying against the other, but only in **criminal** cases.

- The spousal disqualification rule does not apply to a conversation between spouses if a third party was present, regardless of whether the third party heard the entire conversation. *Commonwealth v. Perez*, 954 N.E.2d 1, 16 (Mass. 2011). (This limitation applies even where the third party is an attorney for one of the spouses. *Commonwealth v. O'Brien*, 388 N.E.2d 658, 661 (Mass. 1979).)

- The disqualification rule does not preclude spouses from testifying to the fact that they had a private conversation. *Commonwealth v. Dodgson*, 952 N.E.2d 961, 969 n.7 (Mass. App. Ct. 2011) (citing *Gallagher*, 524 N.E.2d at 54). The timing of any private conversations between the Cosbys, in and of itself, may be relevant information and/or lead to the discovery of admissible evidence.

- The spousal disqualification rule applies only to "private communications" between spouses, **as** spouses. The rule does not apply to communications between spouses, made solely in their capacities as business partners. *See Anderson v. Barrera*, 6 Mass. L. Rep. 481, *6 (Super. Ct. Mass. 1997) ("business communications between spouses acting solely in the capacity of employer and employee are not protected conversation"); *cf.* ALM GL ch. 233, § 20 (spousal disqualification rule does not apply to "a proceeding arising out of or involving a contract made by a married woman with her husband"). This is critical, given Mrs. Cosby's relationship to the Defendant as his business manager.

- A threat against a third party, made privately to a spouse, is not covered by the spousal disqualification rule. *See Commonwealth v. Foxworth*, 473 Mass. 149, 159 (2015). (Similarly, abusive or threatening language between spouses is also not covered. *Commonwealth v. Burnham*, 887 N.E.2d 222, 227 (Mass. 2008).) It follows, for example, that the spousal disqualification rule may not apply to Mrs. Cosby's testimony regarding Mr. Cosby's private comments about his accusers.

- Testimony regarding a spousal communication that amounts to the witness's statement of her own personal knowledge, is not covered by the disqualification rule. *See Bartula v. Bartula*, 378 N.E.2d 466, 469 (Mass. App. Ct. 1978).

- The spousal disqualification rule may not apply where the communications at issue are made at a time when the spouses are jointly engaged in criminal activity. *Commonwealth v. Walker*, 780 N.E.2d 26, 33 n.4 (Mass. 2002). This is significant, given the possibility that the Cosbys jointly engaged in, *e.g.*, fraud related to Defendant's false denials of sexual assault, and/or the illegal acquisition, possession, use, and/or distribution of controlled substances in relation to Defendant Cosby's alleged use of Quaaludes or other sedatives to facilitate sexual assaults.

Given the limited scope of the Massachusetts spousal disqualification rule, even assuming the rule authorizes Mrs. Cosby to refuse to answer some deposition questions (which it does not), there is still a wide range of testimony that Mrs. Cosby may give.

On Page 8 of their Memo., the Cosbys unconvincingly attempt to persuade the Court that, for some reason, it is not enough for Mrs. Cosby to refuse to answer certain questions – but rather that she should be excused from answering **any** questions.

The Cosbys complain that the distinction between permissible testimony about "facts," and barred testimony about the contents of private conversations, "is not straightforward." Memo. at 8. But any decision not to answer a deposition question in any case, requires an on-the-spot legal determination. There is nothing remarkable about Mrs. Cosby's testimony, as compared to any other deponent's testimony, that makes it particularly difficult for her attorneys to determine whether the spousal disqualification rule applies in a given instance. (*United States v. Rakes*, 136 F.3d 1, 3-4 (1st Cir. 1998), cited by the Cosbys, certainly does not hold to that effect. *Rakes* merely holds that a deponent cannot be asked about his or her knowledge of a fact, if that knowledge exclusively comes from a privileged source.)

The Cosbys assert that almost every deposition question will be covered by the spousal disqualification rule. As explained *supra*, **no** deposition questions are barred by the rule but, even if they were, the rule would only apply to a narrow set of questions, *i.e.*, questions about the content of **some** private conversations between the Cosbys. In any event, whatever the breadth of the disqualification rule, there is no "burden" in refusing to answer questions. The Cosbys' unfounded assertion that the spousal disqualification rule should bar Plaintiffs from deposing Mrs. Cosby, is merely an attempt to frustrate Plaintiffs' rightful efforts at discovery.

The Cosbys complain that Mrs. Cosby "will be forced to parse over fifty years of conversations." Memo. at 8. Yet this case arises out of events that occurred only last year, *i.e.*, Plaintiffs' accusations and Defendant's defamatory responses thereto. Plaintiffs are entitled to depose Mrs. Cosby regarding the circumstances of the defamatory statements at issue, as well as the damages supposedly caused by Plaintiffs.

Insofar as Plaintiffs intend to depose Mrs. Cosby regarding events that occurred longer ago, *e.g.*, the sexual assaults that Defendant allegedly committed over the past several decades, the Plaintiffs, too, will be deposed regarding the same subject matter. Some of the questions that Defendant asks of Plaintiffs may concern privileged matters. Yet the Plaintiffs do not seek to avoid their depositions on that ground. Moreover, by the Cosbys' logic, no spouse in a long-lasting marriage should ever have to testify regarding events that occurred near the beginning of the marriage. To the extent that Mrs. Cosby cannot remember the answers to any questions regarding events from years ago, of course, Mrs. Cosby may testify to her lack of memory.

In short, if Mrs. Cosby had any right to refuse to answer deposition question on the basis of the spousal disqualification privilege (which she does not), it would be sufficient for her attorneys to interpose good-faith instructions not to answer certain questions.

### III.    The Cosbys have not shown good cause for a protective order which they have not even described.

The burden of showing good cause for a protective order rests upon the Cosbys. *See Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988). Yet the Court cannot find good cause for a protective order, without even knowing the content of the order that the Cosbys are requesting. *See McGuire v. Ryland Group, Inc.*, Case No. 6:05-cv-1421, 2006 U.S. Dist. LEXIS 86647 (M.D. Fla. Nov. 9, 2006) (rejecting jointly requested protective order, for vagueness);

*MRS Invs. v. Meridian Sports, Inc.*, Cause No. IP 99-1954, 2002 U.S. Dist. LEXIS 1933 (S.D. Ind. Feb. 6, 2002) (same).

It is the Cosbys, not the Plaintiffs, who know the full extent of Mrs. Cosby's information relevant to this case.  It is also the Cosbys, not the Plaintiffs, who know what particular testimony would be highly sensitive or (supposedly) undiscoverable.  Yet at the close of their Memo. on page 9, the Cosbys do no more than vaguely propose that the Court should "limit[] the scope of [Mrs. Cosby's] subpoena," without further explanation.  This is not a concrete proposal to do anything at all.  The Court has nothing to measure against the good cause standard.

The Cosbys chose not to propose a protective order with any specificity.  Simply put, that means they are not entitled to one.

                Respectfully submitted,

                */s/ Joseph Cammarata*
                Joseph Cammarata, Esquire
                Ira Sherman, Esquire
                Matthew W. Tievsky, Esquire
                **CHAIKIN, SHERMAN, CAMMARATA &**
                  **SIEGEL, P.C.**
                The Law Building
                1232 Seventeenth Street, N.W.
                Washington, D.C. 20036
                Ofc: (202) 659-8600
                Fax: (202) 659-8680
                E-mail: joe@dc-law.net
                Attorneys for All Plaintiffs

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of December, 2015, a copy of the foregoing Plaintiffs' Opposition to the Cosbys' Motion to Quash Camille Cosby's Deposition Subpoena or, in the Alternative, for a Protective Order, was served by CM/ECF upon:

> John J. Egan
> Egan, Flanagan & Cohen, PC
> 67 Market Street
> P.O. Box 9035
> Springfield, MA 01102
>
> Christopher Tayback
> Marshall M. Searcy, III
> Quinn Emanuel Urquhart & Sullivan, LLP
> 865 South Figueroa
> 10th Floor
> Los Angeles, CA 90017
>
> Monique D. Pressley
> The Pressley Firm
> 1629 K Street NW
> Suite 300
> Washington, D.C. 20036

> > */s/ Joseph Cammarata*
> > Joseph Cammarata, Esquire