# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**TAMARA GREEN, THERESE
SERIGNESE, LINDA TRAITZ,
LOUISA MORITZ, BARBARA
BOWMAN, JOAN TARSHIS, and
ANGELA LESLIE,**

      **Plaintiffs,**

      **V.**                                                                    CIVIL ACTION
                                                                                NO. 14-30211-MGM

**WILLIAM H. COSBY, JR.,**

      **Defendant**.

## <u>ORDER</u>

### December 31, 2015

**Hennessy, M.J.**

      Currently pending before the court is a motion brought by Camille Cosby ("Mrs.

Cosby"), wife of defendant William H. Cosby, Jr. ("defendant"), seeking to quash Mrs. Cosby's

deposition subpoena, or in the alternative, for a protective order (Docket # 127).  The motion

relates to a subpoena dated December 9, 2015 directing Mrs. Cosby to testify at a deposition on

January 6, 2016 in connection with the claims brought by the plaintiffs herein (<u>see</u> Docket # 128-

2).  Plaintiffs submitted an opposition on December 21, 2015 (<u>see</u> Docket # 130), and Mrs.

Cosby filed a reply on December 30, 2015 (<u>see</u> Docket # 141).  For the reasons set forth below,

Mrs. Cosby's motion is denied in its entirety.

      <u>Factual and Procedural Background</u>

      This matter was initiated with the filing of plaintiff Tamara Green's complaint on

December 10, 2014 (Docket # 1).[1]  Since that time, six more individuals have been named as plaintiffs, and several amended complaints have been filed.  Most recently, on November 13, 2015, the seven plaintiffs named herein filed the Third Amended Complaint ("TAC") (Docket # 109).  The TAC alleges that defendant drugged and/or sexually assaulted each of the plaintiffs at various times between 1969 and 1992 (see id. at ¶¶ 11-27, 43-53, 58-64, 69-74, 79-83, 90-104, 109-16).  Per the TAC, in or around February 2005 and again in February 2014, plaintiff Green publically disclosed defendant's alleged assault.  Id. at ¶¶ 28, 30.  Plaintiffs allege that in response to both statements, defendant "directly, and vicariously by and through his actual and/or apparent authorized representative[s], [lawyer, agent,] servant[s], and/or employee[s]" issued his own public statements denying the allegations.  Id. at ¶¶ 29, 32.  They further state that Green's accusations resurfaced in the media in late 2014, around the same time that the other six plaintiffs made public statements concerning the allegations described above.  See id. at ¶¶ 33, 54, 65, 75, 84-86, 105, 117.  Defendant allegedly responded by issuing, through individuals speaking on his behalf, a series of statements once again denying the accusations.  See id. at ¶¶ 34, 36, 37, 40, 57.

Defendant's responsive statements are the predicate for the instant lawsuit.  Plaintiffs claim that their original accusations were accurate and as such that defendant's statements denying the accusations were false and defamatory.  To this end, the TAC brings a total of twenty-eight claims sounding in defamation, invasion of privacy (false light), and intentional infliction of emotional distress.  On December 14, 2015, defendant submitted his Answer to the TAC, which included counterclaims sounding in defamation *per se*, defamation, tortious

---

[1] By order dated April 28, 2015, the Honorable Mark G. Mastroianni referred this case to the undersigned for "[f]ull [p]retrial."  See Docket # 58.

interference, and intentional infliction of emotional distress.  See generally Docket # 121 at pp. 77-88.

Camille Cosby

Camille Cosby is not a party to this action.  Based on the parties' representations, she is defendant's wife of approximately fifty-two years and has served as defendant's business manager.  See Docket # 128 at pp. 2, 6; Docket # 130 at p. 2.  On December 9, 2015, defendant's counsel[2] sent an email to plaintiffs' counsel confirming his authority to accept service of a subpoena on behalf of Mrs. Cosby "with full reservation and without waiver of any of her rights, including filing a motion to quash and/or seeking a protective order."  See Docket # 128-1.  The subpoena, which is dated the same day, directs Mrs. Cosby to appear for a deposition on January 6, 2016.  See Docket # 128-2.

Mrs. Cosby now seeks an order quashing the subpoena, or in the alternative, a protective order limiting its scope.  She argues that Massachusetts's marital disqualification law renders her incompetent to testify in this matter and that even if she could provide admissible testimony, the value of any such information is outweighed by the undue burden that her deposition would effect.  As discussed below, I find no merit in Mrs. Cosby's arguments, and accordingly deny her motion in its entirety.

---

[2] I note that Messrs. Egan and Searcy, counsel for defendant, did not enter notices of appearance on behalf of Mrs. Cosby until December 21, 2015 and December 22, 2015, respectively; roughly two weeks after the email described above and more significantly, several days after the filing of the instant motion. While Local Rule 83.5.2(a) provides that "[t]he filing of an appearance or any other pleading signed on behalf of a party constitutes an entry of appearance for that party," the instant motion is not a "pleading," and as such, it technically was filed before Mrs. Cosby's now-attorneys had entered appearances on her behalf.  However, in light of (1) the notices of appearance that shortly followed the filing of this motion; (2) the relationship between Mrs. Cosby and defendant (on whose behalf Messrs. Egan and Searcy have long since entered appearances); (3) Local Rule 83.5.2(a)'s applicability to pleadings; and (4) the fact that plaintiffs have neither been prejudiced by nor raised this issue, this minor procedural consideration will not interfere with my disposition of the instant motion on its merits.

Legal Standard

Fed. R. Civ. P. 45 provides that on a timely motion, a court must modify or quash a

subpoena that, *inter alia*, (1) requires disclosure of privileged or other protected matter, if no

exception or waiver applies; or (2) subjects a person to undue burden.  Fed. R. Civ. P.

45(d)(3)(A)(iii-iv).  "A Rule 45 subpoena must fall within the scope of proper discovery under

Fed. R. Civ. P. 26(b)(1)."  In re New England Compounding Pharmacy, Inc. Products Liab.

Litig., No. MDL 13-2419, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013) (citing Miller v.

Allstate Fire & Cas. Ins. Co., No. 07 Civ. 260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17,

2009)).  This scope is decidedly broad.  As the court in the Compounding Pharmacy litigation

explained,

> Rule 26(b) permits discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense . . . or discovery of
> any information that appears reasonably calculated to lead to the
> discovery of admissible evidence.[3]  Rule 26(b)(1) generally permits
> liberal discovery of relevant information.  As the Supreme Court has
> instructed, because discovery itself is designed to help define and
> clarify the issues, the limits set forth in Rule 26 must be construed
> broadly to encompass any matter that bears on, or that reasonably
> could lead to other matters that could bear on, any issue that is or
> may be in the case.

---

[3] I note that this portion of Rule 26(b) was amended on December 1, 2015.  The current version provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Supreme Court has ordered that "the revised rules 'shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending.'"  Wertz v. GEA Heat Exchangers Inc., No. 14 Civ. 1991, 2015 WL 8959408, at *2 n.1 (M.D. Pa. Dec. 16, 2015) (quoting Letter of Transmittal to Congress, April 29, 2015).

Id. (quoting, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)) (internal

citations and quotation marks omitted); see also Cherkaoui v. City of Quincy, No. 14 Civ. 10571,

2015 WL 4504937, at *1 (D. Mass. July 23, 2015) ("As a general matter, relevancy must be

broadly construed at the discovery stage such that information is discoverable if there is any

possibility it might be relevant to the subject matter of the action.") (quoting E.E.O.C. v. Electro-

Term, Inc., 167 F.R.D. 344, 346 (D. Mass. 1996)).  To this end, it is "very unusual for a court to

prohibit the taking of a deposition altogether."  E.E.O.C. v. Freudenberg-NOK Gen. P'ship, No.

07 Civ. 406, 2009 WL 909571, at *3 (D.N.H. Apr. 3, 2009) (quoting Iris Corp. Berhad v. U.S.,

84 Fed. Cl. 489, 494 (2008)); see also B. Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters, 285

F.R.D. 185, 186 (D.P.R. 2012) ("[A] party seeking to quash a deposition in its entirety must

show 'extraordinary' or 'exceptional' circumstances.") (citing Prozina Shipping Co., Ltd. v.

Thirty–Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998)).

Discussion

Marital Disqualification

Mrs. Cosby's first argument proceeds on privilege grounds, citing Massachusetts's

marital disqualification law,[4] which provides that "[i]n any proceeding, civil or criminal, a

witness shall not testify as to private conversations with a spouse occurring during their

marriage."  MA R. Evid. § 504.[5]  She contends that because she lacks any first-hand knowledge

concerning the events at issue in the TAC, any potentially relevant information would be derived

---

[4] "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  Accordingly, Massachusetts's privilege law applies here.

[5] Although Mrs. Cosby's brief cites to M.G.L. c. 233 § 20, which discusses, inter alia, the prohibition on spouses testifying as to private conversations, the quoted clause does not appear there.  Instead, it appears in MA R. Evid. § 504, which "is derived from G. L. c. 233, § 20, First."  See Note to MA R. Evid. § 504.

from her confidential marital communications with Defendant; as such, she submits that she is

incompetent to offer admissible testimony.  See generally Docket # 128 at pp. 4-5.

I find no merit in Mrs. Cosby's argument.  As she concedes, the marital disqualification

rule "is one of disqualification and not of privilege," and therefore concerns a party's competence

to testify.  See Com. v. Azar, 32 Mass. App. Ct. 290, 304 (1992).  It is settled that "[t]he mere

fact that a party may not be mentally competent to testify is not a sufficient reason to prohibit the

other party from taking his deposition."  Dang ex rel. Dang v. Eslinger, No. 14 Civ. 37, 2014 WL

3611324, at *2 (M.D. Fla. July 22, 2014) (citing cases).  This is due, at least in part, to the fact

that even though an incompetent witness's testimony "might not be admissible at trial, his

deposition could lead to admissible evidence."  See Fjellman v. Forest Hill Co-op., No. 06 Civ.

14470, 2007 WL 1806173, at *3 (E.D. Mich. June 21, 2007); see also Bucher v. Richardson

Hosp. Auth., 160 F.R.D. 88, 93 (N.D. Tex. 1994) ("[P]laintiff is not entitled to quash the

deposition merely because J.B. may be incompetent to testify at trial.  The right to depose a

witness and the right to use that testimony in court are separate and distinct.") (citing United

States v. International Business Machines Corp., 90 F.R.D. 377, 381 n.7 (S.D.N.Y. 1981)).[6]

Although Mrs. Cosby is correct that "the rule does not distinguish between testimony in

deposition and testimony at trial," see Docket #141 at p. 2 (internal quotation marks omitted), the

rule's underlying character—*i.e.* competence, not privilege—concerns admissibility of evidence

at trial, and not a privilege against discovery.  To this end, both of the cases Mrs. Cosby cites as

support relate to the admissibility of testimony *at trial*.  See Azar, 32 Mass. App. Ct. at 303-04

(discussing argument that trial judge erred in excluding conversations between defendant and his

---

[6] Indeed, Fed. R. Civ. P. 26(b)(1) provides that information "need not be admissible in evidence to be
discoverable."

wife); Gallagher v. Goldstein, 402 Mass. 457, 458-59 (1988) (same).  She has offered no authority suggesting, let alone establishing, that the spousal disqualification rule may foreclose her deposition.[7]  Accordingly, I reject Mrs. Cosby's first argument in support of quashing her subpoena.

Undue Burden

Mrs. Cosby next argues that the subpoena should be quashed in light of the requirement that a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  See Fed. R. Civ. P. 45(d)(1).  The rule similarly provides that on a timely motion, the court must quash or modify a subpoena that, *inter alia*, "subjects a person to undue burden."  See Fed. R. Civ. P. 45(d)(3)(A)(iv).  Noting that she is a non-party and therefore, that the concern for the "unwanted burden thrust upon [her] is a factor entitled to special weight," see Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) (citing cases), Mrs. Cosby primarily contends that the value of any potentially admissible information is outweighed by the public interest in protecting marital communications.  See Docket #128 at pp. 5-6.[8]  Again, I disagree.

---

[7] Additionally, even if the marital disqualification rule did apply here, its various exceptions would render improper a wholesale denial of plaintiffs' right to depose Mrs. Cosby.  Excepted from the rule, for example, are situations involving joint criminal activity see, e.g, Com. v. Walker, 438 Mass. 246, 254 n.4 (2002) (citing cases), written communications, see, e.g., Com. v. Szczuka, 391 Mass. 666, 678 n.14 (1984) (citing authorities), and conversations during which third parties are present.  See, e.g., Com. v. Perez, 460 Mass. 683, 698 (2011) (citing cases).  Accordingly, even if the rule would apply here (which, as discussed, it does not), its maximum possible impact would be an exclusion of information falling outside its exceptions.  Particularly in light of the general aversion toward precluding depositions, the rule would not justify quashing Mrs. Cosby's subpoena.

[8] Mrs. Cosby also alludes to the burden of being forced to "parse over fifty years of conversations with her husband into protected communication versus underlying fact" see Docket #128 at p. 8 and plaintiffs' counsel's communications with the press, which she contends "makes clear that they intend to publicize every lurid detail of every question they intend to ask Mrs. Cosby."  See Docket # 141 at p. 3.  She does not, however, explain why these purported burdens—which presumably exist, respectively, in any action involving events occurring over an extended period of time and any action involving a public figure— outweigh the potential evidentiary benefits of her deposition.

In examining motions to quash or for a protective order, "courts weigh the need of the party seeking discovery against any undue hardships created by permitting it." In re Methyl Tertiary, 269 F.R.D. 360, 363-64 (S.D.N.Y.2010). "To that end, we consider issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed when analyzing whether a subpoena places an undue burden on a nonparty." Linsday v. C.R. Bard, Inc., No. 10 MC 441, 2011 WL 240104, at *1 (M.D. Pa. Jan. 24, 2011) (citing Grider v. Keystone Health Plan Central, Inc., No. 05 MC 40, 2005 WL 2030456 (M.D. Pa. July 28, 2005)). Most significantly for present purposes, "[t]he party resisting discovery bears the burden of showing that the subpoena imposes an undue burden, and it 'cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.'" Compounding Pharmacy, 2013 WL 6058483, at *6 (quoting Sterling Merchandising, Inc. v. Nestle, S.A., No. 06 Civ. 1015, 2008 WL 1767092, at *2 (D.P.R. Apr. 15, 2008)); see also Rockstar Consortium US LP, No. 14 Civ. 91322, 2015 WL 5972422, at *5 (D. Mass. Oct. 14, 2015) (quoting Compounding Pharmacy); Biological Processors of Alabama, Inc. v. N. Georgia Envtl. Servs., Inc., No. 09 Civ. 3673, 2009 WL 1663102, at *1 (E.D. La. June 11, 2009) ("When the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity . . . ."), modified on reconsideration, No. 09-3673, 2009 WL 2160984 (E.D. La. July 15, 2009).

Initially, as a procedural matter, Mrs. Cosby has not submitted an affidavit or any other evidence demonstrating her purported burden, a shortcoming which some courts have deemed fatal to a grant of the relief sought herein. See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (internally citing 9 James Wm. Moore

et al., Moore's Federal Practice ¶ 45.51[4] (3d ed. 2009) that "[a] party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request" and denying motion to quash in the absence of an affidavit to this effect).  This alone may suffice to deny Mrs. Cosby's "undue burden" argument.

However, setting aside this omission, Mrs. Cosby's argument nonetheless fails as a substantive matter.  It proceeds by highlighting considerations which, according to her, fall short of justifying her appearance at a deposition.  Specifically, she states that neither her role as defendant's business manager nor her December 15, 2014 statement in support of her husband— both of which, according to Mrs. Cosby, have been offered by plaintiffs as "reasons why they should take Mrs. Cosby's deposition, see Docket #128 at p. 1—warrants her appearance.  This argument, which is not supported by citation to any authority, rests upon a misapprehension of the applicable standard.  As noted, it is beyond dispute that Mrs. Cosby bears the burden of demonstrating an undue burden that justifies quashing her subpoena.  By asserting that her role as defendant's business manager has "no bearing on any damages Plaintiffs' claim to have suffered" and that "nothing in the [December 15, 2014] statement claims to have any special insight into the claims at issue before this Court," see Docket #128 at pp. 6-7, she has impliedly sought to shift this burden to plaintiffs, asking them to justify her deposition.  Therefore, these assertions, even if true, would be of no moment, since it is not plaintiffs' burden to establish why the subpoena should not be quashed; instead, it is Mrs. Cosby's burden to show why it should. See supra.

Mrs. Cosby has made no such showing.  As noted, she argues that her subpoena threatens "the strong public interest in encouraging the protection of marital communications" and

mentions in passing "the shame and embarrassment of responding to questions about [defendant's] alleged infidelities and sexual misconduct."  See Docket #128 at pp. 5-6, 8.  While these are not unimportant considerations, they do not outweigh the potential significance of Mrs. Cosby's testimony, nor has Mrs. Cosby provided any authority that they do.  To the contrary, the combination of (1) the allegations underlying this matter, which implicate, *inter alia*, defendant's sexual history and his attempts to conceal his actions from the public; and (2) Mrs. Cosby's dual role as defendant's wife and business manager, render it at least plausible that Mrs. Cosby is in possession of information that "is relevant to any party's claim or defense and proportional to the needs of the case."  See Fed. R. Civ. P. 26(b)(1).  This more than suffices to outweigh any purported burden that will be imposed upon her by dint of her having to testify.

Mrs. Cosby's related contention, that "any knowledge she may have about the allegations of the TAC would have come through Defendant" which would be inadmissible and cumulative of defendant's deposition, and therefore that "[p]laintiffs will obtain nothing of additional relevance or value by forcing Mrs. Cosby to testify," is incorrect.  First, because, as discussed above, the marital disqualification law does not apply here, there is nothing precluding her *deposition* as a tool to discover information gleaned from conversations between Mrs. Cosby and the defendant.  Additionally, because discovery is barely underway, there is simply no way (outside of counsel's unsworn and unsupported assertions) to conclude—as Mrs. Cosby wishes this court to do—that the information elicited from Mrs. Cosby will, in all respects, mirror that provided by the defendant.  Indeed, defendant himself is yet to testify; as such, this argument presupposes not only defendant's own testimony as well as that of Mrs. Cosby, but that the two will be entirely consistent, rendering the latter unnecessary.

Mrs. Cosby does not point to a single case where, as here, no deposition testimony has been taken, and a court nevertheless quashed a subpoena on the ground that discovery would be cumulative.  Instead, she cites one case, <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 244 F.3d 189 (1st Cir. 2001), that serves to highlight the flaw in her argument.  In <u>Ameristar</u>, the First Circuit upheld an order quashing subpoenas for the testimony of three employees of GEAE, a non-party.  <u>See id.</u> at 193.  Significantly, though, those subpoenas followed the depositions of two GEAE employees, and the party seeking the additional depositions "did not articulate any dissatisfaction with the testimony it received."  <u>Id.</u>  Because that party "had an opportunity to question GEAE representatives and did so in March, 1999" and "has not shown that the information sought from [the new deponents] would be anything but cumulative or duplicative," the court held that "it would be an 'undue burden' on GEAE, a non-party, to permit such a 'fishing expedition.'"  <u>Id.</u>  Of course, the same does not hold true here, where (1) Mrs. Cosby and defendant are not employees of the same company; and (2) plaintiffs have not yet taken any testimony of which Mrs. Cosby's might be cumulative or duplicative.

Finally, a recent decision from the Northern District of Georgia, <u>Gaylor v. Georgia Dep't of Nat. Res.</u>, No. 11 Civ. 288, 2014 WL 4215575 (N.D. Ga. Aug. 25, 2014), is instructive.  In <u>Gaylor</u>, the defendant served a deposition subpoena on the plaintiff's wife, a non-party, who moved to strike, *inter alia*, on the grounds that "any potentially relevant information she could provide is available from a more convenient and less burdensome source, namely, Plaintiff himself" and that "her deposition would be unlikely to produce relevant non-cumulative information because the federal common law marital confidential communications privilege would prevent her from testifying about any confidential conversations she had with Plaintiff."  <u>See id.</u> at *7.  The court disagreed, writing in language equally applicable here that the non-party

"failed to show that her deposition testimony would be unreasonably cumulative or duplicative or that sitting for a deposition would impose an undue burden.  Even assuming the marital communications privilege applies in this case, Mrs. Gaylor may have knowledge of relevant information that is not subject to the privilege."  See id.; see also footnote 7, *supra*.  Finding the Gaylor court's reasoning to apply here, and in the absence of any persuasive authority to the contrary, I reject Mrs. Cosby's argument that her subpoena should be quashed on the grounds that it presents an undue burden.

Protective Order

In the alternative, Mrs. Cosby has requested that the court issue a protective order in connection with her deposition.  Her motion papers do not, however, specify the scope of her requested protection, writing only that the court should "protect Mrs. Cosby from unnecessary harassment by limiting the scope of her subpoena."  In her reply, she requests (for the first time) that the court enter a protective order *staying* her deposition "at least until the parties and Defendant's purported spokespeople have been deposed."  See Docket #141 at p. 5.  Neither at the November 30, 2015 scheduling conference nor in her original moving papers did Mrs. Cosby raise the issue of these depositions preceding hers, and in any event, I am not persuaded that such relief is warranted.  Accordingly, Mrs. Cosby's request for a protective order is denied.

## CONCLUSION

For the reasons set forth herein, Mrs. Cosby's motion seeking to quash her deposition subpoena, or in the alternative, for a protective order (Docket # 127) is denied in its entirety.

*/s/ David H. Hennessy*
David H. Hennessy
United States Magistrate Judge