UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TAMARA GREEN, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 14-30211-MGM |
| | * | |
| v. | * | |
| | * | |
| | * | |
| WILLIAM H. COSBY, JR. | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING CAMILLE COSBY'S
OBJECTIONS TO MAGISTRATE JUDGE'S RULING
ON HER MOTION TO QUASH DEPOSITION SUBPOENA,
OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER
(Dkt. No. 175)[1]

February 11, 2016

MASTROIANNI, U.S.D.J.

I.   INTRODUCTION

In this action, Plaintiffs assert defamation, invasion of privacy (false light), and intentional infliction of emotional distress claims against Defendant. Plaintiffs' claims stem from statements issued on behalf of Defendant in response to public allegations made by Plaintiffs in which they accused Defendant of sexual misconduct.[2] Following this court's denial of Defendant's motion to dismiss, Plaintiffs sought to depose Defendant's wife, Camille Cosby ("Deponent" or "Mrs.

---

[1] On February 9, 2016, Defendant filed a Motion to Stay this Action during the Pendency of his Criminal Suit, in light of pending criminal charges brought against Defendant on December 30, 2015 in Pennsylvania. (Dkt. 185.) Accordingly, this memorandum and order should in no way be interpreted as suggesting how the court may decide Defendant's recently-filed motion to stay; that will be addressed on its own merits in due course.

[2] On December 14, 2015, Defendant filed counterclaims against Plaintiffs for defamation *per se*, defamation, tortious interference, and intentional infliction of emotional distress. (Dkt. No. 121.)

Cosby"), who is not a party to this action. In response, Deponent filed a motion to quash the deposition subpoena or, in the alternative, for a protective order limiting the scope of the testimony. Deponent argued that the Massachusetts marital disqualification rule, Mass. Gen. Laws ch. 233, § 20, First,[3] prohibits any relevant testimony she could offer, and, even if she could provide admissible testimony, its value is outweighed by the undue burden of forcing her to be deposed.

On December 31, 2015, Magistrate Judge David H. Hennessy denied Deponent's motion. *Green v. Cosby*, 2015 WL 9594287 (D. Mass. Dec. 31, 2015). Judge Hennessy concluded that the marital disqualification rule applies only to trial testimony and not to deposition testimony. *Id.* at *3. He also found that Deponent failed to demonstrate an undue burden or that she was entitled to a protective order, even if the marital disqualification rule *did* apply in these circumstances. *Id.* at *3 n.7, *4-6. Thereafter, Judge Hennessy granted Deponent's emergency motion to stay her deposition, which was scheduled for January 6, 2016, so that she could appeal the December 31, 2015 ruling to this court. *Green v. Cosby*, 2016 WL 64211 (D. Mass. Jan. 5, 2016). On January 14, 2016, Deponent filed a timely objection to Judge Hennessy's ruling, to which Plaintiffs have responded; Deponent also filed a reply brief on February 1, 2016. (Dkt. Nos. 175, 182, 184.)

II. STANDARD OF REVIEW

A district judge may reconsider a non-dispositive pretrial ruling of a magistrate judge, on a timely objection, only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly

---

[3] Consistent with Massachusetts courts, throughout this decision the court cites the separate provisions in section 20 with reference to whether they are contained in the "First," "Second," "Third," or "Fourth" paragraph of the statute. For example, the marital disqualification, which is contained in the first paragraph, is cited as "Mass. Gen. Laws ch. 233, § 20, *First*."

2

erroneous or is contrary to law."). Under the "clearly erroneous" prong, the court will accept the magistrate judge's "findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the court] 'form[s] a strong, unyielding belief that a mistake has been made.'" *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (quoting *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)). Under the "contrary to law" prong, the court reviews pure questions of law *de novo. PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010). "Mixed questions of law and fact 'invoke a sliding standard of review,' with 'more fact intensive . . . question[s]' receiving 'more deferential . . . review' and 'more law intensive . . . question[s]' receiving less deference." *Neelon v. Krueger*, 2015 WL 1037992, at *2 (D. Mass. Mar. 10, 2015) (quoting *In re IDC Clambakes, Inc.*, 727 F.3d 58, 64 (1st Cir. 2013)). "A respect for this standard is important, given the pivotal role that magistrate judges play in overseeing the conduct of the sort of complex pretrial discovery typified by this case." *Gargiulo v. Baystate Health Inc.*, 279 F.R.D. 62, 64 (D. Mass. 2012).

III. ANALYSIS

The Massachusetts marital disqualification rule generally prohibits a spouse from testifying as to private conversations with the other spouse. *See* Mass. Gen. Laws ch. 233, § 20, First.[4] The central issue in this appeal is the scope of this rule—specifically, whether it applies to deposition testimony. In a thoughtful decision, Judge Hennessy concluded that it did not. He reasoned that "the rule's underlying character—*i.e.*, competence, not privilege—concerns admissibility of evidence at trial,

---

[4] The parties agree that Massachusetts law applies in this instance. *See* Fed. R. Evid. 501, 601. Although the parties do not agree on whether Rule 501, which addresses privileges, or Rule 601, which addresses competence, controls, it "make[s] little difference" because both rules direct the court to apply state law. 25 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5572; *see also* 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5423 n.60. The court, for its part, agrees with Judge Hennessy, *Green*, 2015 WL 9594287, at *3 n.4, that Rule 501 governs. *See* Edward J. Imwinkelried, *The New Wigmore: Evidentiary Privileges* § 10.2.2. As discussed below, in these circumstances the marital disqualification rule functions more as a "privilege" within the meaning of Rule 501. 1 McCormick on Evidence § 66 (7th ed.); 27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6003.

3

and not a privilege against discovery." *Green*, 2015 WL 9594287, at *3. Therefore, Judge Hennessy concluded, "there is nothing precluding [Mrs. Cosby's] *deposition* as a tool to discover information gleaned from conversations between Mrs. Cosby and the defendant." *Id.* at * 5. This is a difficult issue, as there is very little authority directly on the subject. Still, because it presents a purely legal question, the court must utilize a *de novo* standard of review. In doing so, the court concludes that the marital disqualification rule *does* apply to deposition testimony. Therefore, the court will modify the December 31, 2015 order in the following manner: Deponent, when appropriate, may refuse to answer deposition questions which call for testimony prohibited by the rule and not falling within an exception. Nevertheless, applying the clearly erroneous standard to the remainder of Judge Hennessy's order, the court will not modify it in any other respect. In particular, the court will not quash the deposition subpoena and will not issue a formal protective order.

A.  Whether the Massachusetts Marital Disqualification Rule Applies to Depositions

Plaintiffs argue, and Judge Hennessy concluded, the marital disqualification rule does not apply to deposition testimony because it is a rule of competency and not a privilege. That reasoning is understandable, given certain language used by Massachusetts courts to describe the rule. *See*, *e.g.*, *Gallagher v. Goldstein*, 524 N.E.2d 53, 55 (Mass. 1988) ("We have consistently ruled that the statute renders spouses incompetent to testify as to the contents of their private conversations with their marital partners."). Generally, competency matters, such as age or mental health issues, do not provide grounds for resisting discovery, including a refusal to answer deposition questions but, rather, may be a bar to calling the person as a witness at an actual trial-type hearing. However, the court agrees with Deponent that Plaintiffs' and Judge Hennessy's rationale incorrectly conflates *mental* competency with absolute testimonial disqualification. The history and purpose of the marital disqualification rule demonstrate that, although it is sometimes termed an "incompetency," the rule has nothing to do with general competence issues.

As the Supreme Court has explained, the marital disqualification rule has "ancient" common law roots, surfacing as early as 1628. *Trammel v. United States*, 445 U.S. 40, 43-44 (1980). The common law rule barred not just testimony as to private conversations, but all testimony by a spouse either for or against the other spouse, even if both spouses desired the testimony. *See Hawkins v. United States*, 358 U.S. 74, 76 (1958). The rule's original justifications were based on long-since abandoned concepts of "incompetence," also referred to as "disqualification" or "disability," due to personal interest: "first, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one." *Trammel*, 445 U.S. at 44. Additional justifications included "a desire to foster peace in the family and . . . a general unwillingness to use testimony of witnesses tempted by strong self-interest to testify falsely." *Hawkins*, 358 U.S. at 75. The Supreme Judicial Court has noted similar justifications:

> Wigmore lists five historical and policy reasons on which the rule rests: (1) the husband and wife were considered one entity at common law; (2) a marital couple has only one interest, and thus nothing could be gained by allowing a spouse to testify for or against the other; (3) a spouse has a 'bias of affection' and would not testify truthfully; (4) allowing testimony might disturb marital peace; and (5) if a wife is a witness for her husband, she 'must be subjected to a cross-examination which might call for truths unfavorable to his cause' and result in marital disharmony. . . . Another policy reason often stated is the desire to preserve the confidentiality of marital conversations.

*Gallagher*, 524 N.E.2d at 54-55 (quoting 2 J. Wigmore, Evidence § 601 (Chadbourn rev. ed. 1979)); *see also Commonwealth v. Sugrue*, 607 N.E.2d 1045, 1048 (Mass. App. Ct. 1993).

Over time, the old rules disqualifying witnesses based on personal interest were abolished "in accordance with the modern trend which permitted interested witnesses to testify and left if for the jury to assess their credibility." *Hawkins*, 358 U.S. at 76. As a result, most states and the federal courts similarly abandoned the broad marital disqualification rules and permitted spouses to testify for the other spouse. *See Funk v. United States*, 290 U.S. 371, 380-81 (1933). Because the justification of "fostering the harmony and sanctity of the marriage relationship" remained, however, the

common law rule largely transformed into one in which a "spouse could prevent the other from giving adverse testimony," or the witness-spouse could decline to testify against the other spouse. *Trammel*, 445 U.S. at 44, 53. "The rule thus evolved into one of privilege rather than one of absolute disqualification." *Id.* at 44. Importantly, by statute, Massachusetts retained the absolute disqualification, but limited it to testimony regarding private marital conversations. *See Gallagher*, 524 N.E.2d at 54-55.

Accordingly, the fact that the Massachusetts statutory marital disqualification rule remains one of disqualification, or "incompetency," and not a privilege means that it is *more* restrictive, not less. *See Commonwealth v. Gillis*, 263 N.E.2d 437, 439 (Mass. 1970) ("Section 20 has been treated as creating a disqualification of both spouses to testify to private conversations *and not merely a privilege* which must be appropriately claimed and may be waived." (emphasis added)). Moreover, in light of its historical derivation, this disqualification concept is not really comparable to *mental* competency, which involves questions of fact regarding a witness's ability and capacity to observe, remember, comprehend, and communicate, *see Demoulas v. Demoulas*, 703 N.E.2d 1149, 1159 (Mass. 1998); rather, disqualification constitutes an absolute bar to testifying as a matter of law. *See Gallagher*, 524 N.E.2d at 55 ("In this historical context, the statutory disqualification as to evidence of private conversations between spouses may be viewed as a statutory preservation of a remnant of an outdated common law concept."); *cf.* Editors' Notes, Mass. G. Evid. § 601(a) ("A person otherwise competent to be a witness may still be disqualified from testifying."). Judge Hennessy reasoned that "[t]he mere fact that a party may not be mentally competent to testify is not a sufficient reason to prohibit the other party from taking his deposition." *Green*, 2015 WL 9594287, at *3 (quoting *Dang ex rel. Dang v. Eslinger*, 2014 WL 3611324, at *2 (M.D.Fla. July 22, 2014)). However, this issue highlights the problem resulting from the legal-analytical fusion over time of two principals (competency and disqualification). The words can generally operate under an often interchangeable

meaning but, in certain circumstances, the distinct difference in meaning and application become evident. This case presents circumstances where application of a mental competency analysis to a marital disqualification situation was flawed.

Having determined the character of the disqualification rule—as a broad rule of "incompetency," or absolute disqualification—is not a basis for concluding it does not apply to depositions, the court turns to the plain language of the statute. The disqualification statute provides in relevant part: "Any person of sufficient understanding, although a party, may testify in any proceeding, civil or criminal, in court or before a person who has authority to receive evidence, except as follows: First . . . neither husband nor wife shall testify as to private conversations with the other." Mass. Gen. Laws. ch. 233, § 20, First; *see also* Mass. G. Evid. § 504(b). By its terms, this disqualification rule is not limited to trial testimony but, rather, discusses the act of testifying in general. This is in stark contrast to the other three paragraphs in the statute, which set forth certain privileges and are all limited to specific types of proceedings. Mass. Gen. Laws. ch. 233, § 20; *see In re Grand Jury Subpoena*, 849 N.E.2d 787, 802 (Mass. 2006) ("When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute." (quoting *Commonwealth v. Galvin*, 446 N.E.2d 391, 393 (Mass. 1983)). For example, the second paragraph provides in relevant part that "neither husband nor wife shall be compelled to testify in the *trial* of an indictment, complaint or other criminal proceeding against the other." Mass. Gen. Laws ch. 233, § 20, Second (emphasis added); *see In re Grand Jury Subpoena*, 849 N.E.2d at 800-01 (holding that the term "trial" qualifies the phrase "other criminal proceeding" and thus the privilege does not apply to grand jury proceedings); *see also* Mass. Gen. Laws. ch. 233, § 20, Third ("The defendant in the *trial* of an indictment, complaint or other criminal proceeding shall, at his own request, but not otherwise, be allowed to testify . . . . (emphasis added)); Mass. Gen Laws. ch. 233, § 20, Fourth ("An unemancipated, minor child, living with a parent, shall not testify *before a grand jury,*

7

*trial of an indictment, complaint or other criminal proceeding*, against said parent, where the victim in such proceeding is not a member of said parent's family and who does not reside in the said parent's household." (emphasis added)). Accordingly, the specific language used by the statute does not clearly limit the marital disqualification rule to trial testimony only.

Moreover, the introductory clause of the statute ("[a]ny person . . . may testify in any proceeding, civil or criminal, in court or before a person who has authority to receive evidence, except as follows"), is, in the court's view, broad enough to include depositions. In particular, the court does not find the statute's use of the phrase "person who has authority to receive evidence" effectively makes the marital disqualification only applicable to an actual trial in court or a proceeding in a comparable setting. Rather, a "person who has authority to receive evidence" encompasses the "officer" or other person appointed by the court, or agreed-to by the parties, who is authorized by the Federal Rules of Civil Procedure to administer oaths and take testimony—*i.e.*, "receive evidence"—at a deposition. *See* Fed. R. Civ. P. 28(a), 30(b)(5); *see also Duncan v. Husted*, 2015 WL 1540550, at *1 (S.D. Ohio Apr. 7, 2015) ("Under Rules 28 and 30, the notary—that is, the 'officer' who is authorized to administer oaths and take testimony—is the person before whom the deposition is to be taken, and that officer's duties include recording the deposition by an acceptable means (including audio recording) and, if the deposition is to be taken by non-stenographic means, placing certain information on the record at the beginning of each unit of recording."). Any other interpretation of the language would be so excessively narrow as to disregard the meaning of the statute as conveyed by the specific manner of its writing.

The Supreme Judicial Court has explained that the word "proceeding" in the disqualification statute should be given a broad construction, unless the surrounding language indicates otherwise. *See Commonwealth v. Burnham*, 887 N.E.2d 222, 226-27 (Mass. 2008) ("Whenever the Legislature chose to limit the meaning of 'proceeding' in § 20, it did so with a modifier, such as the word 'criminal,' or

by identifying specific types of proceedings, including, for example, a 'prosecution begun under [G.L. c. 273, §§ 1-10]'; a violation of G.L. c. 208, § 18; and a 'grand jury' proceeding."). In this regard, depositions are commonly referred to as a type of judicial or quasi-judicial proceeding, or as a facet within the overall "proceeding" (as that term is used in the more general sense). *See Cholfin v. Gordon*, 1995 WL 809916, at *9 (Mass. Super. Mar. 22, 1995) ("A deposition is an extension of a judicial proceeding."); *Godfrey v. Inverson*, 2007 WL 1748706, at *1 (D.D.C. June 15, 2007) ("[W]itnesses who appear before a court or for some other judicial proceeding—such as a deposition—are immune from service of process . . . ." (quoting James Wm. Moore, *et al.*, *Moore's Federal Practice-Civil* § 4.59[2] (3d ed. 1998)); *Loven v. Romanowski*, 2005 WL 2931996, at *2 (W.D. Va. Nov. 4, 2005) (referring to a deposition as "a judicial proceeding"); *Nichols v. Sincell*, 2005 WL 1140720, at *3 (E.D. Ky. May 12, 2005) (same); *United States v. Byard*, 29 M.J. 803, 809-10 (A.C.M.R. 1989) ("Under the Federal Rules of Civil Procedure, a deposition is an authorized pretrial discovery mechanism subject to judicial supervision, and, in final analysis, part of the judicial process."); Black's Law Dictionary (defining "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment," and stating "[a]s applied to actions, the term 'proceeding' may include . . . the taking of testimony before trial" (internal quotation marks omitted)).

Plaintiffs argue that only their interpretation of section 20 "is in harmony with the Massachusetts Rules of Civil Procedure." (Pls.' Opp'n at 12 (citing *Boston Seaman's Friend Soc., Inc. v. Attorney Gen.*, 398 N.E.2d 721, 722 (Mass. 1980) ("The statute and the rule should be read with the aim of finding consistency rather than conflict.").) However, the court's interpretation of the statute is supported by Rule 30(c) of the Massachusetts Rules of Domestic Relations Procedure and, by extension, the standard Massachusetts Rules of Civil Procedure. That rule states in relevant part that "[c]ounsel for a witness or a party may not instruct a deponent not to answer except where

9

necessary to assert or preserve a privilege, *a disqualification pursuant to G.L. c. 233, § 20*, or protection against disclosure." Mass. R. Dom. Rel. P. 30(c) (emphasis added). The Reporter's Notes explain:

> Under Mass. R. Civ. P. 30(c), it would appear that counsel could instruct a deponent not to answer a question that comes within the disqualification of G.L. c. 233, § 20, since the latter would constitute a 'protection against disclosure.' However, in light of the frequency in which this issue occurs in domestic relations cases, it was deemed advisable to add [to] the Domestic Relations Rules a specific reference to this statutory disqualification.

Reporter's Notes, Mass. R. Dom. Rel. P. 30 (2000); *see* Mass. R. Civ. P. 30(c) ("Counsel for a witness or a party may not instruct a deponent not to answer except where necessary to assert or preserve a privilege or *protection against disclosure* . . . ." (emphasis added)). This statement constitutes persuasive authority on how Massachusetts courts, commentators, and rules drafters construe the marital disqualification rule.[5]

Plaintiffs additionally rely on Rule 30(c)(2) of the Federal Rules of Civil Procedure, which states that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." They argue that because the marital disqualification rule is not a privilege but, instead, concerns competence, Rule 30(c)(2) does not permit Deponent to refuse to answer deposition questions on that basis. Again, however, this reasoning conflates the marital disqualification rule with mental competency and fails to recognize that it is broader and more protective than a mere privilege. The Massachusetts rule is an absolute disqualification because testimony regarding private marital conversations is barred even if the testimony were to be favorable and both spouses desire such testimony. *Gallagher*, 524 N.E.2d at 54. In circumstances such as this, where the spouses wish to

---

[5] Additional persuasive authority includes Massachusetts Practice Series and Massachusetts Continuing Legal Education guides, both of which list the marital disqualification rule as grounds for instructing a witness not to answer a deposition question. *See* Honorable Peter M. Lauriat et al., 49 Mass. Prac., Discovery § 8.34 (2014); John S. Legasey, Massachusetts Continuing Legal Education, Inc., Massachusetts Deposition Practice Manual, § 7.3.2(a) (2013); *see also Anderson v. Barrera*, 6 Mass. L. Rptr. 481, 1997 WL 106713 (Mass. Super. 1997) (implying that, if marital disqualification rule applied, witness could refuse to answer questions at deposition).

avoid such testimony, the Massachusetts marital disqualification rule operates in the same manner as a privilege—barring adverse spousal testimony. *See* 1 McCormick on Evidence § 66 (7th ed.); 27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6003. Therefore, as a logically analytical—rather than merely semantical—matter, the court concludes the disqualification rule, under these circumstances, fits within the scope of Rule 30(c)(2).[6]

Considering its specific historical development, applying the disqualification rule to deposition testimony effectively protects marital harmony and the confidentiality of marital communications, which are key policies at the heart of the rule. A spouse's deposition testimony regarding private marital conversations would present a legitimate risk of harm to that marriage. Unlike grand jury proceedings, which occur in secret, deposition testimony may be made public (subject to confidentiality provisions) and the spouse of the testifying witness may be physically present at the deposition. *Cf. In re Grand Jury Subpoena*, 849 N.E.2d at 804 (comparing grand jury testimony and trial testimony in discussing potential damage to the marital relationship). Therefore, it would make little sense, in the absence of a statutory directive to the contrary (of which there is none), that the legislature intended the disqualification rule to apply to trial testimony but not deposition testimony. Accordingly, the court concludes that the Massachusetts marital disqualification rule applies to deposition testimony and that Deponent's counsel, when appropriate, may instruct her not to provide testimony barred by the rule.

B.    <u>Whether the Deposition Subpoena should be Quashed</u>

The court is not convinced that Deponent should be permitted to avoid her deposition altogether or that its scope or timing should be modified. As an initial matter, contrary to

---

[6] In addition, as Plaintiffs acknowledge, Rule 30(c) of the Massachusetts Rules of Civil Procedure "practically mirrors" Rule 30(c)(2) of the Federal Rules of Civil Procedure. (Pls.' Opp'n at 12-13.) *See* Reporter's Notes, Mass. R. Civ. P. 30(c) (2001) ("The language of the Massachusetts rule was drawn from Federal Rule 30."). And, as discussed above, the Massachusetts rule has been interpreted as permitting counsel to "instruct a deponent not to answer a question that comes within the disqualification of G.L. c. 233, § 20." Reporter's Notes, Mass. R. Dom. Rel. P. 30 (2000).

Deponent's argument, Judge Hennessy's finding that Deponent had not sufficiently demonstrated an undue burden for purposes of Rule 45(d)(3)(A)(iv) of the Federal Rules of Civil Procedure was not predicated solely on his conclusion that the marital disqualification rule was inapplicable to deposition testimony. Rather, he specifically found that even it did apply to depositions, Mrs. Cosby's deposition should still go forward. *Green*, 2015 WL 9594287, at *3 n.7, *6. This court now agrees.

As the First Circuit has recognized, in a slightly different context, the right to refuse to answer certain deposition questions does not entitle a deponent to "refuse to appear for any deposition whatsoever." *Vazquez-Rijos v. Anhang*, 654 F.3d 122, 129 (1st Cir. 2011). Moreover, the marital disqualification rule only applies to private conversations and, as noted by Judge Hennessy, there are exceptions to the rule, such that even some private marital conversations fall outside the rule in certain situations. *Green*, 2015 WL 9594287, at *3 n.7. For example, as Judge Hennessy recognized, the rule does not apply if a conversation occurred when both spouses were jointly engaged in criminal activity[7] or if a third party was present and heard the conversation; nor does the rule cover written communications. *Id.*[8] Accordingly, in light of the relatively narrow scope of the rule, the existence of various exceptions, and Deponent's unique role in Defendant's life for over fifty years, she may possess a good deal of relevant, non-protected information which can be

---

[7] Although not an issue presently before the court, the existence of criminal activity could potentially implicate a Fifth Amendment privilege held by Deponent.

[8] While this list of exceptions is not exhaustive, the court notes, because the parties appear to disagree on the issue, that it does not recognize an exception for conversations between spouses which were made in their capacities as business partners or as employer-employee. Business conversations between spouses are included within the marital disqualification rule. Although a state trial court decision purports to carve out an exception to the rule for "business communications between spouses acting solely in the capacity of employer and employee," *Anderson v. Barrera*, 6 Mass. L. Rptr. 481, 1997 WL 106713, at *3 (Mass. Super. Ct. Feb. 26, 1997), that holding, in the court's view, conflicts with controlling Supreme Judicial Court precedent. *See Commonwealth v. Hayes*, 14 N.E. 151, 153 (Mass. 1887) (stating that the marital disqualification rule applies to "conversations between [spouses] relating to business done by one as agent for the other"); *see also* Mark S. Brodin and Michael Avery, Handbook of Massachusetts Evidence, § 5.2.1, at 213 (2016) ("Business conversations between husband and wife are included [within the disqualification]." (citing *Hayes*, 14 N.E.2d at 153)). The court discerns no ability to isolate and parse conversations in which the spouses acted *solely* in their business-type capacities from their constant status of being married.

uncovered in a deposition. This is not simply a "fishing expedition," and, as Judge Hennessy explained, there is no basis to conclude that Deponent's testimony would be unreasonably cumulative, in that it can be obtained from other, more direct sources, such as Defendant himself. *Cf. Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001).

The balancing of any burden imposed upon Deponent against Plaintiffs' need for information is the type of fact-based discovery determination which is particularly suited for deference to a magistrate judge. The court, therefore, is not inclined to question Judge Hennessy's finding that the deposition should occur regardless of the application of the disqualification. Simply stated, Deponent has not made a showing which would support complete avoidance of the deposition. The court also declines to issue a formal protective order either limiting the scope of the deposition, in view of Deponent's right to refuse to answer questions barred by the disqualification rule, or modifying the sequence in which witnesses will be deposed. Rather, the court will leave it to Judge Hennessy to consider if or when such relief would be warranted in light of this decision and the parts of Judge Hennessy's ruling which remain intact.

IV. CONCLUSION

For the reasons set forth above, Deponent's motion to set aside and modify the December 31, 2015 ruling (Dkt. No. 146) is ALLOWED in part insofar as Deponent may refuse to answer deposition questions which call for testimony prohibited by the marital disqualification rule and not falling within an exception, but is otherwise DENIED.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge