UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TAMARA GREEN, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 14-30211-MGM |
| | * | |
| v. | * | |
| | * | |
| | * | |
| WILLIAM H. COSBY, JR. | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S
MOTION TO STAY THIS ACTION DURING THE PENDENCY
OF HIS CRIMINAL SUIT
(Dkt. No. 185)

April 4, 2016

MASTROIANNI, U.S.D.J.

## I.   INTRODUCTION

In this action, Tamara Green, Therese Serignese, Linda Traitz, Louisa Moritz, Barbara

Bowman, Joan Tarshis, and Angela Leslie ("Plaintiffs") assert claims for defamation, invasion of

privacy (false light), and intentional infliction of emotional distress against William H. Cosby, Jr.

("Defendant"). Plaintiffs' claims stem from statements issued on behalf of Defendant in response to

public allegations made by Plaintiffs in which they accused Defendant of sexual misconduct.[1] On

December 30, 2015, Defendant was charged with aggravated indecent assault in Montgomery

County, Pennsylvania, based on allegations of sexual misconduct which are similar, but separate,

---

[1] On December 14, 2015, Defendant filed counterclaims against Plaintiffs for defamation *per se*, defamation, tortious interference, and intentional infliction of emotional distress. (Dkt. No. 121.)

from those at issue in this case. Presently before the court is Defendant's motion to stay this action during the pendency of that criminal case. (Dkt. No. 185.) For the following reasons, the court will grant in part and deny in part Defendant's motion. Specifically, the court will stay discovery addressed to Defendant in order to avoid the precarious dilemma of Defendant having to choose whether to assert his Fifth Amendment privilege against self-incrimination (which could place him at a severe disadvantage in this case) or waive that privilege (and thus potentially incriminate himself in the criminal case). The court will not, however, stay this action in any other respect.

## II. Background and Procedural History

This action commenced on December 10, 2014, when Green filed the original complaint. (Dkt. No. 1, Compl.) A second amended complaint, which included Serignese and Traitz as plaintiffs along with Green, was filed on April 16, 2015. (Dkt. No. 48, Second Am. Compl.) On October 9, 2015, the court denied Defendant's motion to dismiss, concluding the second amended complaint alleged actionable defamation claims. *See Green v. Cosby*, --- F. Supp. 3d ----, 2015 WL 5923553 (D. Mass. Oct. 9, 2015). Thereafter, on November 13, 2015, a third amended complaint was filed, adding as plaintiffs Moritz, Bowman, Tarshis, and Leslie, and adding claims for invasion of privacy (false light) and intentional infliction of emotional distress on behalf of all Plaintiffs. (Dkt. No. 109, Third Am. Compl.) The third amended complaint alleges that Defendant sexually assaulted Plaintiffs and, as to most Plaintiffs, did so after providing drugs which rendered them incapacitated during the assaults; that Plaintiffs subsequently disclosed the assaults to the public; and that Defendant, directly or through spokespeople, falsely and publicly denied the allegations. (*See generally id.*)

Meanwhile, on July 10, 2015, the District Attorney of Montgomery County, Pennsylvania reopened an investigation into an alleged sexual assault committed by Defendant against Andrea

Constand in early 2004. (Dkt. No. 186, Ex. 3, at 11.) According to an affidavit of probable cause attached to the criminal complaint, the reopening was prompted by the release of portions of deposition testimony given by Defendant in relation to a civil suit filed by Constand. (*Id.*)[2] On December 30, 2015, the Montgomery County District Attorney charged Defendant with the aggravated indecent assault of Constand. (*Id.* at 1-3.) The criminal complaint alleges that when Constand visited Defendant at his home in Cheltenham, Pennsylvania in January or February of 2004, Defendant convinced her to take blue pills to help her relax; shortly thereafter, Constand became incapacitated and Defendant sexually assaulted her. (*Id.* at 14-19.) On January 11, 2016, Defendant filed in the criminal case a petition for habeas corpus and motion to disqualify the Montgomery County District Attorney's office, arguing the charges should be dismissed because of a purported agreement between Defendant and the then-District Attorney of Montgomery County. (Dkt. No. 186, Ex. 4.)[3] On February 4, 2016, the Pennsylvania trial court, the Montgomery County Court of Common Pleas, denied Defendant's dismissal request. (Dkt. No. 186, Exs. 6, 7.) However, the criminal proceedings have been temporarily stayed while the state intermediate appellate court, the Pennsylvania Superior Court, decides whether to hear an appeal of Defendant's dismissal request. (Dkt. No. 268, at 7.) *See Commonwealth v. William Henry Cosby, Jr.*, http://montcopa.org/ 2312/Commonwealth-v-William-Henry-Cosby-Jr (last visited Apr. 4, 2016).

Defendant filed the instant motion on February 9, 2016, Plaintiffs filed a partial opposition on February 29, 2016, and Defendant replied on March 7, 2016. (Dkt. Nos. 185, 217, 229.)

---

[2] After the previous Montgomery County District Attorney declined to charge Defendant regarding the Constand allegations, Constand brought a civil suit against Defendant on March 8, 2005. (*Id.* at 10.) That civil suit was settled on July 13, 2006. (*Id.*)
[3] According to Defendant, the former District Attorney agreed that Defendant never would be prosecuted regarding Constand's allegations in order to induce Defendant to testify in Constand's civil suit. (*Id.*) Thereafter, Defendant argues, he relied on the agreement and testified in the civil suit without invoking his Fifth Amendment rights, which testimony then formed the basis for his current criminal charges. (*Id.*)

Defendant argues this case should be stayed in its entirety pending the resolution of the criminal

case in Pennsylvania. (Dkt. No. 186.) Without a stay, Defendant argues, he

> will likely repeatedly face the quandary of having to either: (1) invoke his [Fifth
> Amendment] privilege during civil discovery—which would not only prevent him
> from adequately defending his position, but which may subject him to an adverse
> inference from his refusal to testify; or (2) waive his Fifth Amendment privilege, and
> having any evidence adduced in the civil case be then used against him in the criminal
> trial.

(*Id.* at 1.) Defendant asserts "the allegations of the criminal and civil cases are parallel, with both the

evidence and witnesses likely to overlap." (*Id.* at 13.) In particular, he contends Plaintiffs may be

called as witnesses in a criminal trial, citing Pennsylvania Rule of Evidence 404. (*Id.* at 4, 13.)

Defendant also argues any interests Plaintiffs have in an expeditious resolution of this action is

outweighed by his Fifth Amendment concern, a stay will not inconvenience the court because the

case is still in the early stages of discovery, and third-party and public interests will not be harmed

because the criminal case vindicates the public interest in these disputes. (*Id.* at 6-7, 10-12.)

        In their opposition, Plaintiffs argue that Defendant has not shown good cause to completely

stay this action. (Dkt. No. 217, at 1.) In particular, Plaintiffs take issue with Defendant's assertion

that this case and the criminal case overlap, as the two cases concern different alleged sexual assaults.

(*Id.* at 7-8.) Moreover, Plaintiffs argue, Defendant has not demonstrated that any evidence

discovered in this case will be admissible in the criminal case. (*Id.* at 8-9.) Plaintiffs also fault

Defendant for failing to file the motion to stay earlier, rather than waiting five days after the

Montgomery County Court of Common Pleas denied his request to dismiss the criminal case. (*Id.* at

12-13.) Nevertheless, Plaintiffs explain that they do not oppose staying discovery directed at

Defendant, but only if, in the interest of fairness, discovery directed at Plaintiffs is also stayed. (*Id.* at

1-2, 9-10, 13-14.) However, despite agreeing to a limited stay, Plaintiffs ask the court to resolve a

motion to compel Defendant's discovery responses, which challenges, among other things, the

breadth of Defendant's Fifth Amendment right against self-incrimination. (*Id.* at 1, 9, 19.)[4] They explain that "[t]he outcome of that motion to compel, and/or developments in the Constand criminal action, may provide cause to fully resume discovery again in this action." (*Id.* at 19.) Plaintiffs also request that the court require Defendant to submit a personally signed declaration that he intends to invoke the Fifth Amendment at his deposition because, they argue, only he can invoke that right and not his attorneys. (*Id.* at 2 n.1, 9 n.6, 19.)

### III.   STANDARD OF REVIEW

It is axiomatic that "federal courts possess the inherent power to stay proceedings for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). "The pendency of a parallel *or related* criminal proceeding can constitute such a reason." *Id.* (emphasis added). The decision whether to stay civil litigation in deference to pending criminal proceedings is "discretionary," and the "movant must carry a heavy burden to succeed in such an endeavor." *Id.* In this regard, "a defendant has no constitutional right to a stay simply because a parallel criminal proceeding is in the works." *Id.* at 77-78. In making a stay determination, a court should balance "the interests of the parties, the court, and the public." *Id.* at 78. "The touchstone, of course, is that a district court's discretionary power to stay civil proceedings in deference to parallel criminal proceedings should be invoked when the interests of justice counsel in favor of such a course." *Id.* Accordingly, as the First Circuit has recognized, "[t]hat determination is highly nuanced" in light of the "competing interests" and "the idiosyncratic circumstances" of each case. *Id.*

Although each case is unique, the First Circuit has highlighted a number of factors courts often consider

---

[4] Plaintiffs filed their motion to compel on March 4, 2016, four days after their partial opposition to the motion to stay. (Dkt. No. 227.)

> that typically bear on the decisional calculus: (i) the interests of the civil plaintiff in
> proceeding expeditiously with the civil litigation, including the avoidance of any
> prejudice to the plaintiff should a delay transpire; (ii) the hardship to the defendant,
> including the burden placed upon him should the cases go forward in tandem; (iii) the
> convenience of both the civil and criminal courts; (iv) the interests of third parties; and
> (v) the public interest. . . . To this list we add (vi) the good faith of the litigants (or the
> absence of it) and (vii) the status of the cases.

*Id.* (citations omitted). Another factor courts consider—which is sometimes described as a preliminary or threshold factor, or even "[t]he most important factor"—is "the degree to which the civil issues overlap with the criminal issues." Judge Milton Pollack, *Parallel Civil & Criminal Proceedings*, 129 F.R.D. 201, 203 (1989); *S.E.C. v. TelexFree, Inc.*, 52 F. Supp. 3d 349, 352 (D. Mass. 2014); *In re Derivative Litig.*, 2007 WL 1101276, *1 (E.D. Pa. Apr. 11, 2007). Moreover, as explained in perhaps the leading practice guide on the subject,

> a general stay of all civil discovery is not by any means the best option available to the
> court or to the litigants. Stays can and should be tailored to avoid undue prejudice. By
> limiting both the time and subject matter covered in temporary deferrals of particular
> discovery, a Court can allow civil proceedings to progress as much as possible without
> prejudicing the relative interests of the litigants.

*Parallel Civil & Criminal Proceedings*, 129 F.R.D. at 211.[5]


## IV.   ANALYSIS

Under these unique circumstances, the court concludes a limited stay as to discovery addressed to Defendant is appropriate. The most pressing consideration, in the court's view, is Defendant's Fifth Amendment privilege against self-incrimination. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Cont. amend. V.

---

[5] "*Parallel Proceedings* is the record of a lecture entitled 'Parallel Civil and Criminal Proceedings' that was given by the Honorable Milton Pollack, District Court Judge, at the 'Transferee Judges' Conference' in October 1989. It was reprinted in the Federal Rules Decisions volume, and is often cited by courts addressing the subject of such parallel proceedings." *Parker v. Dawson*, 2007 WL 2462677, at *4 n.8 (E.D.N.Y. Aug. 27, 2007) (citing *Microfinancial*, 385 F.3d at 790, and *U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Group, Inc.*, 297 F. Supp. 2d 531, 534 (E.D.N.Y. 2003)).

> [A]lthough the Constitution couches this privilege in terms of criminal cases, it is now beyond question that the right of a witness not to give incriminating answers applies with equal force to any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory, whenever the answer to a question put to a witness might tend to subject him to criminal responsibility.

*In re Kave*, 760 F.2d 343, 353-54 (1st Cir. 1985). Moreover, "the privilege covers not only answers that would in themselves support a conviction, but likewise embraces those which would *furnish a link* in the chain of evidence needed to prosecute . . . or which *might lead* to other evidence that could be used in a criminal prosecution against the witness." *Id.* at 354 (citations omitted).

"A stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012). There are at least two ways in which a defendant who invokes the Fifth Amendment in response to civil discovery can be prejudiced in the civil proceeding. First, unlike in a criminal case, an adverse inference may be drawn from the invocation of the privilege. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ."). In other words, the jury is permitted (but not required) to infer that the withheld information would have been unfavorable to the defendant. *See Iantosca v. Benistar Admin. Servs., Inc.*, 567 F. App'x 1, 6 (1st Cir. 2014). Second, on a more practical level, invoking the Fifth Amendment privilege prevents the defendant "from adequately defending his position" in the civil case. *Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). On the other hand, a defendant who waives his Fifth Amendment privilege in the civil case faces the prospect of incriminating himself in the criminal case by disclosing evidence that may tend to support a conviction.

Granted, the civil and criminal cases at issue here are not "entirely parallel," in the sense that Defendant is not facing prosecution in Pennsylvania for the same conduct alleged by Plaintiffs. *See United Techs. Corp., Hamilton Standard Div. v. Dean*, 906 F. Supp. 27, 29 (D. Mass. 1995). Nevertheless, due to the unique factual similarities between the allegations in this case and those contained in the criminal complaint, there is substantial risk that discovery provided by Defendant here could be used against him in a criminal trial. *See Louis Vuitton Malletier S.A.*, 676 F.3d at 98 ("Indeed, '[e]ven where it would not be direct evidence of wrongdoing with respect to the scheme charged in the criminal case, such testimony may be admissible as Fed. R. Evid. 404(b) evidence in any criminal trial.'" (quoting *SEC v. Boock*, 2010 WL 2398918, at *2 (S.D.N.Y. June 15, 2010)); *Zavatsky v. O'Brien*, 902 F. Supp. 2d 135, 148 (D. Mass. 2012) (explaining that although the defendant's criminal case involved issues "facially unrelated" to those in the civil case, "[t]here is a risk that discovery in this matter will expose [the defendants] to further criminal sanctions which weighs upon their ability to defend this action"); *In re SK Foods, L.P.*, 2010 WL 5136189, at *7 (E.D. Cal. Dec. 10, 2010) ("[The defendant's] Fifth Amendment rights are implicated any time that he testifies or responds to discovery requests that are admissible to prove that he engaged in the conduct alleged in the indictment. This conduct can exceed the specific allegations of the indictment. Specifically, under Fed. R. Evid. 404(b), evidence of crimes, wrongs, and acts not alleged in the indictment, may be used to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.'"), *order clarified*, 2011 WL 1442332 (E.D. Cal. Apr. 14, 2011); *see also United Techs. Corp.*, 906 F. Supp. at 29 (staying testimonial discovery of the defendant despite the fact that the civil and criminal matters were not "entirely parallel").

Plaintiffs here, for the most part, allege Defendant plied them with drugs in order to facilitate sexual misconduct without their consent, allegations which are similar to the version of events painted in the Pennsylvania criminal complaint. Undoubtedly, therefore, there is a risk—

perhaps a significant one—that any incriminating evidence produced by Defendant with regard to the events at issue in this case could be admissible in his criminal trial under Pennsylvania Rule of Evidence 404(b)(2). That provision, similar to the corresponding Federal Rule of Evidence 404(b)(2), provides that evidence of a crime, wrong, or other act may be admissible for non-propensity purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa. R. Evid. 404(b)(2). Defendant himself concedes that "discovery regarding Plaintiffs' allegations . . . in this case could be used against [him] in the criminal case"—although he asserts "it would be wholly improper" and he "would oppose any such attempts"—and cites a number of cases in which Pennsylvania courts have admitted evidence of prior sexual misconduct against criminal defendants under Pennsylvania Rule of Evidence 404(b)(2). (Dkt. No. 186, at 13; Dkt. No. 229, at 2 & n.1.) Likewise, there is a risk that discovery regarding the Constand allegations, discoverable and potentially admissible under Rules 404(b)(1) and/or 415 of the Federal Rules of Evidence in this case,[6] could also be used against Defendant in his criminal trial. Indeed, Plaintiffs recently succeeded in obtaining portions of Constand's attorney's case file from her civil suit for use in this action. *See Green v. Cosby*, --- F.R.D. -- --, 2016 WL 1086716 (E.D. Pa. Mar. 21, 2016). Accordingly, while the specific events directly at issue in this case and in the criminal case do not necessarily overlap, the court nonetheless concludes that, in the absence of a stay of discovery addressed to him, Defendant will face "the quandary of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case." *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995).

---

[6] The court, of course, takes no position on the admissibility of such evidence in this action under the Federal Rules of Evidence but simply highlights the potential for Defendant to incriminate himself in the criminal case in the context of civil discovery.

A complete stay of this litigation, however, is not warranted. It simply is not necessary in order to avoid the Fifth Amendment predicament. Rather, all that is necessary is that Defendant be exempted from providing discovery while his criminal case is pending. Were this court to pause the litigation in its entirety while Defendant's criminal case wends its way through the Pennsylvania courts, the parties would face a substantial amount of discovery they would need to conduct after the criminal case concludes in order to be ready for trial in this action. Indeed, the parties have already spent a considerable amount of time and resources engaging in discovery disputes, most notably as to a non-party witness, *see, e.g., Green v. Cosby*, --- F. Supp. 3d ----, 2016 WL 554816 (D. Mass. Feb. 11, 2016), and there is little reason to believe such discovery quarrels will not continue. By minimizing the disruption to the discovery process, the court intends to keep the litigation progressing as much as possible. *See Parallel Civil & Criminal Proceedings*, 129 F.R.D. at 211.

Applying the other factors, Plaintiffs certainly have an interest in the expeditious resolution of their case. "Nonetheless, while a stay may cause some inconvenience and delay to [Plaintiffs], 'protection of defendant's constitutional rights against self incrimination is the more important consideration.'" *United Techns. Corp.*, 906 F. Supp. at 29 (quoting *Corbin v. Federal Deposit Ins. Corp.*, 74 F.R.D. 147, 149-50 (E.D.N.Y. 1977)); *see also Zavatsky*, 902 F. Supp. 2d at 148 ("[T]he plaintiff's interest in expeditious resolution of his civil claim will always be delayed by the grant of a stay, but no more so here than in other cases."); *Trustees of Plumbers & Pipefitters Nat'l Pension Fund*, 886 F. Supp. at 1140 (holding that the plaintiffs' interest in the expeditious resolution of the case and potential prejudice of a stay through loss of evidence "are trumped by defendants' interests in avoiding the [Fifth Amendment] quandary").

As to the third and seventh factors, the convenience of this court and the criminal court as well as the status of the cases, this case is still in the relatively early stages. A trial date has not yet been set. *Compare Microfinancial*, 385 F.3d at 79 (affirming denial of a stay request made "on the brink

of trial"). And discovery will still continue, albeit without discovery directed to Defendant. Moreover, while the criminal case also is in the early stages and still could be dismissed, the court retains the ability to modify or dissolve the stay based on developments in the criminal case.

The interests of third parties and the public, the fourth and fifth factors, also does not alter the court's conclusion. Defendant asserts anything short of a complete stay is unfair to third parties, who "did not initiate or seek to benefit from this lawsuit." (Dkt. No. 229, at 5.) But third parties may have a legitimate interest in providing truthful evidence as to relevant issues in this case, and forcing them to wait indefinitely on the sidelines is not justifiable. As to the interests of the public, "their interest may be [at least partially] vindicated through the ongoing . . . criminal proceedings." *Zavatsky*, 902 F. Supp. 2d at 149. Again, the allegations at issue in this case are similar to those in the criminal case. Moreover, to the extent any evidence produced by Defendant in discovery here could influence the criminal case, the court notes that "the public interest in unimpeded criminal law enforcement outweighs the civil interests here." *TelexFree, Inc.*, 52 F. Supp. 3d at 353.

Lastly, as to the sixth factor, the court rejects Plaintiffs' argument that Defendant acted in bad faith by delaying the filing of this motion. Certainly, Defendant could have requested a stay shortly after he was charged on December 20, 2015. However, from a practical standpoint it is reasonable that he waited until after the Montgomery County Court of Common Pleas denied his request to dismiss the criminal case, which occurred on February 4, 2016. Otherwise, if his criminal case were dismissed, a motion to stay this action would have become moot.[7]

Plaintiffs argue the court should also stay discovery addressed to them because a one-sided stay of discovery would give Defendant the "opportunity to strategically prepare his testimony and

---

[7] Of course, Defendant's stay request still could become moot if the Pennsylvania Superior Court decides to hear his appeal and reverses the Court of Common Pleas' denial of his dismissal motion. Given the uncertainty surrounding the length of time it will take to resolve this appeal request, however, the court does not believe it is prudent to await that decision before deciding the motion to stay. Again, the parties and the court are free to reevaluate the necessity of a stay pending developments in the criminal case.

litigation strategy, before [he] has to provide any substantive discovery responses or deposition testimony at all." (Dkt. No. 217, at 14.) While the court is somewhat sympathetic to this concern, its goal is to move this case forward as expeditiously as possible without unduly prejudicing Defendant's constitutional rights. There are seven plaintiffs in this case, all of whom make separate allegations and must provide separate discovery. That discovery, as well as third-party discovery, will take some time to conduct. Accordingly, by entering a limited stay only as to discovery directed at Defendant, the parties and the court will be in the best position to conclude the outstanding discovery (*i.e.*, discovery directed to Defendant) shortly after the resolution of the criminal case. *See Parallel Civil & Criminal Proceedings*, 129 F.R.D. at 211. Most importantly, Plaintiffs do not face the same constitutional dilemma as Defendant. They are not facing criminal charges and thus there are no Fifth Amendment implications at play. Therefore, the prejudice Plaintiffs face in the absence of a stay is simply not comparable to Defendant's situation and does not outweigh the interest of advancing this litigation.

The court also rejects Plaintiffs' request that the court require Defendant to submit a signed declaration of his intention to invoke his Fifth Amendment rights at his deposition. As Defendant argues, that requirement would circumvent the entire purpose of a stay in this situation, which is to *avoid* "the quandary of [Defendant having to] choos[e] between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case." *Trustees of Plumbers & Pipefitters Nat'l Pension Fund, Inc.*, 886 F. Supp. at 1140. Similarly, the court need not resolve Plaintiffs' motion to compel Defendant's discovery responses at this time, because discovery directed at Defendant is being stayed. *See, e.g., S.E.C. v. Downe*, 1993 WL 22126, at *14 n.10 (S.D.N.Y. 1993). Again, it is not necessary to decide the breadth of Defendant's Fifth Amendment rights, because the purpose of the stay is to avoid the prejudice of Defendant having to choose whether to invoke his privilege. The court will therefore

deny without prejudice Plaintiffs' motion to compel.[8] If the parties cannot resolve the issues raised therein after the resolution of the criminal proceedings, Plaintiffs may refile the motion and revise their arguments as appropriate. In addition, the court will direct Defendant to file status reports every sixty days indicating any developments in the criminal proceedings that may be relevant to the continuing stay of this civil case.

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion to stay this action during the pendency of his criminal suit (Dkt. No. 185) is ALLOWED in part and DENIED in part insofar as discovery addressed to Defendant is stayed pending the resolution of his criminal case, but this action is not stayed in any other respect. The court also DENIES WITHOUT PREJUDICE Plaintiff's motion to compel Defendant's discovery responses (Dkt. No. 227), and DENIES AS MOOT Plaintiff's motion for protective order staying Defendant's discovery addressed to Plaintiffs (Dkt. No. 224.)

Defendant is hereby directed to file status reports every sixty days beginning on April 18, 2016, apprising the court of the latest developments in his criminal proceedings as a way to monitor the civil stay.

It is So Ordered.

_/s/ Mark G. Mastroianni_
MARK G. MASTROIANNI
United States District Judge

---

[8] The court will also deny as moot Plaintiffs' Motion for Protective Order Staying Defendant's Discovery Addressed to Plaintiffs, which simply requested a stay of discovery addressed to Plaintiffs "to the extent requested in their" partial opposition to Defendant's motion to stay. (Dkt. No. 224)